IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE RAY BRADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number 15-CV-08489 |
| ) | |
| VILLAGE OF UNIVERSITY PARK, ) | Hon. Charles R. Norgle, Sr. |
| ILLINOIS, an Illinois Home Rule ) | Judge Presiding. |
| Municipality, and VIVIAN COVINGTON, ) | |
| Mayor of UNIVERSITY PARK, ILLINOIS, ) | JURY TRIAL DEMANDED |
| both individually and in her official capacity ) | |
| as Mayor, ) | |
| Defendants. ) | |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, EDDIE RAY BRADLEY, and pursuant to Federal Rule of

Civil Procedure 56 and Local Rule 56.1(a)(3), submits his Statement of Undisputed Material

Facts. The Exhibits to this Statement include:

| | |
|---|---|
| Exhibit A | The Defendants' Answer |
| Exhibit B | Bradley's Employment Contract |
| Exhibit C | The Mayor's First Letter |
| Exhibit D | The Mayor's Second Letter |
| Exhibit E | John Moran Letter |
| Exhibit F | Deposition of Joseph Roudez |
| Exhibit G | Deposition of Theaplise Brooks |
| Exhibit H | Deposition of Keith Griffin |
| Exhibit I | Deposition of Vivian Covington |
| Exhibit J | Deposition of Eddie Ray Bradley |

1. The Defendants admit this Court has jurisdiction of the matter, both federal and state law claims, and that venue is proper in the Northern District of Illinois. (Answer (Doc. 11) at paragraph 2.) (A copy of the Answer is attached hereto as Exhibit A.)

2. The Defendants admit that the Village of University Park (hereafter "Village" or "municipal defendant") is a home rule unit and an Illinois Municipal Corporation. (Ex. A at paragraph 8.)

3. Bradley and the Village of University Park entered into an employment contract for a two-year term for 2015 and 2016, at a salary of $100,000, plus benefits. (A copy of the contract is attached hereto as Exhibit B.)

4. On May 13, 2015, Bradley received a letter from the Mayor placing him on leave, but omitting why. (A copy of the letter is attached hereto as Exhibit C.)

5. The Mayor's second letter two weeks later informed him he was fired, declaring Bradley's employment contract "*ultra vires*," and as such she believed it "conferred no rights, imposed no duties and afforded no protection." (A copy of the letter is attached hereto as Exhibit D.)

6. On July 14, 2015, counsel for Bradley, John Moran, wrote to the Defendants invoking Bradley's due process rights, and noting that Bradley was still the Chief of Police per Illinois law. (A copy of the letter is attached hereto as Exhibit E.)

7. The present mayor of the Village is Joseph Roudez, III, and he was sworn in as mayor on 05-15-2019 to a four-year term. (Joseph Roudez Deposition at p. 6., attached hereto as Exhibit F.)

8. Roudez testified that then Village Manager, Lafayette Linear, told him that Bradley was a "fantastic" chief of police, and not to fire him. (Exhibit F at p. 42, 54.)

9. Roudez never learned why Covington fired Bradley. (Exhibit F at p. 10, 39).

10. The firing of Bradley occurred when Roudez was out of town at a conference. (Exhibit F at p. 7.)

11. According to Mayor Roudez, Bradley's relationship with Defendant Covington was "contentious." (Exhibit F at p. 7.)

12. Roudez was a Village trustee when Bradley was terminated. (Exhibit F at p. 6.)

13. Roudez said Bradley never received notice of any charges against him. (Exhibit F at p. 9-11.)

14. Roudez did not know whether Bradley received a pre-termination hearing. (Exhibit F at p. 9.)

15. Bradley did not receive a hearing post termination nor was he allowed to address the Village Board, although a previous Chief who was terminated was allowed to. (Exhibit F at p. 9, 10, 48-49.)

16. Mayor Roudez said Bradley was not given any reasons for his termination and that he, Roudez, was not aware of any reasons. (Exhibit F at p. 9.)

17. Mayor Roudez acknowledged the letter of termination initiated and signed by Defendant Covington. (Exhibit F at p. 50-51.)

18. Bradley was a man of integrity. (Exhibit F at p. 11.)

19. Bradley was fired shortly after Roudez, Bradley, and Village Trustee Keith Griffin went to the Will County State's Attorney's Office to discuss corruption in the Village government. (Exhibit F at p. 43-44.)

20. Mayor Roudez testified it was "offensive" for someone to falsely claim one failed to perform the duties of his office or to falsely state someone lacking integrity or was a "criminal." (Exhibit F at p. 12, l. 24, 13 at l. 13.)

21. The Village never paid Bradley any severance. (Exhibit F at p. 20.)

22. Theaplise Brooks was the Vice-Chairman of the University Park Fire & Police Commission from 2009 to 2017. (Theaplise Brooks Deposition at p. 6-9, attached hereto as Exhibit G).

23. At the time of his deposition, Brooks was a University Park Village Trustee, as was Roudez. (Exhibit G at p. 5.)

24. Brooks was never contacted by any member of the Village Board or the Police Department regarding the termination of Eddie Ray Bradley as Chief of Police. (Exhibit G at p. 15.)

25. Brooks was never given a reason for Bradley's termination. (Exhibit G at p. 15.)

26. Brooks had a good relationship with Bradley when he was Chief of Police, acknowledging "I've never had a problem with Ed." (Exhibit G at p. 21.)

27. Keith Griffin was a Trustee of the Village of University Park when deposed in 2016. (K. Griffin Deposition at p. 7, attached hereto as Exhibit H).

28. He testified that the Village Board goes into executive session for terminations. (Exhibit H at p. 7-8.)

29. He testified the Village Manager handled hiring and firing. (Exhibit H at p. 8-9.)

30. Then Village Manager, Lafayette Linear, was in position to May 15, 2015 so the then Mayor, Vivian Covington, initiated Bradley's dismissal. (Exhibit H at p. 10.)

31. The Chief of Police prior to Bradley, Mel Davis, was paid a severance. (Exhibit H at p. 13.)
32. Griffin was unaware of any notice of a dismissal hearing for Bradley. (Exhibit H at p. 16.)
33. The decision to terminate Bradley as Chief was Covington's. (Exhibit H at p. 18.)
34. Bradley still had time left on his contract when fired. (Exhibit H at p. 19.)
35. Both Will County and the United States Governments were investigating the Village. (Exhibit H at p. 27.)
36. Griffin described Bradley as a "professional." (Exhibit H at p. 16.)
37. The present investigation concerned Covington having an Indiana bank account and the Village Board's use of credit cards. (Exhibit H at p. 28, 30.)
38. The hiring of Village Manager Bola Delano occurred without notice or documentation to the Village Board members while Trustees Griffin and Roudez were out of town. (Exhibit H at p. 32-33.)
39. Oscar Brown read the case law and statute and told the Village Board (including the Mayor) they were doing the termination illegally, and then left. (Exhibit H at p. 35-37.)
40. Covington was acting as Village Manager until Bola Delano stepped in. (Exhibit H at p. 48.)
41. Griffin acknowledged that Bradley should have been given written notice of the charges and the meeting but did not receive it. (Exhibit H at p. 54-55.)
42. Bradley was never asked to nor did he address the Village Board. (Exhibit H at p. 55.)

43. Defendant Covington testified she "probably" got a letter from Bradley's attorneys asking for a copy of any notice to him for termination but did not respond to it. (Vivian Covington Deposition at p. 39, attached hereto as Exhibit I.)

44. Covington had no paperwork concerning any notice of charges to Bradley. (Exhibit I at p. 42.)

45. Covington was a trustee of the Village for 8 years and the Mayor for 8 years. (Exhibit I at p. 45.)

46. Brooks was chairman of the Fire and Police Commission in 2015. (Exhibit I at p. 45.)

47. The FBI took Covington's laptop from her office. (Exhibit I at p. 50.)

48. Covington was unaware of any pre- and post-termination process because that is conducted by the village manager, not the mayor. (Exhibit I at p. 52.)

49. Eddie Ray Bradley was Chief of Police for University Park from 2013 to 2015. (Bradley Deposition at p. 9, attached hereto as Exhibit J.)

50. After a year on the job, the Village gave him an employment contract for a two-year term. (Exhibit J at p. 13-14.)

51. He made $100,000 a year as Chief of Police. (Exhibit J at p. 147, 150.)

52. He performed his job satisfactorily. (Exhibit J at p. 20-21.)

53. Bradley was not paid any of the severance, vacation, and sick pay owed to him under the contract. (Exhibit J at p. 60, 111, 158.)

54. Bradley was never told by the Mayor or the Village Board that he was performing poorly. (Exhibit J at p. 158-59.)

55. Bradley was not given an opportunity for a pre-termination or post-termination hearing before the Village Board. (Exhibit J at p. 37-38, 158-59.)

56. Mayor Covington acknowledged Bradley was entitled to four months' salary if he was terminated. (Exhibit I at p. 19-20.)

57. Bradley is owed $200,000 in contract damages. (Exhibit J at p. 60, 111).

Respectfully submitted,

s/ John Moran
John T. Moran
The Moran Law Group
309 West Washington, Suite 900
Chicago, Illinois 60606
(312) 630-0200

Christopher Keleher
The Keleher Appellate Law Group, LLC
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 448-8491
ckeleher@appellatelawgroup.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that he served the foregoing document on counsel of record via the Northern District ECF system on September 29, 2021 to:

Dominick Lanzito
Peterson, Johnson & Murray
Chicago, LLC
200 West Adams, Suite 2125
Chicago, Illinois 60606
(312) 724-8037
dlanzito@pjmchicago.com


s/ Christopher Keleher

Christopher Keleher
The Keleher Appellate Law Group, LLC
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 448-8491
ckeleher@appellatelawgroup.com