# EXHIBIT G

cmsreporters@comcast.net

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


EDDIE RAY BRADLEY                )
                                 )
          Plaintiff,             )
                                 )
 vs.                             )   No.15-cv-08489
                                 )
VILLAGE OF UNIVERSITY PARK,      )
et al.,                          )
                                 )
          Defendants.


           The deposition of

THEAPLISE BROOKS taken under oath VIA ZOOM at

1:19 P.M. on Thursday, July 23, 2020 pursuant

to the Rules of the United States District

Court, Northern District of Illinois, before

Carol M. Siebert-LaMonica, C.S.R. No.

084.001355 in and for the County of Cook and

State of Illinois, pursuant to notice.


Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 2

```
 1   APPEARANCES:

 2        THE MORAN LAW GROUP, by

 3        MR. JOHN T. MORAN

 4        566 West Lake Street, Suite 101

 5        Chicago, Illinois  60661

 6        (J.t.m.moran@gmail.com)

 7                  And

 8        THE KELEHER APPELLATE LAW GROUP, LLC.

 9         MR. CHRISTOPHER KELEHER

10         190 South LaSalle Street, Suite 2100

11         Chicago, IL 60603

12         (Ckeleher@appellatelawgroup.com)

13             Appeared on behalf of the plaintiff;

14

15

16

17

18

19

20

21

22

23

24
```

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 3

1          PETERSON, JOHNSON & MURRAY CHICAGO

2          MR. DOMINICK LANZITO

3          200 West Adams, Suite 2125

4          Chicago, IL  60606

5          (Danzito@pjmchicago.com)

6              Appeared on behalf of the defendants.

7

8   ALSO PRESENT:

9              MR. EDDIE BRADLEY

10             MS. VIVIAN COVINGTON

11                 - - - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 4

1              THEAPLISE BROOKS,

2    called as a witness herein, having been first

3    duly sworn, was examined and testified as

4    follows:

5                E X A M I N A T I O N

6    BY MR. MORAN:

7              Let the record reflect that the

8    parties entered into an agreement to take the

9    oral deposition of Trustee Theodore Brooks at

10   this date and time remotely under oath via

11   court reporter using the Zoom, Z O O M,

12   application, is that correct, Mr. Lanzito?

13             MR. LANZITO:  Yes, correct.  I want to

14   correct his first name for you, its not

15   Theodore it is Theaplise but --

16             MR. MORAN:   Oh, I'm sorry.

17             MR. LANZITO:  Yeah.

18             THE WITNESS:  T H E A P L I S E.

19             MR. MORAN:   We are here pursuant to

20   an amended notice of Trustee Theaplise Brooks

21   and the -- Trustee Brooks may have brought with

22   him some documents or tangible things and gave

23   them to his attorney, I don't know if that is

24   the case or not.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 5

1          Mr. Brooks, did you bring any

2    documents or any deposition materials that you

3    reviewed?

4          THE WITNESS:  No.

5          MR. MORAN:  Okay.  This is the

6    deposition of Mr. Brooks pursuant to the

7    Federal Rules of Civil Procedure regarding

8    depositions rules 26 through 34.

9        Q.   And my first question, Mr. Brooks, is

10   where do you work?

11       A.   Currently a retired Country Club Hills

12   police officer.

13       Q.   Okay.  Do you live in Country Club

14   Hills?

15       A.   No, I live in the Village of

16   University Park.

17       Q.   And how long have you lived in

18   University Park, sir?

19       A.   Since 2002.

20       Q.   Are you a member of the Village board

21   of University Park?

22       A.   Yes, sir.

23       Q.   And when did you get on the board?

24       A.   May of 2017.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 6

1      Q.   As a member of the board of the

2   Village of University Park, do you also have

3   any positions on any commissions, committees,

4   et cetera, that you sit on or chair -- are the

5   chair of?

6      A.   Currently?

7      Q.   Yes.

8      A.   No.

9      Q.   Okay.  Did you in the past?

10      A.   As a board member or sit on a

11   committee?

12      Q.   Well, while you were a board member,

13   let's start with that.

14      A.   No.

15      Q.   Okay.  Have you ever sat on a

16   commission or a committee for University Park

17   before you became a member of the Village

18   board?

19      A.   Yes, sir, I did.

20      Q.   And what did you sit on?

21      A.   Actually it was twice.  The first time

22   I sat as a commissioner approximately 2009

23   around September, I was a commissioner and by

24   the board I was elected the vice chair.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 7

1           And I was appointed maybe around

2   2015 as the chair of the Police & Fire

3   Commission after my term was up.

4       Q.   I see.  And when you were a vice chair

5   in 2009, what was the organization you were

6   vice chair of, was it also the Fire & Police

7   Commission?

8       A.   You went out a little bit.

9       Q.   I'm sorry.

10          You said back in 2009 you were

11  Vice-Chairman of a commission, was that the

12  same commission, Fire & Police Commission?

13      A.   Yes.

14      Q.   Okay.  As a trustee of University

15  Park, have you attended any training seminars

16  or classes with reference to employee

17  relations?

18      A.   No.

19      Q.   Okay.  Are you still a member of the

20  Fire & Police Commission?

21      A.   No.

22      Q.   And that ended sometime in 2015?

23      A.   No, that ended once I won my election,

24  you can't hold two positions as such.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 8

1      Q.   Okay.  And when did you win your

2   election?

3      A.   April 4th, 2017.

4      Q.   Got you.  And what is the term of

5   office for a trustee?

6      A.   Four years.

7      Q.   So you are getting ready to run again?

8      A.   Maybe.

9      Q.   Maybe.  Okay.  Did you attend any

10  training seminars or classes when you were on

11  the Fire & Police Commission board?

12     A.   Yes.

13     Q.   And do you recall any of them and

14  where they took place?

15     A.   There were several, about six modules,

16  I completed them all every fall and spring,

17  that's when the training -- but I couldn't tell

18  you which exactly training or dates I went, but

19  I did complete them all.

20     Q.   And that's every fall and spring

21  during your term of office as a trustee?

22     A.   No, as commissioner.

23     Q.   As commissioner.  Okay.  Going back to

24  those dates, right?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 9

1      A.    Right.

2      Q.    Okay.  So 2009 and 2015 until

3   April 4th of 2017 or so.

4             Okay.  What was your duty as the

5   chairman or vice-chairman of the Fire & Police

6   Commission?

7      A.    The role of the commissioner is to

8   hire police officers and hire firefighters.

9             Also the role is to promote

10  police officers to the rank of sergeant civil

11  service and actually it is a civil service

12  committee, so they -- that was considered civil

13  service sergeant.

14            For the firefighters for the

15  promotion of lieutenant and for any

16  disciplinary for any civil service officers due

17  to their contracts they do have the option to

18  come before the commission or go before

19  arbitration and that's it.

20     Q.    So they can go to the commission or

21  arbitrate their -- whatever their dispute is.

22            Were you ever a member of a

23  police department, if so, where and when?

24     A.    Of as police department?

Siebert & Associates Court Reporters, Inc.

Page 10

1       Q.   Yes.

2       A.   Yes, twice.

3       Q.   Okay.  Where?

4       A.   My first stent was in the City of

5   Harvey.

6       Q.   Okay.

7       A.   That would have been about January,

8   official academy date was January 13th of 20 --

9   excuse me, of 1997.

10               And then from there I went to --

11   I was sworn in to the City of Country Club

12   Hills full-time about June 15th, 2004.

13       Q.   Okay.  Any others?

14       A.   No, just two departments full-time.

15       Q.   Okay.  When you were at either Country

16   Club Hills or Harvey were you in a police

17   union?

18       A.   Yes, in Harvey and Country Club Hills,

19   yes.

20       Q.   Country Club Hills, was that the

21   teamsters?

22       A.   When I was there it was teamsters.

23       Q.   I think they changed recently.

24       A.   Yes.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 11

1       Q.   What about Harvey?

2       A.   Harvey, my latter years, because we

3   were not union initially when I started, it was

4   ICOPs.  Have you ever heard of them?

5       Q.   Yes. I think they took over for the

6   teamsters in Country Club Hills?

7       A.   Yes, he gets around.

8       Q.   Yes.  Were you ever on a police union

9   board?

10      A.   No.

11      Q.   Were you ever involved in any

12  disciplinary hearings while you were a police

13  officer when you were a union rep or as a

14  party?

15      A.   No.

16      Q.   Were you ever a union rep?

17      A.   No.

18      Q.   Did you receive any specific training

19  for police union work?

20      A.   No.

21      Q.   Okay.  Why did you leave Harvey?

22      A.   When?

23      Q.   No.  Why?

24      A.   Well, money man.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 12

1       Q.   Okay.  That's a good reason.  What
2   about Country Club Hills?
3       A.   I was injured.
4       Q.   Okay.  Did the Village of University
5   Park ever reimburse you or pay for the cost of
6   any seminars or training you have received over
7   the years?
8       A.   For the training for the commission,
9   yes, the Village was responsible for paying it.
10      Q.   Okay.  Where did you get that
11  training, that's for the trusteeship, is that
12  right?
13      A.   No.
14      Q.   What was that for, the Fire & Police
15  Commission?
16      A.   Yes.
17      Q.   Okay.  And where did that take place?
18           MR. LANZITO:   Object to foundation,
19  form.  You can answer.
20           THE WITNESS:  Yes, the training -- I'm
21  sorry.
22  BY MR. MORAN:
23      Q.   Where did you get training for the
24  Fire & Police Commission in University Park?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 13

1       A.   It was multiple places, but it was

2   hosted by the Illinois Fire & Police Commission

3   Association.

4       Q.   I see.  And so whatever they charged

5   the Village the Village just picked that up,

6   right?

7       A.   Correct.

8       Q.   Okay.  When you were at Country Club

9   Hills did either the department or the union

10  send you out for any training?

11      A.   They did.

12      Q.   Did you get any training in either

13  employee relations, contracts or employee

14  discipline?

15      A.   I can't recall.  I can't recall.

16      Q.   Okay.  When you were at Country Club

17  Hills were you just a line officer, were you a

18  sergeant or what was your rank?

19      A.   Patrolman/Youth Officer.

20      Q.   And that was during your entire time

21  at Country Club Hills?

22      A.   Correct.

23      Q.   Okay.  When you were with the Fire &

24  Police Commission how many disciplinary cases

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 14

1   did you hear, if you heard any?

2        A.    Two.

3        Q.    Two.  Okay.  What does the Village

4   Manager do, if you know, for University Park?

5        A.    Their role?

6        Q.    Yes.

7        A.    They are supposed to run the

8   day-to-day operation of the Village.

9        Q.    Who is the present Village Manager, if

10  you recall?

11       A.    The present one?

12       Q.    Yes.

13       A.    Ernestine Beck-Fulgham.

14       Q.    Is that a hyphenated name?

15       A.    Yes, she hyphens it.

16       Q.    Last name is Fulgham?

17       A.    F U L G H A M.

18       Q.    Got you.  Who does hiring and firing

19  for the Village during at least while you have

20  been trustee?

21            MR. LANZITO:   Objection, form, vague.

22  You can answer.

23            THE WITNESS:  For --

24

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)     3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 15

1    BY MR. MORAN:

2         Q.   For civilians?

3         A.   Okay.  That would be the Village

4    Manager.

5         Q.   Okay.  And hiring-firing police

6    officers, I think you testified earlier, the

7    Fire & Police Commission hires police officers

8    and firefighters, does it also do the

9    terminations or is that someone else?

10        A.   Well, the Police Chief would have to,

11   if it is a disciplinary, it would deal with the

12   Police Chief and the Village Manager and then

13   it depends if the officer takes the option of

14   bringing it to the Police and Fire Commission.

15        Q.   I see.  Did -- were you ever contacted

16   by any member of the Village board or the

17   police department in reference to the

18   termination of Eddie Bradley as Chief?

19        A.   No.

20        Q.   Were you ever given a reason why Chief

21   Bradley was terminated?

22        A.   No.  No, I wasn't.

23        Q.   Are you one of the people that signed

24   Village checks?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 16

```
 1            MR. LANZITO:   Objection, foundation.
 2    When?
 3    BY MR. MORAN:
 4         Q.   Oh, as a trustee.
 5         A.   Right now I am listed as a signator,
 6    but I haven't signed one check.  I said again I
 7    have not signed one check.
 8         Q.   And by that you mean you haven't
 9    signed any checks since you have been a trustee
10    of the Village, right?
11         A.   Nope.
12         Q.   Okay.  Does -- are there any -- I'm
13    trying to think of a good word for this,
14    spending in any Village department over "X"
15    number of dollars needs to be requested and
16    reported, is there a figure that requires
17    reporting and request while you have been
18    trustee?
19         A.   I'm a little lost on your question.
20         Q.   Okay.  Sometimes municipalities
21    require a request and a report be made of any
22    spending in the department over a specific sum.
23            My question to you was, is there
24    a specific sum that you are aware of in the
```

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 17

1   Village of University Park that requires

2   reporting, you know, more than a $1,000, more

3   than $5,000, more than $50, that kind of thing?

4           MR. LANZITO:   Objection to the form

5   of the question.  It is vague.  You can answer.

6           THE WITNESS:   Are you asking like if

7   a department or --

8   BY MR. MORAN:

9       Q.   An individual in a department spends

10  over "X" number of dollars, when is the

11  reporting triggered and a request for the

12  approval, when are those things triggered?

13           How much money has to be involved

14  to trigger those requirements?

15      A.   That is set by the Village Manager.

16      Q.   Do you know what it is, do you happen

17  to know what it is?

18      A.   Not at this moment.  She changed it.

19      Q.   Do you know what it was?

20      A.   No, not offhand.

21      Q.   Okay.  Do you know an individual named

22  Irma Holloway?

23      A.   Yes.

24      Q.   Who is she?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 18

1      A.   That should be the lady for IRH.

2      Q.   And what is IRH?

3      A.   It was a financial company that the

4   Board of Trustees hired prior to my arrival to

5   the board.

6      Q.   And what was -- did she have contracts

7   with University Park?

8      A.   I don't know about her, but I know IRH

9   had a contract, and I know her to be an

10  employee of IRH.

11     Q.   Do you know how much the contracts

12  were for and what they were for?

13     A.   I know IRH had a contract that was for

14  $599,000 when I came to the board, that was the

15  contract I read.

16     Q.   And what were they suppose to do for

17  $599,000?

18     A.   They were supposed to be reconciling

19  the Village finances and help get things in

20  order, audits and TIFS.  There were multiple

21  things they were were supposed to be doing with

22  the Village finances.

23     Q.   I got you.  Let's see now.

24          Oh, Mr. Brooks, do you own a

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)        3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 19

1   business yourself?

2        A.   Do I own a business?

3        Q.   Yes.

4        A.   No.

5        Q.   Okay.  Have you chaired or ever

6   operated a not-for-profit?

7        A.   Chaired a not-for-profit?

8        Q.   Yes.

9        A.   Corporation or --

10       Q.   Yes, a corporation, a company that

11  does --

12       A.   Like Bill Gates?

13       Q.   Yes, food banks or anything like that?

14       A.   No, no.

15       Q.   Are you in the Will County or the Cook

16  County part of University Park?

17       A.   I live in Will County.

18       Q.   So you pay your homeowner's taxes to

19  Will County?

20       A.   A lot of it.

21       Q.   Okay.  All right.  To prepare for this

22  deposition, how did you go about doing that?

23       A.   I didn't.

24       Q.   Okay.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 20

1      A.   I didn't.

2      Q.   Did you have occasion to read any

3  documents in preparing for the deposition?

4      A.   No.

5      Q.   Okay.  Have you ever read Ed Bradley's

6  complaint in this lawsuit?

7      A.   No.

8      Q.   Have you ever discussed the case with

9  anyone?

10     A.   No.

11          MR. LANZITO:   Objection to the extent

12  it calls for attorney/client communication.

13  BY MR. MORAN:

14     Q.   Well, to that extent, yes.

15          Did you discuss it with someone

16  other than your attorney in this case?

17     A.   No.

18     Q.   Okay.  How often -- now the Village

19  has a police chief currently, is that correct?

20     A.   Yes.

21     Q.   And who is that?

22     A.   Deborah Wilson.

23     Q.   And often do you as a trustee interact

24  with Deborah Wilson?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 21

1      A.   Depends, depends on the situation.

2   Like 4th of July Fireworks, like you would with

3   your Police Chief.

4      Q.   Okay.  Do you know Ed Bradley when he

5   was Chief of Police?

6      A.   Yes, I did.

7      Q.   And how would you describe your

8   relationship with Eddie Bradley when he was

9   chief?

10     A.   I've never had a problem with Ed,

11  him and me were cordial.  There was never no

12  disrespect.  Never had no problem with Ed

13  Bradley.

14     Q.   Did you ever see his contract of

15  employment with the Village?

16     A.   No.  I never read his contract.  No.

17     Q.   Okay.  And he was gone before you

18  became trustee, is that correct?

19     A.   Yes, he was.

20     Q.   Okay.  Do you happen to know if the

21  Village gave Eddie Bradley a pre-termination

22  hearing?

23     A.   I didn't even -- I'm going to be

24  honest, I didn't even know Ed was gone.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 22

1    I didn't.

2         Q.   Okay.  Mr. Brooks, do you know if the

3    Village ever gave Mr. Bradley a pre-termination

4    hearing?

5              MR. LANZITO:   Objection, asked and

6    answered.  You can answer again.

7              THE WITNESS:  I didn't even know

8    Bradley was gone, I didn't, no.

9    BY MR. MORAN:

10        Q.   Okay.  Were you ever given any reasons

11   why Bradley was fired?

12        A.   No.

13        Q.   Okay.  And you said before you did not

14   see his employment contract, is that correct?

15        A.   Right.

16        Q.   Okay.  There is a copy of the

17   complaint that's been marked I think as

18   Exhibit 2.

19                   (Deposition Exhibit No. 1-10

20                    referred to.)

21   BY MR. MORAN:

22        Q.   Okay.  Mr. Brooks, I would like you to

23   take a look at Exhibit C to the complaint, let

24   me know if you see that.

Siebert & Associates Court Reporters, Inc.

Page 23

1      A.   Would it pop up on the screen or

2  something?

3      Q.   Can you see that document, Mr. Brooks?

4      A.   Yes.

5           MR. LANZITO:  Where do you want me to

6  go just let me know?

7           MR. MORAN:  I want you to go to

8  exhibit C to the complaint, that is the

9  employment contract.  I think that's it.

10  1 and 2.

11           MR. LANZITO:   There is only two

12  pages, it doesn't appear to be the whole

13  contract.

14           MR. MORAN:   It is the additional

15  contract the Village tendered him after his

16  first year.

17  BY MR. MORAN:

18      Q.   Mr. Brooks, does that look like the

19  type of contract you have seen in the Village

20  with police chiefs?

21      A.   Yes, that -- stay right there, go

22  right there.  Stay right there.

23           MR. LANZITO:   I'm going to state for

24  the record, it is the first two pages of the

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 24

1    contract.

2           THE WITNESS:  That looks like

3    something that would have been drafted and sent

4    to the board.

5    BY MR. MORAN:

6        Q.   So the board would see this, is that

7    correct?

8        A.   The way it is written, yes, it looked

9    like something that would be sent to the board.

10       Q.   Okay.  Now, is the process when a

11   contract with the Police Chief or some other

12   high ranking official and they have an

13   individual contract, is that sent to the board

14   to be put into a resolution by the board?

15          MR. LANZITO:  I'm going to object as

16   vague.  Are we talking the board of Police &

17   Fire Commission or are we talking the Village

18   board?

19          MR. MORAN:  Village board.

20          MR. LANZITO:  To avoid any confusion

21   on the record.

22          MR. MORAN:  Sorry.

23          THE WITNESS:  His voice faded out.

24   Say it again, John, your voice faded out.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                                    3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 25

1    BY MR. MORAN:

2        Q.   I'm sorry.  I wanted to know if the

3    board adopted contracts such as the police

4    chief's via a board resolution or ordinance?

5        A.   Yes, they have.

6        Q.   So it would not surprise you if there

7    was an ordinance associated with this contract?

8        A.   No, it wouldn't surprise me.

9        Q.   Okay.  You don't have any direct

10   knowledge yourself, is that correct?

11       A.   No, I don't.

12       Q.   Okay.  How did you find out that Ed

13   Bradley had been terminated?

14       A.   I was -- some short guy came in named

15   John Pate saying he is the chief.

16       Q.   That's how you found out.

17       A.   I'm looking for Bradley and some short

18   guy named Pate came in wearing a white shirt

19   saying he was the chief.

20       Q.   Do you know if Ed Bradley ever

21   investigated any individuals on the police

22   force?

23       A.   Investigated what do you mean?

24       Q.   Was looking into their actions?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 26

1      A.   You mean like disciplinary?

2      Q.   Yes. Like they failed to perform their

3  job or did something that wasn't kosher?

4      A.   Yes, that's his job, right, that would

5  be the chief's job.

6      Q.   Do you have any knowledge of him doing

7  that while you were -- to your knowledge, you

8  know?

9      A.   The only knowledge I have would be

10  what was -- that he shared with me and that was

11  a disciplinary for one officer, actually two.

12  Two. Two.

13      Q.   Do you recall the names of those two

14  officers?

15      A.   One was Shawn Apps, patrolman.

16      Q.   Okay.

17           MR. LANZITO:   Can you spell that for

18  the record?

19           THE WITNESS:  Shawn, S H A W N., Apps,

20  A P P S.  And the next one was Deborah Wilson.

21  BY MR. MORAN:

22      Q.   Deborah Wilson.  Is she the one who is

23  the Police Chief now?

24      A.   Correct.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 27

1      Q.   Was there any discipline arising out
2    of either investigation?
3      A.   To my knowledge, Officer Apps resigned
4    and a disciplinary -- a long dragged
5    disciplinary happened with Wilson.
6      Q.   Was that concluded, the Wilson
7    disciplinary hearing?
8      A.   Yes.
9      Q.   And what was the result?
10     A.   The charges were dismissed.
11     Q.   Okay.  Was Bradley still the Police
12   Chief when the charges were dismissed?
13     A.   No, he came and testified as a
14   civilian.
15     Q.   I see.  Okay.  Do you know if Bradley
16   ever investigated members of the village board?
17     A.   No, he didn't relate that to me if he
18   did.
19     Q.   Okay.  Do you find it offensive that
20   one falsely says, a person failed to perform
21   the duties of their office, would that be
22   offensive to the person accused of failing to
23   perform their duties?
24          MR. LANZITO:   Objection to form, the

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 28

1    question.  You can answer.

2              THE WITNESS:  Say it again, John.

3    BY MR. MORAN:

4         Q.   Yes.  Let me make sure you get this,

5    because these cell phones --

6              Do you agree that if one falsely

7    says a person failed to perform the duties of

8    their office that that would be offensive to

9    the person accused of not performing their

10   duties?

11             MR. LANZITO:   Same objection.  You

12   can answer.

13             THE WITNESS:  Would that be for a

14   police officer?  Help me understand when you

15   ask that.

16   BY MR. MORAN:

17        Q.   Yes.  For a police officer.

18        A.   Are you asking me personally like as

19   an officer or if an individual does wrong?

20        Q.   I'm asking you personally as a person

21   in this lawsuit, you know, is it -- do you find

22   that an offensive statement?

23             MR. LANZITO:   Objection, form of the

24   question.  He is not a party. You can answer.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 29

1            THE WITNESS:  I mean if it is me, if

2    you are asking if it is me, I'm a little lost

3    when you ask that question.

4            So ask it again, John.

5    BY MR. MORAN:

6       Q.   Okay.  If someone falsely says that a

7    police officer failed to perform the duties of

8    their office, would that be an offensive

9    comment to you, to anyone?

10           MR. LANZITO:   Objection.  You may

11   answer.

12           THE WITNESS:  If it is me, as an

13   officer, I will be offended.  If it is me as an

14   officer, yes, I would be mad.  We don't like to

15   hear that.

16   BY MR. MORAN:

17      Q.   Would you be mad if someone falsely

18   said that the person was terminated or fired

19   because they lacked integrity?

20           MR. LANZITO:   Same objection.  You

21   may answer.

22           THE WITNESS:  Depends on what they

23   did.

24   BY MR. MORAN:

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 30

1      Q.   Okay.  Well, I'm saying if it is false

2   to say they are falsely stating that so and so

3   lacked integrity and that's why they got

4   fired --

5      A.   Oh.

6      Q.   -- and the whole thing is false?

7      A.    If it is false, and that they lack

8   integrity, they must have did something bad,

9   that is the way I see it.

10      Q.   Okay.  Well, if the person says that

11   Joe Blow lacked integrity and that's why they

12   got fired and the person who says this is

13   lying, is that offensive?

14           MR. LANZITO:   Objection. You may

15   answer.

16           THE WITNESS:  I would say it is.

17   BY MR. MORAN:

18      Q.   Okay.  What about if the person

19   falsely says that a person was fired because he

20   was a criminal, is that offensive?

21      A.   Did he commit the crime before or

22   after?

23      Q.   Well, no, again it is a false

24   statement.

Siebert & Associates Court Reporters, Inc.

Page 31

1       A.   Oh, it is a false statement that the

2   person that they fired is a criminal.

3       Q.   Right.

4       A.   Yes, I would have a problem with it.

5       Q.   Okay.  Did you ever hear of a bank

6   called Seaway Bank?

7       A.   Yes.

8       Q.   Where is it located?

9       A.   Oh, now that I don't know.  I mean

10  I've heard of Seaway, but that was over 20 some

11  years ago.

12      Q.   Okay.  So to your knowledge right now

13  does the village or the Mayor have any account

14  at Seaway Bank?

15      A.   That I don't know.

16      Q.   Okay.  Do you know if Eddie Bradley

17  investigated any accounts at Seaway Bank?

18      A.   No, I don't recall him telling me

19  this, no.

20      Q.   Okay.  Do you have any recollection of

21  Eddie Bradley investigating some stolen

22  vehicles placed in storage by the Village?

23      A.   I do recall him mentioning vehicles

24  sitting in Public Works and this was during the

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 32

1   Apps investigation maybe.

2       Q.   Got you.  Were you -- did you ever

3   hear while Bradley was the chief or shortly

4   after he was the chief of a Village trustee who

5   was accused of pistol whipping his son?

6       A.   I don't recall right now, no, I can't

7   remember.

8       Q.   Okay.  Did Eddie Bradley ever tell you

9   that he was asked to remove files regarding

10  this trustee's attack on his son?

11      A.   Oh, a trustee and a son?

12      Q.   Yes.

13      A.   Oh, no, I don't.  No, I don't recall.

14  That Bradley, correction, let me ask you this,

15  ask that question again.

16      Q.   Okay.  Did Bradley ever tell you that

17  he was asked to remove files regarding the

18  attack, police files regarding the trustee's

19  attack on his son?

20      A.   Oh, no, I don't remember that

21  conversation, no.

22      Q.   Did Bradley ever express concerns to

23  you what he thought were violations of federal

24  and state law as well as village policy?

Siebert & Associates Court Reporters, Inc.

Page 33

1         MR. LANZITO:   Objection, form, vague.

2   You may answer.

3         THE WITNESS:   In reference to what?

4   BY MR. MORAN:

5       Q.   That's the whole point.

6            Did he mention anything that he

7   thought something was a violation of state or

8   Village law or Village policy?

9       A.   There were some things that he seen,

10  but I can't recall.  Like I said it was a small

11  conversation with the chief.  So, yes, he

12  has --

13      Q.   He mentioned concerns to you but you

14  don't recall the specifics?

15      A.   No, I don't, not the specifics.  It

16  was long ago.

17      Q.   Yes.  Was -- did you have any -- were

18  you on the Fire & Police Commission when Mayor

19  Covington was in office?

20      A.   Yes, I was.

21      Q.   And did you have occasion to interact

22  with Mayor Covington?

23      A.   When I was on the commission?

24      Q.   Yes.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 34

1        A.   No, we -- I would say no, the

2   commission rarely interacted with the

3   politicians.  Our relationship was with the

4   chief and fire chief mainly.

5        Q.   Okay.  How would you describe your

6   interactions with Mayor Covington when she was

7   Mayor?

8        A.   When she was Mayor?

9        Q.   Yes.

10       A.   I could ask her for something and get

11  it with no problem.

12       Q.   Okay.  I think you testified you did

13  not review either the complaint or the answer

14  in this case, is that correct?

15       A.   Yes, I didn't -- I haven't even looked

16  at it.

17       Q.   Did you have anything to do with

18  providing information for Answers to

19  Interrogatories in this case?

20       A.   No.  No one asked me anything, no.

21       Q.   When Mayor Covington was Mayor, did

22  she control or make a lot of the decisions

23  effecting higher level employees from the

24  Village of University Park?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 35

1            MR. LANZITO:   Objection, foundation.

2    You may answer.

3            THE WITNESS:   That would have been the

4    Village Manager.

5    BY MR. MORAN:

6        Q.   Okay.  Did you -- now, is it correct

7    that you have filed a lawsuit against the

8    Village?

9        A.   As of recently, yes.

10       Q.   Who was the attorney for the -- your

11   opposing side in this case, in the case that

12   you filed, if you know?

13       A.   Of my opposing side?

14       Q.   Yes.

15       A.   My attorney gave me a name.  It is

16   supposed to be Steve Denoffo that called my

17   attorney, that's all I know.

18       Q.   Okay.

19       A.   It might have been Costodo, I'm not

20   for sure.  It was, you know, my attorney was in

21   a rush when he gave me -- there was at least

22   two conversations, to my understanding, by two

23   different attorneys that left a message or

24   something of the sort.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 36

1      Q.   Was that lawsuit filed in Will County

2   or Cook County?

3      A.   Will.

4      Q.   Will County?

5      A.   Yes.

6      Q.   And did you just take issue with lack

7   of information?

8           MR. LANZITO:   Go ahead.  You can

9   finish your question.  Sorry.

10  BY MR. MORAN:

11     Q.   The lawsuit basically deals with you

12  feel like you did not receive sufficient

13  information, is that correct, as a trustee?

14          MR. LANZITO:  To my objection I

15  provided to you yesterday regarding your

16  inquiry or your attachment or use of this

17  exhibit, it has no relevance or bearing on the

18  complaint.  I will allow him to answer

19  generally what it is about, but if we get into

20  the substance I will object and instruct him

21  not to answer.

22          MR. MORAN:   That's fine.

23          THE WITNESS:  To answer what you just

24  said, yes, I don't want to go no further

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 37

1    without my attorney in front of me.

2    BY MR. MORAN:

3         Q.   Okay.  And your attorney, is that

4    Steven Erdman?

5         A.   Scott.

6         Q.   Scott Erdman?

7         A.   Yes.

8         Q.   Okay.  Just wanted to get that cleared

9    up.

10              Have you ever -- I think you

11   testified you have never seen the Answers to

12   Interrogatories in this case, is that correct?

13        A.   The answers, no.

14        Q.   And you haven't read any of the

15   documents that have been filed in this case, is

16   that correct?

17        A.   No, I haven't.

18        Q.   Okay.  You indicated that you knew

19   Eddie Bradley, is that right?

20        A.   Yes, as chief.

21        Q.   Okay.  And Mr. Bradley he lives in

22   University Park as well, is that correct?

23        A.   Yes, I believe so.

24        Q.   Okay.  Have you personally had any

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 38

1    occasion to have any problems with Mr. Bradley

2    since the time you came out to University Park?

3       A.   No.  No.  No problems with Ed.

4            MR. MORAN:  And I think that's it for

5    my questions. Okay.  Dominick, you can have

6    him.

7            MR. LANZITO:   Nothing based on what

8    you just asked.

9            MR. MORAN:  All right.  So you can

10   reserve signature, read it over.

11           MR. LANZITO:   We will reserve

12   signature and we will just have the errata

13   sheets and we will submit them, if there is any

14   corrections that need to be made as far as

15   typos and names, but I tried to have him spell

16   it out.

17           MR. MORAN:  Okay.

18           MR. LANZITO:  We will reserve.

19           MR. MORAN:   Okay.  We are setup for

20   tomorrow is it at 1:00 again?

21           MR. LANZITO:   It was at 10, but if

22   you want to move it to 1:00 I can ask the

23   deponent.

24           MR. MORAN:   Why don't we make it

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 39

1    10:30, it is probably going to be pretty quick.

2              MR. LANZITO:   I have it at 10, if you

3    want to move it to 10:30.  Ms. Vivian Covington

4    is on, I will just slide it down.

5              Would that work for you?  It is

6    not going to impact the general end time, John.

7              MR. MORAN:  No.

8              MR. LANZITO:  You think we will be

9    done by one or two.

10             MR. MORAN:   I would say certainly by

11   two.

12             MR. LANZITO:   Vivian, is that going

13   to be okay for you?

14

15                  (Deposition was concluded at

16                   2:04 P.M.)

17                    -O-o-O-

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 40

1    STATE OF ILLINOIS  )

2                       )  SS:

3       COUNTY OF COOK  )

4            The within and foregoing deposition

5    of the aforementioned witness was taken before

6    Carol M. Siebert-LaMonica, C.S.R, at the place,

7    date and time aforementioned.

8            There were present during the taking

9    of the deposition the previously named counsel.

10           The said witness was first duly sworn

11   and was then examined upon oral interrogatories;

12   the questions and answers were reported in

13   shorthand by the undersigned and transcribed

14   via computer-aided transcription.

15           The within and foregoing is a true,

16   accurate and complete record of all of the

17   questions asked of and answers made by the

18   forementioned witness at the time and place

19   hereinabove referred to.

20               The signature of the witness was

21   not waived and the deposition was submitted

22   pursuant to Rules 207 and 211 (d) of the Rules

23   of the Supreme Court of Illinois to the

24   deponent per copy of the attached letter.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 41

1          The undersigned is not interested in

2    the within case, nor of kin or counsel to any

3    of the parties.

4          Witness my official signature in and

5    for Cook County Illinois on March 8, 2021.

6

7

8                    Carol M. Siebert-LaMonica

9                    C.S.R. No. 084.001355

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 42

C O R R E C T I O N   P A G E

I made the following changes for the
following reasons:

PAGE LINE   CHANGE:

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON: _____

____ ____   _____

            REASON:

(Signed)_____

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 43

WITNESS CERTIFICATION

                    I hereby certify that I
have read the foregoing transcript of my
deposition consisting of Pages 1 through 46,
inclusive.  Subject to the changes set forth on
the preceding pages, the foregoing is a true
and correct transcript of my deposition taken
on July 23, 2020.


                    (Signed) _____




SUBSCRIBED AND SWORN TO
Before me this __ day of
_____,2021.




_____


Notary Public

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 44

SIEBERT & ASSOCIATES COURT REPORTERS, INC.

507 West 28th Place

Chicago, IL  60614


March 8, 2021


PETERSON, JOHNSON & MURRAY CHICAGO

MR. DOMINICK LANZITO

200 West Adams, Suite 2125

Chicago, IL  60606

(Danzito@pjmchicago.com)

Re:  BRADLEY V VILLAGE OF UNIVERSITY PARK

Dep:  THEAPLISE BROOKS


Dear MR. LANZITO:

The deposition testimony given on

July 23, 2020 in the above captioned case has

been transcribed, and inasmuch as signature was

not waived, this is to advise that the

deposition will be available in our office for

30 days for reading and signing.

If you choose to read and sign the

deposition at our offices, please call the

undersigned for an appointment.  Our office

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

Page 45

hours are from 9:00 a.m. to 4:00 p.m., Monday

thru Friday.

          If you choose to make other

arrangements for the reading and signing of the

deposition, please advise us of the

arrangements you have made in writing with 30

days from the date of this letter.



                    Sincerely yours,

                    Carol M. Siebert-LaMonica

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

```
                                                    Page 46
                      I N D E X

Witness:                              Examination

 THEAPLISE BROOKS


        Mr. Moran                             4



                    E X H I B I T S

Number                                Page

        No. 1-10                              22
```

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                 3ce292f1-3f91-43e6-a4e6-590e76aa385c

cmsreporters@comcast.net

**A**

**a.m** 45:6
**academy** 10:8
**account** 31:13
**accounts** 31:17
**accurate** 40:16
**accused** 27:22
28:9 32:5
**actions** 25:24
**Adams** 3:3 44:9
**additional** 23:14
**adopted** 25:3
**advise** 44:19
45:14
**aforementioned**
40:5,7
**ago** 31:11 33:16
**agree** 28:6
**agreement** 4:8
**ahead** 36:8
**al** 1:8
**allow** 36:18
**amended** 4:20
**answer** 12:19
14:22 17:5
22:6 28:1,12
28:24 29:11,21
30:15 33:2
34:13 35:2
36:18,21,23
**answered** 22:6
**answers** 34:18
37:11,13 40:12
40:17
**appear** 23:12
**APPEARAN...**
2:1
**Appeared** 2:13
3:6
**APPELLATE**
2:8
**application** 4:12
**appointed** 7:1
**appointment**
44:24
**approval** 17:12

**approximately**
6:22
**Apps** 26:15,19
27:3 32:1
**April** 8:3 9:3
**arbitrate** 9:21
**arbitration** 9:19
**arising** 27:1
**arrangements**
45:12,16
**arrival** 18:4
**asked** 22:5 32:9
32:17 34:20
38:8 40:17
**asking** 17:6
28:18,20 29:2
**associated** 25:7
**ASSOCIATES**
44:1
**Association** 13:3
**attached** 40:24
**attachment**
36:16
**attack** 32:10,18
32:19
**attend** 8:9
**attended** 7:15
**attorney** 4:23
20:16 35:10,15
35:17,20 37:1
37:3
**attorney/client**
20:12
**attorneys** 35:23
**audits** 18:20
**available** 44:20
**avoid** 24:20
**aware** 16:24

**B**

**B** 46:7
**back** 7:10 8:23
**bad** 30:8
**bank** 31:5,6,14
31:17
**banks** 19:13

**based** 38:7
**basically** 36:11
**bearing** 36:17
**Beck-Fulgham**
14:13
**behalf** 2:13 3:6
**believe** 37:23
**Bill** 19:12
**bit** 7:8
**Blow** 30:11
**board** 5:20,23
6:1,10,12,18
6:24 8:11 11:9
15:16 18:4,5
18:14 24:4,6,9
24:13,14,16,18
24:19 25:3,4
27:16
**Bradley** 1:4 3:9
15:18,21 21:4
21:8,13,21
22:3,8,11
25:13,17,20
27:11,15 31:16
31:21 32:3,8
32:14,16,22
37:19,21 38:1
44:12
**Bradley's** 20:5
**bring** 5:1
**bringing** 15:14
**Brooks** 1:12 4:1
4:9,20,21 5:1,6
5:9 18:24 22:2
22:22 23:3,18
44:13 46:3
**brought** 4:21
**business** 19:1,2

**C**

**C** 22:23 23:8
42:1,1
**C.S.R** 1:16 40:6
41:9
**call** 44:23
**called** 4:2 31:6

35:16
**calls** 20:12
**captioned** 44:17
**Carol** 1:16 40:6
41:8 45:23
**case** 4:24 20:8
20:16 34:14,19
35:11,11 37:12
37:15 41:2
44:17
**cases** 13:24
**cell** 28:5
**certainly** 39:10
**CERTIFICA...**
43:1
**certify** 43:4
**cetera** 6:4
**chair** 6:4,5,24
7:2,4,6
**chaired** 19:5,7
**chairman** 9:5
**CHANGE** 42:4
**changed** 10:23
17:18
**changes** 42:2
43:7
**charged** 13:4
**charges** 27:10
27:12
**check** 16:6,7
**checks** 15:24
16:9
**Chicago** 2:5,11
3:1,4 44:3,7,10
**chief** 15:10,12
15:18,20 20:19
21:3,5,9 24:11
25:15,19 26:23
27:12 32:3,4
33:11 34:4,4
37:20
**chief's** 25:4 26:5
**chiefs** 23:20
**choose** 44:22
45:10
**CHRISTOPH...**

2:9
**City** 10:4,11
**civil** 5:7 9:10,11
9:12,16
**civilian** 27:14
**civilians** 15:2
**Ckeleher@ap...**
2:12
**classes** 7:16 8:10
**cleared** 37:8
**Club** 5:11,13
10:11,16,18,20
11:6 12:12 13:8
13:16,21
**come** 9:18
**comment** 29:9
**commission** 6:16
7:3,7,11,12,12
7:20 8:11 9:6
9:18,20 12:8
12:15,24 13:2
13:24 15:7,14
24:17 33:18,23
34:2
**commissioner**
6:22,23 8:22
8:23 9:7
**commissions** 6:3
**commit** 30:21
**committee** 6:11
6:16 9:12
**committees** 6:3
**communication**
20:12
**company** 18:3
19:10
**complaint** 20:6
22:17,23 23:8
34:13 36:18
**complete** 8:19
40:16
**completed** 8:16
**computer-aided**
40:14
**concerns** 32:22
33:13

cmsreporters@comcast.net

concluded 27:6
39:15
confusion 24:20
considered 9:12
consisting 43:6
contacted 15:15
contract 18:9,13
18:15 21:14,16
22:14 23:9,13
23:15,19 24:1
24:11,13 25:7
contracts 9:17
13:13 18:6,11
25:3
control 34:22
conversation
32:21 33:11
conversations
35:22
Cook 1:17 19:15
36:2 40:3 41:5
copy 22:16
40:24
cordial 21:11
corporation
19:9,10
correct 4:12,13
4:14 13:7,22
20:19 21:18
22:14 24:7
25:10 26:24
34:14 35:6
36:13 37:12,16
37:22 43:9
correction 32:14
corrections
38:14
cost 12:5
Costodo 35:19
counsel 40:9
41:2
Country 5:11,13
10:11,15,18,20
11:6 12:2 13:8
13:16,21
County 1:17

19:15,16,17,19
36:1,2,4 40:3
41:5
court 1:1,15
4:11 40:23
44:1
Covington 3:10
33:19,22 34:6
34:21 39:3
crime 30:21
criminal 30:20
31:2
currently 5:11
6:6 20:19

---
**D**
---
d 40:22 46:1
Danzito@pjm...
3:5 44:11
date 4:10 10:8
40:7 45:18
dates 8:18,24
day 43:18
day-to-day 14:8
days 44:21
45:18
deal 15:11
deals 36:11
Dear 44:15
Deborah 20:22
20:24 26:20,22
decisions 34:22
defendants 1:9
3:6
Denoffo 35:16
Dep 44:13
department
9:23,24 13:9
15:17 16:14,22
17:7,9
departments
10:14
depends 15:13
21:1,1 29:22
deponent 38:23
40:24

deposition 1:11
4:9 5:2,6 19:22
20:3 22:19
39:15 40:4,9
40:21 43:6,9
44:16,20,23
45:14
depositions 5:8
describe 21:7
34:5
different 35:23
direct 25:9
disciplinary
9:16 11:12
13:24 15:11
26:1,11 27:4,5
27:7
discipline 13:14
27:1
discuss 20:15
discussed 20:8
dismissed 27:10
27:12
dispute 9:21
disrespect 21:12
District 1:1,2,14
1:15
DIVISION 1:3
document 23:3
documents 4:22
5:2 20:3 37:15
doing 18:21
19:22 26:6
dollars 16:15
17:10
Dominick 3:2
38:5 44:8
drafted 24:3
dragged 27:4
due 9:16
duly 4:3 40:10
duties 27:21,23
28:7,10 29:7
duty 9:4

---
**E**
---

E 4:5,18,18 42:1
42:1 46:1,7
earlier 15:6
EASTERN 1:3
Ed 20:5 21:4,10
21:12,24 25:12
25:20 38:3
Eddie 1:4 3:9
15:18 21:8,21
31:16,21 32:8
37:19
effecting 34:23
either 10:15
13:9,12 27:2
34:13
elected 6:24
election 7:23 8:2
employee 7:16
13:13,13 18:10
employees 34:23
employment
21:15 22:14
23:9
ended 7:22,23
entered 4:8
entire 13:20
Erdman 37:4,6
Ernestine 14:13
errata 38:12
et 1:8 6:4
exactly 8:18
Examination
46:2
examined 4:3
40:11
excuse 10:9
exhibit 22:18,19
22:23 23:8
36:17
express 32:22
extent 20:11,14

---
**F**
---

F 14:17
faded 24:23,24
failed 26:2 27:20

28:7 29:7
failing 27:22
fall 8:16,20
false 30:1,6,7,23
31:1
falsely 27:20
28:6 29:6,17
30:2,19
far 38:14
federal 5:7
32:23
feel 36:12
figure 16:16
filed 35:7,12
36:1 37:15
files 32:9,17,18
finances 18:19
18:22
financial 18:3
find 25:12 27:19
28:21
fine 36:22
finish 36:9
fire 7:2,6,12,20
8:11 9:5 12:14
12:24 13:2,23
15:7,14 24:17
33:18 34:4
fired 22:11
29:18 30:4,12
30:19 31:2
firefighters 9:8
9:14 15:8
Fireworks 21:2
firing 14:18
first 4:2,14 5:9
6:21 10:4
23:16,24 40:10
following 42:2,3
follows 4:4
food 19:13
force 25:22
foregoing 40:4
40:15 43:5,8
forementioned
40:18

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

**form** 12:19 14:21 17:4 27:24 28:23 33:1
**forth** 43:7
**found** 25:16
**foundation** 12:18 16:1 35:1
**Four** 8:6
**Friday** 45:8
**front** 37:1
**Fulgham** 14:16
**full-time** 10:12 10:14
**further** 36:24

**G**
**G** 14:17 42:1
**Gates** 19:12
**general** 39:6
**generally** 36:19
**getting** 8:7
**given** 15:20 22:10 44:16
**go** 9:18,20 19:22 23:6,7,21 36:8 36:24
**going** 8:23 21:23 23:23 24:15 39:1,6,12
**good** 12:1 16:13
**GROUP** 2:2,8
**guy** 25:14,18

**H**
**H** 4:18 14:17 26:19 46:7
**happen** 17:16 21:20
**happened** 27:5
**Harvey** 10:5,16 10:18 11:1,2 11:21
**hear** 14:1 29:15 31:5 32:3

**heard** 11:4 14:1 31:10
**hearing** 21:22 22:4 27:7
**hearings** 11:12
**help** 18:19 28:14
**hereinabove** 40:19
**high** 24:12
**higher** 34:23
**Hills** 5:11,14 10:12,16,18,20 11:6 12:2 13:9 13:17,21
**hire** 9:8,8
**hired** 18:4
**hires** 15:7
**hiring** 14:18
**hiring-firing** 15:5
**hold** 7:24
**Holloway** 17:22
**homeowner's** 19:18
**honest** 21:24
**hosted** 13:2
**hours** 45:6
**hyphenated** 14:14
**hyphens** 14:15

**I**
**ICOPs** 11:4
**IL** 2:11 3:4 44:3 44:10
**Illinois** 1:2,15,18 2:5 13:2 40:1 40:23 41:5
**impact** 39:6
**inasmuch** 44:18
**inclusive** 43:7
**indicated** 37:18
**individual** 17:9 17:21 24:13 28:19
**individuals**

25:21
**information** 34:18 36:7,13
**initially** 11:3
**injured** 12:3
**inquiry** 36:16
**instruct** 36:20
**integrity** 29:19 30:3,8,11
**interact** 20:23 33:21
**interacted** 34:2
**interactions** 34:6
**interested** 41:1
**interrogatories** 34:19 37:12 40:11
**investigated** 25:21,23 27:16 31:17
**investigating** 31:21
**investigation** 27:2 32:1
**involved** 11:11 17:13
**IRH** 18:1,2,8,10 18:13
**Irma** 17:22
**issue** 36:6

**J**
**J.t.m.moran...** 2:6
**January** 10:7,8
**job** 26:3,4,5
**Joe** 30:11
**John** 2:3 24:24 25:15 28:2 29:4 39:6
**JOHNSON** 3:1 44:7
**July** 1:13 21:2 43:10 44:17
**June** 10:12

**K**
**KELEHER** 2:8 2:9
**kin** 41:2
**kind** 17:3
**knew** 37:18
**know** 4:23 14:4 17:2,16,17,19 17:21 18:8,8,9 18:11,13 21:4 21:20,24 22:2 22:7,24 23:6 25:2,20 26:8 27:15 28:21 31:9,15,16 35:12,17,20
**knowledge** 25:10 26:6,7,9 27:3 31:12
**kosher** 26:3

**L**
**L** 4:18 14:17
**lack** 30:7 36:6
**lacked** 29:19 30:3,11
**lady** 18:1
**Lake** 2:4
**Lanzito** 3:2 4:12 4:13,17 12:18 14:21 16:1 17:4 20:11 22:5 23:5,11 23:23 24:15,20 26:17 27:24 28:11,23 29:10 29:20 30:14 33:1 35:1 36:8 36:14 38:7,11 38:18,21 39:2 39:8,12 44:8 44:15
**LaSalle** 2:10
**law** 2:2,8 32:24 33:8
**lawsuit** 20:6

28:21 35:7 36:1,11
**leave** 11:21
**left** 35:23
**let's** 6:13 18:23
**letter** 40:24 45:18
**level** 34:23
**lieutenant** 9:15
**line** 13:17 42:4
**listed** 16:5
**little** 7:8 16:19 29:2
**live** 5:13,15 19:17
**lived** 5:17
**lives** 37:21
**LLC** 2:8
**located** 31:8
**long** 5:17 27:4 33:16
**look** 22:23 23:18
**looked** 24:8 34:15
**looking** 25:17,24
**looks** 24:2
**lost** 16:19 29:2
**lot** 19:20 34:22
**lying** 30:13

**M**
**M** 1:16 4:5,11 14:17 40:6 41:8 45:23
**mad** 29:14,17
**man** 11:24
**Manager** 14:4,9 15:4,12 17:15 35:4
**March** 41:5 44:5
**marked** 22:17
**materials** 5:2
**Mayor** 31:13 33:18,22 34:6 34:7,8,21,21
**mean** 16:8 25:23

cmsreporters@comcast.net

26:1 29:1 31:9
**member** 5:20
6:1,10,12,17
7:19 9:22
15:16
**members** 27:16
**mention** 33:6
**mentioned**
33:13
**mentioning**
31:23
**message** 35:23
**modules** 8:15
**moment** 17:18
**Monday** 45:6
**money** 11:24
17:13
**Moran** 2:2,3 4:6
4:16,19 5:5
12:22 15:1
16:3 17:8
20:13 22:9,21
23:7,14,17
24:5,19,22
25:1 26:21
28:3,16 29:5
29:16,24 30:17
33:4 35:5
36:10,22 37:2
38:4,9,17,19
38:24 39:7,10
46:5
**move** 38:22 39:3
**multiple** 13:1
18:20
**municipalities**
16:20
**MURRAY** 3:1
44:7

**N**

N 4:5,5 26:19
42:1 46:1
**name** 4:14 14:14
14:16 35:15
**named** 17:21

25:14,18 40:9
**names** 26:13
38:15
**need** 38:14
**needs** 16:15
**never** 21:10,11
21:12,16 37:11
**No.15-cv-08489**
1:6
**Nope** 16:11
**Northern** 1:2,15
**not-for-profit**
19:6,7
**Notary** 43:24
**notice** 1:18 4:20
**number** 16:15
17:10 46:8

**O**

O 4:5,11,11 42:1
42:1
**O-o-O-** 39:17
**oath** 1:12 4:10
**object** 12:18
24:15 36:20
**objection** 14:21
16:1 17:4
20:11 22:5
27:24 28:11,23
29:10,20 30:14
33:1 35:1
36:14
**occasion** 20:2
33:21 38:1
**offended** 29:13
**offensive** 27:19
27:22 28:8,22
29:8 30:13,20
**offhand** 17:20
**office** 8:5,21
27:21 28:8
29:8 33:19
44:20,24
**officer** 5:12
11:13 13:17,19
15:13 26:11

27:3 28:14,17
28:19 29:7,13
29:14
**officers** 9:8,10
9:16 15:6,7
26:14
**offices** 44:23
**official** 10:8
24:12 41:4
**Oh** 4:16 16:4
18:24 30:5
31:1,9 32:11
32:13,20
**okay** 5:5,13 6:9
6:15 7:14,19
8:1,9,23 9:2,4
10:3,6,13,15
11:21 12:1,4
12:10,17 13:8
13:16,23 14:3
15:3,5 16:12
16:20 17:21
19:5,21,24
20:5,18 21:4
21:17,20 22:2
22:10,13,16,22
24:10 25:9,12
26:16 27:11,15
27:19 29:6
30:1,10,18
31:5,12,16,20
32:8,16 34:5
34:12 35:6,18
37:3,8,18,21
37:24 38:5,17
38:19 39:13
**once** 7:23
**operated** 19:6
**operation** 14:8
**opposing** 35:11
35:13
**option** 9:17
15:13
**oral** 4:9 40:11
**order** 18:20
**ordinance** 25:4

25:7
**organization** 7:5

**P**

P 4:18 26:20,20
42:1
**p.m** 1:13 39:16
45:6
**Page** 42:4 46:8
**pages** 23:12,24
43:6,8
**Park** 1:7 5:16,18
5:21 6:2,16
7:15 12:5,24
14:4 17:1 18:7
19:16 34:24
37:22 38:2
44:12
**part** 19:16
**parties** 4:8 41:3
**party** 11:14
28:24
**Pate** 25:15,18
**patrolman** 26:15
**Patrolman/Yo...**
13:19
**pay** 12:5 19:18
**paying** 12:9
**people** 15:23
**perform** 26:2
27:20,23 28:7
29:7
**performing** 28:9
**person** 27:20,22
28:7,9,20
29:18 30:10,12
30:18,19 31:2
**personally** 28:18
28:20 37:24
**PETERSON** 3:1
44:7
**phones** 28:5
**picked** 13:5
**pistol** 32:5
**place** 8:14 12:17
40:6,18 44:2

**placed** 31:22
**places** 13:1
**plaintiff** 1:5 2:13
**please** 44:23
45:14
**point** 33:5
**police** 5:12 7:2,6
7:12,20 8:11
9:5,8,10,23,24
10:16 11:8,12
11:19 12:14,24
13:2,24 15:5,7
15:7,10,12,14
15:17 20:19
21:3,5 23:20
24:11,16 25:3
25:21 26:23
27:11 28:14,17
29:7 32:18
33:18
**policy** 32:24
33:8
**politicians** 34:3
**pop** 23:1
**positions** 6:3
7:24
**pre-termination**
21:21 22:3
**preceding** 43:8
**prepare** 19:21
**preparing** 20:3
**present** 3:8 14:9
14:11 40:8
**pretty** 39:1
**previously** 40:9
**prior** 18:4
**probably** 39:1
**problem** 21:10
21:12 31:4
34:11
**problems** 38:1,3
**Procedure** 5:7
**process** 24:10
**promote** 9:9
**promotion** 9:15
**provided** 36:15

cmsreporters@comcast.net

providing 34:18
Public 31:24
    43:24
pursuant 1:13
    1:18 4:19 5:6
    40:22
put 24:14

**Q**

question 5:9
    16:19,23 17:5
    28:1,24 29:3
    32:15 36:9
questions 38:5
    40:12,17
quick 39:1

**R**

R 42:1,1
rank 9:10 13:18
ranking 24:12
rarely 34:2
RAY 1:4
read 18:15 20:2
    20:5 21:16
    37:14 38:10
    43:5 44:22
reading 44:21
    45:12
ready 8:7
reason 12:1
    15:20 42:6,8
    42:10,12,14,16
    42:18,20,22
reasons 22:10
    42:3
recall 8:13 13:15
    13:15 14:10
    26:13 31:18,23
    32:6,13 33:10
    33:14
receive 11:18
    36:12
received 12:6
recollection
    31:20

reconciling
    18:18
record 4:7 23:24
    24:21 26:18
    40:16
reference 7:16
    15:17 33:3
referred 22:20
    40:19
reflect 4:7
regarding 5:7
    32:9,17,18
    36:15
reimburse 12:5
relate 27:17
relations 7:17
    13:13
relationship
    21:8 34:3
relevance 36:17
remember 32:7
    32:20
remotely 4:10
remove 32:9,17
rep 11:13,16
report 16:21
reported 16:16
    40:12
reporter 4:11
REPORTERS
    44:1
reporting 16:17
    17:2,11
request 16:17,21
    17:11
requested 16:15
require 16:21
requirements
    17:14
requires 16:16
    17:1
reserve 38:10,11
    38:18
resigned 27:3
resolution 24:14
    25:4

responsible 12:9
result 27:9
retired 5:11
review 34:13
reviewed 5:3
right 8:24 9:1
    12:12 13:6
    16:5,10 19:21
    22:15 23:21,22
    23:22 26:4
    31:3,12 32:6
    37:19 38:9
role 9:7,9 14:5
rules 1:14 5:7,8
    40:22,22
run 8:7 14:7
rush 35:21

**S**

S 4:18 26:19,20
    46:7
sat 6:15,22
saying 25:15,19
    30:1
says 27:20 28:7
    29:6 30:10,12
    30:19
Scott 37:5,6
screen 23:1
Seaway 31:6,10
    31:14,17
see 7:4 13:4
    15:15 18:23
    21:14 22:14,24
    23:3 24:6
    27:15 30:9
seen 23:19 33:9
    37:11
seminars 7:15
    8:10 12:6
send 13:10
sent 24:3,9,13
September 6:23
sergeant 9:10,13
    13:18
service 9:11,11

    9:13,16
set 17:15 43:7
setup 38:19
shared 26:10
Shawn 26:15,19
sheets 38:13
shirt 25:18
short 25:14,17
shorthand 40:13
shortly 32:3
side 35:11,13
SIEBERT 44:1
Siebert-LaMo...
    1:16 40:6 41:8
    45:23
sign 44:22
signator 16:5
signature 38:10
    38:12 40:20
    41:4 44:18
signed 15:23
    16:6,7,9 42:24
    43:13
signing 44:21
    45:12
Sincerely 45:22
sir 5:18,22 6:19
sit 6:4,10,20
sitting 31:24
situation 21:1
six 8:15
slide 39:4
small 33:10
son 32:5,10,11
    32:19
sorry 4:16 7:9
    12:21 24:22
    25:2 36:9
sort 35:24
South 2:10
specific 11:18
    16:22,24
specifics 33:14
    33:15
spell 26:17 38:15
spending 16:14

    16:22
spends 17:9
spring 8:16,20
SS 40:2
start 6:13
started 11:3
state 1:18 23:23
    32:24 33:7
    40:1
statement 28:22
    30:24 31:1
States 1:1,14
stating 30:2
stay 23:21,22
stent 10:4
Steve 35:16
Steven 37:4
stolen 31:21
storage 31:22
Street 2:4,10
Subject 43:7
submit 38:13
submitted 40:21
SUBSCRIBED
    43:17
substance 36:20
sufficient 36:12
Suite 2:4,10 3:3
    44:9
sum 16:22,24
suppose 18:16
supposed 14:7
    18:18,21 35:16
Supreme 40:23
sure 28:4 35:20
surprise 25:6,8
sworn 4:3 10:11
    40:10 43:17

**T**

T 2:3 4:5,18
    42:1 46:7
take 4:8 12:17
    22:23 36:6
taken 1:12 40:5
    43:9

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

takes 15:13
talking 24:16,17
tangible 4:22
taxes 19:18
teamsters 10:21
    10:22 11:6
tell 8:17 32:8,16
telling 31:18
tendered 23:15
term 7:3 8:4,21
terminated
    15:21 25:13
    29:18
termination
    15:18
terminations
    15:9
testified 4:3 15:6
    27:13 34:12
    37:11
testimony 44:16
Theaplise 1:12
    4:1,15,20
    44:13 46:3
Theodore 4:9,15
thing 17:3 30:6
things 4:22
    17:12 18:19,21
    33:9
think 10:23 11:5
    15:6 16:13
    22:17 23:9
    34:12 37:10
    38:4 39:8
thought 32:23
    33:7
Thursday 1:13
TIFS 18:20
time 4:10 6:21
    13:20 38:2
    39:6 40:7,18
tomorrow 38:20
training 7:15
    8:10,17,18
    11:18 12:6,8
    12:11,20,23

13:10,12
transcribed
    40:13 44:18
transcript 43:5
    43:9
transcription
    40:14
tried 38:15
trigger 17:14
triggered 17:11
    17:12
true 40:15 43:8
trustee 4:9,20,21
    7:14 8:5,21
    14:20 16:4,9
    16:18 20:23
    21:18 32:4,11
    36:13
trustee's 32:10
    32:18
Trustees 18:4
trusteeship
    12:11
trying 16:13
twice 6:21 10:2
two 7:24 10:14
    14:2,3 23:11
    23:24 26:11,12
    26:12,13 35:22
    35:22 39:9,11
type 23:19
typos 38:15

——— U ———
U 14:17
undersigned
    40:13 41:1
    44:24
understand
    28:14
understanding
    35:22
union 10:17
    11:3,8,13,16
    11:19 13:9
United 1:1,14

University 1:7
    5:16,18,21 6:2
    6:16 7:14 12:4
    12:24 14:4
    17:1 18:7
    19:16 34:24
    37:22 38:2
    44:12
use 36:16

——— V ———
V 44:12
vague 14:21
    17:5 24:16
    33:1
vehicles 31:22
    31:23
vice 6:24 7:4,6
vice-chairman
    7:11 9:5
village 1:7 5:15
    5:20 6:2,17
    12:4,9 13:5,5
    14:3,8,9,19
    15:3,12,16,24
    16:10,14 17:1
    17:15 18:19,22
    20:18 21:15,21
    22:3 23:15,19
    24:17,19 27:16
    31:13,22 32:4
    32:24 33:8,8
    34:24 35:4,8
    44:12
violation 33:7
violations 32:23
Vivian 3:10 39:3
    39:12
voice 24:23,24
vs 1:6

——— W ———
W 26:19
waived 40:21
    44:19
want 4:13 23:5,7

36:24 38:22
    39:3
wanted 25:2
    37:8
wasn't 15:22
    26:3
way 24:8 30:9
wearing 25:18
went 7:8 8:18
    10:10
West 2:4 3:3
    44:2,9
whipping 32:5
white 25:18
Wilson 20:22,24
    26:20,22 27:5
    27:6
win 8:1
witness 4:2,18
    5:4 12:20
    14:23 17:6
    22:7 24:2,23
    26:19 28:2,13
    29:1,12,22
    30:16 33:3
    35:3 36:23
    40:5,10,18,20
    41:4 43:1 46:2
won 7:23
word 16:13
work 5:10 11:19
    39:5
Works 31:24
wouldn't 25:8
writing 45:16
written 24:8
wrong 28:19

——— X ———
X 4:5 16:14
    17:10 46:1,7

——— Y ———
Yeah 4:17
year 23:16
years 8:6 11:2

12:7 31:11
yesterday 36:15

——— Z ———
Z 4:11
Zoom 1:12 4:11

——— 0 ———
084.001355 1:17
    41:9

——— 1 ———
1 23:10 43:6
1-10 22:19 46:9
1,000 17:2
1:00 38:20,22
1:19 1:13
10 38:21 39:2
10:30 39:1,3
101 2:4
13th 10:8
15th 10:12
190 2:10
1997 10:9

——— 2 ———
2 22:18 23:10
2:04 39:16
20 10:8 31:10
200 3:3 44:9
2002 5:19
2004 10:12
2009 6:22 7:5,10
    9:2
2015 7:2,22 9:2
2017 5:24 8:3
    9:3
2020 1:13 43:10
    44:17
2021 41:5 43:19
    44:5
207 40:22
2100 2:10
211 40:22
2125 3:3 44:9
22 46:9
23 1:13 43:10

cmsreporters@comcast.net

44:17
**26** 5:8
**28th** 44:2

---
**3**

**30** 44:21 45:16
**34** 5:8

---
**4**

**4** 46:5
**4:00** 45:6
**46** 43:6
**4th** 8:3 9:3 21:2

---
**5**

**5,000** 17:3
**50** 17:3
**507** 44:2
**566** 2:4
**599,000** 18:14
  18:17

---
**6**

**60603** 2:11
**60606** 3:4 44:10
**60614** 44:3
**60661** 2:5

---
**7**

---
**8**

**8** 41:5 44:5

---
**9**

**9:00** 45:6

# EXHIBIT H

In the Matter Of:

*EDDIE RAY BRADLEY*

vs.

VILLAGE OF UNIVERSITY PARK

---

KEITH GRIFFIN

August 25, 2016

---



300 West Adams St. Ste 800
Chicago, IL 60606
Phone: 312.641.3500
Fax: 312.641.3795
Email: info@amicusreporters.com

08/25/2016          GRIFFIN  KEITH
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION

3    EDDIE RAY BRADLEY,

4           Plaintiff,

5      vs.
                              No. 1:15-cv-08489
6    VILLAGE OF UNIVERSITY PARK,
     et al.,
7
            Defendants.
8

9

10

11

12          The deposition of KEITH GRIFFIN, called

13    for examination pursuant to the Rules of Civil

14    Procedure for the United States District Courts

15    pertaining to the taking of depositions, taken

16    before CHERYL L. SANDECKI, Certified Shorthand

17    Reporter for the State of Illinois, at 309 West

18    Washington Street, Chicago, Illinois, on

19    August 25, 2016, at the hour of 11:19 a.m.

20

21    REPORTED BY:  CHERYL L. SANDECKI, CSR, RPR
      LICENSE NO.:  084-03710
22    JOB NO.: 103433

23

24

08/25/2016          GRIFFIN  KEITH                  Page 2
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1  | APPEARANCES:

2  |         THE MORAN LAW GROUP, by
   |         MR. JOHN THOMAS MORAN, JR.
3  |         MR. CHRISTOPHER KELEHER
   |         309 West Washington Street
4  |         Suite 900
   |         Chicago, Illinois  60606
5  |         (312) 630-0200
   |         j.t.m.moran@gmail.com
6  |
   |              Representing the Plaintiff;
7  |
   |         PETERSON, JOHNSON & MURRAY, by
8  |         MR. PATRICK S. WALL,
   |         200 West Adams Street
9  |         Suite 2125
   |         Chicago, Illinois  60606
10 |         (312) 782-7150
   |         pwall@pjmlaw.com
11 |
   |              Representing the Defendants.
12 |
   | Also Present:  Mr. Eddie Ray Bradley
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |

08/25/2016          GRIFFIN  KEITH               Page 3
        EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

```
1                        INDEX

2    WITNESS                          EXAMINATION

3
      KEITH GRIFFIN

4
      EXAMINATION BY MR. MORAN                 4
5     EXAMINATION BY MR. WALL                 47
      EXAMINATION (FURTHER) BY MR. MORAN      54
6     EXAMINATION (FURTHER) BY MR. WALL       56
      EXAMINATION (FURTHER) BY MR. MORAN      57
7     EXAMINATION (FURTHER) BY MR. WALL       58

8

9

10                      EXHIBITS

11
     NUMBER                          MARKED FOR ID

12
     Griffin Deposition Exhibit

13
     Exhibit 1        Complaint                 4
14

15

16

17

18

19

20

21

22

23

24
```

08/25/2016          GRIFFIN  KEITH          Page 4
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

```
1                    (Whereupon, Griffin Deposition

2                    Exhibit 1 was marked for

3                    identification.)

4         MR. MORAN:  Let the record reflect that this

5    is the deposition of Trustee Kenneth Griffin.

6              Is that correct?

7         THE WITNESS:  Keith Griffin.

8         MR. MORAN:  Keith Griffin, of the village of

9    University Heights.

10        THE WITNESS:  University Park.

11        MR. MORAN:  University Park, Illinois.  And

12   it's pursuant to the federal rules governing

13   discovery, Rules 21 through 35, in general

14                (Witness administered an oath.)

15                    KEITH GRIFFIN,

16   having been first administered an oath, was

17   examined and testified as follows:

18                      EXAMINATION

19   BY MR. MORAN:

20        Q.  Good morning, Mr. Griffin.  How are

21   you?

22        A.  Good morning.  And you?

23        Q.  We're good.  I'm going to ask you some

24   questions about a case filed by Eddie Ray
```

 1   Bradley against the Village of University Park

 2   and Vivian Covington, the Mayor.

 3          And as I understand it, you are a

 4   trustee of the Village of University Park?

 5       A.   Yes, sir.

 6       Q.   How long have you been a trustee?

 7       A.   Since 2009, May.

 8       Q.   And have you been consistently in that

 9   position since that time?

10       A.   Yes.

11       Q.   Have you been deposed before?

12       A.   No.

13       Q.   And how many trustees are there for

14   University Park?

15       A.   Six.

16       Q.   And to the best of your recollection,

17   who are the president and trustees, apart from

18   yourself?

19       A.   Trustee Oscar Brown, Trustee Joseph

20   Roudez, Trustee Milton Payton.

21       Q.   Uh-huh.  P-A-Y?

22       A.   Yes.

23          Trustee Larry Brown, myself, Keith

24   Griffin, Paula Wilson, six trustees.

1      Q.   And for the record, do you have any

2    knowledge as to whether Larry Brown and Oscar

3    Brown are related?

4      A.   They're not related.

5      Q.   Okay.  Now, the trustees, do you meet

6    regularly?

7      A.   Yes, sir.

8      Q.   And when do you meet?

9      A.   The second and fourth Tuesdays of each

10   month.  With the -- with the exception of July

11   and August.  I think last year we changed that.

12   We only meet once a month in July and August.

13     Q.   Okay.  And when you gather for these

14   meetings, who's the presiding officer of the

15   meeting?

16     A.   The mayor.

17     Q.   And who is the mayor right now?

18     A.   Mayor Covington.

19     Q.   And we are going to ask you some

20   questions about May of 2015.  And was

21   Mayor Covington the mayor in May of 2015?

22     A.   Yes, sir, she was.

23     Q.   Now, you've been on the -- do you call

24   it a board or a council?

1    A.   Board.

2    Q.   You've been on the board now for seven

3  years?

4    A.   Yes, sir.

5    Q.   And when you consider -- do you

6  consider terminations from employment at your

7  board meetings?

8    MR. WALL:  Objection.  Scope.

9         You can go ahead and answer, Trustee.

10   THE WITNESS:  Yes, we do.

11 BY MR. MORAN:

12   Q.   And do you go into special session or

13 executive session?

14   A.   Executive session.

15   Q.   And what is the general procedure on

16 terminating a village employee, to your

17 knowledge?

18   MR. WALL:  Objection.  Form.  Scope.

19 Relevance.

20        You can go ahead and answer.

21   THE WITNESS:  We can -- okay.  We only deal

22 with the village manager.  The board deals

23 with -- our direct hiring and firing is with the

24 village manager.  We can, with concurrence of --

1   the mayor with the concurrence of the board, do

2   hire a police chief.  But that's as far as our

3   hiring and firing goes.

4   BY MR. MORAN:

5       Q.   So you don't deal with termination of

6   police chiefs?

7       A.   No.

8       Q.   Were you aware -- are you aware of any

9   board meeting which the termination of Eddie

10  Bradley was discussed?

11      A.   I'm trying to think how -- okay.  I

12  don't know how to answer that.  I'm not trying

13  to be evasive.  I don't know how to answer that.

14  Because at -- at his termination, Trustee Roudez

15  and I was out of town.

16      Q.   So you weren't in town for any

17  meetings?

18      A.   Not for that.  I was -- I was at board

19  meetings where the mayor made off-cuff remarks

20  whereas he won't be there long.  I mean, but --

21  but as far as a meeting to terminate him, I

22  wasn't at that meeting.

23      Q.   How -- if we assume he was terminated

24  in the middle of May of 2015 --

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 65 of 196 PageID #:1208

1      A.   I believe May 18th, is my recollection.

2      Q.   -- had these remarks by the mayor been

3   made before that date?

4      A.   Yes, sir.

5      Q.   And they were public remarks?  Or were

6   you in closed session?

7      A.   It was public remarks once at Village

8   Hall and once before a board meeting.

9      Q.   And what is the -- to the best of your

10   knowledge, who controls the question of

11   terminations in the village while you were a

12   trustee since -- since beginning of 2015?

13      MR. WALL:  Objection.  Calls for a legal

14   conclusion and production of privileged

15   materials.

16          You can go ahead and answer.

17      THE WITNESS:  Okay.  The village manager does

18   the hiring and firing.  Like I said, the board

19   only deals with the hiring and firing of the

20   village manager.  So the village manager would

21   be the person who would oversee or, I guess,

22   take the initiative to terminate someone.

23   BY MR. MORAN:

24      Q.   Well, if Mr. Bradley was let go

```
 1   sometime in -- around May 18th, to the end of

 2   May of 2015, you're aware of the fact that the

 3   village manager, until May 15th, was

 4   Mr. Lafayette Linear, correct?

 5       A.   Yes.

 6       Q.   And Mr. Linear was dismissed sometime

 7   in the middle of May; is that correct?

 8       A.   Yes.

 9       Q.   Of 2015?

10       A.   Yes.

11       Q.   So who would have been the person to

12   initiate the dismissal of Mr. Bradley?

13       A.   The village manager.

14       Q.   But was there a village manager?

15       A.   I believe it was a gap between that --

16   that.

17       Q.   And during that gap period, do you have

18   any idea who would have acted to initiate the

19   dismissal of Mr. Bradley?

20       A.   I'm thinking -- I'm -- like I say, I

21   was out of town.  I'm thinking the mayor -- the

22   mayor would have done it.  They were -- they

23   were putting in place to get Bola in place.

24   Now, whether or not they -- they did the -- got
```

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 67 of 196 PageID #:1210

1   it in time, I don't -- I don't believe so

2   because I can't speak for Oscar Brown,

3   personally, but he did call us from Vegas -- I

4   mean from Chicago.  We were in Vegas, Trustee

5   Roudez and I was in Vegas at an international

6   shopping centers -- conference of shopping

7   centers.

8            And he said the procedure was wrong.

9   He got up and left the meeting because the

10  procedure was wrong.  He stated that.  He told

11  them that they were doing it wrong.  Because you

12  would have to have a village manager to do the

13  firing, not the mayor and the board.  So that's

14  what he relayed.  I'm just stating what he

15  relayed to me.

16     Q.   Do you recall whether he indicated it

17  was a closed or open meeting?

18     A.   It was a closed session.  They came out

19  of closed session into open session to vote.

20  And he said they were doing it wrong.  He told

21  them they were doing it wrong and he got up and

22  left.

23     Q.   During your tenure on the board of

24  trustees, were you there when a village manager

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 68 of 196 PageID #:1211

1    has referred other police chiefs for dismissal?

2        MR. WALL:  Objection.  Relevance.

3           You can go ahead and answer.

4        THE WITNESS:  No.  Box was acting chief.  No,

5    sir.

6    BY MR. MORAN:

7        Q.   Does -- was an individual named Mel

8    Davis, was he ever a chief of police?

9        A.   Yes, sir.

10       Q.   Was he dismissed?

11       A.   No, sir.  He retired.

12       Q.   He retired?

13       A.   No, sir.  He retired.

14       Q.   Do you recall whether or not he was

15   paid a severance by the board?

16       MR. WALL:  Objection.  Relevance.

17          You can go ahead and answer, Trustee.

18       THE WITNESS:  Wait a minute.  Okay.  I

19   believe so.

20   BY MR. MORAN:

21       Q.   Okay.  I'm not asking you to guess.

22       A.   I believe so.

23       Q.   If you believe so, that's the best as

24   you can do, that's fine.  We're just here to try

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 69 of 196 PageID #:1212

1    and get as many facts as we can.  And I

2    appreciate your efforts.

3            Is it correct that, to your

4    understanding, that if one is to dismiss the

5    chief of police, the case, the matter is

6    supposed to be referred to the board of fire and

7    police commissioners?

8       MR. WALL:  Objection.  Calls for a legal

9    conclusion.

10           You can go ahead and answer, Trustee.

11      THE WITNESS:  Okay.  Okay.  Say that again,

12   sir.

13   BY MR. MORAN:

14      Q.   Okay.  The village manager says he

15   wants to dismiss a police chief, the referral is

16   made to the board of fire and police

17   commissioners?

18      MR. WALL:  Same objection.

19           You can go ahead and answer, Trustee.

20      THE WITNESS:  Okay.  I'm not sure on that.  I

21   believe -- I believe it's just brought to the

22   board.

23           If they want to get rid of a police

24   chief?

08/25/2016        GRIFFIN  KEITH              Page 14
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1  BY MR. MORAN:

2      Q.   A police chief, yeah.

3      A.   Yeah.  I believe it's brought to the

4  board.  I believe.

5      Q.   Okay.  Have you -- by the way, I was

6  going to ask you this before and we marked it as

7  an exhibit.

8          Have you seen the complaint in this

9  case?

10     A.   No, sir.

11     Q.   I'm just going to give you -- have you

12  ever seen this document before?  Take your time.

13     MR. MORAN:  Will you stipulate he did?

14     MR. WALL:  I don't know.

15     THE WITNESS:  I'm going to say no, because --

16  BY MR. MORAN:

17     Q.   Take your time.

18     A.   One of the complaints I have against

19  Bola Delano -- or De Lano or whatever her name

20  is -- was that when we got back from Vegas,

21  Trustee Roudez and I, we asked specifically, you

22  know, about economic development and we asked

23  about lawsuits.  So we asked, on numerous

24  occasions, what's going on in the village,

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 71 of 196 PageID #:1214

1  what's happening, trying to be, I guess --

2  trying to come to a working relationship because

3  I didn't like the way she was brought in.

4          That being said, we asked about

5  different suits, told us don't worry about it,

6  she is handling it.  She would never give us any

7  information, was never brought up-to-date on any

8  economic development or any lawsuits, and that

9  was one of my problems with her.

10     **Q.   Let me clarify something,**

11  **Trustee Griffin, because you've mentioned Bola**

12  **Delano.  Is this -- did this person succeed**

13  **Mr. Bradley as chief of police?**

14     A.   No, sir.  She's -- she's the village

15  manager that's -- that's brought in between,

16  that gap between he was dismissed and Linear was

17  let go.

18     **Q.   Okay.  So she came in as village**

19  **manager?**

20     A.   Village manager, yes.

21     **Q.   Okay.  So -- I gotcha.**

22     A.   So I didn't see this.

23     **Q.   Okay.  Well, you can keep that.**

24          **Do you know whether or not there was**

08/25/2016          GRIFFIN  KEITH                Page 16
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1   any posting or notice to you of this meeting

2   where Mr. Bradley was terminated?

3       A.   No, sir.

4       Q.   So you are unaware of any notice at

5   all?

6       A.   No, sir, I'm not aware of any notice.

7       Q.   Are you aware of any communication by

8   the board of trustees to Mr. Bradley listing why

9   he was terminated?

10      A.   No, sir.

11      Q.   And what is your understanding as to

12  why he was terminated?

13      MR. WALL:  Objection.  Form.  Calls for

14  hearsay.

15          You can go ahead and answer to the best

16  of your knowledge.

17      THE WITNESS:  Wow.  How much time do you

18  have?

19  BY MR. MORAN:

20      Q.   As much as you want.

21      A.   Okay.  I'm not saying this because he

22  is here, you know.  If he wasn't here, I'd say

23  the same thing.  I like -- I like the job he

24  did.  I like his professionalism.  Our -- our

1  police department was -- was in shambles.  In

2  his time he was there, he straightened it out.

3  He told the officers what he wanted, "This is

4  what I want, this is how I want it done."  And

5  things were getting done.

6         I remember a situation with him and

7  Mayor Covington.  She wanted him to chauffeur

8  her around.  And Chief Bradley stated, "That's

9  not my job.  You need to get a chauffeur."

10        Which me and other board members

11  concurred, "Hey, you know, that's not his job to

12  be your chauffeur.  His job is to oversee the

13  department of police and manage the police

14  department, not to be your private chauffeur."

15        She got pissed with that, excuse my

16  language.  She got peeved with that.  And I

17  thought -- I thought that was -- that was wrong.

18  You know, it's his job to be a police officer,

19  not a chauffeur.  She didn't like that.

20     **Q.   When did that little interaction take**

21  **place.  Before his dismissal?**

22     A.   Oh god.  Yes, that was -- that must

23  have been in March or April because it was -- it

24  was something -- it was a conference or

1  something we were going to.  I can't remember.

2      Q.    In 2015?

3      A.    Yes, sir.

4      Q.    So it would be fair to say that, at

5  least as to terminating Mr. Bradley, the mayor

6  was making decisions?

7      A.    Yes.

8      MR. WALL:  Objection as to form.

9            You can go ahead and answer.

10     THE WITNESS:  Yes.

11  BY MR. MORAN:

12     Q.    Let me ask you a question that goes

13  back a little bit.  First of all, let me ask

14  you:  Who was the village attorney in May of

15  2015?

16     A.    Montana -- Montana & Welch or Walsh.

17     Q.    And did you know a woman named Felicia

18  Frazier?

19     A.    Yes.

20     Q.    Did she act as --

21     A.    Nice lady.

22     Q.    Did she act as a village attorney at

23  some time in April or May of 2015?  Let me

24  expand it to April, May or June of 2015, if you

08/25/2016          GRIFFIN  KEITH                 Page 19
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1   know?  If you don't know, just let us know.

2       A.   No, I think Welch was still there.

3   Okay.  Montana -- Montana & Welch was there --

4   I'm trying get the dates straight.  Okay.  They

5   were the -- okay.

6            Odelson & Sterk was there before.  The

7   mayor got control of the board and got rid of

8   Odelson & Sterk.  When we ran and the board --

9   we got control of the board -- that means

10  myself, Trustee Roudez, Trustee Oscar Brown and

11  Liz Williamson, who is no longer on the board,

12  got on board -- we brought -- we had Montana &

13  Welch.

14           The mayor won -- I can't remember --

15  then they brought on Montana -- Montana & Welch.

16      Q.   Let me just clarify:  Did you mean that

17  you brought on -- your group brought on

18  Odelson & Sterk --

19      A.   Yes.

20      Q.   -- and the mayor replaced it with --

21      A.   Yeah.

22      Q.   Okay.

23      A.   Yeah.  And we was able to get -- we was

24  able to bring them, even with the mayor getting

1   on and gotten rid of Odelson & Sterk, we worked

2   with Trustee Payton to bring Odelson & Sterk

3   back.  So Odelson & Sterk have been back -- wait

4   a minute -- it must have been September,

5   September or October of last year, I believe.

6   The reason -- I'm trying to think.  I didn't

7   know you were going to ask this.  That's why I'm

8   trying to -- trying to think.

9          So I'm thinking the time that you're

10  asking, Montana & Welch was there.

11     Q.   Okay.  To the best of your

12  recollection?

13     A.   Yes.

14     Q.   Now, did you ever go with Chief Bradley

15  to meet with an assistant state's attorney in

16  Will County?

17     A.   Yes, we did.

18     Q.   And was that assistant state's attorney

19  John Long?

20     A.   Yes.

21     Q.   And was that before Mr. Bradley was

22  terminated as chief?

23     A.   Yes, absolutely.

24     Q.   And he was in the position of chief of

1   police when you went to this meeting with

2   John Long?

3       A.   Yes, sir.

4       Q.   Do you recall any of the conversation?

5            Let me just ask you this:  Was Trustee

6   Roudez with you?

7       A.   Yes, sir.

8       Q.   When you met with John Long, was there

9   anybody else there besides yourself, the

10  chief -- Bradley -- and Trustee Roudez, and

11  Mr. Long?

12      A.   No, sir, just us.

13      Q.   Okay.  And what did you-all discuss?

14      A.   Oh god.

15      Q.   If you -- you know, to the best of your

16  recollection.

17      A.   Wait a minute --

18      MR. WALL:  Objection.  Relevance.

19           Go ahead and answer.

20      THE WITNESS:  I think it was March -- I think

21  it was March of 2015.

22  BY MR. MORAN:

23      Q.   Uh-huh.

24      A.   March of 2015.

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 78 of 196 PageID #:1221

1      Q.   And do you recall what the meeting was

2  about?

3      A.   It was about corruption in the police

4  department.  He had files, deposition of police

5  officers.

6      Q.   This is the Village of University Park?

7      A.   Village of University Park.  Some have

8  left and went to other departments, some are

9  still there.  Misappropriation of funds, theft

10  of vehicles, and a theft of monies, the buying

11  of tires, over $20,000 worth of tires, which no

12  one knows where they are.

13      Q.   Yeah.

14      A.   In two years, you buy $20,000 worth of

15  tires.  Right.

16      Q.   And did the chief mention that he had

17  personally looked at the tires in the police

18  department fleet and they were all bald?

19      A.   They were all bald.  They were all

20  bald.

21      Q.   Now, did you -- did you trustees ever

22  receive any response from John Long concerning

23  the information that you provided him at this

24  meeting?

08/25/2016          GRIFFIN   KEITH              Page 23
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1       A.   No, sir.  He hasn't gotten back to us.

2  He said he's still doing an investigation.

3       Q.   And how long ago did he say he was

4  still investigating?

5       A.   I called down, personally, May of this

6  year.  I called down May of '16.

7       Q.   Did you speak to John himself?

8       A.   Yes.

9       Q.   Do you recall -- move on to a slightly

10  different subject here.

11          Do you recall meeting with Ed Bradley

12  in the winter of 2015 concerning him coming back

13  to work?

14       A.   Yeah.

15       Q.   And who attended that meeting?

16       A.   Myself and Joe Roudez, I believe.

17       Q.   And the chief?

18       A.   Yes.

19  MR. WALL:  You mean the plaintiff?

20  MR. MORAN:  Plaintiff.

21  MR. WALL:  Okay.

22  BY MR. MORAN:

23       Q.   Were you aware at that time that he

24  still had time left on his contract with the

08/25/2016          GRIFFIN  KEITH          Page 24
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

 1  village, as chief?  That it had not expired?

 2      MR. WALL:  Objection.  Relevance.

 3          You can go ahead and answer.

 4      THE WITNESS:  Yes.

 5  BY MR. MORAN:

 6      Q.   Yes, he did have time left on his

 7  contract?

 8      A.   Yes.

 9      Q.   In fact, it doesn't -- it ends the last

10  day of December of 2016, is that the best of

11  your knowledge?

12      A.   Yes.

13      Q.   And was there any resolution of the

14  issue?  What was discussed?  It's another way of

15  asking the same question.

16      MR. WALL:  Objection.  Relevance.  Asked and

17  answered.

18          You can go ahead and answer.

19      THE WITNESS:  I was -- was just asked how

20  is -- how is he doing, how is the suit

21  progressing.  And that hoping we can get

22  together and straighten things out, straighten

23  out -- straighten out the matter for the

24  situation.

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 81 of 196 PageID #:1224

1   BY MR. MORAN:

2       Q.   Now, to do that, would it be fair to

3   say you'd have to get four votes, put together a

4   coalition?

5       A.   Yes, we need one more.

6       Q.   Right now, it's three/three and the

7   mayor, right?

8       A.   Yes, sir.

9       Q.   I just want to be clear about that.

10          So you said one of -- Paula Wilson is

11  one of the trustees?

12      A.   Yeah, she's one of them.

13      Q.   Is she related to Officer Wilson,

14  Commander Wilson?

15      A.   Not that I know of.

16      Q.   Okay.  I'm just trying to chase down

17  loose ends.

18          So after this meeting, it wasn't

19  resolved because you didn't have four votes; is

20  that right?

21      A.   Yeah.  Yes.

22      Q.   Now, since that time, have you been

23  informed of any ongoing investigations into

24  either the mayor or the village?

1      MR. WALL:  Objection.  Relevance.

2      THE WITNESS:  You mean --

3  BY MR. MORAN:

4      Q.   **Investigations of the mayor and the**

5  **village?**

6      A.   Yes.

7      MR. WALL:  Objection.  Relevance.  Hold on a

8  second.

9          John, do you have a second, John and

10  Chris?

11                  (Whereupon, a recess was had at

12                  11:47 a.m., after which the

13                  deposition was resumed at

14                  11:49 a.m. as follows:)

15  BY MR. MORAN:

16     Q.   **Get back to the question, who made this**

17  **inquiry of you or who contacted you, if you**

18  **recall, about the investigation?**

19     MR. WALL:  Same objections.  Calls for

20  hearsay.

21          You can go ahead and answer.

22     THE WITNESS:  Who called me?

23  BY MR. MORAN:

24     Q.   **Yeah, did somebody call you?**

1      A.    No, no one called me.

2      Q.    So you're just aware through the

3   grapevine that something is going on?

4      A.    Yes.

5      Q.    Do you have any idea who the

6   investigating agency is, if you know?

7      MR. WALL:  Objection.  Form.  Calls for

8   speculation.  He already said he -- through the

9   grapevine.

10     THE WITNESS:  Federal government and the

11   state's attorney.

12   BY MR. MORAN:

13     Q.    Do you know what county state's

14   attorney?

15     A.    Will County state's attorney and the

16   federal government.

17     Q.    Would you happen to know if this

18   involves credit cards or something of that

19   nature?

20     A.    Okay.  I'm not sure.

21     MR. WALL:  Same objection.

22          You can go ahead.

23     THE WITNESS:  I'm not sure on that.

24

1    BY MR. MORAN:

2        Q.    Okay.  If you don't know, you don't

3    know.

4              Was there any mention of the mayor

5    maintaining a bank account in Indiana?

6        MR. WALL:  Same objections.

7              You can go ahead and answer.

8              Form and foundation.

9        THE WITNESS:  I heard of that.

10   BY MR. MORAN:

11       Q.    You just heard?

12       A.    Yeah.

13       Q.    But you don't know whether there's an

14   investigating agency or anything else?

15       A.    I know that's being investigated.

16       Q.    Okay.  Same people you think?

17       A.    It is.

18       MR. WALL:  Objection.  Calls for speculation.

19       MR. MORAN:  Okay.  Why don't we take five

20   minutes and then we will have two or three

21   questions and then I'll turn him over to you.

22

23

24

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 85 of 196 PageID #:1228

```
 1                    (Whereupon, a recess was had at

 2                    11:51 a.m., after which the

 3                    deposition was resumed at

 4                    11:56 a.m. as follows:)

 5   BY MR. MORAN:

 6       Q.    Trustee Griffin, you understand you are

 7   still under oath.  We just took a break.

 8       A.    Yes, sir.

 9       Q.    I mentioned earlier, Mel Davis had been

10   a prior chief of police?

11       A.    Yes, sir.

12       Q.    Did he, to your knowledge, did he have

13   a contract with the village?

14       MR. WALL:  Objection.  Relevance.

15             You can go ahead and answer.

16       THE WITNESS:  No, sir, I don't believe he had

17   a contract.

18   BY MR. MORAN:

19       Q.    Are you aware of any inquiry or

20   controversy regarding the mayor's use of village

21   credit cards by the village board?

22       MR. WALL:  Objection.  Asked and answered.

23   Form.

24             You can go ahead and answer.
```

08/25/2016          GRIFFIN  KEITH                    Page 30
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1       THE WITNESS:  Yes.  The board asked about the

2   use of credit cards.

3   BY MR. MORAN:

4       Q.   Do you recall when they asked or have

5   they asked many times?

6       A.   Many times.

7       Q.   Was that issue raised before the chief

8   was dismissed?

9       MR. WALL:  Objection.  Scope.

10          You can go ahead and answer.

11      THE WITNESS:  Yes.

12  BY MR. MORAN:

13      Q.   Was it raised before Mr. Linear was

14  dismissed?

15      MR. WALL:  Same objection.

16      THE WITNESS:  Yes.

17  BY MR. MORAN:

18      Q.   Was there -- has there been a

19  resolution of the credit card issue that the

20  board raised?

21      MR. WALL:  Same objection.

22          Go ahead and answer.

23      THE WITNESS:  This -- this village manager

24  that we have now, she cancelled the credit card.

08/25/2016          GRIFFIN  KEITH                Page 31
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1   BY MR. MORAN:

2       Q.    And who is the present village manager

3   now?

4       A.    Johnna Townsend.

5       Q.    That's Johnna?

6       A.    Yes, sir.

7       Q.    J-O-N-N-A [sic]?

8       A.    Yes, sir.

9       Q.    Townsend?

10      A.    Yes, sir.

11      Q.    T-O-W-N-S-E-N-D?

12      A.    Yes.

13      Q.    Got it.  Okay.

14            Now, earlier in the deposition, you

15  mentioned a woman -- I assume it's a woman,

16  maybe it's not -- Bola?

17      A.    It's a woman, if you want to call it.

18      Q.    Delano?

19      A.    Yes.

20      Q.    Do you know how to spell that last

21  name?

22      A.    I -- no.

23      Q.    You said you didn't like the way that

24  she was brought in as village manager.  Do you

1  recall saying that?

2      A.    That's correct.

3      Q.    What didn't you like about it?

4      A.    The fact --

5      MR. WALL:  Objection.  Relevance.

6          Go ahead and answer.

7      THE WITNESS:  The fact that they waited to --

8  for two trustees to go out of town to dismiss

9  the present village manager, bring in another

10  village manager, get rid of the police chief and

11  to not come before the board to discuss

12  anything.  We didn't know who it was, what it

13  was or anything until after we got back.

14          Trustee Roudez and I got back, I

15  believe, if my math serves me correct, Sunday

16  afternoon.  So we didn't get a chance to see

17  Ebola until -- I believe we saw her that

18  following Tuesday.  And I didn't like the way

19  that was done.  I mean, we had no notice,

20  nothing on her.  No -- no paperwork or anything,

21  resumé or anything.  We didn't see it.

22  BY MR. MORAN:

23      Q.    And to that extent, you're talking

24  about hiring Bola as the village manager, right?

1       A.   That is correct.

2       MR. WALL:  Objection.  Relevance.

3            You can go ahead.

4   BY MR. MORAN:

5       Q.   **That was the job of the village**

6   **board --**

7       A.   Right.

8       Q.   **-- as you testified earlier?**

9       A.   Absolutely.

10      Q.   **And the two trustees that were out of**

11  **town were yourself and Mr. Roudez?**

12      A.   Correct.

13      Q.   **And that's two of the three minority on**

14  **the village board?**

15      MR. WALL:  Objection.  Form.

16      THE WITNESS:  Yes.

17      MR. WALL:  It's equal, as he testified

18  earlier.

19  BY MR. MORAN:

20      Q.   **You've testified that the mayor was**

21  **upset that Mr. Bradley refused to chauffeur her**

22  **around?**

23      A.   That is correct.

24      Q.   **Do you recall what she said, if**

1   anything, and where she said it?

2       MR. WALL:  Objection.  Foundation.

3           You can go ahead.

4       THE WITNESS:  "It's your job to be available

5   to assist your mayor in any way or form."

6   BY MR. MORAN:

7       Q.   That's what she told him?

8       A.   Yeah.

9       Q.   Did you hear her say that?

10      A.   Yes.

11      Q.   Do you recall where she said that?

12      A.   This was right after a board meeting.

13      Q.   Do you recall what month and year?

14      A.   This was in -- it was March or April of

15  '15.  There was some meetings -- we -- this

16  particular month, we had about two or three

17  conferences that we'd be going to.  You know, we

18  have the South Suburban Mayors & Managers and

19  then there's other stuff that we'd be going to.

20  Then, I believe, there was something at the

21  Tinley Park Convention Center.  I don't

22  remember.  But I know it was something.

23      Q.   She said it there, you think?

24      A.   No.  This was at -- this was at --

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 91 of 196 PageID #:1234

 1      Q.   Board meeting?

 2      A.   No, probably before a board meeting.

 3      Q.   Did she say --

 4      A.   It was at the village.  It was at the

 5   village.

 6      Q.   Did she say that directly to Ed Bradley

 7   or you just heard her say it to other people?

 8      A.   It was to other people.

 9      Q.   Now, earlier you mentioned that Oscar

10   Brown, Trustee Brown called you when you were in

11   Las Vegas; is that right?

12      A.   Yes.

13      Q.   Was that a conference call to you and

14   Joe Roudez?

15      A.   Yes.

16      Q.   Do you recall what you told Oscar Brown

17   during the call?

18      A.   Joe and -- Joe and I was at the

19   conference.  We was at the hotel, if I remember.

20   Joe called me.  I went downstairs.  He was

21   saying that Oscar is going to be calling in

22   about three to five minutes.  We got the call.

23           He let us -- Oscar Brown, Trustee Oscar

24   Brown let us know that Lafayette had been

08/25/2016        GRIFFIN   KEITH              Page 36
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1  terminated.  They also got rid of Chief Bradley,

2  also.  And that he was trying to tell them that

3  they were doing it wrong, they were going about

4  it in the wrong procedure and the wrong way,

5  those was his words.

6         And he said they didn't want to hear

7  nothing about it.  He said one trustee said "So

8  so-and-so what?"  But "so-and-so" wasn't the

9  word.  She is a lady.  So that's why.

10        But -- and so before they was taking --

11 before they were going to take the vote, Oscar

12 Brown said he got up and left out and told them,

13 he read -- oh, he read case law.  He read the

14 state statute or something how to go about it.

15 And they said they didn't give a...

16    Q.   A hoot?

17    A.   -- a S-H-I-T about it and they got up

18 and left -- I'm sorry -- he got up and left.

19    Q.   So he left the meeting.

20        Do you know -- do you recall what, if

21 anything, Joe Roudez said during the call?

22    A.   He was asking questions about what went

23 on and who was there.  And they can't do that

24 and Oscar told him, repeated back, yes, they did

08/25/2016          GRIFFIN  KEITH                    Page 37
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1  it.  And he said he didn't want to be -- Oscar

2  Brown stated he didn't want to be caught up in a

3  suit, so he got up and left.

4      Q.   Was there any -- how did the call end?

5  Did you have any plan of action?

6      A.   Well, we don't have that vote.  So we

7  said we could talk about it when we get back.

8  When we got back, we tried to talk to the other

9  trustees and to -- but -- but to no avail.

10     Q.   Who -- do you recall what trustee said

11 "Who gives a shit"?

12     MR. WALL:  Objection.  Calls for hearsay.

13     THE WITNESS:  Okay.  Now, I'm just repeating

14 what Oscar said, I don't know.

15 BY MR. MORAN:

16     Q.   Yeah.

17     A.   I believe he said it was Payton,

18 Trustee Payton.

19 BY MR. MORAN:

20     Q.   Okay.  And so what about who said "So

21 firing what?"

22     MR. WALL:  So effing.

23     MR. MORAN:  Okay.  So "blanking."

24 BY MR. MORAN:

08/25/2016          GRIFFIN  KEITH               Page 38
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1      Q.    "So effing what?"  Who said that?

2      A.    Payton.  That's what -- that's what he

3   said to me.  So I don't know.

4      Q.    So that's just Oscar's comments to you?

5      A.    Yeah.

6      Q.    Yeah.  Okay.

7            Did you -- after the call was over, did

8   you discuss the termination of either Linear or

9   Bradley?

10     A.    Yeah.  We were -- since we were one

11  vote down, wasn't -- there really wasn't much we

12  would do.  We had -- we had liked Linear.  We

13  liked the work Chief Bradley had did and there

14  was nothing we could have done.  We tried to

15  talk to the other trustees, but they didn't want

16  to listen.

17     Q.    So the other three trustees who were

18  back in the village, did they -- did you

19  actually talk to any of them?

20     A.    Talked to Trustee Brown.

21     Q.    That's Larry Brown?

22     A.    Larry Brown, right.  He didn't -- and

23  Trustee Payton didn't want -- they didn't want

24  to listen.

08/25/2016          GRIFFIN  KEITH                  Page 39
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1          Q.    Did it appear that Trustee Larry Brown

2     was aware of Oscar Brown's concerns and legal

3     analysis?

4          A.    Yes.  Yes, they were at the meeting.

5     They were at the meeting when they terminated.

6          Q.    Now, were you ever contacted by

7     Mayor Covington by telephone about Bradley's

8     termination?

9          A.    No.

10         Q.    What about by e-mail?

11         A.    No.

12         Q.    Were you ever contacted by any other

13    trustee by telephone about Bradley's

14    termination?

15         A.    No, sir.

16         Q.    No contact by e-mail by any other

17    trustee about Bradley's termination?

18         A.    No, sir.

19         Q.    Now, is Oscar Brown an attorney,

20    Trustee Brown?

21         A.    Yes.

22         Q.    In May of 2015, was he the attorney for

23    the University Park?

24         A.    No, no.

08/25/2016          GRIFFIN  KEITH                  Page 40
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1       Q.    And to your knowledge, during your time

2    on the board of trustees, was Oscar Brown ever

3    the attorney for the University Park?

4       A.    No, sir.

5       Q.    Did you see Oscar Brown's legal

6    analysis, his letter?

7       A.    Yes.  I looked at it, yes.

8       Q.    And that's an opinion from Oscar Brown

9    about Ed Bradley's termination, correct?

10      A.    Yes.

11      Q.    And, to your knowledge, was that letter

12   circulated or known to other trustees?

13      A.    Yes.

14      Q.    What other trustees, to your knowledge,

15   knew about or saw the letter?

16      A.    I know Trustee Roudez saw it.  I saw

17   it.  And I believe -- I believe Larry Brown saw

18   it, I believe.

19      Q.    Do you know if it was circulated to the

20   mayor?

21      A.    I'm not sure.

22      Q.    Do you have -- do you recall the mayor

23   making any comments about Oscar Brown writing a

24   letter saying that she's doing this wrong?

08/25/2016          GRIFFIN   KEITH                Page 41
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1      MR. WALL:  You mean Linear wrong?

2  BY MR. MORAN,

3      **Q.   Well, doing Ed Bradley wrong --**

4      MR. WALL:  We'll clear that up.

5      THE WITNESS:  You know, I'm sorry.  I'm

6  sorry.  She says such wacko things.  I'm sorry.

7  Rephrase the question, please.  Not rephrase,

8  but restate the question for me, please.

9      MR. MORAN:  Can you read that question back.

10              (Whereupon, the record was read

11                as requested.)

12     THE WITNESS:  Yeah.

13          Anybody that doesn't agree with the

14  mayor can take a walk off a short pier.  She --

15  she called Oscar a "Cracker Jack lawyer."  She

16  wondered did he have a -- really had a -- did he

17  really have a law degree and that Oscar doesn't

18  know what he's talking about.

19  BY MR. MORAN:

20     **Q.   Where did she make these comments?**

21     A.   Of course, again, before a board

22  meeting.

23     **Q.   Do you recall what board meeting?**

24     A.   No, sir.

1      Q.    But it was after the termination of

2   Linear, Mr. Linear and Mr. Bradley?

3      A.    Yes.

4      Q.    Could it have been in the fall --

5      A.    September -- September or October

6   maybe.

7      Q.    2015?

8      A.    Yes.  September, October.

9      Q.    Since these events, has the mayor made

10   any other comments about the terminations of

11   Linear or Mr. Bradley, to your knowledge?

12      A.    Not that I know of.

13      Q.    Did you ever receive any kind of a

14   communication from the village regarding

15   Mr. Bradley being dismissed as chief of police?

16   Newsletters, e-mails, anything of that nature?

17      A.    I think -- I think an e-mail.  I

18   believe Bola sent an e-mail.  And I think that

19   something was in that newsletter they used to

20   send out stating that we have a new police

21   chief.  And that was it.

22      Q.    So it never said that -- never said why

23   Mr. Bradley was dismissed from his position?

24      A.    No.

08/25/2016          GRIFFIN  KEITH                Page 43
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1      **Q.   Are you aware of either the board or**
2    **the mayor ever telling Mr. Bradley why he was**
3    **dismissed, in writing?**
4        MR. WALL:  Other than the exhibit to your
5    complaint?
6    BY MR. MORAN:
7        **Q.   Other than the exhibit to my complaint?**
8        A.   No.
9        **Q.   Were you involved with a program**
10   **involving purchasing toys from Toys R Us?**
11       A.   Toys?
12       **Q.   Toys.**
13       A.   Yeah.
14       **Q.   And explain the program.**
15       MR. WALL:  Objection.  Relevance.
16           You can go ahead and answer.
17       THE WITNESS:  It's a -- it's a program that
18   we would have every year before the holiday for
19   kids who were less fortunate in the village.
20   And we would take them to Toys R Us to buy them
21   toys.
22           And Chief Bradley was instrumental in
23   that.  He would donate not only his time, his
24   money also, to help -- to make sure that less

 1  fortunate children in the village would have

 2  something up under their tree for Christmas.

 3  BY MR. MORAN:

 4      Q.   So he would actually take money out of

 5  his own pocket and put it into the program too?

 6      A.   Absolutely.

 7      Q.   Now, as a trustee, are you required to

 8  live in University Park?

 9      A.   Yes.

10      Q.   And you do live in University Park?

11      A.   Yes.

12      Q.   And Chief Bradley lives in University

13  Park?

14      A.   Yes.

15      Q.   How many people, approximately, live in

16  University Park?

17      MR. WALL:  Objection.  Relevance.

18          You can go ahead and answer.

19      THE WITNESS:  About 73, 7400.

20  BY MR. MORAN:

21      Q.   And people talk to each other about

22  public events, including terminations?

23      MR. WALL:  Objection.  Calls for speculation

24  as to what 7,400 people can say.

1          But you can go ahead and answer to the

2    best of your knowledge.

3        THE WITNESS:  Yes.

4    BY MR. MORAN:

5        **Q.   In your going around the village of**

6    **University Park, have people asked you questions**

7    **about the termination of Chief Bradley?**

8        A.   Yes.

9        **Q.   What do they generally want to know, if**

10   **you recall?**

11       MR. WALL:  Objection.  Form, foundation as to

12   generally know --

13       THE WITNESS:  Why was he --

14       MR. WALL:  -- which specific people at which

15   specific time.

16          You can go ahead and answer.

17       THE WITNESS:  Why was he terminated.  A lot

18   of them like him.  I mean, they liked what he

19   was doing.  He was out there all the time.

20   Whatever the problem was, he would take care of

21   it.

22   BY MR. MORAN:

23       **Q.   Do you recall any specific person and**

24   **place that someone raised that question with**

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 102 of 196 PageID #:1245

1  you?  Someone that you knew had asked about

2  Chief Bradley and why was he dismissed?

3      A.  A lady on my block, Ms. Gray.  Ms. Gray

4  asked.

5      Q.  She asked you?

6      A.  Yes.

7      Q.  And do you recall approximately when

8  she asked you?

9      A.  This was about last of October, maybe

10  in November.

11      Q.  And was anybody else around when she

12  asked you that?

13      A.  My wife and a neighbor across the

14  street, Mr. Turner, I believe.

15      Q.  Do you recall what you told her?

16      A.  Yeah.  I just told her that he wasn't

17  to the mayor's liking, so that's why he was

18  dismissed.

19      Q.  Were you a party to any conversations

20  speculating that Mr. Bradley was dismissed for

21  either some sort of criminal activity or theft

22  or nonperformance of his duties?

23      MR. WALL:  Objection to the form of the

24  actual question asked.

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 103 of 196 PageID #:1246

1          You can go ahead and answer.

2      THE WITNESS:  No.

3      MR. MORAN:  I turn the witness over to you,

4  sir.

5      MR. WALL:  Thank you.

6                      EXAMINATION

7  BY MR. WALL:

8      Q.   This conversation -- we'll just start

9  from the back -- was not in your official

10  capacity as a trustee, correct, the November

11  conversation?  This was just neighbors talking?

12      A.   Yes.

13      Q.   Okay.  As neighbors are wanting to do,

14  talk about what's going on in the village, world

15  news, things along those lines?

16      A.   Yes.

17      Q.   And, in fact, you said he wasn't to the

18  mayor's liking because you thought, in fact, he

19  was a good cop?

20      A.   Absolutely.

21      Q.   So you didn't make any statement that

22  he was unable to perform his profession,

23  correct?

24      A.   Correct.

1     Q.    Because you believe he's able to

2    perform his profession at the time and now?

3     A.    Correct.

4     Q.    So it was your understanding that

5    Mayor Covington was acting as the village

6    manager until Bola Delano stepped in?

7     A.    Yes.  But that's -- that's without the

8    consent of the board, though.

9     Q.    But you weren't present for that

10   May 12th meeting, right?

11    A.    No.  They had that meeting to fire him

12   on May 17th or 18th, I believe.

13    Q.    You'd defer to the village minutes as

14   to when those actions were taken?

15    A.    That was, I believe, on the 17th or

16   18th that he was dismissed.

17    Q.    Okay.

18    A.    That they took action to get rid of

19   Mr. Linear and Chief Bradley.

20    Q.    And that's your recollection, right?

21    A.    Correct.

22    Q.    If you were confronted with documents

23   that might would show otherwise, you would,

24   maybe, tend to believe the documents?

08/25/2016          GRIFFIN  KEITH                    Page 49
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1      A.   Yes.  But I remember getting a call on

2  the 18th.

3      Q.   Okay.  This trustee that formed the

4  letter, he wasn't acting as the village attorney

5  at that time, correct?

6      A.   No.

7      Q.   He was just acting as a trustee?

8      A.   Yes.

9      Q.   In his trustee capacity when he was

10 talking to the board?

11     A.   Yes.

12     Q.   You were not a lawyer and you didn't

13 review -- you might have read, but you did not

14 formulate your own legal opinion as to

15 whether -- what Trustee Brown said was correct,

16 right?

17     A.   He said he was quoting state law.  So I

18 have to go along with what he said.  If he's

19 quoting state law, then I'm going on what he

20 said.

21     Q.   If his state law is wrong, then he

22 could be wrong?

23     A.   True.

24     Q.   There was a question about notice of

08/25/2016          GRIFFIN  KEITH                    Page 50
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1   the meeting.  As I understand it, you are not

2   aware if it was done -- the question, I think,

3   might have been phrased a little bit weirdly.

4   It was your understanding that notice might have

5   been sent out, you don't know either way.

6           Is that fair?

7       A.   Okay.  That could be fair.

8       Q.   You just don't recall as you sit here?

9       A.   Well, I guess because I'm out of town

10  at the time, I don't know.  They may have sent

11  it out.  They may not have sent it out.

12      Q.   Okay.

13      A.   I didn't get the letter.  I know

14  Trustee Roudez didn't get it.  We both was in

15  Vegas.

16      Q.   The meeting with the state's attorney

17  was not about the Chief Bradley, correct?

18      A.   No.

19      Q.   It was in no way connected with his

20  termination, correct?

21      A.   No.

22      Q.   No, it was not?

23      A.   No, it was not.

24      Q.   It was about other issues that you and

08/25/2016          GRIFFIN  KEITH                    Page 51
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1   some other trustees felt were occurring in the

2   police department?

3       A.   Correct.

4       Q.   This discussion with Mr. Bradley and

5   you and Trustee Roudez was an informal

6   conversation, correct?  Not a village meeting?

7       A.   Correct.

8       Q.   You didn't have any authority to make

9   any agreements, fair?

10      A.   Fair.

11      Q.   As to the investigations of the mayor,

12  all your knowledge is through the grapevine,

13  right?

14      A.   Okay.

15      Q.   What other people have told you --

16  maybe let me ask it this way.

17          It's an out-of-court statement offered

18  to prove the truth of the matter asserted.  Is

19  that fair?

20      MR. MORAN:  What does that mean?

21      MR. WALL:  The statement was made --

22      THE WITNESS:  Now, I don't understand that,

23  now.

24

08/25/2016          GRIFFIN  KEITH                    Page 52
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1   BY MR. WALL:

2       Q.   Let me phrase that.  The statement was

3   made by other people to you, correct?  Or did

4   you just hear -- how did you hear?

5       A.   I'm not going to say.  I heard, though.

6   A reliable source, I'll put it that way.  Just

7   like I didn't know he knew some stuff.

8       Q.   Trustee Brown, when he called you, he

9   didn't tell you why.  He didn't say this

10  specific case law, right?  He just said in his

11  opinion as a village trustee, they were doing it

12  wrong?

13      A.   No, sir.  He said state law says you

14  are supposed to go about it this way, he laid it

15  out this way.  They are not doing that.

16      Q.   And that was his opinion as a trustee?

17      A.   He said he looked it up.

18      Q.   I'm sure.  But at that point he wasn't

19  employed as the attorney for the village?

20      A.   Okay.  No.  Right.  He wasn't

21  employed -- he was not employed as the attorney

22  for the village.

23      Q.   Okay.

24      A.   He said he looked it up as a state law.

1   State law said they are supposed to do it this

2   way.  He said it wasn't being done that way.  So

3   I have to go along with him at the time of what

4   he stated.

5       Q.   And those statements by Trustee Payton,

6   you didn't hear them, it was Trustee Brown

7   relating those statements that Payton made to

8   him to you?

9       A.   Correct.  I stated that.

10      Q.   Are you -- did Trustee Brown tell you

11  that the letter or the opinion letter that he

12  came up with mentioned Edward Bradley

13  specifically?

14      A.   No.  But that's who he was talking

15  about.

16      Q.   Okay.  But he didn't tell you "I

17  prepared a memorandum regarding both the

18  termination of Lafayette Linear and Edward

19  Bradley," correct?

20      A.   Correct.

21      Q.   Are you aware that the letter does not

22  mention Edward Bradley at all?

23      A.   I'm unaware.

24      Q.   And the only notice about the

Case: 1:15-cv-08489 Document #: 112-2 Filed: 09/29/21 Page 110 of 196 PageID #:1253

1    termination that you're aware of of Mr. Bradley

2    was that a possible e-mail sent from Bola and

3    the newsletter that there was a new police

4    chief, correct?

5        A.   Correct.

6        MR. WALL:  I don't have any further

7    questions.

8        MR. MORAN:  I have one or two to try and

9    clarify.

10                   EXAMINATION (FURTHER)

11   BY MR. MORAN:

12       Q.   In your nine years as a trustee, what

13   kind of notice, in your judgment, is required

14   before you dismiss a police chief?

15       MR. WALL:  Objection as to the scope of time

16   and the law.

17            But you can go ahead and answer.

18       THE WITNESS:  You give notice.  You are

19   supposed to have a hearing.  And that takes at

20   least -- at least a month, maybe two, depending.

21   But I never -- that's the way that it should

22   have been done.

23   BY MR. MORAN:

24       Q.   And what kind of notice?  In writing?

08/25/2016          GRIFFIN   KEITH                    Page 55
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

```
 1        A.   In writing.
 2        MR. WALL:  Objection.  Form.  Qualifications.
 3             You can go ahead and answer.
 4   BY MR. MORAN:
 5        Q.   And is the writing sent to the
 6   trustees?
 7        A.   It's -- it's -- it's sent -- it's sent
 8   through, I believe the village manager sends it
 9   to the employee, she notifies the board.
10        Q.   I think you testified earlier that your
11   records show nothing in writing about a board
12   meeting to dismiss either Mr. Linear or
13   Mr. Bradley.
14        A.   Correct.
15        Q.   And, to the best of your knowledge, was
16   Mr. Bradley invited by the board to address any
17   charges against him?
18        A.   No.
19        Q.   Was Mr. Bradley given an opportunity to
20   speak in his own defense at any time?
21        A.   No.
22        Q.   And that's just -- and to the best of
23   your knowledge, was there a working -- in other
24   words, a working board of police and fire
```

08/25/2016          GRIFFIN  KEITH                Page 56
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1  commissioners in May of 2015 at the village?

2      A.   Yes.

3      Q.   And they conduct their own proceedings.

4  It has nothing to do with the trustees; is that

5  correct?

6      A.   Correct.

7      Q.   In the conversation that you had in

8  Las Vegas, you and Joe Roudez with Oscar Brown,

9  did Ed Bradley's name come up in that

10 conversation?

11     A.   Yes.

12     Q.   And was it in regard to Mr. Bradley's

13 termination?

14     A.   Correct.

15     Q.   And did Oscar Brown tell you that

16 Mr. Bradley's -- the way Mr. Bradley was

17 terminated violated state law?

18     A.   Correct.

19     MR. MORAN:  No further questions.

20     MR. WALL:  Just a couple follow-ups.

21               EXAMINATION (FURTHER)

22 BY MR. WALL:

23     Q.   He told you that he believed it

24 violated state law, correct?

1      A.   Correct.

2      Q.   So if he's wrong, it doesn't violate

3  state law, fair?

4      A.   Right.

5      Q.   If he is misinterpreting the case law

6  or misapplying the law, and the fact that he's

7  not the village attorney, then his analysis is

8  incorrect, fair?

9      A.   Fair.

10      Q.   You're, in fact, relying on

11  Trustee Brown to tell you about an invitation

12  speaking in the own defense because you were not

13  present on the date that this incident occurred,

14  fair?

15      A.   Correct.

16      MR. WALL:  I don't have any further

17  questions.

18      MR. MORAN:  One last question.

19              EXAMINATION (FURTHER)

20  BY MR. MORAN:

21      Q.   Do you feel like you should have been

22  there if they're terminating both the village

23  manager and the chief of police?

24      MR. WALL:  Objection.

1    THE WITNESS:  I wish I could have been there,

2  yes.  Why would you wait for a quarter of your

3  board to go out of town before you do this.

4    MR. WALL:  Objection.  Move to strike.

5  BY MR. MORAN:

6    Q.   Why did you wish you could have been

7  there?

8    MR. WALL:  Objection.  Calls for speculation.

9        You can go ahead and answer.

10    THE WITNESS:  Maybe we could have talked some

11  sense into them.  I think they hate they made

12  the move, the wrong move.

13  BY MR. MORAN:

14    Q.   It would have been two more votes not

15  to dismiss the two people; is that right?

16    A.   Yeah, correct.

17    MR. MORAN:  No further questions.

18            EXAMINATION (FURTHER)

19  BY MR. WALL:

20    Q.   You chose to go to Las Vegas willingly,

21  correct?  You weren't forced to go, fair?

22    A.   We went to try to procure businesses,

23  economic development for the village, correct.

24    MR. WALL:  Okay.  No further questions.

08/25/2016          GRIFFIN   KEITH          Page 59
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

1          You can reserve or waive your

2    signature.  Reserve means that our court

3    reporter is excellent and she got down

4    everything you said.

5        THE WITNESS:  Can I trust you?

6        MR. WALL:  Sorry.  You can waive it and trust

7    that she got everything you said or you can

8    review it.  But you can't change a "yes" to

9    "no," but if we spelled "Roudez" wrong, you can

10   change that.

11       THE WITNESS:  Can I trust you?

12       MR. WALL:  Most people waive it.

13       THE WITNESS:  Yes.

14       MR. WALL:  Signature is waived.

15               (Whereupon, the witness was

16                excused.)

17               (The proceedings concluded at

18                12:29 p.m.)

19

20

21

22

23

24

```
 1   STATE OF ILLINOIS
                       SS:
 2   COUNTY OF COOK

 3

 4        I, CHERYL L. SANDECKI, a Certified

 5   Shorthand Reporter within and for the State of

 6   Illinois, do hereby certify that heretofore,

 7   to-wit, on August 25, 2016, personally appeared

 8   before me, at 309 West Washington Street,

 9   Chicago, Illinois, KEITH GRIFFIN, in a cause now

10   pending and undetermined in the United States

11   District Court, wherein EDDIE RAY BRADLEY is the

12   Plaintiff, and VILLAGE OF UNIVERSITY PARK, et

13   al., are the Defendants.

14        I further certify that the said

15   KEITH GRIFFIN was first administered an oath to

16   testify the truth, the whole truth and nothing

17   but the truth in the cause aforesaid; that the

18   testimony then given by said witness was

19   reported stenographically by me in the presence

20   of the said witness, and afterwards reduced to

21   typewriting by Computer-Aided Transcription, and

22   the foregoing is a true and correct transcript

23   of the testimony so given by said witness as

24   aforesaid.
```

1        I further certify that the signature to

2   the foregoing deposition was waived by counsel

3   for the respective parties and that there were

4   present at the deposition the attorneys

5   hereinbefore mentioned.

6        I further certify that I am not counsel

7   for nor in any way related to the parties to

8   this suit, nor am I in any way interested in the

9   outcome thereof.

10        IN TESTIMONY WHEREOF:  I certify to the

11   above facts this 2nd day of September, 2016.

12

13

14

15   *Cheryl Sandecki*

16   _____

17   CHERYL L. SANDECKI, CSR, RPR
     LICENSE NO.:  084-03710

18

19

20

21

22

23

24

**Exhibits**

**Griffin Exhibit No**
**1** 3:13 4:2

---

**$**

$20,000 22:11,14

---

**1**

**1** 4:2

**11:47 a.m** 26:12

**11:49 a.m** 26:14

**11:51 a.m** 29:2

**11:56 a.m** 29:4

**12:29** 59:18

**12th** 48:10

**15** 34:15

**15th** 10:3

**16** 23:6

**17th** 48:12,15

**18th** 9:1 10:1
48:12,16 49:2

---

**2**

**2009** 5:7

**2015** 6:20,21 8:24
9:12 10:2,9 18:2,
15,23,24 21:21,24
23:12 39:22 42:7
56:1

**2016** 24:10

**21** 4:13

---

**3**

**35** 4:13

---

**7**

**7,400** 44:24

**73** 44:19

**7400** 44:19

---

**A**

**absolutely** 20:23
33:9 44:6 47:20

**account** 28:5

**act** 18:20,22

**acted** 10:18

**acting** 12:4 48:5
49:4,7

**action** 37:5 48:18

**actions** 48:14

**activity** 46:21

**actual** 46:24

**address** 55:16

**administered**
4:14,16

**afternoon** 32:16

**agency** 27:6 28:14

**agree** 41:13

**agreements** 51:9

**ahead** 7:9,20 9:16
12:3,17 13:10,19
16:15 18:9 21:19
24:3,18 26:21
27:22 28:7 29:15,
24 30:10,22 32:6
33:3 34:3 43:16
44:18 45:1,16 47:1
54:17 55:3 58:9

**analysis** 39:3 40:6
57:7

**approximately**
44:15 46:7

**April** 17:23 18:23,

24 34:14

**asserted** 51:18

**assist** 34:5

**assistant** 20:15,
18

**assume** 8:23
31:15

**attended** 23:15

**attorney** 18:14,22
20:15,18 27:11,14,
15 39:19,22 40:3
49:4 50:16 52:19,
21 57:7

**August** 6:11,12

**authority** 51:8

**avail** 37:9

**aware** 8:8 10:2
16:6,7 23:23 27:2
29:19 39:2 43:1
50:2 53:21 54:1

---

**B**

**back** 14:20 18:13
20:3 23:1,12 26:16
32:13,14 36:24
37:7,8 38:18 41:9
47:9

**bald** 22:18,19,20

**bank** 28:5

**beginning** 9:12

**believed** 56:23

**bit** 18:13 50:3

**blanking** 37:23

**block** 46:3

**board** 6:24 7:1,2,
7,22 8:1,9,18 9:8,
18 11:13,23 12:15
13:6,16,22 14:4
16:8 17:10 19:7,8,
9,11,12 29:21
30:1,20 32:11

33:6,14 34:12
35:1,2 40:2 41:21,
23 43:1 48:8 49:10
55:9,11,16,24 58:3

**Bola** 10:23 14:19
15:11 31:16 32:24
42:18 48:6 54:2

**Box** 12:4

**Bradley** 5:1 8:10
9:24 10:12,19
15:13 16:2,8 17:8
18:5 20:14,21
21:10 23:11 33:21
35:6 36:1 38:9,13
41:3 42:2,11,15,23
43:2,22 44:12 45:7
46:2,20 48:19
50:17 51:4 53:12,
19,22 54:1 55:13,
16,19 56:16

**Bradley's** 39:7,
13,17 40:9 56:9,
12,16

**break** 29:7

**bring** 19:24 20:2
32:9

**brought** 13:21
14:3 15:3,7,15
19:12,15,17 31:24

**Brown** 5:19,23
6:2,3 11:2 19:10
35:10,16,23,24
36:12 37:2 38:20,
21,22 39:1,19,20
40:2,8,17,23 49:15
52:8 53:6,10 56:8,
15 57:11

**Brown's** 39:2 40:5

**businesses** 58:22

**buy** 22:14 43:20

**buying** 22:10

---

**C**

**call** 6:23 11:3

26:24 31:17 35:13,
17,22 36:21 37:4
38:7 49:1

**called** 23:5,6
26:22 27:1 35:10,
20 41:15 52:8

**calling** 35:21

**Calls** 9:13 13:8
16:13 26:19 27:7
28:18 37:12 44:23
58:8

**cancelled** 30:24

**capacity** 47:10
49:9

**card** 30:19,24

**cards** 27:18 29:21
30:2

**care** 45:20

**case** 4:24 13:5
14:9 36:13 52:10
57:5

**caught** 37:2

**Center** 34:21

**centers** 11:6,7

**chance** 32:16

**change** 59:8,10

**changed** 6:11

**charges** 55:17

**chase** 25:16

**chauffeur** 17:7,9,
12,14,19 33:21

**Chicago** 11:4

**chief** 8:2 12:4,8
13:5,15,24 14:2
15:13 17:8 20:14,
22,24 21:10 22:16
23:17 24:1 29:10
30:7 32:10 36:1
38:13 42:15,21
43:22 44:12 45:7
46:2 48:19 50:17
54:4,14 57:23

**chiefs** 8:6 12:1

**children** 44:1

**chose** 58:20

**Chris** 26:10

**Christmas** 44:2

**circulated** 40:12,
19

**clarify** 15:10 19:16
54:9

**clear** 25:9 41:4

**closed** 9:6 11:17,
18,19

**coalition** 25:4

**Commander**
25:14

**comments** 38:4
40:23 41:20 42:10

**commissioners**
13:7,17 56:1

**communication**
16:7 42:14

**complaint** 14:8
43:5,7

**complaints** 14:18

**concerns** 39:2

**concluded** 59:17

**conclusion** 9:14
13:9

**concurred** 17:11

**concurrence**
7:24 8:1

**conduct** 56:3

**conference** 11:6
17:24 35:13,19

**conferences**
34:17

**confronted** 48:22

**connected** 50:19

**consent** 48:8

**consistently** 5:8

**contact** 39:16

**contacted** 26:17
39:6,12

**contract** 23:24
24:7 29:13,17

**control** 19:7,9

**controls** 9:10

**controversy**
29:20

**Convention** 34:21

**conversation**
21:4 47:8,11 51:6
56:7,10

**conversations**
46:19

**cop** 47:19

**correct** 4:6 10:4,7
13:3 32:2,15 33:1,
12,23 40:9 47:10,
23,24 48:3,21
49:5,15 50:17,20
51:3,6,7 52:3 53:9,
19,20 54:4,5 55:14
56:5,6,14,18,24
57:1,15 58:16,21,
23

**corruption** 22:3

**council** 6:24

**county** 20:16
27:13,15

**couple** 56:20

**court** 59:2

**Covington** 5:2
6:18,21 17:7 39:7
48:5

**Cracker** 41:15

**credit** 27:18 29:21
30:2,19,24

**criminal** 46:21

**D**

**date** 9:3 57:13

**dates** 19:4

**Davis** 12:8 29:9

**day** 24:10

**De** 14:19

**deal** 7:21 8:5

**deals** 7:22 9:19

**December** 24:10

**decisions** 18:6

**defense** 55:20
57:12

**defer** 48:13

**degree** 41:17

**Delano** 14:19
15:12 31:18 48:6

**department** 17:1,
13,14 22:4,18 51:2

**departments**
22:8

**depending** 54:20

**deposed** 5:11

**deposition** 4:1,5
22:4 26:13 29:3
31:14

**development**
14:22 15:8 58:23

**direct** 7:23

**directly** 35:6

**discovery** 4:13

**discuss** 21:13
32:11 38:8

**discussed** 8:10
24:14

**discussion** 51:4

**dismiss** 13:4,15
32:8 54:14 55:12

58:15

**dismissal** 10:12, 19 12:1 17:21

**dismissed** 10:6 12:10 15:16 30:8, 14 42:15,23 43:3 46:2,18,20 48:16

**document** 14:12

**documents** 48:22,24

**donate** 43:23

**downstairs** 35:20

**duties** 46:22

_____

**E**

_____

**e-mail** 39:10,16 42:17,18 54:2

**e-mails** 42:16

**earlier** 29:9 31:14 33:8,18 35:9 55:10

**Ebola** 32:17

**economic** 14:22 15:8 58:23

**Ed** 23:11 35:6 40:9 41:3 56:9

**Eddie** 4:24 8:9

**Edward** 53:12,18, 22

**effing** 37:22 38:1

**efforts** 13:2

**employed** 52:19, 21

**employee** 7:16 55:9

**employment** 7:6

**end** 10:1 37:4

**ends** 24:9 25:17

**equal** 33:17

**evasive** 8:13

**events** 42:9 44:22

**EXAMINATION** 4:18 47:6 54:10 56:21 57:19 58:18

**examined** 4:17

**excellent** 59:3

**exception** 6:10

**excuse** 17:15

**excused** 59:16

**executive** 7:13,14

**exhibit** 4:2 14:7 43:4,7

**expand** 18:24

**expired** 24:1

**explain** 43:14

**extent** 32:23

_____

**F**

_____

**fact** 10:2 24:9 32:4,7 47:17,18 57:6,10

**facts** 13:1

**fair** 18:4 25:2 50:6, 7 51:9,10,19 57:3, 8,9,14 58:21

**fall** 42:4

**federal** 4:12 27:10,16

**feel** 57:21

**Felicia** 18:17

**felt** 51:1

**filed** 4:24

**files** 22:4

**fine** 12:24

**fire** 13:6,16 48:11 55:24

**firing** 7:23 8:3 9:18,19 11:13 37:21

**fleet** 22:18

**follow-ups** 56:20

**forced** 58:21

**form** 7:18 16:13 18:8 27:7 28:8 29:23 33:15 34:5 45:11 46:23 55:2

**formed** 49:3

**formulate** 49:14

**fortunate** 43:19 44:1

**foundation** 28:8 34:2 45:11

**fourth** 6:9

**Frazier** 18:18

**funds** 22:9

_____

**G**

_____

**gap** 10:15,17 15:16

**gather** 6:13

**general** 4:13 7:15

**generally** 45:9,12

**give** 14:11 15:6 36:15 54:18

**god** 17:22 21:14

**good** 4:20,22,23 47:19

**gotcha** 15:21

**governing** 4:12

**government** 27:10,16

**grapevine** 27:3,9 51:12

**Gray** 46:3

**Griffin** 4:1,5,7,8, 15,20 5:24 15:11 29:6

**group** 19:17

**guess** 9:21 12:21 15:1 50:9

_____

**H**

_____

**Hall** 9:8

**handling** 15:6

**happen** 27:17

**happening** 15:1

**hate** 58:11

**hear** 34:9 36:6 52:4 53:6

**heard** 28:9,11 35:7 52:5

**hearing** 54:19

**hearsay** 16:14 26:20 37:12

**Heights** 4:9

**Hey** 17:11

**hire** 8:2

**hiring** 7:23 8:3 9:18,19 32:24

**Hold** 26:7

**holiday** 43:18

**hoot** 36:16

**hoping** 24:21

**hotel** 35:19

_____

**I**

_____

**idea** 10:18 27:5

**identification** 4:3

**Illinois** 4:11

**incident** 57:13

08/25/2016          GRIFFIN   KEITH          Page 65
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

including 44:22

incorrect 57:8

Indiana 28:5

individual 12:7

informal 51:5

information 15:7
22:23

informed 25:23

initiate 10:12,18

initiative 9:22

inquiry 26:17
29:19

instrumental
43:22

interaction 17:20

international
11:5

investigated
28:15

investigating
23:4 27:6 28:14

investigation
23:2 26:18

investigations
25:23 26:4 51:11

invitation 57:11

invited 55:16

involved 43:9

involves 27:18

involving 43:10

issue 24:14 30:7,
19

issues 50:24

――――――――――

**J**

J-o-n-n-a 31:7

Jack 41:15

job 16:23 17:9,11,
12,18 33:5 34:4

Joe 23:16 35:14,
18,20 36:21 56:8

John 20:19 21:2,8
22:22 23:7 26:9

Johnna 31:4,5

Joseph 5:19

judgment 54:13

July 6:10,12

June 18:24

――――――――――

**K**

Keith 4:7,8,15
5:23

Kenneth 4:5

kids 43:19

kind 42:13 54:13,
24

knew 40:15 46:1
52:7

knowledge 6:2
7:17 9:10 16:16
24:11 29:12 40:1,
11,14 42:11 45:2
51:12 55:15,23

――――――――――

**L**

lady 18:21 36:9
46:3

Lafayette 10:4
35:24 53:18

laid 52:14

language 17:16

Lano 14:19

Larry 5:23 6:2
38:21,22 39:1
40:17

Las 35:11 56:8
58:20

law 36:13 41:17
49:17,19,21 52:10,
13,24 53:1 54:16
56:17,24 57:3,5,6

lawsuits 14:23
15:8

lawyer 41:15
49:12

left 11:9,22 22:8
23:24 24:6 36:12,
18,19 37:3

legal 9:13 13:8
39:2 40:5 49:14

letter 40:6,11,15,
24 49:4 50:13
53:11,21

liking 46:17 47:18

Linear 10:4,6
15:16 30:13 38:8,
12 41:1 42:2,11
48:19 53:18 55:12

lines 47:15

listen 38:16,24

listing 16:8

live 44:8,10,15

lives 44:12

Liz 19:11

long 5:6 8:20
20:19 21:2,8,11
22:22 23:3

longer 19:11

looked 22:17 40:7
52:17,24

loose 25:17

lot 45:17

――――――――――

**M**

made 8:19 9:3
13:16 26:16 42:9
51:21 52:3 53:7
58:11

maintaining 28:5

make 41:20 43:24
47:21 51:8

making 18:6
40:23

manage 17:13

manager 7:22,24
9:17,20 10:3,13,14
11:12,24 13:14
15:15,19,20 30:23
31:2,24 32:9,10,24
48:6 55:8 57:23

Managers 34:18

March 17:23
21:20,21,24 34:14

marked 4:2 14:6

materials 9:15

math 32:15

matter 13:5 24:23
51:18

mayor 5:2 6:16,
17,18,21 8:1,19
9:2 10:21,22 11:13
17:7 18:5 19:7,14,
20,24 25:7,24 26:4
28:4 33:20 34:5
39:7 40:20,22
41:14 42:9 43:2
48:5 51:11

mayor's 29:20
46:17 47:18

Mayors 34:18

means 19:9 59:2

meet 6:5,8,12
20:15

meeting 6:15 8:9,
21,22 9:8 11:9,17
16:1 21:1 22:1,24
23:11,15 25:18
34:12 35:1,2 36:19
39:4,5 41:22,23
48:10,11 50:1,16
51:6 55:12

**meetings** 6:14 7:7 8:17,19 34:15

**Mel** 12:7 29:9

**members** 17:10

**memorandum** 53:17

**mention** 22:16 28:4 53:22

**mentioned** 15:11 29:9 31:15 35:9 53:12

**met** 21:8

**middle** 8:24 10:7

**Milton** 5:20

**minority** 33:13

**minute** 12:18 20:4 21:17

**minutes** 28:20 35:22 48:13

**misapplying** 57:6

**Misappropriation** 22:9

**misinterpreting** 57:5

**money** 43:24 44:4

**monies** 22:10

**Montana** 18:16 19:3,12,15 20:10

**month** 6:10,12 34:13,16 54:20

**MORAN** 4:4,8,11, 19 7:11 8:4 9:23 12:6,20 13:13 14:1,13,16 16:19 18:11 21:22 23:20, 22 24:5 25:1 26:3, 15,23 27:12 28:1, 10,19 29:5,18 30:3,12,17 31:1 32:22 33:4,19 34:6 37:15,19,23,24 41:2,9,19 43:6 44:3,20 45:4,22

47:3 51:20 54:8, 11,23 55:4 56:19 57:18,20 58:5,13, 17

**morning** 4:20,22

**move** 23:9 58:4,12

---

**N**

---

**named** 12:7 18:17

**nature** 27:19 42:16

**neighbor** 46:13

**neighbors** 47:11, 13

**news** 47:15

**newsletter** 42:19 54:3

**Newsletters** 42:16

**Nice** 18:21

**nonperformance** 46:22

**notice** 16:1,4,6 32:19 49:24 50:4 53:24 54:13,18,24

**notifies** 55:9

**November** 46:10 47:10

**numerous** 14:23

---

**O**

---

**oath** 4:14,16 29:7

**objection** 7:8,18 9:13 12:2,16 13:8, 18 16:13 18:8 21:18 24:2,16 26:1,7 27:7,21 28:18 29:14,22 30:9,15,21 32:5 33:2,15 34:2 37:12 43:15 44:17,23

45:11 46:23 54:15 55:2 57:24 58:4,8

**objections** 26:19 28:6

**occasions** 14:24

**occurred** 57:13

**occurring** 51:1

**October** 20:5 42:5,8 46:9

**Odelson** 19:6,8, 18 20:1,2,3

**off-cuff** 8:19

**offered** 51:17

**officer** 6:14 17:18 25:13

**officers** 17:3 22:5

**official** 47:9

**ongoing** 25:23

**open** 11:17,19

**opinion** 40:8 49:14 52:11,16 53:11

**opportunity** 55:19

**Oscar** 5:19 6:2 11:2 19:10 35:9, 16,21,23 36:11,24 37:1,14 39:2,19 40:2,5,8,23 41:15, 17 56:8,15

**Oscar's** 38:4

**out-of-court** 51:17

**oversee** 9:21 17:12

---

**P**

---

**P-a-y** 5:21

**p.m.** 59:18

**paid** 12:15

**paperwork** 32:20

**Park** 4:10,11 5:1,4, 14 22:6,7 34:21 39:23 40:3 44:8, 10,13,16 45:6

**party** 46:19

**Paula** 5:24 25:10

**Payton** 5:20 20:2 37:17,18 38:2,23 53:5,7

**peeved** 17:16

**people** 28:16 35:7, 8 44:15,21,24 45:6,14 51:15 52:3 58:15 59:12

**perform** 47:22 48:2

**period** 10:17

**person** 9:21 10:11 15:12 45:23

**personally** 11:3 22:17 23:5

**phrase** 52:2

**phrased** 50:3

**pier** 41:14

**pissed** 17:15

**place** 10:23 17:21 45:24

**plaintiff** 23:19,20

**plan** 37:5

**pocket** 44:5

**point** 52:18

**police** 8:2,6 12:1,8 13:5,7,15,16,23 14:2 15:13 17:1, 13,18 21:1 22:3,4, 17 29:10 32:10 42:15,20 51:2 54:3,14 55:24 57:23

08/25/2016        GRIFFIN  KEITH            Page 67
EDDIE  RAY  BRADLEY  vs.  VILLAGE  OF  UNIVERSITY  PARK

**position** 5:9 20:24
42:23

**posting** 16:1

**prepared** 53:17

**present** 31:2 32:9
48:9 57:13

**president** 5:17

**presiding** 6:14

**prior** 29:10

**private** 17:14

**privileged** 9:14

**problem** 45:20

**problems** 15:9

**procedure** 7:15
11:8,10 36:4

**proceedings** 56:3
59:17

**procure** 58:22

**production** 9:14

**profession** 47:22
48:2

**professionalism**
16:24

**program** 43:9,14,
17 44:5

**progressing**
24:21

**prove** 51:18

**provided** 22:23

**public** 9:5,7 44:22

**purchasing** 43:10

**pursuant** 4:12

**put** 25:3 44:5 52:6

**putting** 10:23

_____
Q
_____

**Qualifications**
55:2

**quarter** 58:2

**question** 9:10
18:12 24:15 26:16
41:7,8,9 45:24
46:24 49:24 50:2
57:18

**questions** 4:24
6:20 28:21 36:22
45:6 54:7 56:19
57:17 58:17,24

**quoting** 49:17,19

_____
R
_____

**raised** 30:7,13,20
45:24

**ran** 19:8

**Ray** 4:24

**read** 36:13 41:9,10
49:13

**reason** 20:6

**recall** 11:16 12:14
21:4 22:1 23:9,11
26:18 30:4 32:1
33:24 34:11,13
35:16 36:20 37:10
40:22 41:23 45:10,
23 46:7,15 50:8

**receive** 22:22
42:13

**recess** 26:11 29:1

**recollection** 5:16
9:1 20:12 21:16
48:20

**record** 4:4 6:1
41:10

**records** 55:11

**referral** 13:15

**referred** 12:1 13:6

**reflect** 4:4

**refused** 33:21

**regard** 56:12

**regularly** 6:6

**related** 6:3,4
25:13

**relating** 53:7

**relationship** 15:2

**relayed** 11:14,15

**Relevance** 7:19
12:2,16 21:18
24:2,16 26:1,7
29:14 32:5 33:2
43:15 44:17

**reliable** 52:6

**relying** 57:10

**remarks** 8:19 9:2,
5,7

**remember** 17:6
18:1 19:14 34:22
35:19 49:1

**repeated** 36:24

**repeating** 37:13

**rephrase** 41:7

**replaced** 19:20

**reporter** 59:3

**requested** 41:11

**required** 44:7
54:13

**reserve** 59:1,2

**resolution** 24:13
30:19

**resolved** 25:19

**response** 22:22

**restate** 41:8

**resumed** 26:13
29:3

**resumé** 32:21

**retired** 12:11,12,
13

**review** 49:13 59:8

**rid** 13:23 19:7 20:1
32:10 36:1 48:18

**Roudez** 5:20 8:14
11:5 14:21 19:10
21:6,10 23:16
32:14 33:11 35:14
36:21 40:16 50:14
51:5 56:8 59:9

**rules** 4:12,13

_____
S
_____

**S-h-i-t** 36:17

**scope** 7:8,18 30:9
54:15

**send** 42:20

**sends** 55:8

**sense** 58:11

**September** 20:4,5
42:5,8

**serves** 32:15

**session** 7:12,13,
14 9:6 11:18,19

**severance** 12:15

**shambles** 17:1

**shit** 37:11

**shopping** 11:6

**short** 41:14

**show** 48:23 55:11

**sic** 31:7

**signature** 59:2,14

**sir** 5:5 6:7,22 7:4
9:4 12:5,9,11,13
13:12 14:10 15:14
16:3,6,10 18:3
21:3,7,12 23:1
25:8 29:8,11,16
31:6,8,10 39:15,18
40:4 41:24 47:4
52:13

**sit** 50:8

**situation** 17:6 24:24

**slightly** 23:9

**so-and-so** 36:8

**sort** 46:21

**source** 52:6

**South** 34:18

**speak** 11:2 23:7 55:20

**speaking** 57:12

**special** 7:12

**specific** 45:14,15, 23 52:10

**specifically** 14:21 53:13

**speculating** 46:20

**speculation** 27:8 28:18 44:23 58:8

**spell** 31:20

**spelled** 59:9

**start** 47:8

**state** 36:14 49:17, 19,21 52:13,24 53:1 56:17,24 57:3

**state's** 20:15,18 27:11,13,15 50:16

**stated** 11:10 17:8 37:2 53:4,9

**statement** 47:21 51:17,21 52:2

**statements** 53:5, 7

**stating** 11:14 42:20

**statute** 36:14

**stepped** 48:6

**Sterk** 19:6,8,18 20:1,2,3

**stipulate** 14:13

**straight** 19:4

**straighten** 24:22, 23

**straightened** 17:2

**street** 46:14

**strike** 58:4

**stuff** 34:19 52:7

**subject** 23:10

**Suburban** 34:18

**succeed** 15:12

**suit** 24:20 37:3

**suits** 15:5

**Sunday** 32:15

**supposed** 13:6 52:14 53:1 54:19

---
**T**
---

**T-o-w-n-s-e-n-d** 31:11

**takes** 54:19

**taking** 36:10

**talk** 37:7,8 38:15, 19 44:21 47:14

**talked** 38:20 58:10

**talking** 32:23 41:18 47:11 49:10 53:14

**telephone** 39:7,13

**telling** 43:2

**tend** 48:24

**tenure** 11:23

**terminate** 8:21 9:22

**terminated** 8:23 16:2,9,12 20:22 36:1 39:5 45:17

56:17

**terminating** 7:16 18:5 57:22

**termination** 8:5,9, 14 38:8 39:8,14,17 40:9 42:1 45:7 50:20 53:18 54:1 56:13

**terminations** 7:6 9:11 42:10 44:22

**testified** 4:17 33:8,17,20 55:10

**theft** 22:9,10 46:21

**thing** 16:23

**things** 17:5 24:22 41:6 47:15

**thinking** 10:20,21 20:9

**thought** 17:17 47:18

**three/three** 25:6

**time** 5:9 11:1 14:12,17 16:17 17:2 18:23 20:9 23:23,24 24:6 25:22 40:1 43:23 45:15,19 48:2 49:5 50:10 53:3 54:15 55:20

**times** 30:5,6

**Tinley** 34:21

**tires** 22:11,15,17

**told** 11:10,20 15:5 17:3 34:7 35:16 36:12,24 46:15,16 51:15 56:23

**town** 8:15,16 10:21 32:8 33:11 50:9 58:3

**Townsend** 31:4,9

**toys** 43:10,11,12, 20,21

**tree** 44:2

**True** 49:23

**trust** 59:5,6,11

**trustee** 4:5 5:4,6, 19,20,23 7:9 8:14 9:12 11:4 12:17 13:10,19 14:21 15:11 19:10 20:2 21:5,10 29:6 32:14 35:10,23 36:7 37:10,18 38:20,23 39:1,13,17,20 40:16 44:7 47:10 49:3,7,9,15 50:14 51:5 52:8,11,16 53:5,6,10 54:12 57:11

**trustees** 5:13,17, 24 6:5 11:24 16:8 22:21 25:11 32:8 33:10 37:9 38:15, 17 40:2,12,14 51:1 55:6 56:4

**truth** 51:18

**Tuesday** 32:18

**Tuesdays** 6:9

**turn** 28:21 47:3

**Turner** 46:14

---
**U**
---

**Uh-huh** 5:21 21:23

**unable** 47:22

**unaware** 16:4 53:23

**understand** 5:3 29:6 50:1 51:22

**understanding** 13:4 16:11 48:4 50:4

**University** 4:9,10, 11 5:1,4,14 22:6,7 39:23 40:3 44:8,

08/25/2016          GRIFFIN  KEITH          Page 69
EDDIE RAY BRADLEY vs. VILLAGE OF UNIVERSITY PARK

10,12,16 45:6

**up-to-date** 15:7

**upset** 33:21

---

**V**

---

**Vegas** 11:3,4,5
14:20 35:11 50:15
56:8 58:20

**vehicles** 22:10

**village** 4:8 5:1,4
7:16,22,24 9:7,11,
17,20 10:3,13,14
11:12,24 13:14
14:24 15:14,18,20
18:14,22 22:6,7
24:1 25:24 26:5
29:13,20,21 30:23
31:2,24 32:9,10,24
33:5,14 35:4,5
38:18 42:14 43:19
44:1 45:5 47:14
48:5,13 49:4 51:6
52:11,19,22 55:8
56:1 57:7,22 58:23

**violate** 57:2

**violated** 56:17,24

**Vivian** 5:2

**vote** 11:19 36:11
37:6 38:11

**votes** 25:3,19
58:14

---

**W**

---

**wacko** 41:6

**wait** 12:18 20:3
21:17 58:2

**waited** 32:7

**waive** 59:1,6,12

**waived** 59:14

**walk** 41:14

**WALL** 7:8,18 9:13

12:2,16 13:8,18
14:14 16:13 18:8
21:18 23:19,21
24:2,16 26:1,7,19
27:7,21 28:6,18
29:14,22 30:9,15,
21 32:5 33:2,15,17
34:2 37:12,22
41:1,4 43:4,15
44:17,23 45:11,14
46:23 47:5,7 51:21
52:1 54:6,15 55:2
56:20,22 57:16,24
58:4,8,19,24 59:6,
12,14

**Walsh** 18:16

**wanted** 17:3,7

**wanting** 47:13

**weirdly** 50:3

**Welch** 18:16 19:2,
3,13,15 20:10

**wife** 46:13

**Williamson** 19:11

**willingly** 58:20

**Wilson** 5:24
25:10,13,14

**winter** 23:12

**woman** 18:17
31:15,17

**won** 19:14

**wondered** 41:16

**word** 36:9

**words** 36:5 55:24

**work** 23:13 38:13

**worked** 20:1

**working** 15:2
55:23,24

**world** 47:14

**worry** 15:5

**worth** 22:11,14

**Wow** 16:17

**writing** 40:23 43:3
54:24 55:1,5,11

**wrong** 11:8,10,11,
20,21 17:17 36:3,4
40:24 41:1,3
49:21,22 52:12
57:2 58:12 59:9

---

**Y**

---

**year** 6:11 20:5
23:6 34:13 43:18

**years** 7:3 22:14
54:12

**you-all** 21:13

# EXHIBIT I

cmsreporters@comcast.net

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE RAY BRADLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.15-cv-08489 |
| | ) | |
| VILLAGE OF UNIVERSITY PARK, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | | |

The deposition of

VIVIAN COVINGTON taken under oath VIA ZOOM at

10:34 A.M. on Friday, July 24, 2020 pursuant to

the Rules of the United States District Court,

Northern District of Illinois, before Carol M.

Siebert-LaMonica, C.S.R. No. 084.001355 in and

for the County of Cook and State of Illinois,

pursuant to notice.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

```
                                                    Page 2
 1    APPEARANCES:

 2         THE MORAN LAW GROUP, by

 3         MR. JOHN T. MORAN

 4         566 West Lake Street, Suite 101

 5         Chicago, IL  60661

 6         (J.t.m.moran@gmail.com)

 7                   And

 8         THE KELEHER APPELLATE LAW GROUP, LLC.

 9          MR. CHRISTOPHER KELEHER

10          190 South LaSalle Street, Suite 2100

11          Chicago, IL 60603

12          (Ckeleher@appellatelawgroup.com)

13              Appeared on behalf of the plaintiff;

14

15

16

17

18

19

20

21

22

23

24
```

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 3

1          PETERSON, JOHNSON & MURRAY CHICAGO

2          MR. DOMINICK LANZITO

3          200 West Adams, Suite 2125

4          Chicago, IL  60606

5          (Danzito@pjmchicago.com)

6               Appeared on behalf of the defendants.

7

8    ALSO PRESENT:

9               MR. EDDIE BRADLEY

10

11                    - - - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 4

1          MR. MORAN:  Let the record reflect

2     this is deposition of Ms. Vivian Covington in

3     the case of Bradley versus Village of

4     University Park, et al, Case No. 15 CV 08489.

5               And we are here pursuant to an

6     Amended Notice of Deposition.  It is a remote

7     deposition.  The parties have agreed to a

8     remote deposition.

9               And we have been provided with a

10    Zoom login passwords and are present today

11    through Zoom, is that all correct?

12          MR. LANZITO:  That's correct for the

13    defendants' counsel, this is Dominick Lanzito.

14          MR. MORAN:   Thank you.

15          MR. LANZITO:   I know your Notice of

16    Deposition required her to bring all of the

17    documents to her deposition.  We are remote.

18               I can represent on the record she

19    reviewed the complaint with the attached

20    documents and her Answers to Interrogatories in

21    advance of today's deposition.

22          MR. MORAN:  Okay.

23          MR. LANZITO:  Your exhibits you are

24    going to attach.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 5

1          MR. MORAN:  Okay.  Did you get the

2    exhibits I sent over this morning, just the two

3    letters and --

4          MR. LANZITO:   And the full contract.

5          MR. MORAN:  Yes.

6          MR. LANZITO:  I acknowledge receipt.

7          MR. MORAN:  Okay.

8

9              VIVIAN COVINGTON,

10   called as a witness herein, having been first

11   duly sworn, was examined and testified as

12   follows,

13            E X A M I N A T I O N

14   BY MR. MORAN:

15      Q.   Ms. Covington, state your name for the

16   record?

17      A.   Vivian E. Covington,

18   C O V I N G T O N.

19      Q.   Thank you.  And this is going to take

20   a little bit longer because there is material

21   on top of everything, but hopefully we will get

22   through this.

23              Where do you presently work,

24   Ms. Covington?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 6

1       A.    Department of Veterans Affairs, Hines,

2    Illinois, H I N E S.

3             MR. MORAN:  I have to take a one

4    minute recess.  Hang on, one second.

5             (Recess.)

6

7    BY MR. MORAN:

8       Q.    So you are working for the U.S.

9    Department of Veterans Affairs?

10      A.    Yes.

11      Q.    Okay.  And how long have you been

12   there?

13      A.    I've been in the federal government

14   42 years.

15      Q.    Okay.  How long have you been with the

16   VA?

17      A.    God, I think about, oh, 30 something,

18   38 maybe.

19      Q.    And where do you go to work for the

20   VA?

21      A.    Currently I'm working remote, but I go

22   to Hines, Illinois when I'm on site.

23      Q.    Okay.  Do you live in University Park?

24      A.    Yes.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

1      Q.   Okay. How long have you lived there?

2      A.   22 -- well, actually I had a home

3  built -- about 23 years approximately.

4      Q.   Okay.  Are you presently holding any

5  elective office for University Park?

6      A.   No.

7      Q.   Are you presently appointed to any

8  commissions or legislative or governing bodies

9  in University Park?

10     A.   No.

11     Q.   In the past is it correct that you

12 were Mayor of University Park?

13     A.   Yes.

14     Q.   And were you also a trustee of

15 University Park in the past?

16     A.   Yes.

17     Q.   Okay.  When was -- when -- what was

18 the timeframe of your last position as Mayor,

19 from what year to what year did it run?

20     A.   2011 to 2019, two terms.

21     Q.   Okay.  Were they consecutive?

22     A.   Yes.

23     Q.   They were consecutive?

24     A.   Yes.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 8

1     Q.   Have you had occasion to review any

2  documents to prepare for your deposition today?

3     A.   Yes.

4     Q.   And what did you go over?  What

5  documents did you look at?

6     A.   The letter from Mr. Brent to

7  Mr. Bradley, two letters.  And the complaint

8  and two letters.

9     Q.   Now, one of those two letters I didn't

10  attach as the exhibits, but do you recall that

11  letter from Oscar Brown?

12     A.   Pardon me?

13     Q.   One of the letters was from Oscar

14  Brown, did you notice that?

15     A.   It was to Oscar Brown you say?

16     Q.   No, it was from Oscar Brown.

17     A.   No, I don't have that.

18     Q.   Okay.  I sent it to your counsel

19  today.

20          MR. LANZITO:  For the record I don't

21  believe that was attached to the complaint with

22  the exhibits.

23          MR. MORAN:  No, it wasn't attached to

24  the complaint.  It was in the record though.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 9

 1            MR. LANZITO:   I haven't sent it to

 2    her yet.  Do you want me to send it to her?

 3    I can.

 4            MR. MORAN:  Yes.

 5            MR. LANZITO:  Which one are we looking

 6    at first then?

 7            MR. MORAN:   We will look at in a

 8    second here.

 9            MR. LANZITO:   Is it going to be

10    marked with an exhibit number, John?

11            MR. MORAN:   The next Exhibit Number,

12    Ms. Court Reporter, 8 or 9.

13                    (Deposition Exhibit No. 1-10 was

14                     referred to.)

15    BY MR. MORAN:

16        Q.   Okay.  Ms. Covington, take a look at

17    what's been marked as Exhibit 8 and tell me if

18    you recognize the document?

19        A.   Give me a minute.

20        Q.   Sure.

21            MR. LANZITO:   Is everyone seeing it?

22            MR. MORAN:   That is the Oscar Brown

23    letter.

24            MR. LANZITO:   Is that what you want?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

```
                                              Page 10
 1              MR. MORAN:   Yes.

 2              MR. LANZITO:   This one will be

 3   Exhibit 9.  Maxine Jackson letter.

 4              MR. MORAN:   That's what I have two

 5   questions about.

 6              MR. LANZITO:  Dated June 10, 2015, for

 7   the record this will be Exhibit 9.

 8              MR. MORAN:   Right.

 9              MR. MORAN:   Let me know if you have

10   had a chance to read the letter.

11              THE WITNESS:  I'm reading it now.

12   BY MR. MORAN:

13        Q.   Okay.

14        A.   Okay.

15        Q.   Okay.  Do you recognize the letter?

16        A.   I'm reading it.  I don't recall.

17        Q.   You don't recall it.

18              Is that your name on the

19   letterhead to the left side of the letter?

20        A.   My name is on all of the letterheads.

21        Q.   Lists you as Mayor, is that correct?

22        A.   Yes.

23        Q.   And are the names under Board of

24   Trustees, correct, for June 10, 2015?
```

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 11

1      A.   Yes.

2      Q.   Okay.  And the letter references

3   another letter sent apparently by you or by

4   your authorization to Mr. Bradley, is that

5   correct?

6      A.   I'm sorry.  What did you say now?

7      Q.   I said this letter references a letter

8   of termination that was sent to Mr. Bradley?

9      A.   Apparently so.

10      Q.   Okay.  And do you agree with the

11   conclusion in the letter that "the contract

12   conferred no rights, imposed no duties and

13   afforded no protection"?

14          MR. LANZITO:   Objection.

15          THE WITNESS:  I don't recall.

16   BY MR. MORAN:

17      Q.   You don't recall. Okay.  And who is

18   Maxine Jackson?

19      A.   At that time she was the HR person.

20      Q.   Okay.  How long had she been in that

21   position on June 10th of 2015?

22      A.   Oh, my God, you are really asking

23   a lot right now. I can't remember if she was

24   there. I can't remember the date how long she

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 12

 1   had been there.

 2       Q.   Okay.

 3       A.   Sorry about that.  I can't.

 4       Q.   Had she been there for at least a

 5   couple of weeks before the 15th of June, before

 6   the 10th of June of 2015?

 7       A.   I'm pretty sure of that.

 8       Q.   Look at Exhibit 8, which is the Oscar

 9   Brown letter.

10            MR. LANZITO:   This one, John, so we

11   are on the same page.

12            THE WITNESS:  Yes.

13            MR. MORAN:  Yes.

14            MR. LANZITO:   Can you see that one?

15            THE WITNESS:  Barely.

16            MR. LANZITO:  I will zoom in and move

17   it around for everybody.

18            THE WITNESS:  Great.  Thank you.

19   Okay.

20   BY MR. MORAN:

21       Q.   Are you familiar with this letter?

22       A.   Let me read it, please.

23       Q.   Sure.

24       A.   I don't recall it, maybe he did.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 13

1    I can't recall if he sent this out.  A lot was

2    done that was part of the legislative

3    committee, so I don't know if I saw it or not.

4    I might have, he sent it to me, so apparently I

5    read it.  I don't recall.

6         Q.   Okay.  The letter is addressed to

7    yourself and the other Board of Trustees,

8    members, is that correct?

9         A.   Uh-uh.

10        Q.   Is that a yes?

11             MR. LANZITO:   Keep your voice up.

12             THE WITNESS:  Yes.

13   BY MR. MORAN:

14        Q.   Okay.  Does Mr. -- does Trustee Brown

15   suggest that Mr. Bradley might have a property

16   interest in his position?

17        A.   I can't answer that.

18        Q.   Well, what does he say in the text of

19   his letter, if you want to just read the

20   letter?

21        A.   You want me to read the letter?

22        Q.   Yes.

23        A.   Due to the way the meeting was posted

24   and Mr. Linear's property interest in his job,

Siebert & Associates Court Reporters, Inc.

Page 14

1    no action should be taken by the Village Board

2    today.  The following are points to consider:

3              Notice may not have been given to

4    registered news media outlets with the Village

5    of University Park as required in state

6    legislation, Illinois, acronym for that,

7    furthermore the duties of the clerk's office

8    were circumvented in violation of our local

9    ordinance Section 239-03(b).

10             Mr. Linear may have property

11   interest in his job as Village Manager and

12   should be afforded due process in any

13   termination determination.

14             Based on the previous two points,

15   if action is taken by the Village Board today,

16   it is possible we may be held personally liable

17   for our action, furthermore we could subject

18   the Village to additional liability under the

19   section.  That's it.

20        Q.   I see.  Okay.  So you are assuming you

21   have read it but you can't remember it, is that

22   correct?

23        A.   No, it has been a while.

24        Q.   Okay.  Now you said you read a copy of

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 15

1    the complaint in this case, did you read a copy

2    of the combined answer of the Village and

3    yourself in the case?

4         A.   Vaguely.  Yes, I glanced at it.  Yes.

5         Q.   Okay.  And --

6         A.   This right here.  (Indicating.)

7              MR. LANZITO:   Okay.  Let me find it.

8              THE WITNESS:  What are you referring

9    to?  Yes.  Are you referring to this one?

10             MR. MORAN:   Yes.

11             MR. LANZITO:   Filed in December of

12   2015.

13   BY MR. MORAN:

14        Q.   Right, December 23, 2015, Document

15   Number 11 under this case number.

16             MR. LANZITO:   What number is this

17   again?

18             MR. MORAN:  I think it was Exhibit 7.

19             MR. LANZITO:   Thank you.

20             THE WITNESS:  Is this the one I

21   received, Dominick?

22             MR. LANZITO:   For the record she

23   received the complaint with the exhibits that

24   were attached.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 16

1          MR. MORAN:   This is an answer that
2   was submitted under your name and under the
3   Village's name by your previous attorney
4   Patrick Wall.
5      Q.   I was just wondering if you had any
6   changes you wanted to make to your answer or
7   affirmative defenses?
8          MR. LANZITO:   Other than what is
9   presently before the Court, John?
10         MR. MORAN:   Yes.
11         THE WITNESS:   That doesn't make sense
12  to me.  Whatever it is, it is.
13  BY MR. MORAN:
14     Q.   Okay.  Now, what were your job
15  responsibilities as Mayor?
16     A.   To do legislation and policy making.
17     Q.   And in terms of policy making, were
18  you the final policy maker for the Village of
19  University Park when you were Mayor?
20     A.   The Board, not me individually, the
21  Board.
22     Q.   So you would -- how did it work did
23  you present policies to the Board of Trustees
24  or did they present them to you?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 17

1      A.   Actually the Village Manager would

2   present things to us, and we would vote on it,

3   making sure that it was legal and correct and

4   in accordance to state statute, naturally,

5   that's it.

6      Q.   Okay.  And you, I'm trying to get my

7   screen here to work properly, did you have

8   occasion at some point to participate in a

9   contract with plaintiff Eddie Bradley to be

10   Chief of the Village, is that correct?

11      A.   No, the Village Manager is responsible

12   for that.  They do the interviewing of the

13   police -- Section 2205 -- I mean 20205 duties

14   regarding officers and departments, that's all

15   total for the Village Manager.  We just approve

16   whatever.  They would hire them and bring it to

17   the Board.

18      Q.   I see.  That's your --

19      A.   We are managerial-type of government.

20   We are not strong Mayor.

21      Q.   Okay.  Did you -- you signed off on

22   the written contract with Mr. Bradley, is that

23   correct?

24      A.   The Board does.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 18

1      Q.   Well, you signed your name, didn't

2   you?

3      A.   Right, as the Village Manager, as the

4   President of the Board, yes, that's a part of

5   our minutes.

6      Q.   Okay.

7      A.   So once something is passed then I

8   sign all of the documents, codified ordinances,

9   that's what I signed, the ordinances those

10   approved.

11          MR. LANZITO:   Do you want the exhibit

12   up any longer?

13          MR. MORAN:   This.  You can take that

14   exhibit off right now.

15          MR. LANZITO:   Okay.  Very good.

16   Put the contract up for Ms. Covington.

17   BY MR. MORAN:

18      Q.   Okay.  If you go to the last page of

19   the contract, is that your signature?

20      A.   It appears to be.

21      Q.   Do you have any doubts about that?

22      A.   Sometime, yep, but I don't think -- it

23   is not dated.

24      Q.   I think there is a date on the very

Siebert & Associates Court Reporters, Inc.

Page 19

1    first page.

2         A.    No, normally it is dated on the last

3    page over the date -- over the signature as

4    well.

5         Q.    Okay.  Mr. Bradley apparently signed

6    it as well, is that correct?

7         A.    It appears that he did.

8         Q.    Okay.  And is it further -- is it

9    correct that Mr. Bradley worked in the position

10   as Chief of Police for some time?

11        A.    His term, whatever he was hired under.

12        Q.    Okay.  Did he work as Chief of Police

13   for --

14        A.    Yes.

15        Q.    Yes.  Okay.  Now, the Paragraph 4 of

16   the contract on the last page, do you see that

17   it says the Village may chose to terminate the

18   contract without cause at any time, do you see

19   that?

20        A.    Yes, I see that.

21        Q.    And shall notify Bradley in writing of

22   that decision and pay a termination fee equal

23   to four months salary of Bradley?

24        A.    I see that.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 20

1          Q.   Such a fee shall also be paid if the

2    term of this contract is declared to be

3    unenforceable as Bradley may have lost other

4    employment opportunities, do you see all of

5    that?

6          A.   Yes, I did.

7          Q.   Okay.  Do you know if any notice was

8    ever given to Bradley in writing?

9          A.   I have to check with the Village

10   Manager on that. I didn't do it.

11         Q.   You don't know?

12         A.   I'm not sure.

13         Q.   Okay.

14         A.   I'm sure they did but -- they was

15   supposed to but -- I'm sure they followed

16   protocol.

17         Q.   Okay.  Do you know if Mr. Bradley was

18   given an opportunity to speak to the Board of

19   Trustees regarding his termination?

20         A.   I can't recall.  I can't recall if he

21   did or not.

22         Q.   Do you know if the Village gave

23   Ed Bradley a pre-termination hearing with

24   notice of what the charges against him were?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 21

1      A.   I can't recall.  Sorry, its been

2   awhile.

3      Q.   Do you understand that the contract

4   provides he could be terminated with cause only

5   with proper written notice setting forth the

6   charges at least seven days prior to a hearing?

7           MR. LANZITO:  Objection.  It calls for

8   a legal conclusion.  You may answer.

9           THE WITNESS:  I don't understand the

10  question.

11  BY MR. MORAN:

12     Q.   Okay.  Could you repeat the question,

13  Ms. Court Reporter.

14              (Question read.)

15     A.   I understand the clause.

16     Q.   Okay.  Do you understand that's in his

17  employment contract with the Village of

18  University Park?

19     A.   Apparently so.

20     Q.   Okay.  And do you know if that clause

21  was fulfilled by the Village?

22     A.   I do not.  The Village Manager handles

23  the day-to-day process.  I don't do that.

24     Q.   Who was the Village Manager in

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 22

1    May 15th of 2015?

2         A.   That was Bola Delano.

3         Q.   You don't know whether or not she

4    complied with the contract?

5         A.   That's not my job, that's her job,

6    wasn't my job.

7         Q.   Do you know if Mr. Bradley ever

8    received any notice of the charges against him?

9         A.   I didn't get into that, the day-to-day

10   process I did not get into.

11        Q.   Wasn't he the Police Chief?

12        A.   Yes, through the Village Manager.

13        Q.   Okay.  Do you know if the Village

14   Board provided Bradley with a post-termination

15   hearing after he was terminated?

16        A.   Again I don't recall that.  It would

17   be up to the Village Manager.

18        Q.   Do you if Bradley was ever given an

19   opportunity to be heard before he was fired?

20        A.   Village Manager's, job.

21        Q.   Okay.  Was Bradley given an

22   opportunity -- excuse me.  Was he ever given

23   severance pay?

24        A.   I don't recall.  I'm sure if that was

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 23

1    in the order, she would have done that.

2        Q.   Did the Village feel that Bradley had

3    committed some sort of criminal conduct when

4    they terminated him?

5            MR. LANZITO:   Objection.  You may

6    answer.

7            THE WITNESS:  I don't recall that.

8    BY MR. MORAN:

9        Q.   Okay.  Do you know if any Trustees or

10   Village employees have asked Bradley to come

11   back as Police Chief?

12           MR. LANZITO:   Objection, foundation.

13   You may answer.

14           THE WITNESS:  I don't know.

15   BY MR. MORAN:

16       Q.   Have you heard that?

17       A.   I'm not aware of that.

18       Q.   Okay.  Was there a federal

19   investigation of the Village in 2015 and

20   thereafter?

21       A.   Pardon me?

22       Q.   Was there a federal investigation of

23   the Village?

24       A.   I'm not aware of it.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 24

1        Q.   So you don't know whether there was an
2   investigation and if there was an investigation
3   how it was resolved, is that correct?
4        A.   A federal investigation on what?
5        Q.   On Village financing.
6        A.   We are always under investigation.
7   Everybody is always under investigation.
8   That's a moot question.
9        Q.   Were you -- did you hold elective
10  office for any other municipalities before
11  University Park?
12       A.   No.  I'm sorry.  Repeat that.
13       Q.   I'm just asking.
14       A.   Oh, no.
15       Q.   Okay.  Do you have any knowledge as to
16  whether or not Eddie Bradley has failed to
17  mitigate damages in this case?
18       A.   Again repeat that.
19            (Question read.)
20            THE WITNESS:  No, I don't.
21            MR. LANZITO:   Objection, form, calls
22  for a legal conclusion, for the record.  Answer
23  can stand.
24            THE WITNESS:  I have no knowledge.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 25

1   BY MR. MORAN:

2       Q.   Do you have any knowledge as to what

3   administrative remedies Mr. Bradley has failed

4   to exhaust?

5       A.   No.

6            MR. LANZITO:   Calls for a legal

7   conclusion, form.

8   BY MR. MORAN:

9       Q.   You said you have a trustee form of

10  government, is that correct?

11           MR. LANZITO:   Objection,

12  mischaracterizes the testimony.  You may

13  answer.

14           THE WITNESS:  We have a

15  managerial-type of government.

16

17  BY MR. MORAN:

18      Q.   Okay.  And you have a Board of

19  Trustees and a Mayor, correct?

20      A.   Did you hear me?  I said yes.

21      Q.   Oh, I didn't.  I'm sorry.  I didn't

22  hear you.  Okay.  Did the Board of Trustees

23  ever issue a call for you to resign as Mayor?

24      A.   At what time?

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 26

1        Q.   Do you recall what year that was in?

2        A.   Shortly after I was Mayor, I can't

3    remember the date.  I can't remember the date.

4    I'm sorry.

5        Q.   That's okay.  Did they have the power

6    to remove you from office?

7        A.   No.  No.

8        Q.   Okay.  Who -- in April, May and June

9    of 2015, do you recall who the Village

10   attorneys were that you worked with?

11       A.   Oh, God, in 2015 there were more than

12   one. I think -- I can't remember, I think I

13   can't remember them.  I think it was Odelson &

14   Sterk at one point, and they kept flipping

15   them, so I can't recall all of them. At one

16   point it was Odelson & Sterk I think it was.

17       Q.   Do you recall if Felicia Frazier?

18       A.   Oh, yes, that was Odelson & Sterk.

19       Q.   Okay.  And what about Muller?

20       A.   Yes. I remember him.

21       Q.   He was not part of Odelson & Sterk,

22   right?

23       A.   No, he was not.

24       Q.   Did they work at the same time, Muller

Siebert & Associates Court Reporters, Inc.

Page 27

1    and Odelson & Sterk, if you recall?

2         A.   I recall -- I don't know how close or

3    overlapping, but I think at one point they may

4    have overlapped.  The Board was flipping them,

5    as I said.

6         Q.   I see. Okay.  Do you recall being

7    deposed in a case involving Lafayette Linear?

8         A.   I think I was. It has been a while.

9         Q.   Okay.  Do you recall the name

10   Lafayette Linear?

11        A.   Yes.

12        Q.   And did he have a position with the

13   Village of University Park?

14        A.   Village Manager.

15        Q.   And when -- he was terminated, is that

16   correct?

17        A.   No, there was another election, his

18   contract was up.

19        Q.   Okay.  So as you recall his contract

20   being up, is that right?

21        A.   Yes.

22        Q.   And --

23        A.   Shall I say expired.

24        Q.   Who said he was fired?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 28

1        A.    I said expired.

2        Q.    Expired.  Oh, okay.  So the Village

3   did not fire Mr. Lanier, is that correct?

4        A.    I don't recall that.

5        Q.    So you don't recall?

6        A.    No.

7        Q.    Okay.  Does -- I just want to go over

8   a few things.

9              So you don't recall, you

10  personally don't recall giving any notice to

11  Ed Bradley of what he was charged with in terms

12  of his contract being terminated, is that

13  right?

14             MR. LANZITO:   Objection to the form

15  of the question.  You can answer.

16             THE WITNESS:  Oh, you said as far

17  as -- no, it was up to the Village Manager if

18  she gave me something, that she was removing

19  him she was removing him. The Village Manager

20  does that again.

21  BY MR. MORAN:

22        Q.    And as you indicated that -- what is

23  her name Bola?

24        A.    Bola Delano.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 29

1      Q.   Bola Delano was the Village Manager

2   then?

3      Q.   Yes?

4           MR. LANZITO:   Vivian, for the record

5   and the court reporter's transcript, can you

6   spell the first and last name.

7           THE WITNESS:  B O L A.  D E L A N O.

8           MR. LANZITO:  Thank you.

9   BY MR. MORAN:

10      Q.   Okay.  My follow-up question then is,

11   where does Ms. Delano reside, where can she be

12   found?

13      A.   I don't know her address.

14      Q.   Does she live in University Park?

15      A.   She does not, and she did not at the

16   time.

17      Q.   And there is no residency requirement

18   there?

19      A.   No, there isn't, not for the Village

20   Manager that is.

21      Q.   Okay.  Do you know how long she was in

22   the Village Manager position after Mr. Lanier

23   was Village Manager?

24      A.   It wasn't a year.  The Board removed

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 30

1    her.

2        Q.    Do you know why they removed her?  Why

3    they said they removed her, I should say?

4        A.    She had a heavy voice, was one of

5    them.  It was frivolous to me.  It was a

6    frivolous cause, but I can't really understand

7    why she was removed.

8        Q.    So by heavy voice you mean heavy

9    handed, they thought she was heavy handed

10        A.    I don't know what -- the understanding

11    of the word, why they said that, I cannot

12    define that for them.

13        Q.    Okay.  That's what they said then,

14    that's what you recall they said?

15        A.    They said other things.

16            MR. MORAN:  Okay.  Dominick, I would

17    like to take five minutes just to review my

18    notes, and I will probably end this rather

19    abruptly.

20            MR. LANZITO:   Okay.  That's fine.

21    Just mute your video or stop your video.  And

22    then when you come back I will come back.

23    Okay.  All right.

24            MR. LANZITO:   Thank you.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 31

1            (Recess.)

2    BY MR. MORAN:

3        Q.   Back on the record, Ms. Covington.

4        A.   Yes.

5        Q.   Hi.  You understand you are still

6    under oath, correct?

7        A.   Exactly.

8        Q.   Okay.  I have a few questions for you.

9                 Have you ever attended any

10   employee relation classes, seminars or training

11   when you were Mayor of University Park?

12       A.   Have I received -- repeat your

13   question.

14       Q.   Any classes in employee relations,

15   training for being Mayor, any kind of training

16   at all, like employment discipline, did you

17   receive any training in that area?

18       A.   Since I was the Mayor?

19       Q.   Yes.

20       A.   Yes.

21       Q.   Okay.  What, do you recall, training

22   you got?

23       A.   South Suburban Mayors and Managers,

24   they all have different seminars here and

Siebert & Associates Court Reporters, Inc.

Page 32

1    there.

2        Q.   Okay.  So you went to several seminars

3    with them, is that correct?

4        A.   Maybe one or two.  They didn't offer

5    that much.

6        Q.   Okay.  Anything else that you recall?

7        A.   A lot of trainings, that's what we do.

8    On my own but --

9        Q.   Okay.

10       A.   -- no personnel, different trainings.

11       Q.   Are you presently or have you ever

12   been the member of a union?

13       A.   Yes.

14       Q.   Okay.  And what union is that?

15       A.   It has nothing to do with the Village.

16       Q.   Okay.  But what union is it?

17           MR. LANZITO:   You can answer.

18           THE WITNESS:  SEIU.

19   BY MR. MORAN:

20       Q.   Okay.  And that's all with your

21   federal, your current employment, is that

22   correct?

23       A.   Yes, it is.

24       Q.   Okay.  Are you familiar with -- have

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                     94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 33

1    you ever been on the Board of the union?

2         A.    No.

3         Q.    Okay.  Are you familiar with employee

4    contracts and contract language?

5         A.    Vaguely.

6              MR. LANZITO:   Form.  You can answer.

7              THE WITNESS:  Vaguely.

8    BY MR. MORAN:

9         Q.    Have you ever been part of a

10   negotiating team for contracts for anyone?

11        A.    No.

12        Q.    Okay.  Have you negotiated any

13   contracts yourself?

14        A.    Nope.

15        Q.    Did you have any negotiations with

16   Eddie Bradley on his contract?

17        A.    Again managerial kind of government,

18   no.

19        Q.    Okay.  Do you have insurance on your

20   home?

21        A.    Excuse me?

22        Q.    Do you have insurance on your home?

23             MR. LANZITO:   You can answer.

24             THE WITNESS:  Why is that relevant?  I

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

Page 34

1    don't think that's relevant.

2              MR. LANZITO:   Are you talking a

3    certain type of insurance?

4    BY MR. MORAN:

5        Q.   There is a defamation count,

6    homeowner's insurance covers it.

7        A.   I don't think I have to reveal that.

8              MR. LANZITO:   You can answer that.

9    Do you have homeowner's insurance, Vivian?  You

10   can answer that, Vivian.

11             THE WITNESS:  Yes, I do. That's

12   ridiculous.

13   BY MR. MORAN:

14       Q.   Was an individual named Mel Davis

15   Chief of Police before Eddie Bradley was?

16       A.   Yes.

17       Q.   Was Mel Davis fired?

18       A.   Yes.

19       Q.   Were you Mayor then?

20       A.   Yes.

21       Q.   Did Mel Davis have a contract?

22       A.   Yes.

23       Q.   He did have a contract?

24       A.   Yes, he did.  I'm pretty sure most of

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 35

1   them do.

2       Q.   Do you have -- why was he fired, do

3   you know?

4       A.   The Board fired him.

5       Q.   So they did it by Board resolution?

6       A.   Pretty sure they did.

7       Q.   Okay.  Did you give Mel Davis a

8   $25,000 severance check?

9       A.   I didn't give him anything.  I don't

10  know what the negotiations was really.  I'm not

11  familiar with it. I can't recall it.

12      Q.   Okay.  So you personally didn't give

13  him anything?

14      A.   Personally, no.

15      Q.   Okay.  And you don't know whether he

16  had -- you are saying he did have a written

17  contract?

18      A.   I don't recall.  I would have to check

19  with the Village Manager.

20      Q.   Do you know who the Village Manager

21  was when Mel Davis was the chief?

22      A.   I think it was Lafayette Linear, I

23  think.

24      Q.   Okay.  Do you know whether Mel Davis

Siebert & Associates Court Reporters, Inc.

Page 36

1    was able to come before the Board at a regular

2    board meeting and address the Board concerning

3    his termination?

4         A.    I don't recall.  Might have.  I can't

5    recall that.

6         Q.    You don't recall if he was given a

7    $25,000 check?

8         A.    I don't.  Might have.  I said it has

9    been awhile.

10        Q.    If it was done was that because the

11   Board wanted it or because you wanted it or do

12   you have any thoughts on that?

13        A.    None.

14        Q.    Okay.  Do you recall that Chief

15   Bradley was hired at an emergency board meeting

16   on a Saturday morning?

17        A.    I don't recall that, the date and time

18   might have been, I don't recall it.

19        Q.    Okay.  You did not attend any

20   emergency meetings to hire Eddie Bradley, is

21   that correct?

22        A.    I don't recall if I was there or not.

23   I normally don't miss any of my meetings.  That

24   might have been called by the Legislature, I

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 37

1    don't recall, but I'm sure you can find that on

2    our ordinance, if I was there or not.

3         Q.   Do you recall who the chair of that

4    committee was back then?

5         A.   Joseph Roudez, R O U D E Z.

6         Q.   Do you recall a ratification vote at

7    the next official Board meeting for Eddie

8    Bradley as Police Chief?

9         A.   What did you say?

10        Q.   Do you recall a regular Village Board

11   of Trustees meeting at which Eddie Bradley's

12   being placed in the position of Police Chief

13   was ratified?

14        A.   Yes, I'm pretty sure we did, when he

15   became Chief, we do that with all of them.

16        Q.   Okay.  Did you vote yes or no?

17        A.   I don't recall.

18        Q.   You don't recall if you voted yes or

19   no?

20             MR. LANZITO:   Objection, asked and

21   answered.  You can answer again.

22             THE WITNESS:  You can review the

23   minutes, I can't recall.

24   BY MR. MORAN:

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 38

1       Q.   Okay.  Do you recall receiving a

2    letter from Eddie Bradley's attorneys

3    requesting proper notice of termination and

4    charges?

5       A.   Probably got it.  I don't recall.

6       Q.   You didn't respond to it, do you

7    recall why?

8       A.   Probably gave it to the Village

9    Manager or our attorney.

10      Q.   And at that point that would have been

11   Odelson & Sterk?

12      A.   I don't know who it was at that point.

13   Probably was them.

14      Q.   Would the Village Manager have been

15   Bola Delano?

16      A.   Was she still there?  I'm not sure if

17   she was even still there.  Her time was short

18   term.  We would have to look back in the

19   records for that and see who was the Village

20   Manager.

21      Q.   Is it correct that several weeks

22   before Chief Bradley was fired that you

23   received a file containing material concerning

24   criminal investigations of felony theft of

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 39

1   Village property?

2        A.   Pardon me?

3        Q.   Did you receive --

4        A.   No.

5        Q.   -- an envelope with such material in

6   it?

7        A.   No.  Who did I get that from?

8        Q.   So you don't recall any investigation,

9   any file suggesting there was an investigation

10  at all, is that correct?

11       A.   No, I don't.

12       Q.   Do you know a person named Irma

13  Holloway?

14       A.   No, of the firm IRH.

15       Q.   What does that stand for?

16       A.   What is the name -- I forgot what the

17  acronym means.  I have to go back in the files

18  and see what the acronym means.

19       Q.   Do you presently have any kind of

20  relationship with her?

21       A.   No, I don't.

22       Q.   In the past she provided certain

23  services to the Village while you were Mayor?

24       A.   Yes.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 40

1      Q.   Okay.  What was she supposed to be

2   doing?

3      A.   Her firm was supposed to be doing some

4   type of auditing, accounting for the firm, for

5   the Village.

6      Q.   Were you the Mayor when she was first

7   hired to do this work for the Village?

8      A.   Yes, I was.

9      Q.   Okay.  Have you ever taken vacations

10   with her?

11      A.   Excuse me.

12      Q.   Have you ever taken vacations with

13   her?

14      A.   No.  I didn't know her personally.

15      Q.   Okay.

16      A.   I didn't even hire her.

17      Q.   Do you recall how many contracts you

18   signed with the Village while you were mayor?

19      A.   I think there was one, I'm not sure,

20   she was brought on by the previous Mayor, which

21   was Johnna Thompson.

22      Q.   Johnna?

23      A.   J O N N A?

24      A.   Yes. J O H N N A.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 41

1      Q.   Okay.  And those -- you described the

2   services as being auditing and accounting

3   services, is that correct?

4      A.   Yes, that's what they said they were.

5      Q.   Okay.  IRH or Ms. Holloway were paid

6   under the contracts?

7      A.   I know it was an astronomical amount,

8   close to 5 or $600,000.

9      Q.   Would it be fair to say the Village

10  was millions of dollars in the red at that

11  time?

12     A.   I don't know how, we were in the

13  negative, yes.

14     Q.   You were in the negative?

15     A.   The Village was, yes.  When I came on

16  board the Village was in the negative.

17     Q.   Have you ever filed any paperwork or

18  documentation with the Board of Fire & Police

19  Commissioners of University Park since you

20  terminated Chief Bradley?

21     A.   Have I filed any paperwork with them?

22     Q.   Yes.

23     A.   Such as what are you referring to?

24  No, I've never filed any paperwork.  What are

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 42

1   you referring to?  What type of paperwork?

2   What do you mean?

3        Q.   Presenting either giving charges for

4   somebody, a notice of charges?

5        A.   No.

6        Q.   Notice of hearing?

7        A.   No.

8             MR. LANZITO:   Let him finish his

9   question.

10  BY MR. MORAN:

11       Q.   When you were Mayor were you given a

12  laptop computer by the Village?

13       A.   Yes.

14       Q.   Was that every taken by the FBI?

15       A.   They went to the office, yes, and got

16  it.

17       Q.   Did you ever have occasion to tell the

18  Will County Sheriff that someone was trying to

19  injure you or kill you?

20       A.   Excuse me.  I don't see the relevance.

21            MR. LANZITO:   John, what is this in

22  relation to, for the record?

23            MR. MORAN:   For the record, it goes

24  to the witness' credibility.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 43

1           MR. LANZITO:   Whether or not she got

2    an order of protection against a person.

3           MR. MORAN:   No, I asked whether she

4    called the Will County Sheriff's Office to tell

5    them that someone was trying to kill her?  Yes

6    or no?

7           MR. LANZITO:   You can answer, Vivian.

8           THE WITNESS:  No, I did not call Will

9    County and say somebody was trying to kill me.

10   BY MR. MORAN:

11       Q.   Okay.  Did you make a similar

12   complaint to the University Park Police

13   Department?

14          MR. LANZITO:   Objection to the form

15   of the question.  You can answer.

16          THE WITNESS:  Call the police

17   department and ask them and report that

18   somebody was trying to kill me?

19   BY MR. MORAN:

20       Q.   That you were being threatened, yes?

21       A.   No, I called Will County.  I did not

22   call University Park.

23       Q.   When you called Will County, what did

24   you tell them?

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 44

1        A.    They were there on the scene.

2        Q.    The scene where this happened, this

3    threat?

4        A.    Yes.

5        Q.    Okay.  Did the threat take place in

6    University Park?

7        A.    Yes.

8        Q.    Did it take place in the context of

9    your official duties?

10       A.    Yes.

11       Q.    And who was the person who was making

12   the threat?

13       A.    I don't see the relevance of this.

14             MR. LANZITO:   You can answer, Vivian.

15             THE WITNESS:  Mildred Morgan. Yes, I

16   had a restraining order.

17   BY MR. MORAN:

18       Q.    I see.  Okay.  Do you live in the Will

19   County part of University Park?

20       A.    Yes, I do.

21       Q.    Okay.  Now, were you ever a trustee on

22   the University Park Board of Trustees?

23             MR. LANZITO:   Objection, asked and

24   answered.  You can answer again.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 45

```
 1              THE WITNESS:  Yes.
 2   BY MR. MORAN:
 3       Q.   Okay.  How many years were you a
 4   trustee?
 5       A.   Eight years.
 6       Q.   And you were Mayor eight years, is
 7   that correct?
 8       A.   Correct.
 9       Q.   Did -- who was the chairman of the
10   Fire & Police Commission in 2015 when you were
11   last Mayor?
12       A.   It was Mr. Brooks.
13       Q.   Is that Joseph Brooks?
14       A.   Theaplise Brooks.
15       Q.   Theaplise.  Okay.  Have you ever heard
16   of a whistleblower?
17       A.   Yes, I have.
18       Q.   Do you know what a whistleblower is?
19       A.   Yes, I do.
20       Q.   And what is a whistleblower?
21       A.   Someone that shares information for
22   anything that's fraudulently done or they see
23   some theft being done on their job they can
24   report it, a whistleblower.
```

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 46

1     Q.   Okay.  Do you own a business?

2     A.   No, I do not.

3     Q.   Do you chair or are you a part of a

4  nonprofit?

5         MR. LANZITO:  You can answer.

6         THE WITNESS: Do I chair -- what?  I'm

7  sorry, a business, no, I don't chair a

8  business.

9  BY MR. MORAN:

10     Q.   Do you have a chair or any position

11  with a nonprofit?

12     A.   That would be the Democratic Women.

13     Q.   If it is nonprofit?

14     A.   Yes.

15     Q.   Okay.

16     A.   Yes.

17     Q.   Is there somebody else there, you keep

18  looking over to you right?

19     A.   I'm looking in my mirror.

20     Q.   Did you recall asking Lafayette Linear

21  to fire Chief Bradley?

22     A.   I don't recall that.

23     Q.   Would anything refresh your

24  recollection?

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)       94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 47

```
 1        A.   No.
 2        Q.   Okay.  What -- in your mind what are
 3   the duties of the Fire & Police Commission?
 4        A.   What they do is to interview incoming
 5   officers, recruit officers, discipline officers
 6   and firemen.  Only officers, police officers
 7   and firemen officers, firemen.
 8        Q.   What is the chair of that commission,
 9   what is their responsibility or duty?
10        A.   To oversee the committee to make sure
11   that they have their modules taken, and they
12   take their modules and learning as far as
13   education of what their duties are.
14        Q.   What are modules?
15        A.   Training, state required.
16        Q.   Got you.
17        A.   Uh-uh.
18        Q.   And what is the duty of the Village
19   Manager then?
20        A.   The Village Manager does the
21   day-to-day process.  They are over all of the
22   directors and the chiefs of the Village and
23   they do the day-to-day processing, discipline,
24   they are supposed to respond to the residents
```

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 48

1    and bring deliveries to the Board, contracts to

2    the Board, any negotiations, any interests,

3    economic interests or any development, they are

4    suppose to do that.

5        Q.   I see.  So other than the Police and

6    Fire Departments, hiring and firing for the

7    Village is done through the Village Manager?

8        A.   Yes. I think I gave you that

9    reference, that ordinance, yes, 2205.

10       Q.   Yes.

11       A.   Okay.

12       Q.   Is there a disciplinary process for

13   sworn personnel in the police department?

14            MR. LANZITO:   Objection, vague.  You

15   may answer.

16            THE WITNESS:  I'm not aware of it.

17   BY MR. MORAN:

18       Q.   Not really.

19       A.   You said the discipline of the

20   officers?

21       Q.   Well, you have sworn officers in the

22   police department?

23       A.   Uh-uh.

24       Q.   Is there -- I'm asking you what the

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 49

1    disciplinary process is for those people who

2    are sworn?

3        A.    I'm not aware.

4        Q.    If you know.  If you know, if you

5    don't know you don't know.

6        A.    I don't know.

7        Q.    Okay.  What is a breach of contract in

8    your -- to you?

9            MR. LANZITO:    Objection, calls for a

10    legal conclusion.  You can answer if you know

11    as a lay person.

12            THE WITNESS:  I don't know.

13    BY MR. MORAN:

14        Q.    Okay.  Who do you have your home

15    insurance with?

16            MR. LANZITO:    You can answer?

17            THE WITNESS:  Who do I have my home

18    insurance with?

19            MR. LANZITO:    Objection, foundation.

20    When?

21            MR. MORAN:    Presently.

22            THE WITNESS:  Liberty.  Can I ask a

23    question?

24            MR. LANZITO:    No, he asks the

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 50

1    questions, Vivian.

2              THE WITNESS:  Okay.

3    BY MR. MORAN:

4         Q.   Okay.  Did the FBI ever return your

5    laptop computer?

6         A.   Yes, they did.

7         Q.   How long did they have it?

8         A.   I wasn't on site when they did it,

9    they came and got it.  I think they said maybe

10   an hour, but I wasn't there.  They took it from

11   the office.

12        Q.   But it was away from you for at least

13   an hour?

14        A.   From the office, yes.

15        Q.   Yes.

16        A.   Or more.  I'm not sure how long

17   exactly, I think maybe an hour.

18        Q.   Got you.

19        A.   Uh-uh.

20        Q.   Have you ever been arrested or

21   convicted of a crime?

22        A.   No.

23        Q.   Okay.  Arrest would include anything,

24   just so you know, traffic or that sort of

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 51

1    thing?

2          A.    No, never got a ticket in my life.

3          Q.    Okay.  Hang on one second here.

4                Did the Board give any specific

5    reason for the termination of Mel Davis, do you

6    recall?

7          A.    I don't recall it.  It was something,

8    I don't know, I can't recall the details of it

9    to be honest.

10         Q.    But you would have to look at the

11   notes of that meeting?

12         A.    I would have to.

13         Q.    And those would be the notes of the

14   Board of Fire & Police Commission, the minutes?

15         A.    Not the fire and police.

16         Q.    The Board of Trustees?

17         A.    It was the Village Manager and the

18   Board and then he brought it to the Board of

19   Trustees.

20         Q.    And your recollection it was probably

21   or likely Mr. Lanier who brought that to the

22   Board of Trustees?

23         A.    Yes, most likely.

24         Q.    Now, before Mr. Bradley was

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 52

1    terminated, did you personally give him an

2    opportunity to be heard regarding his

3    termination?

4            MR. LANZITO:   Objection, asked and

5    answered.  You can answer again.

6            THE WITNESS:  I didn't deal with that,

7    that is the Village Manager.

8    BY MR. MORAN:

9        Q.   So post or pre-termination none of

10   that would have gone through your -- would have

11   gone through you personally, is that what your

12   testimony is?

13       A.   Correct.

14       Q.   Okay.  Is there anything that would

15   refresh your recollection regarding pre or

16   post-termination actions?

17       A.   Only the minutes.

18       Q.   That again would be the minutes of the

19   Board of Trustees?

20       A.   Right.  Right. Yes.

21           MR. MORAN:  Okay.  Hang on one second

22   and then we will be concluding.

23           MR. LANZITO:   Take five minutes.

24           MR. MORAN:   Yes, let's take five.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 53

1                    (Recess.)

2    BY MR. MORAN:

3         Q.   Okay.  I just have three questions,

4    okay, Ms. Covington.

5         A.   Yes.

6         Q.   When the FBI took the computer, did

7    they tell anybody why they took it, did they

8    ever tell you?

9         A.   No, they didn't talk to me about it.

10   I think they might have talked to the Village

11   Manager.

12        Q.   Who was the Village Manager then?

13        A.   I think it was Johnna Townsend.

14        Q.   Johnna Townsend.  I see.

15             But they returned the computer at

16   some point the same day, is that right?

17        A.   That's what I was told, yes.

18        Q.   And did they tell you whether or

19   not -- did you ever tell you if they resolved

20   any investigation or whatever they were doing?

21        A.   I have no knowledge.  I'm sorry.  I

22   have no knowledge of that.

23        Q.   Okay.  Now, you mentioned a few times

24   that the Board of Trustees minutes would reveal

Siebert & Associates Court Reporters, Inc.

Page 54

1    certain information, what we are talking about

2    the discipline such as Mel Davis, would that be

3    a closed or open-door meeting?

4         A.   I'm sure it would be an executive

5    session, if we had discipline it was always

6    executive.

7         Q.   I didn't hear the rest.

8         A.   I'm sorry.  That's all I said.  It was

9    an executive session.

10        Q.   So that's a closed season basically?

11        A.   Yes.

12        Q.   Do you get copies of those minutes as

13   Mayor?

14        A.   No, because that has to be reviewed

15   and brought up by the clerk and every six

16   months she is supposed to bring up the

17   executive sessions for the Board to vote on,

18   but we never did.  She never did bring that up.

19        Q.   Okay.  So you don't have any of these

20   minutes we are talking about?

21        A.   No, sir.  I definitely don't have them

22   now.

23        Q.   Okay.  Do you know who would have

24   them?

cmsreporters@comcast.net

```
                                                  Page 55

 1      A.   The clerk.

 2      Q.   So the Village clerk, whoever that is.

 3   Who is the Village clerk now?

 4      A.   Ms. Dee Jones has been there for 20

 5   years.  Dolores, yes.  Dolores Jones.  She

 6   references her name as Dee, D E E.

 7      Q.   Got you.  Ms. Covington, did you

 8   personally tell Eddie Bradley not to come to

 9   the village hall after he had been terminated?

10      A.   No.

11      Q.   So you never told him to stay away

12   from Village functions after his termination?

13      A.   No, didn't see him.  Didn't see him.

14           MR. MORAN:  Okay.  Okay.  I don't have

15   any further questions right now.

16           MR. LANZITO:   We will reserve

17   signature.

18

19           MR. MORAN:  Okay.  Thanks.

20                  (Deposition was concluded at

21                   12:00 P.M.)

22                   -O-o-O-

23

24
```

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 56

1    STATE OF ILLINOIS  )

2                       )  SS:

3       COUNTY OF COOK  )

4              The within and foregoing deposition

5    of the aforementioned witness was taken before

6    Carol M. Siebert-LaMonica, C.S.R, at the place,

7    date and time aforementioned.

8              There were present during the taking

9    of the deposition the previously named counsel.

10             The said witness was first duly sworn

11   and was then examined upon oral interrogatories;

12   the questions and answers were reported in

13   shorthand by the undersigned and transcribed

14   via computer-aided transcription.

15             The within and foregoing is a true,

16   accurate and complete record of all of the

17   questions asked of and answers made by the

18   forementioned witness at the time and place

19   hereinabove referred to.

20                 The signature of the witness was

21   not waived and the deposition was submitted

22   pursuant to Rules 207 and 211 (d) of the Rules

23   of the Supreme Court of Illinois to the

24   deponent per copy of the attached letter.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 57

1          The undersigned is not interested in

2     the within case, nor of kin or counsel to any

3     of the parties.

4          Witness my official signature in and

5     for Cook County Illinois on March 8, 2021.

6

7

8               Carol M. Siebert-LaMonica

9               C.S.R. No. 084.001355

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 58

C O R R E C T I O N   P A G E

I made the following changes for the

following reasons:

PAGE LINE  CHANGE:

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON: _____

_____ _____  _____

              REASON:

       (Signed)_____

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 59

WITNESS CERTIFICATION


            I hereby certify that I
have read the foregoing transcript of my
deposition consisting of Pages 1 through 62,
inclusive.  Subject to the changes set forth on
the preceding pages, the foregoing is a true
and correct transcript of my deposition taken
on July 24, 2020.



            (Signed) _____




SUBSCRIBED AND SWORN TO
Before me this __ day of
_____,2021.



_____


Notary Public

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 60

SIEBERT & ASSOCIATES COURT REPORTERS, INC.

507 West 28th Place

Chicago, IL  60614

March 8, 2021

PETERSON, JOHNSON & MURRAY CHICAGO

MR. DOMINICK LANZITO

200 West Adams, Suite 2125

Chicago, IL  60606

(Danzito@pjmchicago.com)

Re:  BRADLEY V VILLAGE OF UNIVERSITY PARK

Dep:  VIVIAN COVINGTON

Dear MR. LANZITO:

The deposition testimony given on

July 24, 2020 in the above captioned case has

been transcribed, and inasmuch as signature was

not waived, this is to advise that the

deposition will be available in our office for

30 days for reading and signing.

If you choose to read and sign the

deposition at our offices, please call the

undersigned for an appointment.  Our office

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 61

hours are from 9:00 a.m. to 4:00 p.m., Monday

thru Friday.

If you choose to make other

arrangements for the reading and signing of the

deposition, please advise us of the

arrangements you have made in writing with 30

days from the date of this letter.

Sincerely yours,

Carol M. Siebert-LaMonica

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 62

I N D E X

Witness:

Examination

VIVIAN COVINGTON

Mr. Moran                                          5

E X H I B I T S

Number                                        Page

No. 1-10                                        9

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

## A

**a.m** 1:13 61:6
**able** 36:1
**abruptly** 30:19
**accounting** 40:4
  41:2
**accurate** 56:16
**acknowledge** 5:6
**acronym** 14:6
  39:17,18
**action** 14:1,15
  14:17
**actions** 52:16
**Adams** 3:3 60:9
**additional** 14:18
**address** 29:13
  36:2
**addressed** 13:6
**administrative**
  25:3
**advance** 4:21
**advise** 60:19
  61:14
**Affairs** 6:1,9
**affirmative** 16:7
**afforded** 11:13
  14:12
**aforementioned**
  56:5,7
**agree** 11:10
**agreed** 4:7
**al** 1:8 4:4
**Amended** 4:6
**amount** 41:7
**answer** 13:17
  15:2 16:1,6
  21:8 23:6,13
  24:22 25:13
  28:15 32:17
  33:6,23 34:8
  34:10 37:21
  43:7,15 44:14
  44:24 46:5
  48:15 49:10,16
  52:5
**answered** 37:21

44:24 52:5
**answers** 4:20
  56:12,17
**anybody** 53:7
**apparently** 11:3
  11:9 13:4 19:5
  21:19
**APPEARAN...**
  2:1
**Appeared** 2:13
  3:6
**appears** 18:20
  19:7
**APPELLATE**
  2:8
**appointed** 7:7
**appointment**
  60:24
**approve** 17:15
**approved** 18:10
**approximately**
  7:3
**April** 26:8
**area** 31:17
**arrangements**
  61:12,16
**Arrest** 50:23
**arrested** 50:20
**asked** 23:10
  37:20 43:3
  44:23 52:4
  56:17
**asking** 11:22
  24:13 46:20
  48:24
**asks** 49:24
**ASSOCIATES**
  60:1
**assuming** 14:20
**astronomical**
  41:7
**attach** 4:24 8:10
**attached** 4:19
  8:21,23 15:24
  56:24
**attend** 36:19

**attended** 31:9
**attorney** 16:3
  38:9
**attorneys** 26:10
  38:2
**auditing** 40:4
  41:2
**authorization**
  11:4
**available** 60:20
**aware** 23:17,24
  48:16 49:3
**awhile** 21:2 36:9

## B

**B** 29:7 62:19
**back** 23:11
  30:22,22 31:3
  37:4 38:18
  39:17
**Barely** 12:15
**Based** 14:14
**basically** 54:10
**behalf** 2:13 3:6
**believe** 8:21
**bit** 5:20
**board** 10:23
  13:7 14:1,15
  16:20,21,23
  17:17,24 18:4
  20:18 22:14
  25:18,22 27:4
  29:24 33:1
  35:4,5 36:1,2,2
  36:11,15 37:7
  37:10 41:16,18
  44:22 48:1,2
  51:4,14,16,18
  51:18,22 52:19
  53:24 54:17
**bodies** 7:8
**Bola** 22:2 28:23
  28:24 29:1
  38:15
**Bradley** 1:4 3:9
  4:3 8:7 11:4,8

13:15 17:9,22
  19:5,9,21,23
  20:3,8,17,23
  22:7,14,18,21
  23:2,10 24:16
  25:3 28:11
  33:16 34:15
  36:15,20 37:8
  38:22 41:20
  46:21 51:24
  55:8 60:12
**Bradley's** 37:11
  38:2
**breach** 49:7
**Brent** 8:6
**bring** 4:16 17:16
  48:1 54:16,18
**Brooks** 45:12,13
  45:14
**brought** 40:20
  51:18,21 54:15
**Brown** 8:11,14
  8:15,16 9:22
  12:9 13:14
**built** 7:3
**business** 46:1,7
  46:8

## C

**C** 5:18 58:1,1
**C.S.R** 1:16 56:6
  57:9
**call** 25:23 43:8
  43:16,22 60:23
**called** 5:10
  36:24 43:4,21
  43:23
**calls** 21:7 24:21
  25:6 49:9
**captioned** 60:17
**Carol** 1:15 56:6
  57:8 61:23
**case** 4:3,4 15:1,3
  15:15 24:17
  27:7 57:2
  60:17

**cause** 19:18 21:4
  30:6
**certain** 34:3
  39:22 54:1
**CERTIFICA...**
  59:1
**certify** 59:4
**chair** 37:3 46:3
  46:6,7,10 47:8
**chairman** 45:9
**chance** 10:10
**CHANGE** 58:4
**changes** 16:6
  58:2 59:7
**charged** 28:11
**charges** 20:24
  21:6 22:8 38:4
  42:3,4
**check** 20:9 35:8
  35:18 36:7
**Chicago** 2:5,11
  3:1,4 60:3,7,10
**chief** 17:10
  19:10,12 22:11
  23:11 34:15
  35:21 36:14
  37:8,12,15
  38:22 41:20
  46:21
**chiefs** 47:22
**choose** 60:22
  61:10
**chose** 19:17
**CHRISTOPH...**
  2:9
**circumvented**
  14:8
**Ckeleher@ap...**
  2:12
**classes** 31:10,14
**clause** 21:15,20
**clerk** 54:15 55:1
  55:2,3
**clerk's** 14:7
**close** 27:2 41:8
**closed** 54:3,10

Siebert & Associates Court Reporters, Inc.

codified 18:8
combined 15:2
come 23:10
  30:22,22 36:1
  55:8
commission
  45:10 47:3,8
  51:14
Commissioners
  41:19
commissions 7:8
committed 23:3
committee 13:3
  37:4 47:10
complaint 4:19
  8:7,21,24 15:1
  15:23 43:12
complete 56:16
complied 22:4
computer 42:12
  50:5 53:6,15
computer-aided
  56:14
concerning 36:2
  38:23
concluded 55:20
concluding
  52:22
conclusion
  11:11 21:8
  24:22 25:7
  49:10
conduct 23:3
conferred 11:12
consecutive 7:21
  7:23
consider 14:2
consisting 59:6
containing
  38:23
context 44:8
contract 5:4
  11:11 17:9,22
  18:16,19 19:16
  19:18 20:2
  21:3,17 22:4

27:18,19 28:12
33:4,16 34:21
34:23 35:17
49:7
contracts 33:4
33:10,13 40:17
41:6 48:1
convicted 50:21
Cook 1:17 56:3
57:5
copies 54:12
copy 14:24 15:1
56:24
correct 4:11,12
7:11 10:21,24
11:5 13:8
14:22 17:3,10
17:23 19:6,9
24:3 25:10,19
27:16 28:3
31:6 32:3,22
36:21 38:21
39:10 41:3
45:7,8 52:13
59:9
counsel 4:13
8:18 56:9 57:2
count 34:5
County 1:17
42:18 43:4,9
43:21,23 44:19
56:3 57:5
couple 12:5
court 1:1,14
9:12 16:9
21:13 29:5
56:23 60:1
covers 34:6
Covington 1:12
4:2 5:9,15,17
5:24 9:16
18:16 31:3
53:4 55:7
60:13 62:11
credibility 42:24
crime 50:21

criminal 23:3
38:24
current 32:21
Currently 6:21
CV 4:4

—— D ——
d 29:7 37:5 55:6
56:22 62:6
damages 24:17
Danzito@pjm...
3:5 60:11
date 11:24 18:24
19:3 26:3,3
36:17 56:7
61:18
dated 10:6 18:23
19:2
Davis 34:14,17
34:21 35:7,21
35:24 51:5
54:2
day 53:16 59:18
day-to-day
21:23 22:9
47:21,23
days 21:6 60:21
61:18
deal 52:6
Dear 60:15
December 15:11
15:14
decision 19:22
declared 20:2
Dee 55:4,6
defamation 34:5
defendants 1:9
3:6
defendants' 4:13
defenses 16:7
define 30:12
definitely 54:21
Delano 22:2
28:24 29:1,11
38:15
deliveries 48:1

Democratic
46:12
Dep 60:13
department 6:1
6:9 43:13,17
48:13,22
departments
17:14 48:6
deponent 56:24
deposed 27:7
deposition 1:11
4:2,6,7,8,16,17
4:21 8:2 9:13
55:20 56:4,9
56:21 59:6,9
60:16,20,23
61:14
described 41:1
details 51:8
determination
14:13
development
48:3
different 31:24
32:10
directors 47:22
disciplinary
48:12 49:1
discipline 31:16
47:5,23 48:19
54:2,5
District 1:1,2,14
1:15
DIVISION 1:3
document 9:18
15:14
documentation
41:18
documents 4:17
4:20 8:2,5 18:8
doing 40:2,3
53:20
dollars 41:10
Dolores 55:5,5
Dominick 3:2
4:13 15:21

30:16 60:8
doubts 18:21
due 13:23 14:12
duly 5:11 56:10
duties 11:12
14:7 17:13
44:9 47:3,13
duty 47:9,18

—— E ——
E 5:13,17 6:2
29:7 37:5 55:6
55:6 58:1,1
62:6,19
EASTERN 1:3
economic 48:3
Ed 20:23 28:11
Eddie 1:4 3:9
17:9 24:16
33:16 34:15
36:20 37:7,11
38:2 55:8
education 47:13
eight 45:5,6
either 42:3
election 27:17
elective 7:5 24:9
emergency
36:15,20
employee 31:10
31:14 33:3
employees 23:10
employment
20:4 21:17
31:16 32:21
envelope 39:5
equal 19:22
et 1:8 4:4
everybody 12:17
24:7
exactly 31:7
50:17
Examination
62:9
examined 5:11
56:11

cmsreporters@comcast.net

excuse 22:22
    33:21 40:11
    42:20
executive 54:4,6
    54:9,17
exhaust 25:4
exhibit 9:10,11
    9:13,17 10:3,7
    12:8 15:18
    18:11,14
exhibits 4:23 5:2
    8:10,22 15:23
expired 27:23
    28:1,2

**F**

failed 24:16 25:3
fair 41:9
familiar 12:21
    32:24 33:3
    35:11
far 28:16 47:12
FBI 42:14 50:4
    53:6
federal 6:13
    23:18,22 24:4
    32:21
fee 19:22 20:1
feel 23:2
Felicia 26:17
felony 38:24
file 38:23 39:9
filed 15:11 41:17
    41:21,24
files 39:17
final 16:18
financing 24:5
find 15:7 37:1
fine 30:20
finish 42:8
fire 28:3 41:18
    45:10 46:21
    47:3 48:6
    51:14,15
fired 22:19
    27:24 34:17

35:2,4 38:22
firemen 47:6,7,7
firing 48:6
firm 39:14 40:3
    40:4
first 5:10 9:6
    19:1 29:6 40:6
    56:10
five 30:17 52:23
    52:24
flipping 26:14
    27:4
follow-up 29:10
followed 20:15
following 14:2
    58:2,3
follows 5:12
foregoing 56:4
    56:15 59:5,8
forementioned
    56:18
forgot 39:16
form 24:21 25:7
    25:9 28:14
    33:6 43:14
forth 21:5 59:7
found 29:12
foundation
    23:12 49:19
four 19:23
fraudulently
    45:22
Frazier 26:17
Friday 1:13 61:8
frivolous 30:5,6
fulfilled 21:21
full 5:4
functions 55:12
further 19:8
    55:15
furthermore
    14:7,17

**G**

G 5:18 58:1
give 9:19 35:7,9

35:12 51:4
    52:1
given 14:3 20:8
    20:18 22:18,21
    22:22 36:6
    42:11 60:16
giving 28:10
    42:3
glanced 15:4
go 6:19,21 8:4
    18:18 28:7
    39:17
God 6:17 11:22
    26:11
goes 42:23
going 4:24 5:19
    9:9
good 18:15
governing 7:8
government
    6:13 17:19
    25:10,15 33:17
Great 12:18
GROUP 2:2,8

**H**

H 6:2 40:24
    62:19
hall 55:9
handed 30:9,9
handles 21:22
Hang 6:4 51:3
    52:21
happened 44:2
hear 25:20,22
    54:7
heard 22:19
    23:16 45:15
    52:2
hearing 20:23
    21:6 22:15
    42:6
heavy 30:4,8,8,9
held 14:16
hereinabove
    56:19

Hi 31:5
Hines 6:1,22
hire 17:16 36:20
    40:16
hired 19:11
    36:15 40:7
hiring 48:6
hold 24:9
holding 7:4
Holloway 39:13
    41:5
home 7:2 33:20
    33:22 49:14,17
homeowner's
    34:6,9
honest 51:9
hopefully 5:21
hour 50:10,13
    50:17
hours 61:6
HR 11:19

**I**

IL 2:5,11 3:4
    60:3,10
Illinois 1:2,15,17
    6:2,22 14:6
    56:1,23 57:5
imposed 11:12
inasmuch 60:18
include 50:23
inclusive 59:7
incoming 47:4
indicated 28:22
Indicating 15:6
individual 34:14
individually
    16:20
information
    45:21 54:1
injure 42:19
insurance 33:19
    33:22 34:3,6,9
    49:15,18
interest 13:16,24
    14:11

interested 57:1
interests 48:2,3
interrogatories
    4:20 56:11
interview 47:4
interviewing
    17:12
investigation
    23:19,22 24:2
    24:2,4,6,7 39:8
    39:9 53:20
investigations
    38:24
involving 27:7
IRH 39:14 41:5
Irma 39:12
issue 25:23

**J**

J 40:23,24
J.t.m.moran...
    2:6
Jackson 10:3
    11:18
job 13:24 14:11
    16:14 22:5,5,6
    22:20 45:23
John 2:3 9:10
    12:10 16:9
    42:21
Johnna 40:21,22
    53:13,14
JOHNSON 3:1
    60:7
Jones 55:4,5
Joseph 37:5
    45:13
July 1:13 59:10
    60:17
June 10:6,24
    11:21 12:5,6
    26:8

**K**

keep 13:11
    46:17

Siebert & Associates Court Reporters, Inc.

**KELEHER** 2:8
2:9
**kept** 26:14
**kill** 42:19 43:5,9
43:18
**kin** 57:2
**kind** 31:15
33:17 39:19
**know** 4:15 10:9
13:3 20:7,11
20:17,22 21:20
22:3,7,13 23:9
23:14 24:1
27:2 29:13,21
30:2,10 35:3
35:10,15,20,24
38:12 39:12
40:14 41:7,12
45:18 49:4,4,5
49:5,6,10,12
50:24 51:8
54:23
**knowledge**
24:15,24 25:2
53:21,22

**L**

**L** 29:7,7
**Lafayette** 27:7
27:10 35:22
46:20
**Lake** 2:4
**language** 33:4
**Lanier** 28:3
29:22 51:21
**Lanzito** 3:2 4:12
4:13,15,23 5:4
5:6 8:20 9:1,5
9:9,21,24 10:2
10:6 11:14
12:10,14,16
13:11 15:7,11
15:16,19,22
16:8 18:11,15
21:7 23:5,12
24:21 25:6,11

28:14 29:4,8
30:20,24 32:17
33:6,23 34:2,8
37:20 42:8,21
43:1,7,14
44:14,23 46:5
48:14 49:9,16
49:19,24 52:4
52:23 55:16
60:8,15
**laptop** 42:12
50:5
**LaSalle** 2:10
**LAW** 2:2,8
**lay** 49:11
**learning** 47:12
**left** 10:19
**legal** 17:3 21:8
24:22 25:6
49:10
**legislation** 14:6
16:16
**legislative** 7:8
13:2
**Legislature**
36:24
**let's** 52:24
**letter** 8:6,11
9:23 10:3,10
10:15,19 11:2
11:3,7,7,11
12:9,21 13:6
13:19,20,21
38:2 56:24
61:18
**letterhead** 10:19
**letterheads**
10:20
**letters** 5:3 8:7,8
8:9,13
**liability** 14:18
**liable** 14:16
**Liberty** 49:22
**life** 51:2
**LINE** 58:4
**Linear** 14:10

27:7,10 35:22
46:20
**Linear's** 13:24
**Lists** 10:21
**little** 5:20
**live** 6:23 29:14
44:18
**lived** 7:1
**LLC** 2:8
**local** 14:8
**login** 4:10
**long** 6:11,15 7:1
11:20,24 29:21
50:7,16
**longer** 5:20
18:12
**look** 8:5 9:7,16
12:8 38:18
51:10
**looking** 9:5
46:18,19
**lost** 20:3
**lot** 11:23 13:1
32:7

**M**

**M** 1:15 5:13
56:6 57:8
61:23
**maker** 16:18
**making** 16:16,17
17:3 44:11
**Manager** 14:11
17:1,11,15
18:3 20:10
21:22,24 22:12
22:17 27:14
28:17,19 29:1
29:20,22,23
35:19,20 38:9
38:14,20 47:19
47:20 48:7
51:17 52:7
53:11,12
**Manager's**
22:20

**managerial**
33:17
**managerial-ty...**
17:19 25:15
**Managers** 31:23
**March** 57:5 60:5
**marked** 9:10,17
**material** 5:20
38:23 39:5
**Maxine** 10:3
11:18
**mayor** 7:12,18
10:21 16:15,19
17:20 25:19,23
26:2 31:11,15
31:18 34:19
39:23 40:6,18
40:20 42:11
45:6,11 54:13
**Mayors** 31:23
**mean** 17:13 30:8
42:2
**means** 39:17,18
**media** 14:4
**meeting** 13:23
36:2,15 37:7
37:11 51:11
54:3
**meetings** 36:20
36:23
**Mel** 34:14,17,21
35:7,21,24
51:5 54:2
**member** 32:12
**members** 13:8
**mentioned**
53:23
**Mildred** 44:15
**millions** 41:10
**mind** 47:2
**minute** 6:4 9:19
**minutes** 18:5
30:17 37:23
51:14 52:17,18
52:23 53:24
54:12,20

**mirror** 46:19
**mischaracteri...**
25:12
**mitigate** 24:17
**modules** 47:11
47:12,14
**Monday** 61:6
**months** 19:23
54:16
**moot** 24:8
**Moran** 2:2,3 4:1
4:14,22 5:1,5,7
5:14 6:3,7 8:23
9:4,7,11,15,22
10:1,4,8,9,12
11:16 12:13,20
13:13 15:10,13
15:18 16:1,10
16:13 18:13,17
21:11 23:8,15
25:1,8,17
28:21 29:9
30:16 31:2
32:19 33:8
34:4,13 37:24
42:10,23 43:3
43:10,19 44:17
45:2 46:9
48:17 49:13,21
50:3 52:8,21
52:24 53:2
55:14,19 62:15
**Morgan** 44:15
**morning** 5:2
36:16
**move** 12:16
**Muller** 26:19,24
**municipalities**
24:10
**MURRAY** 3:1
60:7
**mute** 30:21

**N**

**N** 5:13,13,18,18
6:2 29:7 40:23

cmsreporters@comcast.net

40:23,24,24
58:1 62:6
**name** 5:15 10:18
10:20 16:2,3
18:1 27:9
28:23 29:6
39:16 55:6
**named** 34:14
39:12 56:9
**names** 10:23
**naturally** 17:4
**negative** 41:13
41:14,16
**negotiated** 33:12
**negotiating**
33:10
**negotiations**
33:15 35:10
48:2
**never** 41:24 51:2
54:18,18 55:11
**news** 14:4
**No.15-cv-08489**
1:6
**nonprofit** 46:4
46:11,13
**Nope** 33:14
**normally** 19:2
36:23
**Northern** 1:2,15
**Notary** 59:24
**notes** 30:18
51:11,13
**notice** 1:18 4:6
4:15 8:14 14:3
20:7,24 21:5
22:8 28:10
38:3 42:4,6
**notify** 19:21
**number** 9:10,11
15:15,15,16
62:21

**O**

**O** 5:13,18,18
29:7,7 37:5

40:23,24 58:1
58:1
**O-o-O-** 55:22
**oath** 1:12 31:6
**Objection** 11:14
21:7 23:5,12
24:21 25:11
28:14 37:20
43:14 44:23
48:14 49:9,19
52:4
**occasion** 8:1
17:8 42:17
**Odelson** 26:13
26:16,18,21
27:1 38:11
**offer** 32:4
**office** 7:5 14:7
24:10 26:6
42:15 43:4
50:11,14 60:20
60:24
**officers** 17:14
47:5,5,5,6,6,7
48:20,21
**offices** 60:23
**official** 37:7 44:9
57:4
**oh** 6:17 11:22
24:14 25:21
26:11,18 28:2
28:16
**okay** 4:22 5:1,7
6:11,15,23 7:1
7:4,17,21 8:18
9:16 10:13,14
10:15 11:2,10
11:17,20 12:2
12:19 13:6,14
14:20,24 15:5
15:7 16:14
17:6,21 18:6
18:15,18 19:5
19:8,12,15
20:7,13,17
21:12,16,20

22:13,21 23:9
23:18 24:15
25:18,22 26:5
26:8,19 27:6,9
27:19 28:2,7
29:10,21 30:13
30:16,20,23
31:8,21 32:2,6
32:9,14,16,20
32:24 33:3,12
33:19 35:7,12
35:15,24 36:14
36:19 37:16
38:1 40:1,9,15
41:1,5 43:11
44:5,18,21
45:3,15 46:1
46:15 47:2
48:11 49:7,14
50:2,4,23 51:3
52:14,21 53:3
53:4,23 54:19
54:23 55:14,14
55:19
**once** 18:7
**open-door** 54:3
**opportunities**
20:4
**opportunity**
20:18 22:19,22
52:2
**oral** 56:11
**order** 23:1 43:2
44:16
**ordinance** 14:9
37:2 48:9
**ordinances** 18:8
18:9
**Oscar** 8:11,13
8:15,16 9:22
12:8
**outlets** 14:4
**overlapped** 27:4
**overlapping**
27:3
**oversee** 47:10

**P**

**P** 58:1
**p.m** 55:21 61:6
**page** 12:11
18:18 19:1,3
19:16 58:4
62:21
**pages** 59:6,8
**paid** 20:1 41:5
**paperwork**
41:17,21,24
42:1
**Paragraph**
19:15
**Pardon** 8:12
23:21 39:2
**Park** 1:7 4:4
6:23 7:5,9,12
7:15 14:5
16:19 21:18
24:11 27:13
29:14 31:11
41:19 43:12,22
44:6,19,22
60:12
**part** 13:2 18:4
26:21 33:9
44:19 46:3
**participate** 17:8
**parties** 4:7 57:3
**passed** 18:7
**passwords** 4:10
**Patrick** 16:4
**pay** 19:22 22:23
**people** 49:1
**person** 11:19
39:12 43:2
44:11 49:11
**personally** 14:16
28:10 35:12,14
40:14 52:1,11
55:8
**personnel** 32:10
48:13
**PETERSON** 3:1
60:7

**place** 44:5,8
56:6,18 60:2
**placed** 37:12
**plaintiff** 1:5 2:13
17:9
**please** 12:22
60:23 61:14
**point** 17:8 26:14
26:16 27:3
38:10,12 53:16
**points** 14:2,14
**police** 17:13
19:10,12 22:11
23:11 34:15
37:8,12 41:18
43:12,16 45:10
47:3,6 48:5,13
48:22 51:14,15
**policies** 16:23
**policy** 16:16,17
16:18
**position** 7:18
11:21 13:16
19:9 27:12
29:22 37:12
46:10
**possible** 14:16
**post** 52:9
**post-terminati...**
22:14 52:16
**posted** 13:23
**power** 26:5
**pre** 52:15
**pre-termination**
20:23 52:9
**preceding** 59:8
**prepare** 8:2
**present** 3:8 4:10
16:23,24 17:2
56:8
**Presenting** 42:3
**presently** 5:23
7:4,7 16:9
32:11 39:19
49:21
**President** 18:4

cmsreporters@comcast.net

**pretty** 12:7
34:24 35:6
37:14
**previous** 14:14
16:3 40:20
**previously** 56:9
**prior** 21:6
**probably** 30:18
38:5,8,13
51:20
**process** 14:12
21:23 22:10
47:21 48:12
49:1
**processing** 47:23
**proper** 21:5 38:3
**properly** 17:7
**property** 13:15
13:24 14:10
39:1
**protection** 11:13
43:2
**protocol** 20:16
**provided** 4:9
22:14 39:22
**provides** 21:4
**Public** 59:24
**pursuant** 1:13
1:18 4:5 56:22
**Put** 18:16

**Q**

**question** 21:10
21:12,14 24:8
24:19 28:15
29:10 31:13
42:9 43:15
49:23
**questions** 10:5
31:8 50:1 53:3
55:15 56:12,17

**R**

**R** 37:5 58:1,1
**ratification** 37:6
**ratified** 37:13

**RAY** 1:4
**read** 10:10 12:22
13:5,19,21
14:21,24 15:1
21:14 24:19
59:5 60:22
**reading** 10:11
10:16 60:21
61:12
**really** 11:22 30:6
35:10 48:18
**reason** 51:5 58:6
58:8,10,12,14
58:16,18,20,22
**reasons** 58:3
**recall** 8:10 10:16
10:17 11:15,17
12:24 13:1,5
20:20,20 21:1
22:16,24 23:7
26:1,9,15,17
27:1,2,6,9,19
28:4,5,9,10
30:14 31:21
32:6 35:11,18
36:4,5,6,14,17
36:18,22 37:1
37:3,6,10,17
37:18,23 38:1
38:5,7 39:8
40:17 46:20,22
51:6,7,8
**receipt** 5:6
**receive** 31:17
39:3
**received** 15:21
15:23 22:8
31:12 38:23
**receiving** 38:1
**recess** 6:4,5 31:1
53:1
**recognize** 9:18
10:15
**recollection**
46:24 51:20
52:15

**record** 4:1,18
5:16 8:20,24
10:7 15:22
24:22 29:4
31:3 42:22,23
56:16
**records** 38:19
**recruit** 47:5
**red** 41:10
**reference** 48:9
**references** 11:2
11:7 55:6
**referred** 9:14
56:19
**referring** 15:8,9
41:23 42:1
**reflect** 4:1
**refresh** 46:23
52:15
**regarding** 17:14
20:19 52:2,15
**registered** 14:4
**regular** 36:1
37:10
**relation** 31:10
42:22
**relations** 31:14
**relationship**
39:20
**relevance** 42:20
44:13
**relevant** 33:24
34:1
**remedies** 25:3
**remember** 11:23
11:24 14:21
26:3,3,12,13
26:20
**remote** 4:6,8,17
6:21
**remove** 26:6
**removed** 29:24
30:2,3,7
**removing** 28:18
28:19
**repeat** 21:12

24:12,18 31:12
**report** 43:17
45:24
**reported** 56:12
**Reporter** 9:12
21:13
**reporter's** 29:5
**REPORTERS**
60:1
**represent** 4:18
**requesting** 38:3
**required** 4:16
14:5 47:15
**requirement**
29:17
**reserve** 55:16
**reside** 29:11
**residency** 29:17
**residents** 47:24
**resign** 25:23
**resolution** 35:5
**resolved** 24:3
53:19
**respond** 38:6
47:24
**responsibilities**
16:15
**responsibility**
47:9
**responsible**
17:11
**rest** 54:7
**restraining**
44:16
**return** 50:4
**returned** 53:15
**reveal** 34:7
53:24
**review** 8:1 30:17
37:22
**reviewed** 4:19
54:14
**ridiculous** 34:12
**right** 10:8 11:23
15:6,14 18:3
18:14 26:22

27:20 28:13
30:23 46:18
52:20,20 53:16
55:15
**rights** 11:12
**Roudez** 37:5
**Rules** 1:14 56:22
56:22
**run** 7:19

**S**

**S** 6:2 62:19
**salary** 19:23
**Saturday** 36:16
**saw** 13:3
**saying** 35:16
**says** 19:17
**scene** 44:1,2
**screen** 17:7
**season** 54:10
**second** 6:4 9:8
51:3 52:21
**section** 14:9,19
17:13
**see** 12:14 14:20
17:18 19:16,18
19:20,24 20:4
27:6 38:19
39:18 42:20
44:13,18 45:22
48:5 53:14
55:13,13
**seeing** 9:21
**SEIU** 32:18
**seminars** 31:10
31:24 32:2
**send** 9:2
**sense** 16:11
**sent** 5:2 8:18 9:1
11:3,8 13:1,4
**services** 39:23
41:2,3
**session** 54:5,9
**sessions** 54:17
**set** 59:7
**setting** 21:5

cmsreporters@comcast.net

seven 21:6
severance 22:23
    35:8
shares 45:21
Sheriff 42:18
Sheriff's 43:4
short 38:17
shorthand 56:13
Shortly 26:2
side 10:19
SIEBERT 60:1
Siebert-LaMo...
    1:16 56:6 57:8
    61:23
sign 18:8 60:22
signature 18:19
    19:3 55:17
    56:20 57:4
    60:18
signed 17:21
    18:1,9 19:5
    40:18 58:24
    59:13
signing 60:21
    61:12
similar 43:11
Sincerely 61:22
sir 54:21
site 6:22 50:8
six 54:15
somebody 42:4
    43:9,18 46:17
sorry 11:6 12:3
    21:1 24:12
    25:21 26:4
    46:7 53:21
    54:8
sort 23:3 50:24
South 2:10
    31:23
speak 20:18
specific 51:4
spell 29:6
SS 56:2
stand 24:23
    39:15

state 1:17 5:15
    14:5 17:4
    47:15 56:1
States 1:1,14
statute 17:4
stay 55:11
Sterk 26:14,16
    26:18,21 27:1
    38:11
stop 30:21
Street 2:4,10
strong 17:20
subject 14:17
    59:7
submitted 16:2
    56:21
SUBSCRIBED
    59:17
Suburban 31:23
suggest 13:15
suggesting 39:9
Suite 2:4,10 3:3
    60:9
suppose 48:4
supposed 20:15
    40:1,3 47:24
    54:16
Supreme 56:23
sure 9:20 12:7
    12:23 17:3
    20:12,14,15
    22:24 34:24
    35:6 37:1,14
    38:16 40:19
    47:10 50:16
    54:4
sworn 5:11
    48:13,21 49:2
    56:10 59:17

_____
T
T 2:3 5:13,18
    58:1 62:19
take 5:19 6:3
    9:16 18:13
    30:17 44:5,8

47:12 52:23,24
taken 1:12 14:1
    14:15 40:9,12
    42:14 47:11
    56:5 59:9
talk 53:9
talked 53:10
talking 34:2
    54:1,20
team 33:10
tell 9:17 42:17
    43:4,24 53:7,8
    53:18,19 55:8
term 19:11 20:2
    38:18
terminate 19:17
terminated 21:4
    22:15 23:4
    27:15 28:12
    41:20 52:1
    55:9
termination
    11:8 14:13
    19:22 20:19
    36:3 38:3 51:5
    52:3 55:12
terms 7:20 16:17
    28:11
testified 5:11
testimony 25:12
    52:12 60:16
text 13:18
Thank 4:14 5:19
    12:18 15:19
    29:8 30:24
Thanks 55:19
Theaplise 45:14
    45:15
theft 38:24
    45:23
thing 51:1
things 17:2 28:8
    30:15
think 6:17 15:18
    18:22,24 26:12
    26:12,13,16

27:3,8 34:1,7
    35:22,23 40:19
    48:8 50:9,17
    53:10,13
Thompson
    40:21
thought 30:9
thoughts 36:12
threat 44:3,5,12
threatened
    43:20
three 53:3
ticket 51:2
time 11:19 19:10
    19:18 25:24
    26:24 29:16
    36:17 38:17
    41:11 56:7,18
timeframe 7:18
times 53:23
today 4:10 8:2
    8:19 14:2,15
today's 4:21
told 53:17 55:11
top 5:21
total 17:15
Townsend 53:13
    53:14
traffic 50:24
training 31:10
    31:15,15,17,21
    47:15
trainings 32:7
    32:10
transcribed
    56:13 60:18
transcript 29:5
    59:5,9
transcription
    56:14
true 56:15 59:8
trustee 7:14
    13:14 25:9
    44:21 45:4
Trustees 10:24
    13:7 16:23

20:19 23:9
    25:19,22 37:11
    44:22 51:16,19
    51:22 52:19
    53:24
trying 17:6
    42:18 43:5,9
    43:18
two 5:2 7:20 8:7
    8:8,9 10:4
    14:14 32:4
type 34:3 40:4
    42:1

_____
U
U 37:5
U.S 6:8
Uh-uh 13:9
    47:17 48:23
    50:19
undersigned
    56:13 57:1
    60:24
understand 21:3
    21:9,15,16
    30:6 31:5
understanding
    30:10
unenforceable
    20:3
union 32:12,14
    32:16 33:1
United 1:1,14
University 1:7
    4:4 6:23 7:5,9
    7:12,15 14:5
    16:19 21:18
    24:11 27:13
    29:14 31:11
    41:19 43:12,22
    44:6,19,22
    60:12

_____
V
V 5:18 60:12
VA 6:16,20

cmsreporters@comcast.net

| | | | | |
|---|---|---|---|---|
| **vacations** 40:9 | **waived** 56:21 | **working** 6:8,21 | 45:10 | **8** 9:12,17 12:8 |
| 40:12 | 60:19 | **writing** 19:21 | **2019** 7:20 | 57:5 60:5 |
| **vague** 48:14 | **Wall** 16:4 | 20:8 61:16 | **2020** 1:13 59:10 | |
| **Vaguely** 15:4 | **want** 9:2,24 | **written** 17:22 | 60:17 | **9** |
| 33:5,7 | 13:19,21 18:11 | 21:5 35:16 | **20205** 17:13 | **9** 9:12 10:3,7 |
| **versus** 4:3 | 28:7 | | **2021** 57:5 59:19 | 62:24 |
| **Veterans** 6:1,9 | **wanted** 16:6 | **X** | 60:5 | **9:00** 61:6 |
| **video** 30:21,21 | 36:11,11 | **X** 5:13 62:6,19 | **207** 56:22 | |
| **village** 1:7 4:3 | **wasn't** 8:23 22:6 | | **2100** 2:10 | |
| 14:1,4,11,15 | 22:11 29:24 | **Y** | **211** 56:22 | |
| 14:18 15:2 | 50:8,10 | **year** 7:19,19 | **2125** 3:3 60:9 | |
| 16:18 17:1,10 | **way** 13:23 | 26:1 29:24 | **22** 7:2 | |
| 17:11,15 18:3 | **weeks** 12:5 | **years** 6:14 7:3 | **2205** 17:13 48:9 | |
| 19:17 20:9,22 | 38:21 | 45:3,5,6 55:5 | **23** 7:3 15:14 | |
| 21:17,21,22,24 | **went** 32:2 42:15 | **yep** 18:22 | **239-03(b)** 14:9 | |
| 22:12,13,17,20 | **West** 2:4 3:3 | | **24** 1:13 59:10 | |
| 23:2,10,19,23 | 60:2,9 | **Z** | 60:17 | |
| 24:5 26:9 | **whistleblower** | **Z** 37:5 | **25,000** 35:8 36:7 | |
| 27:13,14 28:2 | 45:16,18,20,24 | **zoom** 1:12 4:10 | **28th** 60:2 | |
| 28:17,19 29:1 | **witness** 5:10 | 4:11 12:16 | | |
| 29:19,22,23 | 10:11 11:15 | | **3** | |
| 32:15 35:19,20 | 12:12,15,18 | **0** | **30** 6:17 60:21 | |
| 37:10 38:8,14 | 13:12 15:8,20 | **084.001355** 1:16 | 61:16 | |
| 38:19 39:1,23 | 16:11 21:9 | 57:9 | **38** 6:18 | |
| 40:5,7,18 41:9 | 23:7,14 24:20 | **08489** 4:4 | | |
| 41:15,16 42:12 | 24:24 25:14 | | **4** | |
| 47:18,20,22 | 28:16 29:7 | **1** | **4** 19:15 | |
| 48:7,7 51:17 | 32:18 33:7,24 | **1** 59:6 | **4:00** 61:6 | |
| 52:7 53:10,12 | 34:11 37:22 | **1-10** 9:13 62:24 | **42** 6:14 | |
| 55:2,3,9,12 | 43:8,16 44:15 | **10** 10:6,24 | | |
| 60:12 | 45:1 46:6 | **10:34** 1:13 | **5** | |
| **Village's** 16:3 | 48:16 49:12,17 | **101** 2:4 | **5** 41:8 62:15 | |
| **violation** 14:8 | 49:22 50:2 | **10th** 11:21 12:6 | **507** 60:2 | |
| **Vivian** 1:12 4:2 | 52:6 56:5,10 | **11** 15:15 | **566** 2:4 | |
| 5:9,17 29:4 | 56:18,20 57:4 | **12:00** 55:21 | | |
| 34:9,10 43:7 | 59:1 62:8 | **15** 4:4 | **6** | |
| 44:14 50:1 | **witness'** 42:24 | **15th** 12:5 22:1 | **600,000** 41:8 | |
| 60:13 62:11 | **Women** 46:12 | **190** 2:10 | **60603** 2:11 | |
| **voice** 13:11 30:4 | **wondering** 16:5 | | **60606** 3:4 60:10 | |
| 30:8 | **word** 30:11 | **2** | **60614** 60:3 | |
| **vote** 17:2 37:6 | **work** 5:23 6:19 | **20** 55:4 | **60661** 2:5 | |
| 37:16 54:17 | 16:22 17:7 | **200** 3:3 60:9 | **62** 59:6 | |
| **voted** 37:18 | 19:12 26:24 | **2011** 7:20 | | |
| **vs** 1:6 | 40:7 | **2015** 10:6,24 | **7** | |
| | **worked** 19:9 | 11:21 12:6 | **7** 15:18 | |
| **W** | 26:10 | 15:12,14 22:1 | | |
| | | 23:19 26:9,11 | **8** | |