## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

EDDIE RAY BRADLEY

            Plaintiff,

            v.

VILLAGE OF UNIVERSITY PARK, *et. al.*,

            Defendants.

No. 15-cv-08489

Hon. Charles R. Norgle, Sr.

## BRADLEY'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff Eddie Ray Bradley and in response to the Defendants' Motion for Summary Judgment, states as follows:

Continuing to ignore the Seventh Circuit's opinion and their repeated concessions, the Defendants seek summary judgment. Pretending neither exists, the Motion operates in a vacuum. For that reason, it is meritless.

## BACKGROUND

The Defendants summarily discharged Bradley in violation of his employment contract and Illinois Municipal Code, as well as his due process rights. *Bradley v. University Park,* 929 F.3d 875 (2019). In failing to provide Bradley with the notice and hearings to which he was entitled under the contract, Illinois statute, and the Constitution, Defendants violated his

constitutionally protected due process rights and breached the terms of the employment agreement. The Defendants conceded as much on appeal.

Bradley's contract with the Village, along with Illinois law, enumerates the processes by which police chiefs can be removed from public office, none of which Defendants bothered to follow. The relevant provisions state: (1) a mayor must file with the municipality board with reasons for removal and is effective only is confirmed by a majority of the corporate authorities; (2) no member of the police department shall be removed except for cause, upon written charges, and after an opportunity to be heard; and (3) the appointing authority must file with the corporate authorities the reasons for removal.

Bradley's contract with the Village stated that he was entitled to a pre-termination hearing and a post-termination hearing in the event of removal from office. However, the Defendants did not notify Bradley of any charges or allegations against him and to date have provided him with no opportunity to be heard, or to clear his name, before or after his summary dismissal. Bradley's contract also stated that he was entitled to severance, vacation, and sick pay upon termination.

After the Defendants terminated Bradley without explanation or cause, they published a statement throughout the Village that notified the public that Bradley had been removed from office, thereby defaming him in the eyes of the public, who he had dutifully served since 2013. Indeed, deponents

Griffin, Brooks, Roudez, and Bradley say that the Defendants caused a flyer to be given to all Village residents. *See* Exhibit A, Roudez Dep., p. 12:13-24; 13:1-18. *See* Exhibit B, Griffin Dep, p. 9:5-8; p. 44:12-24; p. 46-46. *See* Exhibit C, Brooks Dep., p. 29:5-15.

## ARGUMENT

### A. The Seventh Circuit And The Defendants Agree Bradley Has A Property Interest.

The Defendants' six pages of argument addressing the due process and breach of contract counts succumb to a single sentence: The Defendants' actions "did not comply with the termination provisions of Bradley's employment contract, the requirements of state law, or—critical to this case—the Fourteenth Amendment." *Bradley v. University Park*, 929 F.3d 875, 880 (7th Cir. 2019). The Seventh Circuit further found the Defendants' concessions "suffice to prove a due process claim under § 1983 against the individual officials and the village itself, where the village acted through high-ranking officials with policymaking authority." *Id*. at 878.

In addition to the Seventh Circuit, this Court also found the "Defendants do not dispute that Bradley's termination deprived him of a protected interest-his interest in his tenure as Chief of Police." Doc. 35 at 2. The Defendants reiterated this position on appeal, plainly admitting Bradley "had a protected property interest in his employment." Appellate Doc. 21 at

14. They further emphasized "[t]he only question before the Court is the level of process due." *Id*. This prompted the Seventh Circuit to observe "the village has conceded that Bradley held a protected property interest in his job." 929 F.3d at 881.

Citing the Defendants' own explicit admissions, the Seventh Circuit framed the undisputed:

> **The parties agree** that Bradley had a protected property interest in his continued employment.
>
> **They agree** that the mayor and the village board are the policymakers for their municipality on the subject.
>
> **And everyone agrees** that although there was ample opportunity for a hearing, Bradley received no pretermination notice or hearing.

*Bradley*, 929 F.3d at 878 (emphasis added); Doc. 68 at 2-3.

The Seventh Circuit then found the "decision to deprive Bradley of due process is the municipal policy that forms the basis for defendants' liability." *Id*. at 885. Because the Defendants "did not comply with . . . the Fourteenth Amendment," Bradley can "prove a due process claim under § 1983." *Id*. at 878; 880. These holdings and the Defendants' admissions establish liability.

The mandate rule, which requires a district court follow an appellate court's findings on remand thwarts the Defendants' Motion. *Carmody v. University of Illinois*, 893 F.3d 397, 407 (7th Cir. 2018). Under the mandate rule, any issue the Seventh Circuit decides "may not be reconsidered by the

district court on remand." *EEOC v. Sears*, 417 F.3d 789, 796 (7th Cir. 2005).

Further, the law of the case doctrine prohibits a district court from

reconsidering an issue a higher court decided. *United States v. Adams*, 746

F.3d 734, 744 (7th Cir. 2014). Once an appellate court resolves an issue, it is

"binding upon all subsequent proceedings in the same case" per the law of the

case doctrine. *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). These

doctrines confirm that the Defendants' arguments regarding the elements of

Bradley's due process claim cannot be reargued now. The Seventh Circuit has

resolved the issue of Bradley's due process rights and concluded that

Defendants violated them when they disregarded Bradley's pretermination

hearings. This finding binds all subsequent proceedings on these facts.

Along with the mandate rule and law of the case doctrine, judicial

estoppel further precludes the Defendants' property interest switch. "Where a

party assumes a certain position in a legal proceeding, and succeeds in

maintaining that position, he may not thereafter, simply because his

interests have changed, assume a contrary position." *Matter of Cassidy,* 892

F.2d 637, 641 (7th Cir. 1990). Judicial estoppel applies to positions in

different proceedings, transferred cases, and the same case. *Walton v. Bayer

Corp.,* 643 F.3d 994, 1002 (7th Cir. 2011). Certain prerequisites must exist for

judicial estoppel to apply: (1) the later position must be clearly inconsistent

with the earlier position; (2) the facts at issue should be the same in both

cases; and (3) the party to be estopped must have convinced the first court to adopt its position. *1st Source Bank v. Neto,* 861 F.3d 607, 612 (7th Cir. 2017). All three elements are clearly met here. The Defendants previously conceded Bradley satisfied the property interest element (App. Doc. 21 at 14); now they say he does not. Doc. 105 at 3-7. The facts at issue remain the same of course as this is the same case. Finally, the Defendants convinced this Court and the Seventh Circuit to accept their position. *See Bradley*, 929 F.3d at 878; Doc. 35 at 2. Judicial estoppel thus bars the Defendants' property interest argument as a matter of law.

### B. Bradley's Employment Contact Is Enforceable For The Purposes of His Breach of Contract Claim Against The Defendants.

The Defendants next argue that because Bradley's contract was void and unenforceable, Bradley cannot support his breach of contract claim. More foreboding than the Defendants' concessions is the Seventh Circuit's determination that an employment contract existed and was breached. 929 F.3d at 880. Specifically, the Court explained that the Defendants' actions "did not comply with the termination provisions of Bradley's employment contract. . . ." *Id*. This finding is fatal to the Defendants' Motion.

Inexplicably, the Defendants' Motion omits this critical finding, and thus is misleading. Regardless, the Defendants' argument cannot survive the Seventh Circuit's express determinations under the mandate rule, law of the

case doctrine, and equitable estoppel, as set forth above. Moreover, the Defendants' *en banc* petition did not challenge any of the Seventh Circuit's findings on the protected property interest or breach of contract. *See* App. Doc. 38.

Additionally, the Court should deny the Defendants' Motion because the Defendants breached the employment contract with Bradley when they failed to terminate his employment pursuant to the guidelines and procedures contained therein and refused to pay Bradley his severance upon his termination. The contract itself clearly states the bases upon which Bradley could be removed from office, but the Defendants instead summarily terminated Bradley without warning, reason, pretermination and post-termination hearings, and final compensation.

C. The Defendants Defamed Bradley And Placed Him In A False Light When They Published His Removal From Public Office.

After the Defendants perfunctorily terminated Bradley, they published notice of Bradley's termination in a local publication, notifying the public that Bradley had been removed from office. Absent from the text of the publication is a description of the circumstances surrounding Bradley's removal from office. Defendants did not state that Bradley was summarily terminated outside of the terms of his contract and without any allegation of misconduct or wrongdoing. Defendants defamed Bradley and placed him in a false light

by suggesting that he was removed because he was unfit, lacked integrity. In short, Defendant's actions impeached Bradley's reputation in his community.

There are four categories of *per se* defamation that are recognized in Illinois: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome, communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party or impute lack of ability in the party's trade, profession, or business; and (5) those imputing adultery or fornication.

To prove false light, Bradley must demonstrate: (1) that Defendants' actions placed him in a false light before the public; (2) a reasonable person would consider the false light highly offensive; (3) the Defendants acted with knowledge of or reckless disregard for the falsity of the statements. *Dubinsky v. United Airlines Master Executive Council*, 708 N.E.2d 441, 451 (Ill. App. Ct. 1999).

Bradley argues that Defendants, in publicizing his removal from office without a name-clearing hearing, imputed an inability to perform his duties as a public official. This imputation rises to defamation *per se* because Defendants' actions impute the inability to perform or want to integrity in the discharge of duties of office or employment. Indeed, "[w]ords may be actionable per se…if they directly tend to prejudice or injure any person in

his profession, trade or business and are used in relation to his occupation."
*Korbar v. Hite*, 43 Ill. App. 3d 636, 639, 2 Ill. Dec. 158, 160, 357 N.E.2d 135, 137 (1976).

Additionally, Bradley's well-publicized removal could not be construed innocently. A reasonable person would not construe the perfunctory removal of the police chief to be anything other than humiliating and embarrassing. Mayor Roudez and Theaplise Brooks, former Vice Chairman of the University Park Fire and Police Commission, agreed in their depositions that the imputation of wrongdoing that arises from summary removal is offensive to the official removed. *See* Roudez Dep., p. 12:13-24; 13:1-18. *See* Brooks Dep., p. 29:5-15.

Further, the announcement of Bradley's removal from public office, without the truthful context of the illegality of Bradley's removal, resulted in harm to Bradley's reputation within the Village community and the law enforcement community at large. Due to Defendants' actions, Bradley was diminished the eyes of the public. Indeed, Mayor Roudez and Vice Chairman Brooks testified at his deposition that it was "offensive" for someone to falsely claim that one failed to perform the duties of his office. *See* Roudez Dep., p. 12:1-24; p.13:1-13. *See* Brooks Dep., p. 29:5-15.

D. Bradley Has Supplied The Record With Enough Evidence To Prove His Retaliation Claim Under The Illinois Whistle Blower Act.

9

Defendants argue that Bradley does not have substantial proof to prove his claim under the Illinois Whistleblower Act. To establish a claim under the Act, Bradley must demonstrate that (1) the plaintiff suffered an adverse employment action (2) in retaliation (3) for the plaintiff's disclosure to a governmental or law enforcement agency (4) of suspected violation of Illinois law. *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15, 413 Ill. Dec. 835, 839, 79 N.E.3d 184, 188. Defendants argue that Bradley has failed to provide evidence that any of his investigations led to his termination. In fact, Defendants contend that Bradley's termination was simply the matter of Mayor Covington not supporting his tenure has police chief.

However, through depositional testimony taken from Mayor Roudez, Bradley was able to provide evidence to demonstrate that his termination was suspect. Mayor Roudez testified that he, Bradley, and Village Trustee Keith Griffin spoke went to a meeting at the Will County State's Attorney's Office to discuss Bradley's findings of corruption in the village government. Shortly after this meeting, Defendants terminated Bradley without notice or explanation. Although Roudez stated that he could not recall with precision exactly when this meeting occurred, he estimated it to be one month prior to Bradley's termination. *See* Roudez Dep., p. 43:12-14; 44:1-9. The temporal proximity of Bradley's investigations, the meeting at the State's Attorney's Office, and Bradley's perfunctory termination raise the presumption of

10

retaliation on the part of the Defendants. Therefore, Bradley certainly meets all essential elements for his claim under the Whistleblower Act: Bradley was summarily terminated, without warning and outside the terms of his contract for investigating governmental corruptions and then reporting his findings to the State's Attorney's Office.

### E. Defendants Violated The Wage Payment And Collection Act When They Refused To Pay Bradley His Final Compensation.

Defendants argue that Bradley's claim under the Wage Payment and Collection Act fails as a matter of law. Defendants state that there was a lack of mutual assent between the contracting parties to pay Bradley's final, owed compensation, ignoring the plain language of the contract which had the Village's and Mayor Covington's "assent."

To state a wage claim under the Act, Bradley must show: (1) the defendant was an employer; (2) the parties entered into a contract or agreement; (3) the plaintiff is owed "final compensation." *Catania v. Local* 4250/5050, 834 N.E.2d 966, 972 (Ill. App. Ct. 2005). Here, the Defendants argue that Bradley cannot provide evidence of an "unequivocal promise" to for Defendants to pay Bradley his final compensation. Defendants rely on *Chagoya v. City of Chicago*, which states that a Bradley bringing a claim under the Act must enter into the record other evidence beyond his own

11

personal conviction that he should have been paid. *Chagoya v. City of Chicago*, 992 F.3d 607, 625 (7th Cir. 2021).

Bradley meets the evidentiary Bradley to demonstrate that his employer made an "unequivocal promise" to pay him his final wages. Bradley does not merely rely on his "own personal conviction" that he should be paid. Indeed, his entitlement to payment is bolstered and corroborated by former Mayor Covington herself. Mayor Covington, at her deposition, acknowledged that Bradley was entitled to four-months' salary in the event of termination. Exhibit D, Covington Dep., p. 19:21-24; 20:1-6. Additionally, the express terms of his valid, enforceable employment contract stipulated that he was entitled to severance, vacation, and sick pay upon termination. Bradley's claim under the Act does not emerge from the ether or from some vague personal conviction; it is grounded in the text of the employment agreement and bolstered by the sworn testimony of the former mayor who "had sole discretion and authority to fire Bradley." *Bradley,* 929 F.3d 875 at 885.

Although Defendants admit that it is not necessary of Bradley to prove that his employment contract was valid and enforceable, Bradley reiterates, for the reasons stated above, that his contract was an enforceable agreement for the purposes of his Wage Claim. Again, for Defendants to conveniently decide, after the contract has been signed, executed, and detrimentally relied

12

upon, that it is retroactively invalid is an improper maneuver by both the Seventh Circuit and the Supreme Court.

### F. Mayor Covington Is Not Entitled To Qualified Immunity From Bradley's Due Process Claim.

Lastly, the Defendants argue that former Mayor Covington is entitled to qualified immunity regarding Bradley's due process claim because she did not reasonably know that summarily terminating Bradley without hearing or inquiry would violate his due process rights.

Covington is not entitled to qualified immunity. First, it is unlikely given Covington's previous experience as Village Manger (the position that holds the responsibility of firing public employees) that she would not know that depriving Bradley of his termination hearings would deprive him of his due process rights. In fact, Village Trustee Keith Griffin testified that Mayor Covington served as acting Village Manager until the role was filled by Bola Delano. *See* Griffin Dep., p. 48:4-8.

Most compelling is the Seventh Circuit's findings that the mayor and the village not only had the responsibility to follow state law, which required the Defendants to comply with the termination provisions in Bradley's contract, but both had the authority to fire Bradley. Citing 65 Ill. Comp. Stat. 5/10-2.1-17, the court found that "state law delegated this authority to their offices." *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 881 (7th Cir. 2019).

The Court goes on to cite the Code of Ordinances for University Part Sec. 210-10, which states that the mayor sits on the village board, and Sec. 220-02 and 05, of the Village Code, which states the mayor, together with the board and the village manager, can appoint and remove the police chief. *Id.* Indeed, the Court found that following the procedures outlined in the statute and in the contract would satisfy "the basic federal constitutional requirement that the village offer its tenured employees notice and an opportunity to be heard before hiring them." *Id.*

It should also be noted that the Defendants previously argued for Mayor Covington's qualified immunity in *Bradley*. They attempted to persuade the court that the deprivation of Bradley's due process rights was the result of a "random and unauthorized act" beyond the control of the state, thus shielding top policymakers, like Mayor Covington, from liability. The Seventh Circuit rejected this argument. The court found "the decision to fire Bradley was made by the top municipal officials" and that "[a municipality] can be held liable for a constitutional violation only if the violation resulted from a formal policy, an informal custom, or a decision 'made by its lawmakers or by those whose edict or acts may fairly be said to represent official policy.'" *Bradley*, 929 F.3d 875 at 879, citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978). Mayor Covington, all parties agreed, is a policymaker for the municipality. *Bradley*, 929 F.3d 875

at 878. Thus, pursuant to the Seventh Circuit, Mayor Covington cannot be immune from liability for participating in the deprivation of Bradley's due process rights.

## CONCLUSION

Bradley respectfully requests the Court deny Defendants' Motion for Summary Judgment and grant Bradley summary judgment.

Respectfully submitted,

/s/ John T. Moran
The Moran Law Group
723 Beacon Drive
Lake Barrington, IL 60010
(312) 405-4474
j.t.m.moran@gmail.com

s/ Christopher Keleher
Christopher Keleher
The Keleher Appellate Law Group, LLC
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 448-8491
ckeleher@appellatelawgroup.com