UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE RAY BRADLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VILLAGE OF UNIVERSITY PARK, ) <br> ILLINOIS, an Illinois Home Rule ) <br> municipality, and VIVIAN COVINGTON, ) <br> Mayor of UNIVERSITY PARK, ILLINOIS, ) <br> both Individually and her official capacity as ) <br> mayor, ) <br> ) <br> Defendants. ) | Court No. 15 cv 08489 <br><br> Honorable Judge Charles R, Norgle, Sr. |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

NOW COME Defendants, the VILLAGE OF UNIVERSITY PARK ("the Village") and VIVIAN COVINGTON ("Covington") (collectively "the Village Defendants"), by and through their attorneys, PETERSON, JOHNSON AND MURRAY CHICAGO, LLC, and for their Response to Plaintiff's Statement of Undisputed Material Facts, state as follows:

1. The Defendants admit this Court has jurisdiction of the matter, both federal and state law claims, and that venue is proper in the Northern District of Illinois. (Answer (Doc. 11) atparagraph 2.) (A copy of the Answer is attached hereto as Exhibit A.)

**RESPONSE:** Undisputed that this Court has jurisdiction, and that venue is proper.

2. The Defendants admit that the Village of University Park (hereafter "Village" or "municipal defendant") is a home rule unit and an Illinois Municipal Corporation. (Ex. Aat paragraph 8.)

**RESPONSE:** Undisputed that the Village of University Park is a home rule Illinois Corporation.

3. Bradley and the Village of University Park entered into an employment contract for a two-year term for 2015 and 2016, at a salary of $100,000, plus benefits. (A copy of thecontract is attached hereto as Exhibit B.)

**RESPONSE:** Undisputed that Plaintiff and University Park entered into a document that purported to be an employment agreement. Disputed that this agreement was a valid and enforceable contract under Illinois law.

4. On May 13, 2015, Bradley received a letter from the Mayor placing him on leave, but omitting why. (A copy of the letter is attached hereto as Exhibit C.)

**RESPONSE:** Disputed. See, Plaintiff's Exhibit C.

5. The Mayor's second letter two weeks later informed him he was fired, declaring Bradley's employment contract "*ultra vires*," and as such she believed it "conferred no rights, imposed no duties and afforded no protection." (A copy of the letter is attached hereto as Exhibit D.)

**RESPONSE:** Undisputed that Plaintiff was sent a second letter and that a copy of the letter is attached as Exhibit D.

6. On July 14, 2015, counsel for Bradley, John Moran, wrote to the Defendants invokingBradley's due process rights, and noting that Bradley was still the Chief of Police per Illinois law. (A copy of the letter is attached hereto as Exhibit E.)

**RESPONSE:** Undisputed that Plaintiff's counsel sent a letter to the Village on July 14, 2015 and that a copy of the letter is attached as Exhibit E, but disputed that Plaintiff had any Due Process rights as a Chief of Police under Illinois Law. See, 65 ILCS 5/8-1-7(b).

7. The present mayor of the Village is Joseph Roudez, III, and he was sworn in as mayor on05-15-2019 to a four-year term. (Joseph Roudez Deposition at p. 6., attached hereto

as Exhibit F.)

**RESPONSE:** Undisputed.

8. Roudez testified that then Village Manager, Lafayette Linear, told him that Bradley was a "fantastic" chief of police, and not to fire him. (Exhibit F at p. 42, 54.)

**RESPONSE:** Objection, this statement calls for hearsay, lacks foundation, and should be stricken. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003).

9. Roudez never learned why Covington fired Bradley. (Exhibit F at p. 10, 39).

**RESPONSE:** Disputed. The letter that was sent to Plaintiff states the reason for his termination and is a Village public record. See, Plaintiff's Exhibit D.

10. The firing of Bradley occurred when Roudez was out of town at a conference. (Exhibit F at p. 7.)

**RESPONSE:** Undisputed that Mayor Roudez, was a trustee at the time of Plaintiff's termination and was not at the meeting, at which the Village Board voted to termination Plaintiff.

11. According to Mayor Roudez, Bradley's relationship with Defendant Covington was "contentious." (Exhibit F at p. 7.)

**RESPONSE:** Objection, as this statement lacks foundation, is not relevant, and should be stricken. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003). Without waiving said objections, undisputed that this was the testimony of Mayor Roudez.

12. Roudez was a Village trustee when Bradley was terminated. (Exhibit F at p. 6.)

**RESPONSE:** Undisputed.

13. Roudez said Bradley never received notice of any charges against him. (Exhibit F at p. 9-11.)

**RESPONSE:** Disputed that the basis of Plaintiff's termination was not provided to him. See, Plaintiff's Exhibit D.

14. Roudez did not know whether Bradley received a pre-termination hearing. (Exhibit F atp. 9.)

**RESPONSE:** Objection, lacks foundation and is not relevant. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003). Without waiving said objections, undisputed that this was the testimony of Mayor Roudez.

15. Bradley did not receive a hearing post termination nor was he allowed to address the Village Board, although a previous Chief who was terminated was allowed to. (Exhibit F at p. 9, 10, 48-49.)

**RESPONSE:** Undisputed that Bradley did not receive a hearing post termination and that he was not allowed to address the Village Board. See, 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b). See also, 65 ILCS 5/10-2.1-4 and University Park Municipal Code. Sections 220-05 "Duties of officers and departments" and 271-02 "Modifications of State Statute". Disputed as to the circumstances surrounding the previous Chief's termination or that he was entitled to a hearing, as this Statement lacks foundation and should be stricken. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003).

16. Mayor Roudez said Bradley was not given any reasons for his termination and that he, Roudez, was not aware of any reasons. (Exhibit F at p. 9.)

**RESPONSE:** Disputed. See, Plaintiff's Exhibit D.

17. Mayor Roudez acknowledged the letter of termination initiated and signed by DefendantCovington. (Exhibit F at p. 50-51.)

**RESPONSE:** Undisputed that Mayor Covington sent a letter of termination to Plaintiff.

18. Bradley was a man of integrity. (Exhibit F at p. 11.)

**RESPONSE:** Disputed. See, Doc. No. 1-1, 15-cv-07425. This Court may take judicial notice of this action against Plaintiff Bradley. *See Watkins v. United States,* 854 F.3d 947, 949-51 (7th Cir. 2017).

19. Bradley was fired shortly after Roudez, Bradley, and Village Trustee Keith Griffin wentto the Will County State's Attorney's Office to discuss corruption in the Village government. (Exhibit F at p. 43-44.)

**RESPONSE:** Disputed. The witness was not sure of when they went to the State's Attorney's Office. (Plaintiff's Exhibit F at pp. 43-44). Disputed as to the subject of the investigation, as the witness testified "I'm not sure exactly what the main focus of the investigation is or was." (Plaintiff's Exhibit F at pp. 43). Further, disputed that Vivian Covington was told about the meeting with the State's Attorney's Office. (Plaintiff's Exhibit F at p. 56-57).

20. Mayor Roudez testified it was "offensive" for someone to falsely claim one failed toperform the duties of his office or to falsely state someone lacking integrity or was a"criminal." (Exhibit F at p. 12, l. 24, 13 at l. 13.)

**RESPONSE:** Objection, the cited testimony lacks foundation and does not reference Plaintiff, therefor it is irrelevant and should be stricken. Without waiving said objections, disputed that the cited testimony supports the claims in this matter or that the Plaintiff was the subject of the questions and answers.

21. The Village never paid Bradley any severance. (Exhibit F at p. 20.)

**RESPONSE:** Undisputed that Plaintiff was never paid severance, but disputed that he was entitled to any such severance as the contract was void *ab initio*. See, Plaintiff's Exhibit D. *See also,* 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b).

22. Theaplise Brooks was the Vice-Chairman of the University Park Fire & Police Commission from 2009 to 2017. (Theaplise Brooks Deposition at p. 6-9, attached heretoas Exhibit G).

**RESPONSE:** Undisputed.

23. At the time of his deposition, Brooks was a University Park Village Trustee, as was Roudez. (Exhibit G at p. 5.)

**RESPONSE:** Undisputed that Theaplise Brooks was a Trustee at the time of his deposition, but disputed that Roudez was a Trustee. Roudez was the mayor of University Park at that time. (Plaintiff's Ex. F, at p. 19).

24. Brooks was never contacted by any member of the Village Board or the Police Department regarding the termination of Eddie Ray Bradley as Chief of Police. (ExhibitG at p. 15.)

**RESPONSE:** Undisputed, that the Fire & Police Commission was not involved in the termination of Plaintiff, as the chief of police.

25. Brooks was never given a reason for Bradley's termination. (Exhibit G at p. 15.)

**RESPONSE:** Disputed as to the time frame, as Trustee Brooks is aware of the reason for Plaintiff's termination. Undisputed that Theaplise Brooks was not involved in the termination of Plaintiff.

26. Brooks had a good relationship with Bradley when he was Chief of

Police, acknowledging "I've never had a problem with Ed." (Exhibit G at p. 21.)

**RESPONSE:** Undisputed that this was the testimony of Theaplise Brooks.

27. Keith Griffin was a Trustee of the Village of University Park when deposed in 2016. (K.Griffin Deposition at p. 7, attached hereto as Exhibit H).

**RESPONSE:** Undisputed that Keith Griffin was a University Park Village Trustee in August of 2016.

28. He testified that the Village Board goes into executive session for terminations. (Exhibit H at p. 7-8.)

**RESPONSE:** Undisputed that the Village Board can go into executive session for termination discussions under the Open Meetings Act.

29. He testified the Village Manager handled hiring and firing. (Exhibit H at p. 8-9.)

**RESPONSE:** Disputed. The Village Manager can hire a police chief with the concurrence of the board and that the Village Board had a meeting at which the decision to fire Plaintiff occurred. (Plaintiff's Exhibit H, at pp. 7-8)

30. Then Village Manager, Lafayette Linear, was in position to May 15, 2015 so the thenMayor, Vivian Covington, initiated Bradley's dismissal. (Exhibit H at p. 10.)

**RESPONSE:** Undisputed that Lafayette Linear was not the Village Manager at the time of Plaintiff's termination and that Vivian Covington terminated Plaintiff with the vote of the Village Board at a time when the Village did not have a Village Manager.

31. The Chief of Police prior to Bradley, Mel Davis, was paid a severance. (Exhibit H at p. 13.)

**RESPONSE:** Undisputed, but disputed that Mel Davis was employed pursuant to an invalid Employment Agreement, or that the two chiefs were similarly situated.

32. Griffin was unaware of any notice of a dismissal hearing for Bradley. (Exhibit H at p. 16.)

**RESPONSE:** Disputed, as Trustee Griffin was not present for the board meeting during which the termination occurred. (Plaintiff's Exhibit H, at p. 10).

33. The decision to terminate Bradley as Chief was Covington's. (Exhibit H at p. 18.)

**RESPONSE:** Disputed that Mayor Covington terminated Plaintiff. Undisputed that she terminated Plaintiff after the Village Board voted on the termination. (Plaintiff's Exhibit H, at p. 11).

34. Bradley still had time left on his contract when fired. (Exhibit H at p. 19.)

**RESPONSE:** Disputed, as the contract was void *ab initio. See,* 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b).

35. Both Will County and the United States Governments were investigating the Village. (Exhibit H at p. 27.)

**RESPONSE:** Objection, the testimony cited lacks foundation and is based upon hearsay. Without waiving said objection, disputed because the witness testified that he heard through the "grapevine" about an investigation. (Plaintiff's Exhibit H, at p. 27).

36. Griffin described Bradley as a "professional." (Exhibit H at p. 16.)

**RESPONSE:** Undisputed that this was former Trustee Griffin's testimony.

37. The present investigation concerned Covington having an Indiana bank account and theVillage Board's use of credit cards. (Exhibit H at p. 28, 30.)

**RESPONSE:** Objection, the testimony cited lacks foundation, is based upon speculation and

hearsay and should be stricken. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003). Without waiving said objection, disputed because the witness testified that he heard about the subject an investigation. (Plaintiff's Exhibit H, at pp. 28, 30).

> 38. The hiring of Village Manager Bola Delano occurred without notice or documentation to the Village Board members while Trustees Griffin and Roudez were out of town. (ExhibitH at p. 32-33.)

**RESPONSE:** Disputed, the cited testimony does not support that the hiring of Village Manager Delano occurred with no notice or documentation, but rather only supports that Trustee Griffin did not receive notice or review documents because he was out of town. (Plaintiff's Exhibit H, at p. 32-33).

> 39. Oscar Brown read the case law and statute and told the Village Board (including the Mayor) they were doing the termination illegally, and then left. (Exhibit H at p. 35-37.)

**RESPONSE:** Objection, this statement is based on hearsay. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003). Without waiving said objection, disputed that the termination was illegal or without the proper procedure as it was brought to a vote of the Village Board. (Plaintiff's Exhibit H, at p. 11).

> 40. Covington was acting as Village Manager until Bola Delano stepped in. (Exhibit H at p. 48.)

**RESPONSE:** Disputed as stated. (Plaintiff's Exhibit I, at pp. 21-22).

> 41. Griffin acknowledged that Bradley should have been given written notice of the chargesand the meeting but did not receive it. (Exhibit H at p. 54-55.)

**RESPONSE:** Disputed that Plaintiff was entitled to written notice of charges and a meeting. See, 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b). See also, 65 ILCS 5/10-2.1-4 and University Park Municipal Code. Sections 220-05 "Duties of officers and departments" and 271-02 "Modifications of State Statute".[1]

42. Bradley was never asked to nor did he address the Village Board. (Exhibit H at p.55.)

**RESPONSE:** Objection, this statement lacks foundation or a time period. Without waiving said objection, undisputed that Plaintiff did not address the Village Board at the time of or following his termination.

43. Defendant Covington testified she "probably" got a letter from Bradley's attorneys asking for a copy of any notice to him for termination but did not respond to it. (Vivian Covington Deposition at p. 39, attached hereto as Exhibit I.)

**RESPONSE:** Objection as to the relevance of this statement and it should be stricken. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003).

Without waiving said object, disputed that the citation supports Statement 43.

44. Covington had no paperwork concerning any notice of charges to Bradley. (Exhibit I at p. 42.)

**RESPONSE:** Disputed. (Plaintiff's Exhibit I, at pp. 41-42). The witness testified that she never filed paperwork with the Board of Fire & Police Commissioners. ( Plaintiff's Exhibit I, at pp. 41-42). The termination of the Police Chief does not require the Fire & Police Commission.

---

[1] Located at § 220-05. Duties re officers and departments., Chapter 220. MANAGER, Title Six. ADMINISTRATION, Part TWO. ADMINISTRATION CODE, Code of Ordinances, University Park (elaws.us) and § 271-02. Modifications of state statute., Chapter 271. BOARD OF FIRE AND POLICE COMMISSIONERS, Title Eight. BOARDS AND COMMISSIONS, Part TWO. ADMINISTRATION CODE, Code of Ordinances, University Park (elaws.us).

45. Covington was a trustee of the Village for 8 years and the Mayor for 8 years. (Exhibit I atp. 45.)

**RESPONSE:** Undisputed.

46. Brooks was chairman of the Fire and Police Commission in 2015. (Exhibit I at p. 45.)

**RESPONSE:** Undisputed.

47. The FBI took Covington's laptop from her office. (Exhibit I at p. 50.)

**RESPONSE:** Objection as to the relevance of this statement and it should be stricken. See, *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *Rogers v. City of Chi.,* 320 F.3d 748, 751 (7th Cir. 2003). Without waiving said objections, undisputed.

48. Covington was unaware of any pre- and post-termination process because that is conducted by the village manager, not the mayor. (Exhibit I at p. 52.)

**RESPONSE:** Disputed that Plaintiff was entitled to any pre or post-termination process. See, 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b). See also, 65 ILCS 5/10-2.1-4 and University Park Municipal Code. Sections 220-05 "Duties of officers and departments" and 271-02 "Modifications of State Statute".

49. Eddie Ray Bradley was Chief of Police for University Park from 2013 to 2015. (BradleyDeposition at p. 9, attached hereto as Exhibit J.)

**RESPONSE:** Undisputed.

50. After a year on the job, the Village gave him an employment contract for a two-yearterm. (Exhibit J at p. 13-14.)

**RESPONSE:** Undisputed that the contract in issue was for a two year term that when executed,

exceeded the first term of the mayor. See, Plaintiff's Exhibit D.

51. He made $100,000 a year as Chief of Police. (Exhibit J at p. 147, 150.)

**RESPONSE:** Undisputed that Plaintiff was paid $100,000 as his police chief compensation.

52. He performed his job satisfactorily. (Exhibit J at p. 20-21.)

**RESPONSE:** Disputed, that job performance was the basis of Plaintiff's termination and therefore, dispute that this Statement of Fact is relevant. See, Plaintiff's Exhibit D (containing the reason for Plaintiff's termination).

53. Bradley was not paid any of the severance, vacation, and sick pay owed to him under thecontract. (Exhibit J at p. 60, 111, 158.)

**RESPONSE:** Undisputed that Plaintiff was not paid severance, vacation, and sick pay as set forth in the purported contract, but denied that there was a valid contract. See, 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b).

54. Bradley was never told by the Mayor or the Village Board that he was performing poorly.(Exhibit J at p. 158-59.)

**RESPONSE:** Undisputed that this was Plaintiff's testimony. Disputed that Plaintiff could not be terminated based upon an illegal employment agreement. See, 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b).

55. Bradley was not given an opportunity for a pre-termination or post-termination hearingbefore the Village Board. (Exhibit J at p. 37-38, 158-59.)

**RESPONSE:** Disputed that Plaintiff was entitled to a pre-termination or post-termination hearing. See, 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b). See also, 65 ILCS 5/10-2.1-4 and University Park Municipal Code. Sections 220-05 "Duties of officers and departments" and 271-02 "Modifications of State Statute".

56. Mayor Covington acknowledged Bradley was entitled to four months' salary if he was terminated. (Exhibit I at pp. 19-20.)

**RESPONSE:** Disputed, that the cited testimony supports this statement of fact. Further disputed, as the contract was not legally valid. See, also 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b)

57. Bradley is owed $200,000 in contract damages. (Exhibit J at pp. 60, 111).

**RESPONSE:** Disputed. See, 65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b).

Respectfully submitted,

Date: October 28, 2021    */s/Dominick L. Lanzito*
One of the Attorneys for Defendants
Village of University Park and Vivian Covington


DOMINICK L. LANZITO (Attorney No. 6277856)
PETERSON, JOHNSON & MURRAY CHICAGO, LLC
200 West Adams Street, Suite 2125
Chicago, Illinois 60606
(312) 782-7150
dlanzito@pjmchicago.com