cmsreporters@comcast.net

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

EDDIE RAY BRADLEY            )
                            )
        Plaintiff,          )
                            )
  vs.                       )   No.15-cv-08489
                            )
VILLAGE OF UNIVERSITY PARK, )
et al.,                     )
                            )
        Defendants.         )


        The deposition of

VIVIAN COVINGTON taken under oath VIA ZOOM at

10:34 A.M. on Friday, July 24, 2020 pursuant to

the Rules of the United States District Court,

Northern District of Illinois, before Carol M.

Siebert-LaMonica, C.S.R. No. 084.001355 in and

for the County of Cook and State of Illinois,

pursuant to notice.

Siebert & Associates Court Reporters, Inc.

**EXHIBIT 3**

cmsreporters@comcast.net

Page 2

1   APPEARANCES:

2       THE MORAN LAW GROUP, by

3       MR. JOHN T. MORAN

4       566 West Lake Street, Suite 101

5       Chicago, IL  60661

6       (J.t.m.moran@gmail.com)

7              And

8       THE KELEHER APPELLATE LAW GROUP, LLC.

9        MR. CHRISTOPHER KELEHER

10       190 South LaSalle Street, Suite 2100

11       Chicago, IL 60603

12       (Ckeleher@appellatelawgroup.com)

13          Appeared on behalf of the plaintiff;

14

15

16

17

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 3

1        PETERSON, JOHNSON & MURRAY CHICAGO

2        MR. DOMINICK LANZITO

3        200 West Adams, Suite 2125

4        Chicago, IL   60606

5        (Danzito@pjmchicago.com)

6             Appeared on behalf of the defendants.

7

8   ALSO PRESENT:

9             MR. EDDIE BRADLEY

10

11               - - - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 4

1              MR. MORAN:  Let the record reflect
2     this is deposition of Ms. Vivian Covington in
3     the case of Bradley versus Village of
4     University Park, et al, Case No. 15 CV 08489.
5                    And we are here pursuant to an
6     Amended Notice of Deposition.  It is a remote
7     deposition.  The parties have agreed to a
8     remote deposition.
9                    And we have been provided with a
10    Zoom login passwords and are present today
11    through Zoom, is that all correct?
12             MR. LANZITO:  That's correct for the
13    defendants' counsel, this is Dominick Lanzito.
14             MR. MORAN:   Thank you.
15             MR. LANZITO:   I know your Notice of
16    Deposition required her to bring all of the
17    documents to her deposition.  We are remote.
18                    I can represent on the record she
19    reviewed the complaint with the attached
20    documents and her Answers to Interrogatories in
21    advance of today's deposition.
22             MR. MORAN:  Okay.
23             MR. LANZITO:  Your exhibits you are
24    going to attach.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

```
                                        Page 5
 1            MR. MORAN:  Okay.  Did you get the

 2   exhibits I sent over this morning, just the two

 3   letters and --

 4            MR. LANZITO:   And the full contract.

 5            MR. MORAN:  Yes.

 6            MR. LANZITO:   I acknowledge receipt.

 7            MR. MORAN:  Okay.

 8

 9              VIVIAN COVINGTON,

10   called as a witness herein, having been first

11   duly sworn, was examined and testified as

12   follows,

13              E X A M I N A T I O N

14   BY MR. MORAN:

15       Q.   Ms. Covington, state your name for the

16   record?

17       A.   Vivian E. Covington,

18   C O V I N G T O N.

19       Q.   Thank you.  And this is going to take

20   a little bit longer because there is material

21   on top of everything, but hopefully we will get

22   through this.

23              Where do you presently work,

24   Ms. Covington?
```

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 6

1       A.   Department of Veterans Affairs, Hines,
2    Illinois, H I N E S.
3            MR. MORAN:  I have to take a one
4    minute recess.  Hang on, one second.
5              (Recess.)
6
7    BY MR. MORAN:
8       Q.   So you are working for the U.S.
9    Department of Veterans Affairs?
10      A.   Yes.
11      Q.   Okay.  And how long have you been
12   there?
13      A.   I've been in the federal government
14   42 years.
15      Q.   Okay.  How long have you been with the
16   VA?
17      A.   God, I think about, oh, 30 something,
18   38 maybe.
19      Q.   And where do you go to work for the
20   VA?
21      A.   Currently I'm working remote, but I go
22   to Hines, Illinois when I'm on site.
23      Q.   Okay.  Do you live in University Park?
24      A.   Yes.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 7

1      Q.   Okay. How long have you lived there?

2      A.   22 -- well, actually I had a home

3  built -- about 23 years approximately.

4      Q.   Okay.  Are you presently holding any

5  elective office for University Park?

6      A.   No.

7      Q.   Are you presently appointed to any

8  commissions or legislative or governing bodies

9  in University Park?

10      A.   No.

11      Q.   In the past is it correct that you

12  were Mayor of University Park?

13      A.   Yes.

14      Q.   And were you also a trustee of

15  University Park in the past?

16      A.   Yes.

17      Q.   Okay.  When was -- when -- what was

18  the timeframe of your last position as Mayor,

19  from what year to what year did it run?

20      A.   2011 to 2019, two terms.

21      Q.   Okay.  Were they consecutive?

22      A.   Yes.

23      Q.   They were consecutive?

24      A.   Yes.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 8

1        Q.    Have you had occasion to review any

2   documents to prepare for your deposition today?

3        A.    Yes.

4        Q.    And what did you go over?  What

5   documents did you look at?

6        A.    The letter from Mr. Brent to

7   Mr. Bradley, two letters.  And the complaint

8   and two letters.

9        Q.    Now, one of those two letters I didn't

10  attach as the exhibits, but do you recall that

11  letter from Oscar Brown?

12       A.    Pardon me?

13       Q.    One of the letters was from Oscar

14  Brown, did you notice that?

15       A.    It was to Oscar Brown you say?

16       Q.    No, it was from Oscar Brown.

17       A.    No, I don't have that.

18       Q.    Okay.  I sent it to your counsel

19  today.

20            MR. LANZITO:   For the record I don't

21  believe that was attached to the complaint with

22  the exhibits.

23            MR. MORAN:  No, it wasn't attached to

24  the complaint.  It was in the record though.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

Page 9

1          MR. LANZITO:   I haven't sent it to

2    her yet.  Do you want me to send it to her?

3    I can.

4          MR. MORAN:  Yes.

5          MR. LANZITO:  Which one are we looking

6    at first then?

7          MR. MORAN:   We will look at in a

8    second here.

9          MR. LANZITO:   Is it going to be

10   marked with an exhibit number, John?

11         MR. MORAN:   The next Exhibit Number,

12   Ms. Court Reporter, 8 or 9.

13                 (Deposition Exhibit No. 1-10 was

14                  referred to.)

15   BY MR. MORAN:

16      Q.   Okay.  Ms. Covington, take a look at

17   what's been marked as Exhibit 8 and tell me if

18   you recognize the document?

19      A.   Give me a minute.

20      Q.   Sure.

21         MR. LANZITO:   Is everyone seeing it?

22         MR. MORAN:   That is the Oscar Brown

23   letter.

24         MR. LANZITO:   Is that what you want?

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 10

1          MR. MORAN:   Yes.

2          MR. LANZITO:   This one will be

3   Exhibit 9.  Maxine Jackson letter.

4          MR. MORAN:   That's what I have two

5   questions about.

6          MR. LANZITO:  Dated June 10, 2015, for

7   the record this will be Exhibit 9.

8          MR. MORAN:   Right.

9          MR. MORAN:   Let me know if you have

10  had a chance to read the letter.

11          THE WITNESS:  I'm reading it now.

12  BY MR. MORAN:

13     Q.   Okay.

14     A.   Okay.

15     Q.   Okay.  Do you recognize the letter?

16     A.   I'm reading it.  I don't recall.

17     Q.   You don't recall it.

18          Is that your name on the

19  letterhead to the left side of the letter?

20     A.   My name is on all of the letterheads.

21     Q.   Lists you as Mayor, is that correct?

22     A.   Yes.

23     Q.   And are the names under Board of

24  Trustees, correct, for June 10, 2015?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 11

1       A.   Yes.

2       Q.   Okay.  And the letter references

3    another letter sent apparently by you or by

4    your authorization to Mr. Bradley, is that

5    correct?

6       A.   I'm sorry.  What did you say now?

7       Q.   I said this letter references a letter

8    of termination that was sent to Mr. Bradley?

9       A.   Apparently so.

10      Q.   Okay.  And do you agree with the

11   conclusion in the letter that "the contract

12   conferred no rights, imposed no duties and

13   afforded no protection"?

14          MR. LANZITO:   Objection.

15          THE WITNESS:  I don't recall.

16   BY MR. MORAN:

17      Q.   You don't recall. Okay.  And who is

18   Maxine Jackson?

19      A.   At that time she was the HR person.

20      Q.   Okay.  How long had she been in that

21   position on June 10th of 2015?

22      A.   Oh, my God, you are really asking

23   a lot right now. I can't remember if she was

24   there. I can't remember the date how long she

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 12

1   had been there.

2       Q.   Okay.

3       A.   Sorry about that.  I can't.

4       Q.   Had she been there for at least a

5   couple of weeks before the 15th of June, before

6   the 10th of June of 2015?

7       A.   I'm pretty sure of that.

8       Q.   Look at Exhibit 8, which is the Oscar

9   Brown letter.

10          MR. LANZITO:   This one, John, so we

11  are on the same page.

12          THE WITNESS:  Yes.

13          MR. MORAN:  Yes.

14          MR. LANZITO:   Can you see that one?

15          THE WITNESS:  Barely.

16          MR. LANZITO:  I will zoom in and move

17  it around for everybody.

18          THE WITNESS:  Great.  Thank you.

19  Okay.

20  BY MR. MORAN:

21      Q.   Are you familiar with this letter?

22      A.   Let me read it, please.

23      Q.   Sure.

24      A.   I don't recall it, maybe he did.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 13

1    I can't recall if he sent this out.  A lot was

2    done that was part of the legislative

3    committee, so I don't know if I saw it or not.

4    I might have, he sent it to me, so apparently I

5    read it.  I don't recall.

6         Q.   Okay.  The letter is addressed to

7    yourself and the other Board of Trustees,

8    members, is that correct?

9         A.   Uh-uh.

10        Q.   Is that a yes?

11             MR. LANZITO:   Keep your voice up.

12             THE WITNESS:  Yes.

13   BY MR. MORAN:

14        Q.   Okay.  Does Mr. -- does Trustee Brown

15   suggest that Mr. Bradley might have a property

16   interest in his position?

17        A.   I can't answer that.

18        Q.   Well, what does he say in the text of

19   his letter, if you want to just read the

20   letter?

21        A.   You want me to read the letter?

22        Q.   Yes.

23        A.   Due to the way the meeting was posted

24   and Mr. Linear's property interest in his job,

Siebert & Associates Court Reporters, Inc.

Page 14

1   no action should be taken by the Village Board

2   today.  The following are points to consider:

3              Notice may not have been given to

4   registered news media outlets with the Village

5   of University Park as required in state

6   legislation, Illinois, acronym for that,

7   furthermore the duties of the clerk's office

8   were circumvented in violation of our local

9   ordinance Section 239-03(b).

10             Mr. Linear may have property

11  interest in his job as Village Manager and

12  should be afforded due process in any

13  termination determination.

14             Based on the previous two points,

15  if action is taken by the Village Board today,

16  it is possible we may be held personally liable

17  for our action, furthermore we could subject

18  the Village to additional liability under the

19  section.  That's it.

20      Q.   I see.  Okay.  So you are assuming you

21  have read it but you can't remember it, is that

22  correct?

23      A.   No, it has been a while.

24      Q.   Okay.  Now you said you read a copy of

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

```
                                            Page 15
 1    the complaint in this case, did you read a copy

 2    of the combined answer of the Village and

 3    yourself in the case?

 4         A.    Vaguely.  Yes, I glanced at it. Yes.

 5         Q.    Okay.  And --

 6         A.    This right here.  (Indicating.)

 7              MR. LANZITO:   Okay.  Let me find it.

 8              THE WITNESS:  What are you referring

 9    to?  Yes.  Are you referring to this one?

10              MR. MORAN:   Yes.

11              MR. LANZITO:   Filed in December of

12    2015.

13    BY MR. MORAN:

14         Q.   Right, December 23, 2015, Document

15    Number 11 under this case number.

16              MR. LANZITO:   What number is this

17    again?

18              MR. MORAN:  I think it was Exhibit 7.

19              MR. LANZITO:   Thank you.

20              THE WITNESS:  Is this the one I

21    received, Dominick?

22              MR. LANZITO:   For the record she

23    received the complaint with the exhibits that

24    were attached.
```

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 16

1          MR. MORAN:   This is an answer that

2     was submitted under your name and under the

3     Village's name by your previous attorney

4     Patrick Wall.

5          Q.   I was just wondering if you had any

6     changes you wanted to make to your answer or

7     affirmative defenses?

8          MR. LANZITO:   Other than what is

9     presently before the Court, John?

10         MR. MORAN:   Yes.

11         THE WITNESS:   That doesn't make sense

12    to me.   Whatever it is, it is.

13    BY MR. MORAN:

14         Q.   Okay.   Now, what were your job

15    responsibilities as Mayor?

16         A.   To do legislation and policy making.

17         Q.   And in terms of policy making, were

18    you the final policy maker for the Village of

19    University Park when you were Mayor?

20         A.   The Board, not me individually, the

21    Board.

22         Q.   So you would -- how did it work did

23    you present policies to the Board of Trustees

24    or did they present them to you?

cmsreporters@comcast.net

Page 17

1      A.   Actually the Village Manager would

2  present things to us, and we would vote on it,

3  making sure that it was legal and correct and

4  in accordance to state statute, naturally,

5  that's it.

6      Q.   Okay.  And you, I'm trying to get my

7  screen here to work properly, did you have

8  occasion at some point to participate in a

9  contract with plaintiff Eddie Bradley to be

10 Chief of the Village, is that correct?

11     A.   No, the Village Manager is responsible

12 for that.  They do the interviewing of the

13 police -- Section 2205 -- I mean 20205 duties

14 regarding officers and departments, that's all

15 total for the Village Manager.  We just approve

16 whatever.  They would hire them and bring it to

17 the Board.

18     Q.   I see.  That's your --

19     A.   We are managerial-type of government.

20 We are not strong Mayor.

21     Q.   Okay.  Did you -- you signed off on

22 the written contract with Mr. Bradley, is that

23 correct?

24     A.   The Board does.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 18

1      Q.   Well, you signed your name, didn't

2  you?

3      A.   Right, as the Village Manager, as the

4  President of the Board, yes, that's a part of

5  our minutes.

6      Q.   Okay.

7      A.   So once something is passed then I

8  sign all of the documents, codified ordinances,

9  that's what I signed, the ordinances those

10  approved.

11          MR. LANZITO:   Do you want the exhibit

12  up any longer?

13          MR. MORAN:   This.  You can take that

14  exhibit off right now.

15          MR. LANZITO:   Okay.  Very good.

16  Put the contract up for Ms. Covington.

17  BY MR. MORAN:

18      Q.   Okay.  If you go to the last page of

19  the contract, is that your signature?

20      A.   It appears to be.

21      Q.   Do you have any doubts about that?

22      A.   Sometime, yep, but I don't think -- it

23  is not dated.

24      Q.   I think there is a date on the very

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)

cmsreporters@comcast.net

Page 19

1    first page.

2         A.    No, normally it is dated on the last

3    page over the date -- over the signature as

4    well.

5         Q.    Okay.  Mr. Bradley apparently signed

6    it as well, is that correct?

7         A.    It appears that he did.

8         Q.    Okay.  And is it further -- is it

9    correct that Mr. Bradley worked in the position

10   as Chief of Police for some time?

11        A.    His term, whatever he was hired under.

12        Q.    Okay.  Did he work as Chief of Police

13   for --

14        A.    Yes.

15        Q.    Yes.  Okay.  Now, the Paragraph 4 of

16   the contract on the last page, do you see that

17   it says the Village may chose to terminate the

18   contract without cause at any time, do you see

19   that?

20        A.    Yes, I see that.

21        Q.    And shall notify Bradley in writing of

22   that decision and pay a termination fee equal

23   to four months salary of Bradley?

24        A.    I see that.

Siebert & Associates Court Reporters, Inc.

Page 20

1          Q.   Such a fee shall also be paid if the

2     term of this contract is declared to be

3     unenforceable as Bradley may have lost other

4     employment opportunities, do you see all of

5     that?

6          A.   Yes, I did.

7          Q.   Okay.  Do you know if any notice was

8     ever given to Bradley in writing?

9          A.   I have to check with the Village

10    Manager on that. I didn't do it.

11         Q.   You don't know?

12         A.   I'm not sure.

13         Q.   Okay.

14         A.   I'm sure they did but -- they was

15    supposed to but -- I'm sure they followed

16    protocol.

17         Q.   Okay.  Do you know if Mr. Bradley was

18    given an opportunity to speak to the Board of

19    Trustees regarding his termination?

20         A.   I can't recall.  I can't recall if he

21    did or not.

22         Q.   Do you know if the Village gave

23    Ed Bradley a pre-termination hearing with

24    notice of what the charges against him were?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 21

1      A.   I can't recall.  Sorry, its been

2  awhile.

3      Q.   Do you understand that the contract

4  provides he could be terminated with cause only

5  with proper written notice setting forth the

6  charges at least seven days prior to a hearing?

7           MR. LANZITO:  Objection.  It calls for

8  a legal conclusion.  You may answer.

9           THE WITNESS:  I don't understand the

10  question.

11  BY MR. MORAN:

12      Q.   Okay.  Could you repeat the question,

13  Ms. Court Reporter.

14             (Question read.)

15      A.   I understand the clause.

16      Q.   Okay.  Do you understand that's in his

17  employment contract with the Village of

18  University Park?

19      A.   Apparently so.

20      Q.   Okay.  And do you know if that clause

21  was fulfilled by the Village?

22      A.   I do not.  The Village Manager handles

23  the day-to-day process.  I don't do that.

24      Q.   Who was the Village Manager in

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 22

1    May 15th of 2015?

2         A.    That was Bola Delano.

3         Q.    You don't know whether or not she

4    complied with the contract?

5         A.    That's not my job, that's her job,

6    wasn't my job.

7         Q.    Do you know if Mr. Bradley ever

8    received any notice of the charges against him?

9         A.    I didn't get into that, the day-to-day

10   process I did not get into.

11        Q.    Wasn't he the Police Chief?

12        A.    Yes, through the Village Manager.

13        Q.    Okay.  Do you know if the Village

14   Board provided Bradley with a post-termination

15   hearing after he was terminated?

16        A.    Again I don't recall that.  It would

17   be up to the Village Manager.

18        Q.    Do you if Bradley was ever given an

19   opportunity to be heard before he was fired?

20        A.    Village Manager's, job.

21        Q.    Okay.  Was Bradley given an

22   opportunity -- excuse me.  Was he ever given

23   severance pay?

24        A.    I don't recall.  I'm sure if that was

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 23

1    in the order, she would have done that.

2         Q.   Did the Village feel that Bradley had

3    committed some sort of criminal conduct when

4    they terminated him?

5              MR. LANZITO:   Objection.  You may

6    answer.

7              THE WITNESS:  I don't recall that.

8    BY MR. MORAN:

9         Q.   Okay.  Do you know if any Trustees or

10   Village employees have asked Bradley to come

11   back as Police Chief?

12             MR. LANZITO:   Objection, foundation.

13   You may answer.

14             THE WITNESS:  I don't know.

15   BY MR. MORAN:

16        Q.   Have you heard that?

17        A.   I'm not aware of that.

18        Q.   Okay.  Was there a federal

19   investigation of the Village in 2015 and

20   thereafter?

21        A.   Pardon me?

22        Q.   Was there a federal investigation of

23   the Village?

24        A.   I'm not aware of it.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 24

1      Q.   So you don't know whether there was an
2   investigation and if there was an investigation
3   how it was resolved, is that correct?
4      A.   A federal investigation on what?
5      Q.   On Village financing.
6      A.   We are always under investigation.
7   Everybody is always under investigation.
8   That's a moot question.
9      Q.   Were you -- did you hold elective
10  office for any other municipalities before
11  University Park?
12     A.   No.  I'm sorry.  Repeat that.
13     Q.   I'm just asking.
14     A.   Oh, no.
15     Q.   Okay.  Do you have any knowledge as to
16  whether or not Eddie Bradley has failed to
17  mitigate damages in this case?
18     A.   Again repeat that.
19           (Question read.)
20           THE WITNESS:  No, I don't.
21           MR. LANZITO:   Objection, form, calls
22  for a legal conclusion, for the record.  Answer
23  can stand.
24           THE WITNESS:  I have no knowledge.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 25

1   BY MR. MORAN:

2        Q.   Do you have any knowledge as to what

3   administrative remedies Mr. Bradley has failed

4   to exhaust?

5        A.   No.

6             MR. LANZITO:   Calls for a legal

7   conclusion, form.

8   BY MR. MORAN:

9        Q.   You said you have a trustee form of

10  government, is that correct?

11            MR. LANZITO:   Objection,

12  mischaracterizes the testimony.  You may

13  answer.

14            THE WITNESS:  We have a

15  managerial-type of government.

16

17  BY MR. MORAN:

18       Q.   Okay.  And you have a Board of

19  Trustees and a Mayor, correct?

20       A.   Did you hear me?  I said yes.

21       Q.   Oh, I didn't.  I'm sorry.  I didn't

22  hear you.  Okay.  Did the Board of Trustees

23  ever issue a call for you to resign as Mayor?

24       A.   At what time?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 26

1     Q.   Do you recall what year that was in?

2     A.   Shortly after I was Mayor, I can't

3  remember the date.  I can't remember the date.

4  I'm sorry.

5     Q.   That's okay.  Did they have the power

6  to remove you from office?

7     A.   No.  No.

8     Q.   Okay.  Who -- in April, May and June

9  of 2015, do you recall who the Village

10  attorneys were that you worked with?

11     A.   Oh, God, in 2015 there were more than

12  one. I think -- I can't remember, I think I

13  can't remember them.  I think it was Odelson &

14  Sterk at one point, and they kept flipping

15  them, so I can't recall all of them. At one

16  point it was Odelson & Sterk I think it was.

17     Q.   Do you recall if Felicia Frazier?

18     A.   Oh, yes, that was Odelson & Sterk.

19     Q.   Okay.  And what about Muller?

20     A.   Yes. I remember him.

21     Q.   He was not part of Odelson & Sterk,

22  right?

23     A.   No, he was not.

24     Q.   Did they work at the same time, Muller

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 27

1    and Odelson & Sterk, if you recall?

2         A.    I recall -- I don't know how close or

3    overlapping, but I think at one point they may

4    have overlapped.  The Board was flipping them,

5    as I said.

6         Q.    I see. Okay.  Do you recall being

7    deposed in a case involving Lafayette Linear?

8         A.    I think I was. It has been a while.

9         Q.    Okay.  Do you recall the name

10   Lafayette Linear?

11        A.    Yes.

12        Q.    And did he have a position with the

13   Village of University Park?

14        A.    Village Manager.

15        Q.    And when -- he was terminated, is that

16   correct?

17        A.    No, there was another election, his

18   contract was up.

19        Q.    Okay.  So as you recall his contract

20   being up, is that right?

21        A.    Yes.

22        Q.    And --

23        A.    Shall I say expired.

24        Q.    Who said he was fired?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 28

1       A.    I said expired.

2       Q.    Expired.  Oh, okay.  So the Village

3   did not fire Mr. Lanier, is that correct?

4       A.    I don't recall that.

5       Q.    So you don't recall?

6       A.    No.

7       Q.    Okay.  Does -- I just want to go over

8   a few things.

9            So you don't recall, you

10  personally don't recall giving any notice to

11  Ed Bradley of what he was charged with in terms

12  of his contract being terminated, is that

13  right?

14           MR. LANZITO:   Objection to the form

15  of the question.  You can answer.

16           THE WITNESS:  Oh, you said as far

17  as -- no, it was up to the Village Manager if

18  she gave me something, that she was removing

19  him she was removing him. The Village Manager

20  does that again.

21  BY MR. MORAN:

22      Q.    And as you indicated that -- what is

23  her name Bola?

24      A.    Bola Delano.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

```
                                                    Page 29
1        Q.   Bola Delano was the Village Manager
2   then?
3        Q.   Yes?
4             MR. LANZITO:   Vivian, for the record
5   and the court reporter's transcript, can you
6   spell the first and last name.
7             THE WITNESS:  B O L A.  D E L A N O.
8             MR. LANZITO:  Thank you.
9   BY MR. MORAN:
10       Q.   Okay.  My follow-up question then is,
11  where does Ms. Delano reside, where can she be
12  found?
13       A.   I don't know her address.
14       Q.   Does she live in University Park?
15       A.   She does not, and she did not at the
16  time.
17       Q.   And there is no residency requirement
18  there?
19       A.   No, there isn't, not for the Village
20  Manager that is.
21       Q.   Okay.  Do you know how long she was in
22  the Village Manager position after Mr. Lanier
23  was Village Manager?
24       A.   It wasn't a year.  The Board removed
```

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 30

1    her.

2        Q.   Do you know why they removed her?  Why

3    they said they removed her, I should say?

4        A.   She had a heavy voice, was one of

5    them.  It was frivolous to me.  It was a

6    frivolous cause, but I can't really understand

7    why she was removed.

8        Q.   So by heavy voice you mean heavy

9    handed, they thought she was heavy handed

10       A.   I don't know what -- the understanding

11   of the word, why they said that, I cannot

12   define that for them.

13       Q.   Okay.  That's what they said then,

14   that's what you recall they said?

15       A.   They said other things.

16           MR. MORAN:  Okay.  Dominick, I would

17   like to take five minutes just to review my

18   notes, and I will probably end this rather

19   abruptly.

20           MR. LANZITO:  Okay.  That's fine.

21   Just mute your video or stop your video.  And

22   then when you come back I will come back.

23   Okay.  All right.

24           MR. LANZITO:  Thank you.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 31

1            (Recess.)

2    BY MR. MORAN:

3        Q.    Back on the record, Ms. Covington.

4        A.    Yes.

5        Q.    Hi.  You understand you are still

6    under oath, correct?

7        A.    Exactly.

8        Q.    Okay.  I have a few questions for you.

9              Have you ever attended any

10   employee relation classes, seminars or training

11   when you were Mayor of University Park?

12       A.    Have I received -- repeat your

13   question.

14       Q.    Any classes in employee relations,

15   training for being Mayor, any kind of training

16   at all, like employment discipline, did you

17   receive any training in that area?

18       A.    Since I was the Mayor?

19       Q.    Yes.

20       A.    Yes.

21       Q.    Okay.  What, do you recall, training

22   you got?

23       A.    South Suburban Mayors and Managers,

24   they all have different seminars here and

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 32

1  there.

2      Q.   Okay.  So you went to several seminars

3  with them, is that correct?

4      A.   Maybe one or two.  They didn't offer

5  that much.

6      Q.   Okay.  Anything else that you recall?

7      A.   A lot of trainings, that's what we do.

8  On my own but --

9      Q.   Okay.

10     A.   -- no personnel, different trainings.

11     Q.   Are you presently or have you ever

12  been the member of a union?

13     A.   Yes.

14     Q.   Okay.  And what union is that?

15     A.   It has nothing to do with the Village.

16     Q.   Okay.  But what union is it?

17          MR. LANZITO:   You can answer.

18          THE WITNESS:  SEIU.

19  BY MR. MORAN:

20     Q.   Okay.  And that's all with your

21  federal, your current employment, is that

22  correct?

23     A.   Yes, it is.

24     Q.   Okay.  Are you familiar with -- have

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 33

1   you ever been on the Board of the union?

2        A.   No.

3        Q.   Okay.  Are you familiar with employee

4   contracts and contract language?

5        A.   Vaguely.

6             MR. LANZITO:   Form.  You can answer.

7             THE WITNESS:  Vaguely.

8   BY MR. MORAN:

9        Q.   Have you ever been part of a

10  negotiating team for contracts for anyone?

11       A.   No.

12       Q.   Okay.  Have you negotiated any

13  contracts yourself?

14       A.   Nope.

15       Q.   Did you have any negotiations with

16  Eddie Bradley on his contract?

17       A.   Again managerial kind of government,

18  no.

19       Q.   Okay.  Do you have insurance on your

20  home?

21       A.   Excuse me?

22       Q.   Do you have insurance on your home?

23            MR. LANZITO:   You can answer.

24            THE WITNESS:  Why is that relevant?  I

Siebert & Associates Court Reporters, Inc.

Page 34

1    don't think that's relevant.

2              MR. LANZITO:    Are you talking a

3    certain type of insurance?

4    BY MR. MORAN:

5        Q.    There is a defamation count,

6    homeowner's insurance covers it.

7        A.    I don't think I have to reveal that.

8              MR. LANZITO:    You can answer that.

9    Do you have homeowner's insurance, Vivian?  You

10   can answer that, Vivian.

11             THE WITNESS:  Yes, I do. That's

12   ridiculous.

13   BY MR. MORAN:

14       Q.    Was an individual named Mel Davis

15   Chief of Police before Eddie Bradley was?

16       A.    Yes.

17       Q.    Was Mel Davis fired?

18       A.    Yes.

19       Q.    Were you Mayor then?

20       A.    Yes.

21       Q.    Did Mel Davis have a contract?

22       A.    Yes.

23       Q.    He did have a contract?

24       A.    Yes, he did.  I'm pretty sure most of

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 35

1    them do.

2         Q.   Do you have -- why was he fired, do

3    you know?

4         A.   The Board fired him.

5         Q.   So they did it by Board resolution?

6         A.   Pretty sure they did.

7         Q.   Okay.  Did you give Mel Davis a

8    $25,000 severance check?

9         A.   I didn't give him anything.  I don't

10   know what the negotiations was really.  I'm not

11   familiar with it. I can't recall it.

12        Q.   Okay.  So you personally didn't give

13   him anything?

14        A.   Personally, no.

15        Q.   Okay.  And you don't know whether he

16   had -- you are saying he did have a written

17   contract?

18        A.   I don't recall.  I would have to check

19   with the Village Manager.

20        Q.   Do you know who the Village Manager

21   was when Mel Davis was the chief?

22        A.   I think it was Lafayette Linear, I

23   think.

24        Q.   Okay.  Do you know whether Mel Davis

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 36

1    was able to come before the Board at a regular

2    board meeting and address the Board concerning

3    his termination?

4         A.   I don't recall.  Might have.  I can't

5    recall that.

6         Q.   You don't recall if he was given a

7    $25,000 check?

8         A.   I don't.  Might have.  I said it has

9    been awhile.

10        Q.   If it was done was that because the

11   Board wanted it or because you wanted it or do

12   you have any thoughts on that?

13        A.   None.

14        Q.   Okay.  Do you recall that Chief

15   Bradley was hired at an emergency board meeting

16   on a Saturday morning?

17        A.   I don't recall that, the date and time

18   might have been, I don't recall it.

19        Q.   Okay.  You did not attend any

20   emergency meetings to hire Eddie Bradley, is

21   that correct?

22        A.   I don't recall if I was there or not.

23   I normally don't miss any of my meetings.  That

24   might have been called by the Legislature, I

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 37

1    don't recall, but I'm sure you can find that on

2    our ordinance, if I was there or not.

3         Q.   Do you recall who the chair of that

4    committee was back then?

5         A.   Joseph Roudez, R O U D E Z.

6         Q.   Do you recall a ratification vote at

7    the next official Board meeting for Eddie

8    Bradley as Police Chief?

9         A.   What did you say?

10        Q.   Do you recall a regular Village Board

11   of Trustees meeting at which Eddie Bradley's

12   being placed in the position of Police Chief

13   was ratified?

14        A.   Yes, I'm pretty sure we did, when he

15   became Chief, we do that with all of them.

16        Q.   Okay.  Did you vote yes or no?

17        A.   I don't recall.

18        Q.   You don't recall if you voted yes or

19   no?

20             MR. LANZITO:   Objection, asked and

21   answered.  You can answer again.

22             THE WITNESS:  You can review the

23   minutes, I can't recall.

24   BY MR. MORAN:

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 38

1      Q.   Okay.  Do you recall receiving a

2   letter from Eddie Bradley's attorneys

3   requesting proper notice of termination and

4   charges?

5      A.   Probably got it.  I don't recall.

6      Q.   You didn't respond to it, do you

7   recall why?

8      A.   Probably gave it to the Village

9   Manager or our attorney.

10     Q.   And at that point that would have been

11  Odelson & Sterk?

12     A.   I don't know who it was at that point.

13  Probably was them.

14     Q.   Would the Village Manager have been

15  Bola Delano?

16     A.   Was she still there?  I'm not sure if

17  she was even still there.  Her time was short

18  term.  We would have to look back in the

19  records for that and see who was the Village

20  Manager.

21     Q.   Is it correct that several weeks

22  before Chief Bradley was fired that you

23  received a file containing material concerning

24  criminal investigations of felony theft of

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 39

1    Village property?

2         A.    Pardon me?

3         Q.    Did you receive --

4         A.    No.

5         Q.    -- an envelope with such material in

6    it?

7         A.    No.  Who did I get that from?

8         Q.    So you don't recall any investigation,

9    any file suggesting there was an investigation

10   at all, is that correct?

11        A.    No, I don't.

12        Q.    Do you know a person named Irma

13   Holloway?

14        A.    No, of the firm IRH.

15        Q.    What does that stand for?

16        A.    What is the name -- I forgot what the

17   acronym means.  I have to go back in the files

18   and see what the acronym means.

19        Q.    Do you presently have any kind of

20   relationship with her?

21        A.    No, I don't.

22        Q.    In the past she provided certain

23   services to the Village while you were Mayor?

24        A.    Yes.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 40

1      Q.   Okay.  What was she supposed to be

2    doing?

3      A.   Her firm was supposed to be doing some

4    type of auditing, accounting for the firm, for

5    the Village.

6      Q.   Were you the Mayor when she was first

7    hired to do this work for the Village?

8      A.   Yes, I was.

9      Q.   Okay.  Have you ever taken vacations

10   with her?

11     A.   Excuse me.

12     Q.   Have you ever taken vacations with

13   her?

14     A.   No.  I didn't know her personally.

15     Q.   Okay.

16     A.   I didn't even hire her.

17     Q.   Do you recall how many contracts you

18   signed with the Village while you were mayor?

19     A.   I think there was one, I'm not sure,

20   she was brought on by the previous Mayor, which

21   was Johnna Thompson.

22     Q.   Johnna?

23     A.   J O N N A?

24     A.   Yes. J O H N N A.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)

cmsreporters@comcast.net

Page 41

1      Q.   Okay.  And those -- you described the

2   services as being auditing and accounting

3   services, is that correct?

4      A.   Yes, that's what they said they were.

5      Q.   Okay.  IRH or Ms. Holloway were paid

6   under the contracts?

7      A.   I know it was an astronomical amount,

8   close to 5 or $600,000.

9      Q.   Would it be fair to say the Village

10  was millions of dollars in the red at that

11  time?

12     A.   I don't know how, we were in the

13  negative, yes.

14     Q.   You were in the negative?

15     A.   The Village was, yes.  When I came on

16  board the Village was in the negative.

17     Q.   Have you ever filed any paperwork or

18  documentation with the Board of Fire & Police

19  Commissioners of University Park since you

20  terminated Chief Bradley?

21     A.   Have I filed any paperwork with them?

22     Q.   Yes.

23     A.   Such as what are you referring to?

24  No, I've never filed any paperwork.  What are

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

```
                                          Page 42

 1   you referring to?  What type of paperwork?

 2   What do you mean?

 3        Q.    Presenting either giving charges for

 4   somebody, a notice of charges?

 5        A.    No.

 6        Q.    Notice of hearing?

 7        A.    No.

 8             MR. LANZITO:   Let him finish his

 9   question.

10   BY MR. MORAN:

11        Q.    When you were Mayor were you given a

12   laptop computer by the Village?

13        A.    Yes.

14        Q.    Was that every taken by the FBI?

15        A.    They went to the office, yes, and got

16   it.

17        Q.    Did you ever have occasion to tell the

18   Will County Sheriff that someone was trying to

19   injure you or kill you?

20        A.    Excuse me.  I don't see the relevance.

21             MR. LANZITO:   John, what is this in

22   relation to, for the record?

23             MR. MORAN:   For the record, it goes

24   to the witness' credibility.
```

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 43

1           MR. LANZITO:   Whether or not she got

2    an order of protection against a person.

3           MR. MORAN:   No, I asked whether she

4    called the Will County Sheriff's Office to tell

5    them that someone was trying to kill her?  Yes

6    or no?

7           MR. LANZITO:   You can answer, Vivian.

8           THE WITNESS:  No, I did not call Will

9    County and say somebody was trying to kill me.

10   BY MR. MORAN:

11      Q.   Okay.  Did you make a similar

12   complaint to the University Park Police

13   Department?

14           MR. LANZITO:   Objection to the form

15   of the question.  You can answer.

16           THE WITNESS:  Call the police

17   department and ask them and report that

18   somebody was trying to kill me?

19   BY MR. MORAN:

20      Q.   That you were being threatened, yes?

21      A.   No, I called Will County.  I did not

22   call University Park.

23      Q.   When you called Will County, what did

24   you tell them?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 44

1       A.    They were there on the scene.

2       Q.    The scene where this happened, this

3   threat?

4       A.    Yes.

5       Q.    Okay.  Did the threat take place in

6   University Park?

7       A.    Yes.

8       Q.    Did it take place in the context of

9   your official duties?

10      A.    Yes.

11      Q.    And who was the person who was making

12  the threat?

13      A.    I don't see the relevance of this.

14            MR. LANZITO:   You can answer, Vivian.

15            THE WITNESS:  Mildred Morgan. Yes, I

16  had a restraining order.

17  BY MR. MORAN:

18      Q.    I see.  Okay.  Do you live in the Will

19  County part of University Park?

20      A.    Yes, I do.

21      Q.    Okay.  Now, were you ever a trustee on

22  the University Park Board of Trustees?

23            MR. LANZITO:   Objection, asked and

24  answered.  You can answer again.

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 45

 1              THE WITNESS:  Yes.

 2   BY MR. MORAN:

 3        Q.    Okay.  How many years were you a

 4   trustee?

 5        A.    Eight years.

 6        Q.    And you were Mayor eight years, is

 7   that correct?

 8        A.    Correct.

 9        Q.    Did -- who was the chairman of the

10   Fire & Police Commission in 2015 when you were

11   last Mayor?

12        A.    It was Mr. Brooks.

13        Q.    Is that Joseph Brooks?

14        A.    Theaplise Brooks.

15        Q.    Theaplise.  Okay.  Have you ever heard

16   of a whistleblower?

17        A.    Yes, I have.

18        Q.    Do you know what a whistleblower is?

19        A.    Yes, I do.

20        Q.    And what is a whistleblower?

21        A.    Someone that shares information for

22   anything that's fraudulently done or they see

23   some theft being done on their job they can

24   report it, a whistleblower.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                                        94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 46

1      Q.   Okay.  Do you own a business?

2      A.   No, I do not.

3      Q.   Do you chair or are you a part of a

4  nonprofit?

5           MR. LANZITO:   You can answer.

6           THE WITNESS:  Do I chair -- what?  I'm

7  sorry, a business, no, I don't chair a

8  business.

9  BY MR. MORAN:

10      Q.   Do you have a chair or any position

11  with a nonprofit?

12      A.   That would be the Democratic Women.

13      Q.   If it is nonprofit?

14      A.   Yes.

15      Q.   Okay.

16      A.   Yes.

17      Q.   Is there somebody else there, you keep

18  looking over to you right?

19      A.   I'm looking in my mirror.

20      Q.   Did you recall asking Lafayette Linear

21  to fire Chief Bradley?

22      A.   I don't recall that.

23      Q.   Would anything refresh your

24  recollection?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 47

1       A.    No.

2       Q.    Okay.  What -- in your mind what are

3  the duties of the Fire & Police Commission?

4       A.    What they do is to interview incoming

5  officers, recruit officers, discipline officers

6  and firemen.  Only officers, police officers

7  and firemen officers, firemen.

8       Q.    What is the chair of that commission,

9  what is their responsibility or duty?

10      A.    To oversee the committee to make sure

11  that they have their modules taken, and they

12  take their modules and learning as far as

13  education of what their duties are.

14      Q.    What are modules?

15      A.    Training, state required.

16      Q.    Got you.

17      A.    Uh-uh.

18      Q.    And what is the duty of the Village

19  Manager then?

20      A.    The Village Manager does the

21  day-to-day process.  They are over all of the

22  directors and the chiefs of the Village and

23  they do the day-to-day processing, discipline,

24  they are supposed to respond to the residents

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 48

1    and bring deliveries to the Board, contracts to

2    the Board, any negotiations, any interests,

3    economic interests or any development, they are

4    suppose to do that.

5        Q.    I see.  So other than the Police and

6    Fire Departments, hiring and firing for the

7    Village is done through the Village Manager?

8        A.    Yes. I think I gave you that

9    reference, that ordinance, yes, 2205.

10       Q.    Yes.

11       A.    Okay.

12       Q.    Is there a disciplinary process for

13   sworn personnel in the police department?

14           MR. LANZITO:   Objection, vague.  You

15   may answer.

16           THE WITNESS:  I'm not aware of it.

17   BY MR. MORAN:

18       Q.    Not really.

19       A.    You said the discipline of the

20   officers?

21       Q.    Well, you have sworn officers in the

22   police department?

23       A.    Uh-uh.

24       Q.    Is there -- I'm asking you what the

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 49

1    disciplinary process is for those people who

2    are sworn?

3          A.    I'm not aware.

4          Q.    If you know.  If you know, if you

5    don't know you don't know.

6          A.    I don't know.

7          Q.    Okay.  What is a breach of contract in

8    your -- to you?

9              MR. LANZITO:   Objection, calls for a

10   legal conclusion.  You can answer if you know

11   as a lay person.

12             THE WITNESS:  I don't know.

13   BY MR. MORAN:

14         Q.    Okay.  Who do you have your home

15   insurance with?

16             MR. LANZITO:   You can answer?

17             THE WITNESS:  Who do I have my home

18   insurance with?

19             MR. LANZITO:   Objection, foundation.

20   When?

21             MR. MORAN:    Presently.

22             THE WITNESS:  Liberty.  Can I ask a

23   question?

24             MR. LANZITO:   No, he asks the

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 50

1   questions, Vivian.

2          THE WITNESS:  Okay.

3   BY MR. MORAN:

4       Q.   Okay.  Did the FBI ever return your

5   laptop computer?

6       A.   Yes, they did.

7       Q.   How long did they have it?

8       A.    I wasn't on site when they did it,

9   they came and got it.  I think they said maybe

10  an hour, but I wasn't there.  They took it from

11  the office.

12      Q.   But it was away from you for at least

13  an hour?

14      A.    From the office, yes.

15      Q.   Yes.

16      A.    Or more.  I'm not sure how long

17  exactly, I think maybe an hour.

18      Q.   Got you.

19      A.    Uh-uh.

20      Q.   Have you ever been arrested or

21  convicted of a crime?

22      A.    No.

23      Q.   Okay.  Arrest would include anything,

24  just so you know, traffic or that sort of

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 51

1    thing?

2         A.    No, never got a ticket in my life.

3         Q.    Okay.  Hang on one second here.

4               Did the Board give any specific

5    reason for the termination of Mel Davis, do you

6    recall?

7         A.    I don't recall it.  It was something,

8    I don't know, I can't recall the details of it

9    to be honest.

10        Q.    But you would have to look at the

11   notes of that meeting?

12        A.    I would have to.

13        Q.    And those would be the notes of the

14   Board of Fire & Police Commission, the minutes?

15        A.    Not the fire and police.

16        Q.    The Board of Trustees?

17        A.    It was the Village Manager and the

18   Board and then he brought it to the Board of

19   Trustees.

20        Q.    And your recollection it was probably

21   or likely Mr. Lanier who brought that to the

22   Board of Trustees?

23        A.    Yes, most likely.

24        Q.    Now, before Mr. Bradley was

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 52

1    terminated, did you personally give him an

2    opportunity to be heard regarding his

3    termination?

4            MR. LANZITO:   Objection, asked and

5    answered.  You can answer again.

6            THE WITNESS:  I didn't deal with that,

7    that is the Village Manager.

8    BY MR. MORAN:

9        Q.   So post or pre-termination none of

10   that would have gone through your -- would have

11   gone through you personally, is that what your

12   testimony is?

13       A.   Correct.

14       Q.   Okay.  Is there anything that would

15   refresh your recollection regarding pre or

16   post-termination actions?

17       A.   Only the minutes.

18       Q.   That again would be the minutes of the

19   Board of Trustees?

20       A.   Right.  Right. Yes.

21           MR. MORAN:  Okay.  Hang on one second

22   and then we will be concluding.

23           MR. LANZITO:   Take five minutes.

24           MR. MORAN:   Yes, let's take five.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

Page 53

1                  (Recess.)

2   BY MR. MORAN:

3        Q.   Okay.  I just have three questions,

4   okay, Ms. Covington.

5        A.   Yes.

6        Q.   When the FBI took the computer, did

7   they tell anybody why they took it, did they

8   ever tell you?

9        A.   No, they didn't talk to me about it.

10  I think they might have talked to the Village

11  Manager.

12       Q.   Who was the Village Manager then?

13       A.   I think it was Johnna Townsend.

14       Q.   Johnna Townsend.  I see.

15            But they returned the computer at

16  some point the same day, is that right?

17       A.   That's what I was told, yes.

18       Q.   And did they tell you whether or

19  not -- did you ever tell you if they resolved

20  any investigation or whatever they were doing?

21       A.   I have no knowledge.  I'm sorry.  I

22  have no knowledge of that.

23       Q.   Okay.  Now, you mentioned a few times

24  that the Board of Trustees minutes would reveal

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 54

1    certain information, what we are talking about

2    the discipline such as Mel Davis, would that be

3    a closed or open-door meeting?

4         A.   I'm sure it would be an executive

5    session, if we had discipline it was always

6    executive.

7         Q.   I didn't hear the rest.

8         A.   I'm sorry.  That's all I said.  It was

9    an executive session.

10         Q.   So that's a closed season basically?

11         A.   Yes.

12         Q.   Do you get copies of those minutes as

13    Mayor?

14         A.   No, because that has to be reviewed

15    and brought up by the clerk and every six

16    months she is supposed to bring up the

17    executive sessions for the Board to vote on,

18    but we never did.  She never did bring that up.

19         Q.   Okay.  So you don't have any of these

20    minutes we are talking about?

21         A.   No, sir.  I definitely don't have them

22    now.

23         Q.   Okay.  Do you know who would have

24    them?

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 55

1        A.    The clerk.

2        Q.    So the Village clerk, whoever that is.

3    Who is the Village clerk now?

4        A.    Ms. Dee Jones has been there for 20

5    years.  Dolores, yes.  Dolores Jones.  She

6    references her name as Dee, D E E.

7        Q.    Got you.  Ms. Covington, did you

8    personally tell Eddie Bradley not to come to

9    the village hall after he had been terminated?

10        A.    No.

11        Q.    So you never told him to stay away

12    from Village functions after his termination?

13        A.    No, didn't see him.  Didn't see him.

14             MR. MORAN:  Okay.  Okay.  I don't have

15    any further questions right now.

16             MR. LANZITO:   We will reserve

17    signature.

18

19             MR. MORAN:  Okay.  Thanks.

20                     (Deposition was concluded at

21                      12:00 P.M.)

22                     -O-o-O-

23

24

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 56

1   STATE OF ILLINOIS   )

2                       )  SS:

3     COUNTY OF COOK   )

4           The within and foregoing deposition

5   of the aforementioned witness was taken before

6   Carol M. Siebert-LaMonica, C.S.R, at the place,

7   date and time aforementioned.

8           There were present during the taking

9   of the deposition the previously named counsel.

10          The said witness was first duly sworn

11  and was then examined upon oral interrogatories;

12  the questions and answers were reported in

13  shorthand by the undersigned and transcribed

14  via computer-aided transcription.

15          The within and foregoing is a true,

16  accurate and complete record of all of the

17  questions asked of and answers made by the

18  forementioned witness at the time and place

19  hereinabove referred to.

20              The signature of the witness was

21  not waived and the deposition was submitted

22  pursuant to Rules 207 and 211 (d) of the Rules

23  of the Supreme Court of Illinois to the

24  deponent per copy of the attached letter.

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)                    94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 57

1          The undersigned is not interested in

2    the within case, nor of kin or counsel to any

3    of the parties.

4          Witness my official signature in and

5    for Cook County Illinois on March 8, 2021.

6

7

8                 Carol M. Siebert-LaMonica

9                 C.S.R. No. 084.001355

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 58

C O R R E C T I O N   P A G E

I made the following changes for the following reasons:

PAGE LINE  CHANGE:

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON: _____

_____ _____  _____

           REASON:

(Signed)_____

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)

94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

Page 59

WITNESS CERTIFICATION


            I hereby certify that I
have read the foregoing transcript of my
deposition consisting of Pages 1 through 62,
inclusive.  Subject to the changes set forth on
the preceding pages, the foregoing is a true
and correct transcript of my deposition taken
on July 24, 2020.



            (Signed) _____



SUBSCRIBED AND SWORN TO
Before me this __ day of
_____,2021.



_____


Notary Public

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 60

SIEBERT & ASSOCIATES COURT REPORTERS, INC.

507 West 28th Place

Chicago, IL  60614


March 8, 2021


PETERSON, JOHNSON & MURRAY CHICAGO

MR. DOMINICK LANZITO

200 West Adams, Suite 2125

Chicago, IL  60606

(Danzito@pjmchicago.com)

Re:  BRADLEY V VILLAGE OF UNIVERSITY PARK

Dep:  VIVIAN COVINGTON


Dear MR. LANZITO:

The deposition testimony given on

July 24, 2020 in the above captioned case has

been transcribed, and inasmuch as signature was

not waived, this is to advise that the

deposition will be available in our office for

30 days for reading and signing.

If you choose to read and sign the

deposition at our offices, please call the

undersigned for an appointment.  Our office

Siebert & Associates Court Reporters, Inc.

Page 61

hours are from 9:00 a.m. to 4:00 p.m., Monday

thru Friday.

　　　　　　If you choose to make other

arrangements for the reading and signing of the

deposition, please advise us of the

arrangements you have made in writing with 30

days from the date of this letter.

　　　　　　　　　Sincerely yours,

　　　　　　　　　Carol M. Siebert-LaMonica

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

Page 62

I N D E X

Witness:

Examination

VIVIAN COVINGTON

Mr. Moran                                    5

E X H I B I T S

Number                                    Page

No. 1-10                                    9

Siebert & Associates Court Reporters, Inc.

Electronically signed by Carol Siebert-LaMonica (001-088-343-0918)          94ccea76-9d95-4b48-b0b4-6476bc59b854

cmsreporters@comcast.net

**A**

**a.m** 1:13 61:6
**able** 36:1
**abruptly** 30:19
**accounting** 40:4
  41:2
**accurate** 56:16
**acknowledge** 5:6
**acronym** 14:6
  39:17,18
**action** 14:1,15
  14:17
**actions** 52:16
**Adams** 3:3 60:9
**additional** 14:18
**address** 29:13
  36:2
**addressed** 13:6
**administrative**
  25:3
**advance** 4:21
**advise** 60:19
  61:14
**Affairs** 6:1,9
**affirmative** 16:7
**afforded** 11:13
  14:12
**aforementioned**
  56:5,7
**agree** 11:10
**agreed** 4:7
**al** 1:8 4:4
**Amended** 4:6
**amount** 41:7
**answer** 13:17
  15:2 16:1,6
  21:8 23:6,13
  24:22 25:13
  28:15 32:17
  33:6,23 34:8
  34:10 37:21
  43:7,15 44:14
  44:24 46:5
  48:15 49:10,16
  52:5
**answered** 37:21

44:24 52:5
**answers** 4:20
  56:12,17
**anybody** 53:7
**apparently** 11:3
  11:9 13:4 19:5
  21:19
**APPEARAN...**
  2:1
**Appeared** 2:13
  3:6
**appears** 18:20
  19:7
**APPELLATE**
  2:8
**appointed** 7:7
**appointment**
  60:24
**approve** 17:15
**approved** 18:10
**approximately**
  7:3
**April** 26:8
**area** 31:17
**arrangements**
  61:12,16
**Arrest** 50:23
**arrested** 50:20
**asked** 23:10
  37:20 43:3
  44:23 52:4
  56:17
**asking** 11:22
  24:13 46:20
  48:24
**asks** 49:24
**ASSOCIATES**
  60:1
**assuming** 14:20
**astronomical**
  41:7
**attach** 4:24 8:10
**attached** 4:19
  8:21,23 15:24
  56:24
**attend** 36:19

**attended** 31:9
**attorney** 16:3
  38:9
**attorneys** 26:10
  38:2
**auditing** 40:4
  41:2
**authorization**
  11:4
**available** 60:20
**aware** 23:17,24
  48:16 49:3
**awhile** 21:2 36:9

**B**

**B** 29:7 62:19
**back** 23:11
  30:22,22 31:3
  37:4 38:18
  39:17
**Barely** 12:15
**Based** 14:14
**basically** 54:10
**behalf** 2:13 3:6
**believe** 8:21
**bit** 5:20
**board** 10:23
  13:7 14:1,15
  16:20,21,23
  17:17,24 18:4
  20:18 22:14
  25:18,22 27:4
  29:24 33:1
  35:4,5 36:1,2,2
  36:11,15 37:7
  37:10 41:16,18
  44:22 48:1,2
  51:4,14,16,18
  51:18,22 52:19
  53:24 54:17
**bodies** 7:8
**Bola** 22:2 28:23
  28:24 29:1
  38:15
**Bradley** 1:4 3:9
  4:3 8:7 11:4,8

13:15 17:9,22
  19:5,9,21,23
  20:3,8,17,23
  22:7,14,18,21
  23:2,10 24:16
  25:3 28:11
  33:16 34:15
  36:15,20 37:8
  38:22 41:20
  46:21 51:24
  55:8 60:12
**Bradley's** 37:11
  38:2
**breach** 49:7
**Brent** 8:6
**bring** 4:16 17:16
  48:1 54:16,18
**Brooks** 45:12,13
  45:14
**brought** 40:20
  51:18,21 54:15
**Brown** 8:11,14
  8:15,16 9:22
  12:9 13:14
**built** 7:3
**business** 46:1,7
  46:8

**C**

**C** 5:18 58:1,1
**C.S.R** 1:16 56:6
  57:9
**call** 25:23 43:8
  43:16,22 60:23
**called** 5:10
  36:24 43:4,21
  43:23
**calls** 21:7 24:21
  25:6 49:9
**captioned** 60:17
**Carol** 1:15 56:6
  57:8 61:23
**case** 4:3,4 15:1,3
  15:15 24:17
  27:7 57:2
  60:17

**cause** 19:18 21:4
  30:6
**certain** 34:3
  39:22 54:1
**CERTIFICA...**
  59:1
**certify** 59:4
**chair** 37:3 46:3
  46:6,7,10 47:8
**chairman** 45:9
**chance** 10:10
**CHANGE** 58:4
**changes** 16:6
  58:2 59:7
**charged** 28:11
**charges** 20:24
  21:6 22:8 38:4
  42:3,4
**check** 20:9 35:8
  35:18 36:7
**Chicago** 2:5,11
  3:1,4 60:3,7,10
**chief** 17:10
  19:10,12 22:11
  23:11 34:15
  35:21 36:14
  37:8,12,15
  38:22 41:20
  46:21
**chiefs** 47:22
**choose** 60:22
  61:10
**chose** 19:17
**CHRISTOPH...**
  2:9
**circumvented**
  14:8
**Ckeleher@ap...**
  2:12
**classes** 31:10,14
**clause** 21:15,20
**clerk** 54:15 55:1
  55:2,3
**clerk's** 14:7
**close** 27:2 41:8
**closed** 54:3,10

**codified** 18:8
**combined** 15:2
**come** 23:10
  30:22,22 36:1
  55:8
**commission**
  45:10 47:3,8
  51:14
**Commissioners**
  41:19
**commissions** 7:8
**committed** 23:3
**committee** 13:3
  37:4 47:10
**complaint** 4:19
  8:7,21,24 15:1
  15:23 43:12
**complete** 56:16
**complied** 22:4
**computer** 42:12
  50:5 53:6,15
**computer-aided**
  56:14
**concerning** 36:2
  38:23
**concluded** 55:20
**concluding**
  52:22
**conclusion**
  11:11 21:8
  24:22 25:7
  49:10
**conduct** 23:3
**conferred** 11:12
**consecutive** 7:21
  7:23
**consider** 14:2
**consisting** 59:6
**containing**
  38:23
**context** 44:8
**contract** 5:4
  11:11 17:9,22
  18:16,19 19:16
  19:18 20:2
  21:3,17 22:4

27:18,19 28:12
33:4,16 34:21
34:23 35:17
49:7
**contracts** 33:4
  33:10,13 40:17
  41:6 48:1
**convicted** 50:21
**Cook** 1:17 56:3
  57:5
**copies** 54:12
**copy** 14:24 15:1
  56:24
**correct** 4:11,12
  7:11 10:21,24
  11:5 13:8
  14:22 17:3,10
  17:23 19:6,9
  24:3 25:10,19
  27:16 28:3
  31:6 32:3,22
  36:21 38:21
  39:10 41:3
  45:7,8 52:13
  59:9
**counsel** 4:13
  8:18 56:9 57:2
**count** 34:5
**County** 1:17
  42:18 43:4,9
  43:21,23 44:19
  56:3 57:5
**couple** 12:5
**court** 1:1,14
  9:12 16:9
  21:13 29:5
  56:23 60:1
**covers** 34:6
**Covington** 1:12
  4:2 5:9,15,17
  5:24 9:16
  18:16 31:3
  53:4 55:7
  60:13 62:11
**credibility** 42:24
**crime** 50:21

**criminal** 23:3
  38:24
**current** 32:21
**Currently** 6:21
**CV** 4:4

**D**

**d** 29:7 37:5 55:6
  56:22 62:6
**damages** 24:17
**Danzito@pjm...**
  3:5 60:11
**date** 11:24 18:24
  19:3 26:3,3
  36:17 56:7
  61:18
**dated** 10:6 18:23
  19:2
**Davis** 34:14,17
  34:21 35:7,21
  35:24 51:5
  54:2
**day** 53:16 59:18
**day-to-day**
  21:23 22:9
  47:21,23
**days** 21:6 60:21
  61:18
**deal** 52:6
**Dear** 60:15
**December** 15:11
  15:14
**decision** 19:22
**declared** 20:2
**Dee** 55:4,6
**defamation** 34:5
**defendants** 1:9
  3:6
**defendants'** 4:13
**defenses** 16:7
**define** 30:12
**definitely** 54:21
**Delano** 22:2
  28:24 29:1,11
  38:15
**deliveries** 48:1

**Democratic**
  46:12
**Dep** 60:13
**department** 6:1
  6:9 43:13,17
  48:13,22
**departments**
  17:14 48:6
**deponent** 56:24
**deposed** 27:7
**deposition** 1:11
  4:2,6,7,8,16,17
  4:21 8:2 9:13
  55:20 56:4,9
  56:21 59:6,9
  60:16,20,23
  61:14
**described** 41:1
**details** 51:8
**determination**
  14:13
**development**
  48:3
**different** 31:24
  32:10
**directors** 47:22
**disciplinary**
  48:12 49:1
**discipline** 31:16
  47:5,23 48:19
  54:2,5
**District** 1:1,2,14
  1:15
**DIVISION** 1:3
**document** 9:18
  15:14
**documentation**
  41:18
**documents** 4:17
  4:20 8:2,5 18:8
**doing** 40:2,3
  53:20
**dollars** 41:10
**Dolores** 55:5,5
**Dominick** 3:2
  4:13 15:21

30:16 60:8
**doubts** 18:21
**due** 13:23 14:12
**duly** 5:11 56:10
**duties** 11:12
  14:7 17:13
  44:9 47:3,13
**duty** 47:9,18

**E**

**E** 5:13,17 6:2
  29:7 37:5 55:6
  55:6 58:1,1
  62:6,19
**EASTERN** 1:3
**economic** 48:3
**Ed** 20:23 28:11
**Eddie** 1:4 3:9
  17:9 24:16
  33:16 34:15
  36:20 37:7,11
  38:2 55:8
**education** 47:13
**eight** 45:5,6
**either** 42:3
**election** 27:17
**elective** 7:5 24:9
**emergency**
  36:15,20
**employee** 31:10
  31:14 33:3
**employees** 23:10
**employment**
  20:4 21:17
  31:16 32:21
**envelope** 39:5
**equal** 19:22
**et** 1:8 4:4
**everybody** 12:17
  24:7
**exactly** 31:7
  50:17
**Examination**
  62:9
**examined** 5:11
  56:11

excuse 22:22
33:21 40:11
42:20
executive 54:4,6
54:9,17
exhaust 25:4
exhibit 9:10,11
9:13,17 10:3,7
12:8 15:18
18:11,14
exhibits 4:23 5:2
8:10,22 15:23
expired 27:23
28:1,2

**F**

failed 24:16 25:3
fair 41:9
familiar 12:21
32:24 33:3
35:11
far 28:16 47:12
FBI 42:14 50:4
53:6
federal 6:13
23:18,22 24:4
32:21
fee 19:22 20:1
feel 23:2
Felicia 26:17
felony 38:24
file 38:23 39:9
filed 15:11 41:17
41:21,24
files 39:17
final 16:18
financing 24:5
find 15:7 37:1
fine 30:20
finish 42:8
fire 28:3 41:18
45:10 46:21
47:3 48:6
51:14,15
fired 22:19
27:24 34:17

35:2,4 38:22
firemen 47:6,7,7
firing 48:6
firm 39:14 40:3
40:4
first 5:10 9:6
19:1 29:6 40:6
56:10
five 30:17 52:23
52:24
flipping 26:14
27:4
follow-up 29:10
followed 20:15
following 14:2
58:2,3
follows 5:12
foregoing 56:4
56:15 59:5,8
forementioned
56:18
forgot 39:16
form 24:21 25:7
25:9 28:14
33:6 43:14
forth 21:5 59:7
found 29:12
foundation
23:12 49:19
four 19:23
fraudulently
45:22
Frazier 26:17
Friday 1:13 61:8
frivolous 30:5,6
fulfilled 21:21
full 5:4
functions 55:12
further 19:8
55:15
furthermore
14:7,17

**G**

G 5:18 58:1
give 9:19 35:7,9

35:12 51:4
52:1
given 14:3 20:8
20:18 22:18,21
22:22 36:6
42:11 60:16
giving 28:10
42:3
glanced 15:4
go 6:19,21 8:4
18:18 28:7
39:17
God 6:17 11:22
26:11
goes 42:23
going 4:24 5:19
9:9
good 18:15
governing 7:8
government
6:13 17:19
25:10,15 33:17
Great 12:18
GROUP 2:2,8

**H**

H 6:2 40:24
62:19
hall 55:9
handed 30:9,9
handles 21:22
Hang 6:4 51:3
52:21
happened 44:2
hear 25:20,22
54:7
heard 22:19
23:16 45:15
52:2
hearing 20:23
21:6 22:15
42:6
heavy 30:4,8,8,9
held 14:16
hereinabove
56:19

Hi 31:5
Hines 6:1,22
hire 17:16 36:20
40:16
hired 19:11
36:15 40:7
hiring 48:6
hold 24:9
holding 7:4
Holloway 39:13
41:5
home 7:2 33:20
33:22 49:14,17
homeowner's
34:6,9
honest 51:9
hopefully 5:21
hour 50:10,13
50:17
hours 61:6
HR 11:19

**I**

IL 2:5,11 3:4
60:3,10
Illinois 1:2,15,17
6:2,22 14:6
56:1,23 57:5
imposed 11:12
inasmuch 60:18
include 50:23
inclusive 59:7
incoming 47:4
indicated 28:22
Indicating 15:6
individual 34:14
individually
16:20
information
45:21 54:1
injure 42:19
insurance 33:19
33:22 34:3,6,9
49:15,18
interest 13:16,24
14:11

interested 57:1
interests 48:2,3
interrogatories
4:20 56:11
interview 47:4
interviewing
17:12
investigation
23:19,22 24:2
24:2,4,6,7 39:8
39:9 53:20
investigations
38:24
involving 27:7
IRH 39:14 41:5
Irma 39:12
issue 25:23

**J**

J 40:23,24
J.t.m.moran...
2:6
Jackson 10:3
11:18
job 13:24 14:11
16:14 22:5,5,6
22:20 45:23
John 2:3 9:10
12:10 16:9
42:21
Johnna 40:21,22
53:13,14
JOHNSON 3:1
60:7
Jones 55:4,5
Joseph 37:5
45:13
July 1:13 59:10
60:17
June 10:6,24
11:21 12:5,6
26:8

**K**

keep 13:11
46:17

cmsreporters@comcast.net

**KELEHER** 2:8
2:9
**kept** 26:14
**kill** 42:19 43:5,9
43:18
**kin** 57:2
**kind** 31:15
33:17 39:19
**know** 4:15 10:9
13:3 20:7,11
20:17,22 21:20
22:3,7,13 23:9
23:14 24:1
27:2 29:13,21
30:2,10 35:3
35:10,15,20,24
38:12 39:12
40:14 41:7,12
45:18 49:4,4,5
49:5,6,10,12
50:24 51:8
54:23
**knowledge**
24:15,24 25:2
53:21,22

———— **L** ————

**L** 29:7,7
**Lafayette** 27:7
27:10 35:22
46:20
**Lake** 2:4
**language** 33:4
**Lanier** 28:3
29:22 51:21
**Lanzito** 3:2 4:12
4:13,15,23 5:4
5:6 8:20 9:1,5
9:9,21,24 10:2
10:6 11:14
12:10,14,16
13:11 15:7,11
15:16,19,22
16:8 18:11,15
21:7 23:5,12
24:21 25:6,11

28:14 29:4,8
30:20,24 32:17
33:6,23 34:2,8
37:20 42:8,21
43:1,7,14
44:14,23 46:5
48:14 49:9,16
49:19,24 52:4
52:23 55:16
60:8,15
**laptop** 42:12
50:5
**LaSalle** 2:10
**LAW** 2:2,8
**lay** 49:11
**learning** 47:12
**left** 10:9
**legal** 17:3 21:8
24:22 25:6
49:10
**legislation** 14:6
16:16
**legislative** 7:8
13:2
**Legislature**
36:24
**let's** 52:24
**letter** 8:6,11
9:23 10:3,10
10:15,19 11:2
11:3,7,7,11
12:9,21 13:6
13:19,20,21
38:2 56:24
61:18
**letterhead** 10:19
**letterheads**
10:20
**letters** 5:3 8:7,8
8:9,13
**liability** 14:18
**liable** 14:16
**Liberty** 49:22
**life** 51:2
**LINE** 58:4
**Linear** 14:10

27:7,10 35:22
46:20
**Linear's** 13:24
**Lists** 10:21
**little** 5:20
**live** 6:23 29:14
44:18
**lived** 7:1
**LLC** 2:8
**local** 14:8
**login** 4:10
**long** 6:11,15 7:1
11:20,24 29:21
50:7,16
**longer** 5:20
18:12
**look** 8:5 9:7,16
12:8 38:18
51:10
**looking** 9:5
46:18,19
**lost** 20:3
**lot** 11:23 13:1
32:7

———— **M** ————

**M** 1:15 5:13
56:6 57:8
61:23
**maker** 16:18
**making** 16:16,17
17:3 44:11
**Manager** 14:11
17:1,11,15
18:3 20:10
21:22,24 22:12
22:17 27:14
28:17,19 29:1
29:20,22,23
35:19,20 38:9
38:14,20 47:19
47:20 48:7
51:17 52:7
53:11,12
**Manager's**
22:20

**managerial**
33:17
**managerial-ty...**
17:19 25:15
**Managers** 31:23
**March** 57:5 60:5
**marked** 9:10,15
**material** 5:20
38:23 39:5
**Maxine** 10:3
11:18
**mayor** 7:12,18
10:21 16:15,19
17:20 25:19,23
26:2 31:11,15
31:18 34:19
39:23 40:6,18
40:20 42:11
45:6,11 54:13
**Mayors** 31:23
**mean** 17:13 30:8
42:2
**means** 39:17,18
**media** 14:4
**meeting** 13:23
36:2,15 37:7
37:11 51:11
54:3
**meetings** 36:20
36:23
**Mel** 34:14,17,21
35:7,21,24
51:5 54:2
**member** 32:12
**members** 13:8
**mentioned**
53:23
**Mildred** 44:15
**millions** 41:10
**mind** 47:2
**minute** 6:4 9:19
**minutes** 18:5
30:17 37:23
51:14 52:17,18
52:23 53:24
54:12,20

**mirror** 46:19
**mischaracteri...**
25:12
**mitigate** 24:17
**modules** 47:11
47:12,14
**Monday** 61:6
**months** 19:23
54:16
**moot** 24:8
**Moran** 2:2,3 4:1
4:14,22 5:1,5,7
5:14 6:3,7 8:23
9:4,7,11,15,22
10:1,4,8,9,12
11:16 12:13,20
13:13 15:10,13
15:18 16:1,10
16:13 18:13,17
21:11 23:8,15
25:1,8,17
28:21 29:9
30:16 31:2
32:19 33:8
34:4,13 37:24
42:10,23 43:3
43:10,19 44:17
45:2 46:9
48:17 49:13,21
50:3 52:8,21
52:24 53:2
55:14,19 62:15
**Morgan** 44:15
**morning** 5:2
36:16
**move** 12:16
**Muller** 26:19,24
**municipalities**
24:10
**MURRAY** 3:1
60:7
**mute** 30:21

———— **N** ————

**N** 5:13,13,18,18
6:2 29:7 40:23

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

40:23,24,24
58:1 62:6
**name** 5:15 10:18
    10:20 16:2,3
    18:1 27:9
    28:23 29:6
    39:16 55:6
**named** 34:14
    39:12 56:9
**names** 10:23
**naturally** 17:4
**negative** 41:13
    41:14,16
**negotiated** 33:12
**negotiating**
    33:10
**negotiations**
    33:15 35:10
    48:2
**never** 41:24 51:2
    54:18,18 55:11
**news** 14:4
**No.15-cv-08489**
    1:6
**nonprofit** 46:4
    46:11,13
**Nope** 33:14
**normally** 19:2
    36:23
**Northern** 1:2,15
**Notary** 59:24
**notes** 30:18
    51:11,13
**notice** 1:18 4:6
    4:15 8:14 14:3
    20:7,24 21:5
    22:8 28:10
    38:3 42:4,6
**notify** 19:21
**number** 9:10,11
    15:15,15,16
    62:21

**O**

**O** 5:13,18,18
    29:7,7 37:5

40:23,24 58:1
58:1
**O-o-O-** 55:22
**oath** 1:12 31:6
**Objection** 11:14
    21:7 23:5,12
    24:21 25:11
    28:14 37:20
    43:14 44:23
    48:14 49:9,19
    52:4
**occasion** 8:1
    17:8 42:17
**Odelson** 26:13
    26:16,18,21
    27:1 38:11
**offer** 32:4
**office** 7:5 14:7
    24:10 26:6
    42:15 43:4
    50:11,14 60:20
    60:24
**officers** 17:14
    47:5,5,5,6,6,7
    48:20,21
**offices** 60:23
**official** 37:7 44:9
    57:4
**oh** 6:17 11:22
    24:14 25:21
    26:11,18 28:2
    28:16
**okay** 4:22 5:1,7
    6:11,15,23 7:1
    7:4,17,21 8:18
    9:16 10:13,14
    10:15 11:2,10
    11:17,20 12:2
    12:19 13:6,14
    14:20,24 15:5
    15:7 16:14
    17:6,21 18:6
    18:15,18 19:5
    19:8,12,15
    20:7,13,17
    21:12,16,20

22:13,21 23:9
23:18 24:15
25:18,22 26:5
26:8,19 27:6,9
27:19 28:2,7
29:10,21 30:13
30:16,20,23
31:8,21 32:2,6
32:9,14,16,20
32:24 33:3,12
33:19 35:7,12
35:15,24 36:14
36:19 37:16
38:1 40:1,9,15
41:1,5 43:11
44:5,18,21
45:3,15 46:1
46:15 47:2
48:11 49:7,14
50:2,4,23 51:3
52:14,21 53:3
53:4,23 54:19
54:23 55:14,14
55:19
**once** 18:7
**open-door** 54:3
**opportunities**
    20:4
**opportunity**
    20:18 22:19,22
    52:2
**oral** 56:11
**order** 23:1 43:2
    44:16
**ordinance** 14:9
    37:2 48:9
**ordinances** 18:8
    18:9
**Oscar** 8:11,13
    8:15,16 9:22
    12:8
**outlets** 14:4
**overlapped** 27:4
**overlapping**
    27:3
**oversee** 47:10

**P**

**P** 58:1
**p.m** 55:21 61:6
**page** 12:11
    18:18 19:1,3
    19:16 58:4
    62:21
**pages** 59:6,8
**paid** 20:1 41:5
**paperwork**
    41:17,21,24
    42:1
**Paragraph**
    19:15
**Pardon** 8:12
    23:21 39:2
**Park** 1:7 4:4
    6:23 7:5,9,12
    7:15 14:5
    16:19 21:18
    24:11 27:13
    29:14 31:11
    41:19 43:12,22
    44:6,19,22
    60:12
**part** 13:2 18:4
    26:21 33:9
    44:19 46:3
**participate** 17:8
**parties** 4:7 57:3
**passed** 18:7
**passwords** 4:10
**Patrick** 16:4
**pay** 19:22 22:23
**people** 49:1
**person** 11:19
    39:12 43:2
    44:11 49:11
**personally** 14:16
    28:10 35:12,14
    40:14 52:1,11
    55:8
**personnel** 32:10
    48:13
**PETERSON** 3:1
    60:7

**place** 44:5,8
    56:6,18 60:2
**placed** 37:12
**plaintiff** 1:5 2:13
    17:9
**please** 12:22
    60:23 61:14
**point** 17:8 26:14
    26:16 27:3
    38:10,12 53:16
**points** 14:2,14
**police** 17:13
    19:10,12 22:11
    23:11 34:15
    37:8,12 41:18
    43:12,16 45:10
    47:3,6 48:5,13
    48:22 51:14,15
**policies** 16:23
**policy** 16:16,17
    16:18
**position** 7:18
    11:21 13:16
    19:9 27:12
    29:22 37:12
    46:10
**possible** 14:16
**post** 52:9
**post-terminati...**
    22:14 52:16
**posted** 13:23
**power** 26:5
**pre** 52:15
**pre-termination**
    20:23 52:9
**preceding** 59:8
**prepare** 8:2
**present** 3:8 4:10
    16:23,24 17:2
    56:8
**Presenting** 42:3
**presently** 5:23
    7:4,7 16:9
    32:11 39:19
    49:21
**President** 18:4

Siebert & Associates Court Reporters, Inc.

**pretty** 12:7
34:24 35:6
37:14
**previous** 14:14
16:3 40:20
**previously** 56:9
**prior** 21:6
**probably** 30:18
38:5,8,13
51:20
**process** 14:12
21:23 22:10
47:21 48:12
49:1
**processing** 47:23
**proper** 21:5 38:3
**properly** 17:7
**property** 13:15
13:24 14:10
39:1
**protection** 11:13
43:2
**protocol** 20:16
**provided** 4:9
22:14 39:22
**provides** 21:4
**Public** 59:24
**pursuant** 1:13
1:18 4:5 56:22
**Put** 18:16

**Q**

**question** 21:10
21:12,14 24:8
24:19 28:15
29:10 31:13
42:9 43:15
49:23
**questions** 10:5
31:8 50:1 53:3
55:15 56:12,17

**R**

**R** 37:5 58:1,1
**ratification** 37:6
**ratified** 37:13

**RAY** 1:4
**read** 10:10 12:22
13:5,19,21
14:21,24 15:1
21:14 24:19
59:5 60:22
**reading** 10:11
10:16 60:21
61:12
**really** 11:22 30:6
35:10 48:18
**reason** 51:5 58:6
58:8,10,12,14
58:16,18,20,22
**reasons** 58:3
**recall** 8:10 10:16
10:17 11:15,17
12:24 13:1,5
20:20,20 21:1
22:16,24 23:7
26:1,9,15,17
27:1,2,6,9,19
28:4,5,9,10
30:14 31:21
32:6 35:11,18
36:4,5,6,14,17
36:18,22 37:1
37:3,6,10,17
37:18,23 38:1
38:5,7 39:8
40:17 46:20,22
51:6,7,8
**receipt** 5:6
**receive** 31:17
39:3
**received** 15:21
15:23 22:8
31:12 38:23
**receiving** 38:1
**recess** 6:4,5 31:1
53:1
**recognize** 9:18
10:15
**recollection**
46:24 51:20
52:15

**record** 4:1,18
5:16 8:20,24
10:7 15:22
24:22 29:4
31:3 42:22,23
56:16
**records** 38:19
**recruit** 47:5
**red** 41:10
**reference** 48:9
**references** 11:2
11:7 55:6
**referred** 9:14
56:19
**referring** 15:8,9
41:23 42:1
**reflect** 4:1
**refresh** 46:23
52:15
**regarding** 17:14
20:19 52:2,15
**registered** 14:4
**regular** 36:1
37:10
**relation** 31:10
42:22
**relations** 31:14
**relationship**
39:20
**relevance** 42:20
44:13
**relevant** 33:24
34:1
**remedies** 25:3
**remember** 11:23
11:24 14:21
26:3,3,12,13
26:20
**remote** 4:6,8,17
6:21
**remove** 26:6
**removed** 29:24
30:2,3,7
**removing** 28:18
28:19
**repeat** 21:12

24:12,18 31:12
**report** 43:17
45:24
**reported** 56:12
**Reporter** 9:12
21:13
**reporter's** 29:5
**REPORTERS**
60:1
**represent** 4:18
**requesting** 38:3
**required** 4:16
14:5 47:15
**requirement**
29:17
**reserve** 55:16
**reside** 29:11
**residency** 29:17
**residents** 47:24
**resign** 25:23
**resolution** 35:5
**resolved** 24:3
53:19
**respond** 38:6
47:24
**responsibilities**
16:15
**responsibility**
47:9
**responsible**
17:11
**rest** 54:7
**restraining**
44:16
**return** 50:4
**returned** 53:15
**reveal** 34:7
53:24
**review** 8:1 30:17
37:22
**reviewed** 4:19
54:14
**ridiculous** 34:12
**right** 10:8 11:23
15:6,14 18:3
18:14 26:22

27:20 28:13
30:23 46:18
52:20,20 53:16
55:15
**rights** 11:12
**Roudez** 37:5
**Rules** 1:14 56:22
56:22
**run** 7:19

**S**

**S** 6:2 62:19
**salary** 19:23
**Saturday** 36:16
**saw** 13:3
**saying** 35:16
**says** 19:17
**scene** 44:1,2
**screen** 17:7
**season** 54:10
**second** 6:4 9:8
51:3 52:21
**section** 14:9,19
17:13
**see** 12:14 14:20
17:18 19:16,18
19:20,24 20:4
27:6 38:19
39:18 42:20
44:13,18 45:22
48:5 53:14
55:13,13
**seeing** 9:21
**SEIU** 32:18
**seminars** 31:10
31:24 32:2
**send** 9:2
**sense** 16:11
**sent** 5:2 8:18 9:1
11:3,8 13:1,4
**services** 39:23
41:2,3
**session** 54:5,9
**sessions** 54:17
**set** 59:7
**setting** 21:5

cmsreporters@comcast.net

seven 21:6
severance 22:23
35:8
shares 45:21
Sheriff 42:18
Sheriff's 43:4
short 38:17
shorthand 56:13
Shortly 26:2
side 10:19
SIEBERT 60:1
Siebert-LaMo...
1:16 56:6 57:8
61:23
sign 18:8 60:22
signature 18:19
19:3 55:17
56:20 57:4
60:18
signed 17:21
18:1,9 19:5
40:18 58:24
59:13
signing 60:21
61:12
similar 43:11
Sincerely 61:22
sir 54:21
site 6:22 50:8
six 54:15
somebody 42:4
43:9,18 46:17
sorry 11:6 12:3
21:1 24:12
25:21 26:4
46:7 53:21
54:8
sort 23:3 50:24
South 2:10
31:23
speak 20:18
specific 51:4
spell 29:6
SS 56:2
stand 24:23
39:15

state 1:17 5:15
14:5 17:4
47:15 56:1
States 1:1,14
statute 17:4
stay 55:11
Sterk 26:14,16
26:18,21 27:1
38:11
stop 30:21
Street 2:4,10
strong 17:20
subject 14:17
59:7
submitted 16:2
56:21
SUBSCRIBED
59:17
Suburban 31:23
suggest 13:15
suggesting 39:9
Suite 2:4,10 3:3
60:9
suppose 48:4
supposed 20:15
40:1,3 47:24
54:16
Supreme 56:23
sure 9:20 12:7
12:23 17:3
20:12,14,15
22:24 34:24
35:6 37:1,14
38:16 40:19
47:10 50:16
54:4
sworn 5:11
48:13,21 49:2
56:10 59:17

---

T

T 2:3 5:13,18
58:1 62:19
take 5:19 6:3
9:16 18:13
30:17 44:5,8

47:12 52:23,24
taken 1:12 14:1
14:15 40:9,12
42:14 47:11
56:5 59:9
talk 53:9
talked 53:10
talking 34:2
54:1,20
team 33:10
tell 9:17 42:17
43:4,24 53:7,8
53:18,19 55:8
term 19:11 20:2
38:18
terminate 19:17
terminated 21:4
22:15 23:4
27:15 28:12
41:20 52:1
55:9
termination
11:8 14:13
19:22 20:19
36:3 38:3 51:5
52:3 55:12
terms 7:20 16:17
28:11
testified 5:11
testimony 25:12
52:12 60:16
text 13:18
Thank 4:14 5:19
12:18 15:19
29:8 30:24
Thanks 55:19
Theaplise 45:14
45:15
theft 38:24
45:23
thing 51:1
things 17:2 28:8
30:15
think 6:17 15:18
18:22,24 26:12
26:12,13,16

27:3,8 34:1,7
35:22,23 40:19
48:8 50:9,17
53:10,13
Thompson
40:21
thought 30:9
thoughts 36:12
threat 44:3,5,12
threatened
43:20
three 53:3
ticket 51:2
time 11:19 19:10
19:18 25:24
26:24 29:16
36:17 38:17
41:11 56:7,18
timeframe 7:18
times 53:23
today 4:10 8:2
8:19 14:2,15
today's 4:21
told 53:17 55:11
top 5:21
total 17:15
Townsend 53:13
53:14
traffic 50:24
training 31:10
31:15,15,17,21
47:15
trainings 32:7
32:10
transcribed
56:13 60:18
transcript 29:5
59:5,9
transcription
56:14
true 56:15 59:8
trustee 7:14
13:14 25:9
44:21 45:4
Trustees 10:24
13:7 16:23

20:19 23:9
25:19,22 37:11
44:22 51:16,19
51:22 52:19
53:24
trying 17:6
42:18 43:5,9
43:18
two 5:2 7:20 8:7
8:8,9 10:4
14:14 32:4
type 34:3 40:4
42:1

---

U

U 37:5
U.S 6:8
Uh-uh 13:9
47:17 48:23
50:19
undersigned
56:13 57:1
60:24
understand 21:3
21:9,15,16
30:6 31:5
understanding
30:10
unenforceable
20:3
union 32:12,14
32:16 33:1
United 1:1,14
University 1:7
4:4 6:23 7:5,9
7:12,15 14:5
16:19 21:18
24:11 27:13
29:14 31:11
41:19 43:12,22
44:6,19,22
60:12

---

V

V 5:18 60:12
VA 6:16,20

---

Siebert & Associates Court Reporters, Inc.

cmsreporters@comcast.net

vacations 40:9
40:12
vague 48:14
Vaguely 15:4
33:5,7
versus 4:3
Veterans 6:1,9
video 30:21,21
village 1:7 4:3
14:1,4,11,15
14:18 15:2
16:18 17:1,10
17:11,15 18:3
19:17 20:9,22
21:17,21,22,24
22:12,13,17,20
23:2,10,19,23
24:5 26:9
27:13,14 28:2
28:17,19 29:1
29:19,22,23
32:15 35:19,20
37:10 38:8,14
38:19 39:1,23
40:5,7,18 41:9
41:15,16 42:12
47:18,20,22
48:7,7 51:17
52:7 53:10,12
55:2,3,9,12
60:12
Village's 16:3
violation 14:8
Vivian 1:12 4:2
5:9,17 29:4
34:9,10 43:7
44:14 50:1
60:13 62:11
voice 13:11 30:4
30:8
vote 17:2 37:6
37:16 54:17
voted 37:18
vs 1:6

_____
**W**

waived 56:21
60:19
Wall 16:4
want 9:2,24
13:19,21 18:11
28:7
wanted 16:6
36:11,11
wasn't 8:23 22:6
22:11 29:24
50:8,10
way 13:23
weeks 12:5
38:21
went 32:2 42:15
West 2:4 3:3
60:2,9
whistleblower
45:16,18,20,24
witness 5:10
10:11 11:15
12:12,15,18
13:12 15:8,20
16:11 21:9
23:7,14 24:20
24:24 25:14
28:16 29:7
32:18 33:7,24
34:11 37:22
43:8,16 44:15
45:1 46:6
48:16 49:12,17
49:22 50:2
52:6 56:5,10
56:18,20 57:4
59:1 62:8
witness' 42:24
Women 46:12
wondering 16:5
word 30:11
work 5:23 6:19
16:22 17:7
19:12 26:24
40:7
worked 19:9
26:10

working 6:8,21
writing 19:21
20:8 61:16
written 17:22
21:5 35:16

_____
**X**

X 5:13 62:6,19

_____
**Y**

year 7:19,19
26:1 29:24
years 6:14 7:3
45:3,5,6 55:5
yep 18:22

_____
**Z**

Z 37:5
zoom 1:12 4:10
4:11 12:16

_____
**0**

084.001355 1:16
57:9
08489 4:4

_____
**1**

1 59:6
1-10 9:13 62:24
10 10:6,24
10:34 1:13
101 2:4
10th 11:21 12:6
11 15:15
12:00 55:21
15 4:4
15th 12:5 22:1
190 2:10

_____
**2**

20 55:4
200 3:3 60:9
2011 7:20
2015 10:6,24
11:21 12:6
15:12,14 22:1
23:19 26:9,11

45:10
2019 7:20
2020 1:13 59:10
60:17
20205 17:13
2021 57:5 59:19
60:5
207 56:22
2100 2:10
211 56:22
2125 3:3 60:9
22 7:2
2205 17:13 48:9
23 7:3 15:14
239-03(b) 14:9
24 1:13 59:10
60:17
25,000 35:8 36:7
28th 60:2

_____
**3**

30 6:17 60:21
61:16
38 6:18

_____
**4**

4 19:15
4:00 61:6
42 6:14

_____
**5**

5 41:8 62:15
507 60:2
566 2:4

_____
**6**

600,000 41:8
60603 2:11
60606 3:4 60:10
60614 60:3
60661 2:5
62 59:6

_____
**7**

7 15:18

_____
**8**

8 9:12,17 12:8
57:5 60:5

_____
**9**

9 9:12 10:3,7
62:24
9:00 61:6