UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE RAY BRADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Court No. 15 cv 08489 |
| VILLAGE OF UNIVERSITY PARK, ) | |
| ILLINOIS, an Illinois Home Rule ) | Honorable Judge Charles R Norgle, Sr. |
| municipality, and VIVIAN COVINGTON, ) | |
| Mayor of UNIVERSITY PARK, ILLINOIS, ) | |
| both Individually and her official capacity as ) | |
| mayor, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, the VILLAGE OF UNIVERSITY PARK ("the Village") and VIVIAN COVINGTON ("Covington") (collectively "the Village Defendants"), by and through their attorneys, PETERSON, JOHNSON & MURRAY CHICAGO, LLC, and for their Reply in Further Support of Their Motion for Summary Judgment, state as follows:

**I.   INTRODUCTION**

Plaintiff's response to the Village Defendants' motion for summary judgment is not a response at all. Instead, it is just another iteration of his cross-motion for partial summary judgment, his prior motion for sanctions and his repeated motions to strike the Village Defendants' affirmative defenses. It is Plaintiff – and not the Village Defendants – who is ignoring the Seventh Circuit's findings, not to mention this Court's February 22, 2021 order, which already found that Plaintiff has "misapprehended" the extent of the mandate rule and the law of the case doctrine. Having lost on those fronts, Plaintiff now places his eggs in the judicial estoppel basket. Plaintiff

1

fares no better under that doctrine. The requirements for judicial estoppel are plainly not satisfied here. Plaintiff cannot seek refuge in the Seventh Circuit's majority opinion. Rather, he must submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial. Having not done that as to any of his asserted claims, his case should not proceed any further.

Furthermore, Plaintiff's salacious allegations about the Village Defendants having misled the Court via their presentation of the undisputed facts of record are all absolute fiction. Oddly enough, Plaintiff has admitted all of the Village Defendants' material statements of fact and neglected to submit any statements of additional fact. The record contains no evidence to support several essential elements of Plaintiff's various asserted causes of action. A trial in this matter would be pointless and only cause undue delay and expense. There are no material issues of fact present for a jury to consider. Accordingly, summary judgment in the Village Defendants' favor as to Plaintiff's claims is warranted.

## II. ARGUMENT

### A. **Plaintiff did not have a protected property interest in continued employment or a valid employment contract with the Village and the Village Defendants are not barred by the doctrine of judicial estoppel or otherwise from asserting such.**

Plaintiff has failed to demonstrate that he has a constitutionally protected property interest in his continued employment with the Village to support his Procedural Due Process claim. Plaintiff has also failed to show the existence of a valid and enforceable contract, which is a prerequisite for his breach of contract claim. For this reason, summary judgment as to Plaintiff's Procedural Due Process claim and breach of contract claim in the Village Defendants' favor is warranted. Plaintiff accords these particular subjects "third rail" treatment and is (with good reason) reluctant to address them. Instead, Plaintiff continues to tout the Seventh Circuit's majority opinion as having already decided these issues. He is wrong.

Once again, the Seventh Circuit's "express determinations" are not at all what Plaintiff characterizes them to be. This Court has already determined such. (Docs. 93 & 94, Order of Feb. 22, 2021, p. 10). In its February 22, 2021 order, the Court explicitly found:

> Plaintiff misapprehends the extent of the mandate rule and the law of the case doctrine. . . . Plaintiff's arguments that the mandate rule and the law of the case doctrine as applied to the Seventh Circuit's opinion foreclose the Court from considering Defendants' motion for judgment on the pleadings thus fail. The Court did not decide the issue of whether Plaintiff has adequately pleaded a property right in his job, whether Plaintiff's 2014 contract was enforceable, or whether Plaintiff had an enforceable employment agreement for wages or final compensation with Defendants under the Wage Payment Act, and neither did the Seventh Circuit. . . .

(Docs. 93 & 94, Order of Feb. 22, 2021, p. 10).

Via his response, Plaintiff has failed to direct the Court's attention to any relevant case authority and neglected to address the Village Defendants' cited authorities on the lack of a protected property interest subject. To reiterate, a protected property interest cannot arise from a contract that is void and unenforceable. *See, e.g.*, *Shlay v. Montgomery*, 802 F.2d 918, 921-22 (7th Cir. 1986). Via his response to the Village Defendants' statement of undisputed facts, Plaintiff has admitted that the 2014 Contract was made in violation of the Illinois Municipal Code ("the Code"), and therefore, was invalid from the outset. In particular, Plaintiff does not dispute that when executed, the 2014 Contract had a duration that exceeded Covington's first term of office as Village Mayor. (Doc. 118, Response to SOF, ¶ 11). This means that the 2014 Contract was wholly unenforceable under Section 8-1-7(b) and Section 3.1-30-5(c) of the Code. It is as if the 2014 Contract never existed at all as a matter of law.

Hence, Plaintiff must proffer something other than the 2014 Contract as the source of his alleged protected property interest to take his Procedural Due Process claim to trial. He has nothing. In his response, besides the 2014 Contract, he makes generic reference to "Illinois law"

3

as supplying him with a protected property interest. In his complaint, the cited Illinois law in that regard was Sections 2.1-4 and 2.1-17 of the Code. However, as the Village Defendants pointed out in their motion for summary judgment, case law forecloses any finding of a protected property interest based upon those provisions. *See, e.g.*, *Miyler v. Village of East Galesburg*, 512 F.3d 896, 897-99 (7th Cir. 2008). Further, the procedural guarantees granted by a statute are not themselves a property right. *See id.* Neither Section 2.1-4 nor 2.1-17 of the Code afforded Plaintiff the benefit of continued employment with the Village or limited Covington's right to terminate Plaintiff in any substantive way.

Plaintiff's silence on these subjects is deafening. He has no retort other than to attempt to seek refuge in the Seventh Circuit's majority opinion and assert that the mandate rule and the law of the case doctrine preclude the Village Defendants from litigating these issues. Again, he is wrong. For the reasons already discussed in the Village's response in opposition to Plaintiff's cross-motion for partial summary judgment, the mandate rule and the law of the case doctrine do not preclude the Court from considering the Village Defendants' instant motion for summary judgment. (Doc. 119, Response, pp. 9-12). In the interest of brevity, the Village Defendants incorporate their prior arguments as concerns those topics herein.

In a third variation of the same theme, Plaintiff now contends judicial estoppel forecloses the Village Defendants' motion for summary judgment.[1] That argument likewise fails. Judicial estoppel is "an equitable doctrine to be applied flexibly with an eye toward protecting the integrity of the judicial process." *Jarrad v. CDI Telecomm, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005). It

---

[1] In a single sentence in his response brief, Plaintiff refers to equitable estoppel. (Doc. 117, Response, p. 7). The Village Defendants have interpreted this as a scrivener's error. In the event Plaintiff wanted to invoke that separate doctrine, his single-sentence reference is inadequate to do so. *See Swift v. DeliverCareRx, Inc.*, No. 14 C 03974, 2015 WL 3897046, at *9 (N.D. Ill. June 23, 2015) (rejecting a single-sentence argument as too underdeveloped to be considered); *see also United Auto Ins. Co. v. Veluchamy*, 747 F.Supp.2d 1021, 1030 (N.D. Ill. 2010) ("[T]he skeletal presentation on that issue . . . constitutes a further waiver of the point).

4

prevents a party who has successfully taken a position in one litigation from taking the opposite position in a subsequent litigation. *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013). The doctrine's aim is to protect the courts from "chameleonic litigants," and not necessarily to protect the party invoking the doctrine, who is not required to show prejudice in order to invoke it. *Levinson v. U.S.*, 969 F.2d 260, 265 (7th Cir. 1992). No precise or rigid formula governs judicial estoppel. *Lujano v. Town of Cicero*, No. 07 C 4822, 2012 WL 4499326, at *10 (N.D. Ill. Sept. 28, 2012). It is an equitable matter within a court's sound discretion. *Matter of Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990).

When deciding whether judicial estoppel is applicable, a consideration of all the circumstances and equities involved in a case should be undertaken. *In re Knight v. Celotex, LLC*, 695 F.3d 714, 722 (7th Cir. 2012); *see also Czajkowski v City of Chicago, Ill.*, No. 90 C 3201, 1993 WL 11896, at *2 (N.D. Ill. Jan. 19, 1993). Three factors typically govern whether the doctrine is applicable: (1) a party's position must be clearly inconsistent with a position earlier taken; (2) the party must have prevailed on the basis of its earlier position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3), whether the party asserting the inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

The requirements for judicial estoppel are not satisfied here. First, there are not sequential lawsuits for which the doctrine could potentially come into play. The principle of judicial estoppel is that if you prevail in Suit # 1 by representing that "A" is true, you are stuck with "A" in Suit # 2 growing out of the same events. *Astor Chauffered Limousine Co. v. Runfeldt Inv. Corp.*, 910 F.2d 1540, 1547-48 (7th Cir. 1990). While Plaintiff suggests, citing *Walton v. Bayer Corp.*, 643

5

F.3d 994 (7th Cir. 2011), that judicial estoppel can apply where litigants have asserted inconsistent positions in successive stages of the same litigation, case law is legion that judicial estoppel is typically reserved for instances when there are successive legal actions arising from the same factual circumstances, which is not the case here. *See, e.g.*, *Ezekiel v. Michel*, 66 F.3d 894, 904 (7th Cir. 1995). Furthermore, *Walton* involved arguably *dicta* about the potential application of judicial estoppel in an instance where a plaintiff who had her suit removed to federal court even absent diversity jurisdiction by a group of defendants unsuccessfully sought to have her lawsuit remanded back to state court. Allegations of improper joinder for the purposes of thwarting diversity jurisdiction permeated that case. The circumstances in *Walton* are not parallel to those here. Plaintiff has cited no authority for the proposition that an appeal and district court proceeding in a single lawsuit can constitute successive legal actions for judicial estoppel purposes.

Second, even assuming, *arguendo*, that the Seventh Circuit proceeding constitutes a previous litigation for judicial estoppel purposes, the Village Defendants did not win a victory before the Seventh Circuit necessary to apply the doctrine. Judicial estoppel is about abandoning winning, not losing, grounds in successive litigation and thereby attempting to obtain an unfair windfall (*i.e.*, two victories) while perpetrating a fraud upon the court system. *Patz v. St. Pau Fire & Marine Ins. Co.*, 15 F.3d 699, 702-03 (7th Cir. 1994). The Village Defendants won nothing by assuming, for the purposes of advancing a particular affirmative defense, Plaintiff had a protected property interest in continued Village employment and attempting to prove that the *Parratt* doctrine barred Plaintiff's Procedural Due Process claim. Their position in that regard was an alternative to the grounds that the Village Defendants pressed in this Court before the appeal even happened. As such, it cannot at all be said that the Village Defendants have taken clearly inconsistent positions on the protected property interest issue.

6

To be clear, there has been no attempt to whipsaw either the Seventh Circuit or this Court here. Nor is there any self-contradiction on the Village Defendants' part in play nor any unfair advantage being obtained by them. To reiterate, it was the Village Defendants' position before the case even went up on appeal that Plaintiff did not have a protected property interest in continued employment and that the 2014 Contract was void *ab initio*. Those alternative positions were memorialized in the Village Defendants' response to Plaintiff's motion to strike their affirmative defenses and request for leave to file amended affirmative defenses. (Doc. 18, Response, p. 5). Plaintiff has long known that was the Village Defendants' alternative position. He does not deny such.

Finally, even if Plaintiff could persuade the Court that the Village Defendants have adopted inconsistent positions, the said positions have been asserted in good faith. *See Jarrad*, 408 F.3d at 915 (noting that judicial estoppel does not apply where inconsistent positions are asserted in good faith). Put another way, there is a sufficient and reasonable ground to distinguish the positions taken by the Village Defendants in the earlier and subsequent phases of this single litigation. *See Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir. 1987) (finding where there is an adequate reason for an alleged change in position, judicial estoppel does not apply).

Again, where Plaintiff's appeal was concerned, the sole issue before the Seventh Circuit was the applicability of the *Parratt* doctrine. *Parratt* concerns only the second element of a Procedural Due Process claim – the procedural process due to a procedural due process plaintiff. *See Parratt*, 451 U.S. at 537. It presumes the existence of a protected property interest. *See, e.g.*, *Hadfield v. McDonough*, 407 F.3d 11, 19 (1st Cir. 2005); *see also Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir. 1989). In a *Parratt* case, there is no deprivation of a protected interest *without due*

7

*process* owing to the existence of adequate state law remedies that address the asserted procedural inadequacy. *Id.* at 543-44 (emphasis added).

It was for that reason, in addition to the fact that this Court explicitly stated that the Village Defendants had conceded the protected property interest issue in the order that was under review, that the Village Defendants' presentation of argument on appeal was what it was. (Doc. 35, Order of Sept. 1, 2016, p. 2). The order being challenged on appeal and the issue central to the appeal called for such a presentation. To reiterate, this case was steered in a particular direction that necessarily rendered the first inquiry in a procedural due process claim analysis – whether the plaintiff was deprived of a protected interest – undisputed. With the order on appeal having noted such, it strains credulity to suggest, as Plaintiff does, that the Village Defendants could have presented arguments on that subject to the Seventh Circuit and should now essentially be penalized for not having done so.

Judicial estoppel is not supposed to be applied where it would work an injustice. *Cassidy*, 892 F.2d at 642. It is also not supposed to be used to hamstring a litigant from advancing a particular position when the position is not clearly inconsistent with a prior position. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 528 (7th Cir. 1999). Finally, "judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court." *See Levinson*, 969 F.2d at 265. Plaintiff does not want the truth to come out. Instead, he wants to advance judicial estoppel arguments (and the law of the case doctrine as well as the mandate rule) to avoid presenting evidence in support of his claims and thwart what he knows to be meritorious defenses to his Procedural Due Process and breach of contract claims. Using judicial estoppel in the manner for which Plaintiff advocates would be an inequitable application.

    **B.**     <u>**Plaintiff has failed to produce evidence creating a genuine dispute of material fact that the Village Defendants defamed him or placed him in a false light.**</u>

Plaintiff avers that the Village Defendants published notice of Bradley's termination in an unspecified "local publication" alerting the public that Bradley had been removed from office. He further represents that absent from the text of the publication was a description of the circumstances surrounding Bradley's removal from the Police Chief post. (Doc. 117, Response, p. 7). This mystery publication was never produced by Plaintiff in discovery. Assuming Plaintiff is referring to an alleged mailbox Village newsletter supposedly distributed to Village residents, the arguments in his response brief do not align with his discovery deposition testimony.

Plaintiff testified at his deposition that the said Village newsletter identified John Pate as the new Village Police Chief. (Doc. 106-2, Plaintff Deposition, p. 80). Notifying Village residents about the appointment of a new Police Chief does not, without more, defame Plaintiff or place him in a false light. For his part, Plaintiff did not even know if the said newsletter referred to him at all. (Doc. 106-2, Plaintff Deposition, p. 80). Plaintiff cites no case for the proposition that such a publication – which does not even reference him – could give rise to a defamation or false light claim. Personnel changes occur all the time. Alerting Village residents when they do is responsible governance, and does not constitute engaging in defamatory or other actionable misconduct.

Now, at the summary judgment stage, Plaintiff has got to proverbially "put up or shut up". *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Instead of marshalling evidence, Plaintiff wants to fall back on the allegations of his complaint. To that end, his response brief is littered with unsupported, conclusory statements to the effect that: "Due to Defendants' actions, Bradley was diminished the eyes of the public." (Doc. 117, Response, p. 9). The litigation has necessarily progressed beyond what Plaintiff's allegations are. While he attempts to cite Trustee Keith Griffin and current Village Mayor Joseph Roudez's testimony to support his allegations that he was defamed and placed in a false light, the colloquies plucked from their depositions and cited in

9

Plaintiff's response brief do not demonstrate such. (Doc. 117, Response, p. 9). The cited testimony neither referenced Plaintiff nor the subject mailbox Village newsletter. The lack of evidence for a jury to possibly rule in Plaintiff's favor as concerns his defamation and false light claims is painstakingly apparent. Tellingly, Plaintiff wants to talk about everything except for the evidence of record. To that end, his response brief largely parrots the legal standards that were already extensively chronicled in the Village Defendants' summary judgment motion. Summary judgment should be granted in favor of the Village Defendants on Plaintiff's defamation and false light claims.

      **C.**     **Plaintiff has not come forward with any evidence in support of his Illinois Whistleblower Act claim.**

As with his defamation and false light claims, Plaintiff has wholly failed to support his Illinois Whistleblower Act claim. In particular, he has failed to submit evidence demonstrating that his termination was in retaliation for his disclosure to a government or law enforcement agency of a suspected violation of an Illinois or federal law, rule, or regulation. Once again, Plaintiff is touting Mayor Roudez's testimony as the thin reed of evidence by which he hopes to thwart summary judgment. (Doc. 117, Response, p. 10). Plaintiff represents the following in his response brief:

> Mayor Roudez testified that he, Bradley, and Village Trustee Keith Griffin spoke went to a meeting at the Will County State's Attorney's Office to discuss Bradley's findings of corruption in the village government. Shortly after this meeting, Defendants terminated Bradley without notice or explanation. Although Roudez stated that he could not recall with precision exactly when this meeting occurred, he estimated it to be one month prior to Bradley's termination.

(Doc. 117, Response, p. 10).

Below is Mayor Roudez's actual testimony on the subject:

10

> Q: Okay. Did you and Trustee Griffin go with Mr. Bradley to the Will County State's Attorney's Office?
>
> A: Yes.
>
> Q: And did the subject of corruption and gross mismanagement come up?
>
> A: Yes.
>
> Q: And did Chief Bradley indicate he was investigating that?
>
> A: Yes.
>
> Q: It (sic) correct that Bradley was fired a few months after that discussion?
>
> A: When was it that we went to the State's Attorney's Office?
>
> Q: That's what I am asking you, I can't –
>
> A: Oh, I'm not going to guess. All depends on when it was, when did we go to the State's Attorney's Office, I don't remember the dates or the time, but I would say it was shortly thereafter, sometime down the line.

(Doc. 106-5, Roudez Deposition, pp. 43-44).

Mayor Roudez plainly has no recall of when Plaintiff's meeting with the Will County State's Attorney took place. As illustrated by the above-quoted exchange, he actually went so far as to ask Plaintiff's attorney to provide him with the date of the said meeting during his deposition. Plaintiff, like Roudez, testified that he did not know the specific date(s) on which the said meetings happened. (Doc. 106-2, Plaintff Deposition, pp. 100, 111). He testified that it was "long before" his termination. (Doc. 106-2, Plaintiff Deposition, pp. 100-101). Plaintiff has no writings memorializing the meetings. (Doc. 106-2, Plaintiff Deposition, p. 101). Importantly, Plaintiff also denied telling the State's Attorney that Covington, the Village or the Village Board violated an Illinois or federal law, rule, or regulation or that he suspected them of doing so. (Doc. 106-2,

11

Plaintiff Deposition, p. 101). Plaintiff admits that his investigations were in their nascent stages during the relevant time period such that he did not know if Covington or a Village Board Trustee had violated federal or state law. (Doc. 106-2, Plaintiff Deposition, pp. 102-103). He was still seeing where his investigations led to at that point. (Doc. 106-2, Plaintiff Deposition, p. 103). For his part, Plaintiff described his meeting with the Will County State's Attorney as follows:

> I explained to him, you know, what was going on and what was happening through the years.· The cars, the bank. You know, all these things, the investigations I was looking into.· And, you know, I told him I needed some help with it, and he said he would look into it.·

(Doc. 106-2, Plaintiff Deposition, p. 100).

The circumstances surrounding Plaintiff's termination have hardly been shown to be suspect based upon Plaintiff's meeting with the Will County State's Attorney or otherwise. Additionally, no evidence has been proffered that Covington even knew about Plaintiff's meeting with the Will County State's Attorney and fired him for it. Plaintiff can continue to make such allegations, but now is the time such allegations need to be backed up with evidence. Neither Mayor Roudez nor Plaintiff's own testimony cuts the mustard on that front. Evidence which affords nothing more than mere speculation or conjecture (which is all Mayor Roudez and Plaintiff's testimony does) is insufficient to warrant submission of a case to a jury. *See, e.g.*, *Payne v. Pauley*, 337 F.3d 767, (7th Cir. 2003) (holding speculation is not sufficient to create genuine issue of material fact to defeat summary judgment motion and collecting cases illustrating that point in the retaliatory discharge context).

Plaintiff has failed to contradict the Village Defendants' evidence that Covington never wanted Plaintiff as Police Chief from the proverbial get go and when her faction came into power at the Village Board level, she spearheaded an effort to have him removed from that post. To that

end, he admits that Covington voted against the 2013 Contract and was not in favor of the 2014 Contract. (Doc. 118, Response to SOF, ¶¶ 7, 11). In fact, when he was sworn in as Police Chief, Covington and the Village Board Trustees on her slate (which then comprised a minority voting block) did not attend that event. (Doc. 106-2, Plaintiff Deposition, p. 110). Plaintiff also admits that Covington's slate rose to power on the Village Board as a result of the April 2015 election and that she thereafter initiated efforts to oust him. (Doc. 118, Response to SOF, ¶ 13). Such maneuverings happen in municipal government all the time. That he was terminated does not render Plaintiff a whistleblower. Accordingly, summary judgment should also be granted in the Village Defendants' favor as to Plaintiff's Whistleblower Act claim.

      **D.**    **Plaintiff has failed to submit evidence at summary judgment demonstrating a mutual assent to pay the final compensation at issue.**

Plaintiff's void and unenforceable 2014 Contract cannot serve as evidence of an unequivocal promise on the Village's part to pay Plaintiff a severance or other final compensation. The upshot of the 2014 Contract being void and unenforceable is that it is as if the 2014 Contract never existed at all. Therefore, Plaintiff cannot support his Wage Payment Act claim by pointing to the 2014 Contract. He must look elsewhere to sustain his claim and he has nothing. He insists that the 2014 Contract was valid and enforceable; however, that argument does not align with the admissions Plaintiff made in his response to the Village Defendants' statement of undisputed facts.

Plaintiff has conceded that when executed on or about October 7, 2014, the duration term in the 2014 Contract (*i.e.*, December 31, 2016) exceeded Covington's first, four-year term of office as Village Mayor, which barring her re-election, was scheduled to expire on May 16, 2015. (Doc. 118, Response to SOF, ¶ 11). Given that admission, there is no way for Plaintiff to circumvent Section 8-1-7(b) and Section 3.1-30-5(c) of the Code. Further grasping at straws, Plaintiff's response brief references Covington's testimony, but that avenue is also a dead end in as much as

13

Plaintiff's lawyer in questioning Covington was speaking about the 2014 Contract. (Doc. 106-3, Covington Deposition, pp. 18-20). Finally, Plaintiff apparently has no response to the Village Defendants' contention that the record is devoid of sufficient evidence of past practice to take his Wage Payment Act claim to trial. In that regard, the Village Defendants had pointed out in their summary judgment memorandum that the circumstances pursuant to which Mel Davis, Plaintiff's predecessor in the Village Police Chief post, came to receive severance have not been flushed out in the instant evidentiary record. (Doc. 105, Memorandum, pp. 13-14). Summary judgment is warranted in the Village Defendants' favor as concerns Plaintiff's Wage Payment Act claim.

   **E. Alternatively, Covington is entitled to qualified immunity on Plaintiff's Procedural Due Process claim.**

As concerns the subject of qualified immunity, Covington's response brief basically regurgitates the arguments in his motion to strike the Village Defendants' amended affirmative defenses. (Doc. 102, Motion). Plaintiff avers that by characterizing Covington's conduct as "unauthorized" for the purpose of pursuing a *Parratt* defense, qualified immunity has now somehow been rendered completely unavailable to her. Importantly, this Court's September 1, 2016 dismissal order explicitly stated that it did not reach the issue of qualified immunity. (Doc. 35, Order of Sept. 1, 2016, pp. 3-4). Therefore, qualified immunity was not (and could never have been) part of the Seventh Circuit's majority opinion.

As best as the Village Defendants can discern, the gist of Plaintiff's argument appears to be that the acknowledgement of "unauthorized" conduct on Covington's part, as *Parratt* uses that term, precludes Covington from positing either that: (a) Plaintiff's Procedural Due Process rights were not violated; or (b), that a reasonable official in her circumstances could have believed that her conduct was lawful (*i.e.*, the right was not clearly established). For the reasons noted in the Village Defendants' response to Plaintiff's motion to strike, Plaintiff's argument that *Parratt* has

14

bearing on the second prong of qualified immunity (*i.e.*, whether a right is clearly established) is a non-starter. (Doc. 114, Response, pp. 12-13). *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004); *see also See Daily Services, LLC v. Valentino*, 756 F.3d 893, 903 (6th Cir. 2014).

The facts of this case present uncertainty as to whether a reasonable official in Covington's position would know that notice and an opportunity to be heard was required before Plaintiff, an individual who did not have a valid and enforceable employment contract with the Village, was terminated. Additionally, there is the fact that the procedures Plaintiff claimed he was entitled to, as outlined in Sections 10-2.1-4 and 10-2.1-17 of the Illinois Municipal Code, do not apply here because the Village opted not to be controlled by the said provisions. (Doc. 119, Response, pp. 14-15). Convington could have reasonably believed she was complying with the applicable Village Code provisions (which just called for the Village Board to confirm her termination decision and notify Plaintiff in writing of the termination decision – that was all undisputedly done here) and that Plaintiff had been afforded all the process he was due. Plaintiff's summary judgment response provides no focused argument as to whether his purported constitutional rights violations were clearly established. He has presented no closely analogous cases from the relevant time period holding that Covington's conduct was unconstitutional as to have put her on notice that she was violating Plaintiff's Due Process rights.

## IV. <u>CONCLUSION</u>

WHEREFORE Defendants the VILLAGE OF UNIVERSITY PARK and VIVIAN COVINGTON respectfully pray that this Honorable Court enter an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment in their favor and against Plaintiff as to his Complaint. The Village Defendants further request any other or additional relief that this Honorable Court deems just, equitable or appropriate in the premises.

Respectfully submitted,

/s/ DOMINICK L. LANZITO

Date: November 5, 2021                One of the Attorneys for Defendants
                                      Village of University Park and Vivian Covington

DOMINICK L. LANZITO (Attorney No. 6277856)
PETERSON, JOHNSON & MURRAY – CHICAGO, LLC
200 West Adams Street, Suite 2125
Chicago, Illinois 60606
(312) 782-7150
dlanzito@pjmchicago.com