IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

EDDIE RAY BRADLEY

    Plaintiff,

    v.

VILLAGE OF UNIVERSITY PARK, *et. al.*,

    Defendants.

No. 15-cv-08489

Hon. Charles R. Norgle, Sr.

**PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

The Defendants' position is simple: the Seventh Circuit did not mean what it said, and the Defendants did not mean what they said. The devolution of the Defendants' position thus continues. Betraying their prior, steadfast assertion that Bradley had a protected property interest (Doc. 35 at 2; Appellate Doc. 21 at 14), the Defendants now claim he has none. Taking a diametrically opposed position mid-litigation—and after two courts relied on the original position—is untenable.

Worse, the Response relegates the Seventh Circuit's opinion to advisory status. Faced with clear-cut appellate court pronouncements regarding the conceded property interest, due process violations, and breached contract, the Defendants remain in denial, declaring such issues were "left completely unresolved." Doc. 119 at 2. Despite this total rejection of the record and the

Seventh Circuit, the Defendants ironically claim Bradley "does not want the truth to come out." Doc. 119 at 8.

I. Ignoring The Authority Compelling Summary Judgment.

Ultimately, the Response is notable not for what it says, but what it does not. Bradley's Memorandum of Law spent seven pages outlining the basis for summary judgment on the due process claim. Doc. 111 at 6-12. Eleven cases were cited in support. *Id.* The Response disregards them all.

The four controlling Seventh Circuit cases thus remain standing:

*Chaney v. Suburban Bus Division*, 52 F.3d 623 (7th Cir. 1995);

*Schultz v. Baumgart*, 738 F.2d 231 (7th Cir. 1984);

*Lalvani v. Cook County*, 269 F.3d 785 (7th Cir. 2001); and

*Rebirth Christian Academy v. Brizzi*, 835 F.3d 742 (7th Cir. 2016).

Carbon copies of the instant facts, the Seventh Circuit resoundingly found the summary firings violated due process and reversed for the plaintiffs in each case. What is more, the ignored Supreme Court decisions in *Mathews* and *Loudermill* dispel any notion the Defendants' conduct comports with due process. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Because due process "requires some kind of a hearing" before termination and Bradley was given none, summary judgment is warranted. *See Loudermill*, 470 U.S. at 542. The Defendants have no response.

II.  The Seventh Circuit's Due Process Findings Remain Untouched.

While the Defendants decry Bradley's invocation of the mandate rule and law of the case doctrine, they use these doctrines to divert attention from what the Seventh Circuit actually found. And whether this Court employs the doctrines or not, the Seventh Circuit's holdings still address and answer the due process contentions of Bradley's Summary Judgment Motion.

To wit: the Seventh Circuit described Bradley's due process claim as one following the mainstream of due process law: "he was summarily fired, without notice or an opportunity to be heard before he was fired (or even after he was fired)." *Bradley v. University Park*, 929 F.3d 875, 899 (7th Cir. 2019). The Court then highlighted that "the village does not dispute these points." *Id*. Depriving Bradley of due process was "the municipal policy that forms the basis for defendants' liability." *Id*. at 885. Because the Defendants "did not comply with . . . the Fourteenth Amendment," Bradley can "prove a due process claim under § 1983." *Id*. at 878; 880. These findings render Bradley's due process position unassailable.

Bradley emphasized the Seventh Circuit's determinations in the Memorandum of Law. Doc. 111 at 8. The Response does not engage them. Indeed, the Argument section never cites the appellate decision. With a wave of the hand, the Defendants declare "all that happened on appeal was that the Village Defendants' *Parratt* defense was rejected owing to a perceived

3

conflict with *Monell*." Doc. 119 at 11. The Defendants do not explain why the Court needed 43 pages to resolve this single, discrete issue. Nor do they recognize their hyper-narrow interpretation reduces much of the decision to a (verboten) advisory opinion. *See Sweeney v. Raoul*, 990 F.3d 555, 561 (7th Cir. 2021).

The Defendants further claim "the Seventh Circuit's findings are not what Plaintiff characterizes them to be." Doc. 119 at 12. Specificity is the soul of credibility, and the Defendants fail to explain what findings Bradley misconstrues. Bradley amply quoted from the appellate decision, and provided no editorial gloss on those quotes. The Seventh Circuit's findings thus speak for themselves. Nor do the Defendants provide any insight into how they characterize the Court's findings. Indeed, the quoted excerpts go unaddressed in the Response

To reiterate, the Defendants "did not comply with the termination provisions of Bradley's employment contract, the requirements of state law, or—critical to this case—the Fourteenth Amendment." *Bradley v. University Park*, 929 F.3d 875, 880 (7th Cir. 2019). The Defendants' case crumbles under the weight of this explicit holding. The Defendants have no response.

III. The Defendants' Concessions Stymie The Response.

Supreme Court and Seventh Circuit case law is not the only source of evasion for the Defendants. Bradley's Memorandum of Law highlighted the

4

Defendants' multiple concessions, including that Bradley had a property interest. In the Defendants' own words: "In this case, the Village Defendants do not contest that Plaintiff had a protected property interest in his employment." Appellate Doc. 21 at 14. The Defendants even chided Bradley for devoting two paragraphs on the property interest element, deeming such a discussion "superfluous" because Bradley's property interest was undeniable. *See id*. Further, the Defendants "concede that they had sole discretion and authority to fire Bradley" and failed to provide him notice and a hearing. 929 F.3d at 878; 885.

    The Defendants now change their mind. They refuse to directly confront their concessions, instead floating three peripheral explanations. First, the head-scratching claim that their "presentation of argument on appeal was what it was." Doc. 119 at 11. The Defendants further imply it was the court's fault: "the order being challenged on appeal and the issue central to the appeal called for such a presentation." *Id*. The Defendants fully know arguments can be explicitly preserved or made in the alternative. They chose not to. Indeed, their concessions were unconditional and unequivocal.

    Further debunking the Defendants' position, the Defendants admitted that "*in this case*" Bradley has a property interest. Appellate Doc. 21 at 14 (emphasis added). Not "for purposes of this appeal" or "for purposes of this issue." The "in this case" language sinks the Response. Still, there is more.

5

The Defendants filed an *en banc* petition. *See* Appellate Doc. 38. The petition said nothing about the Defendants' concessions. Nor did it challenge the Seventh Circuit's explicit findings that the Defendants conceded multiple points. Thus, as set forth in the Memorandum of Law (and evaded in the Response), any challenges to these findings or efforts to relitigate them are waived. *See Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011).

Next, the Defendants insist the Seventh Circuit's rulings "did not happen because of any concession of those issues on the Village Defendants' part." Doc. 119 at 2. But the Defendants are wrong—that is exactly what happened. The Seventh Circuit found "the parties agree that Bradley had a protected property interest in his continued employment." 929 F.3d at 878. The Court further found "everyone agrees that although there was ample opportunity for a hearing, Bradley received no pretermination notice or hearing." *Id.* This prompted the conclusion that "*those points of agreement* suffice to prove a due process claim under § 1983 against the individual officials and the village itself. . . ." *Id.* (Emphasis added). The Response is again discredited as it disregards these critical findings, and worse, denies their existence.

Finally, the Defendants assert they filed "alternative theories" in the district court and that Bradley "has long known that was the Village Defendants' alternative position. He does not deny such." Doc. 119 at 7.

6

Bradley does deny such. As set forth above, the Defendants wholeheartedly endorsed the *Parratt* doctrine position, and unequivocally admitted Bradley had a protected property interest. 929 F.3d at 878. They also admitted they could have given Bradley notice and a hearing but did not. *Id*. The Defendants thus abandoned any alleged "alternative" positions, and the doctrine of waiver eviscerates their efforts to now resurrect the already resolved due process issues. *See Mendez*, 646 F.3d at 423-24.

Haunted by the clarity and assuredness of their due process concessions, the Defendants cannot escape them. Bradley thus has a protected property interest "in this case." *See* Appellate Doc. 20 at 14.

IV. The Mandate Rule And Law of The Case Doctrine Apply.

The Defendants argue Bradley cannot challenge the Court's prior position on the mandate rule and law of the case doctrine in a summary judgment motion. Doc. 119 at 10. It cites no authority for this proposition. While the Defendants complain Bradley is "venting dissatisfaction," with the Court's prior determination, their rhetoric does not reflect reality. *See id*. Bradley merely stated he "respectfully disagrees" and asked the Court to "reconsider" the issue given the new procedural posture of the case. *See* Doc. 111 at 5. Bradley is now the movant, unlike in the Court's prior ruling on the Defendants' motion for judgment on the pleadings. Moreover, the Court now

has the full factual picture before it. The Defendants' histrionics aside, the Response offers no reason why the Court cannot consider the mandate rule and law of the case doctrine given the new procedural posture.

The Defendants further contend that if "the Seventh Circuit wanted to render certain matters the law of the case henceforth, it could have explicitly said so." Doc. 119 at 10. That is not the law. There is no such requirement, and the Defendants cite no authority for this proposition. The Defendants' position further falters as the issue in question need not be expressly decided for the doctrine to be triggered. The law of the case doctrine prohibits a district court from reconsidering on remand "an issue expressly or *impliedly* decided by a higher court absent certain circumstances." *United States v. Adams,* 746 F.3d 734, 744 (7th Cir. 2014) (emphasis added). Nevertheless, the findings at bar epitomize "expressly."

Finally, the Defendants argue the Seventh Circuit's holdings are not dispositive because Bradley did not immediately move for entry of judgment. The Defendants ask, "why has it taken two (2) years for Plaintiff to seek the entry of judgment as to his Procedural Due Process, breach of contract and Wage Payment Act claims from this Court?" Doc. 119 at 12. Bradley has two answers. First, since the appellate decision, the parties have engaged in multiple settlement discussions, including a settlement conference with Magistrate Judge Cole. Doc. 54. That conference (two months after the

8

appellate court mandate was issued) was at the Defendants' behest. Bradley thus delayed in order to preserve resources. Second, Bradley did in fact seek entry of judgment (five months after the settlement conference) on April 27, 2020: "Judgment on the pleadings for the Defendants should be denied and judgment entered for Bradley on the due process, breach of contract, and Wage Payment and Collection Act counts." Doc. 75 at 3. The Defendants are thus mistaken.

In sum, as set forth in the Memorandum of Law, the Court should apply the two doctrines given the Seventh Circuit's clear and unequivocal holdings on the level of process due, the Defendants' liability, and as addressed below, the breached employment contract.

V. The Defendants' Novel Village Code Argument Is Waived.

For the first time, the Defendants contend the Mayor's conduct was in accordance with the Section 220-05 of the Village Code. Doc. 119 at 14. Unfortunately for the Defendants, such a claim comes too late. This defense was never raised in the affirmative defenses or answer (Doc. 99), the motion for judgment on the pleadings (Doc. 69), the motion for summary judgment (Doc. 105), or Mayor Covington's deposition (Doc. 112, Exhibit I). Nor was it raised on appeal. *See* Appellate Doc. 21. The eleventh-hour timing of this argument thus amounts to waiver.

9

The Defendants' new assertion further succumbs to the Defendants' prior contentions on appeal that:

> "The Village Defendants' conduct was random and unauthorized." Appellate Doc. 21 at 12.
>
> "Plaintiff's loss resulted from a random and unauthorized act." *Id*. at 19.

The Defendants thus continue to flip-flop. As a general rule, courts will not hold parties to their earlier legal theories unless the changes unfairly harm the opponent or the case's development—for example, by making it "more costly or difficult" to defend the case, or by causing unreasonable delay. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). Precisely what is happening here. The Defendants' Village Code claim, a polar opposite position from the appeal, and raised seven years after this litigation began, is another instance of needlessly prolonging and complicating this litigation.

Finally, as set forth above, the Seventh Circuit found Bradley has established enough "to prove a due process claim under § 1983 against the individual officials and the village itself." 929 F.3d at 878. The Defendants' new claim cannot overcome this finding, and in any event is too late.

VI. The Contract Is Valid Because The Defendants Acknowledged It Was.

The Defendants cling to the notion that no employment contract exists.

This is wrong as the Defendants acknowledged Bradley's protected property interest through his contract in the district court and on appeal. Further, the Seventh Circuit found the Defendants breached Bradley's employment contract. 929 F.3d at 880.

In response, the Defendants argue that Bradley "represents that the Seventh Circuit held that the 2014 Contract *existed* and was breached. Even if the Seventh Circuit found such (which it did not), that is not akin to the Seventh Circuit holding that the 2014 Contract was valid and enforceable." Doc. 119 at 13. Three flaws plague this position. First, Bradley is not "representing" anything. The Seventh Circuit held exactly that. Second, the Defendant cannot come to terms with the Court's holding as it cannot even recite the dispositive language: the Defendants' actions "did not comply with the termination provisions of Bradley's employment contract. . . ." 929 F.3d at 880. Third, the Defendants make the nonsensical claim that a non-existent contract can be breached. Fundamental contract law and common sense require a contract before a breach.

Nor can the Defendants overcome the propriety of summary judgment on the Wage Payment and Collection Act claim. Again, Bradley has a contract, and it was breached. The Defendants' actions "did not comply with the termination provisions of Bradley's employment contract. . . ." 929 F.3d at 880. The Response succumbs to this fact.

11

CONCLUSION

As the Seventh Circuit found, the Defendants did not comply with the termination provisions of the employment contract or the Fourteenth Amendment when they summarily fired Bradley. Further confirming summary judgment is the Defendants' complete silence on the controlling decisions of *Mathews, Loudermill, Schultz, Chaney, Lalvani,* and *Rebirth Christian.*

Respectfully submitted,

s/ John Moran
John T. Moran
The Moran Law Group
309 West Washington, Suite 900
Chicago, Illinois 60606
(312) 630-0200

Christopher Keleher
The Keleher Appellate Law Group, LLC
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 448-8491
ckeleher@appellatelawgroup.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that he served the foregoing document on counsel of record via the Northern District ECF system on November 11, 2021 to:

Dominick Lanzito
Peterson, Johnson & Murray
Chicago, LLC
200 West Adams, Suite 2125
Chicago, Illinois 60606
(312) 724-8037
dlanzito@pjmchicago.com


s/ Christopher Keleher

Christopher Keleher
The Keleher Appellate Law Group, LLC
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 448-8491
ckeleher@appellatelawgroup.com