## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| EDDIE RAY BRADLEY, | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-08489 |
| VILLAGE OF UNIVERSITY PARK, ILLINOIS and VIVIAN COVINGTON, | Hon. Charles R. Norgle |
| Defendants. | |

## <u>ORDER</u>

Plaintiff's motion for summary judgment [110] is denied. Defendants' motion for summary judgment [104] is granted.

## <u>MEMORANDUM OPINION</u>

Plaintiff Eddie Ray Bradley, the former Police Chief for the Village of University Park ("the Village"), sues the Village and former Village Mayor Vivian Covington for allegedly violating Plaintiff's constitutional right to procedural due process when Defendants terminated Plaintiff's employment with the Village. In addition to his constitutional claim pursuant to the Fourteenth Amendment (Count I), Plaintiff brings Illinois state law claims for breach of contract (Count II), defamation per se (Count III), false light (Count IV), and violations of the Illinois Whistleblower Act (Count V) and Illinois Wage Payment and Collection Act (Count VI).

Having concluded discovery, Plaintiff and Defendants have filed cross motions for summary judgment. Plaintiff seeks summary judgment on Counts I, II, and VI, while Defendants seek summary judgment on all claims. Plaintiff argues that the Seventh Circuit's opinion reversing this Court's dismissal of the case makes clear that summary judgment is warranted in his favor. In

contrast, Defendants argue that Plaintiff's claims all fail as a matter of law because (1) the Seventh Circuit's reversal dealt only with a narrow issue and did not resolve any claim in Plaintiff's favor, (2) Plaintiff's employment contract was not a valid or enforceable contract, so he had no constitutionally protected property interest and was owed no due process, and (3) Plaintiff has failed to present sufficient evidence such that a reasonable jury could rule in his favor on any remaining state law claims. The Court agrees with Defendants, so their motion for summary judgment is granted.

## I. BACKGROUND

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts, their responses, the supporting exhibits, and Defendants' statement of additional facts and Plaintiff's response.[1] The following facts are undisputed unless otherwise noted.

### A. Facts

Plaintiff Eddie Ray Bradley was hired as Police Chief for the Village of University Park ("the Village") in October 2013 and was terminated on May 15, 2015. Defendant Vivian Covington served as Village Mayor during Plaintiff's entire employment as Police Chief, and ultimately served as Mayor for two consecutive, four-year terms from May 10, 2011 to May 16, 2015, and from May 16, 2015 to May 15, 2019. The Village is a home rule unit of Illinois[2] and an

---

[1] During the course of briefing his motion for summary judgment, Plaintiff properly submitted a response to Defendants' statement of additional facts. Dkt. 127; see LR 56.1(c)(2). But Plaintiff also submitted, without permission, a reply to Defendants' response to Plaintiff's statement of facts. That was improper. LR 56.1(f) ("No reply to a LR 56.1(b)(2) . . . response is permitted without the court's permission."). Accordingly, the Court strikes the reply, dkt. 128.

[2] "Home rule units may exercise concurrently with the State 'any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.' Ill. Const. 1970, art. VII, § 6(i)." Hertz Corp. v. City of Chicago, 77 N.E.3d 606, 609 (Il. 2017).

Illinois municipal corporation, which is organized and operates under a managerial form of municipal government.

Mel Davis was the Village Police Chief before Plaintiff assumed that position in 2013. It is Plaintiff's understanding that Davis was terminated from the position. Davis received severance pay, but Plaintiff does not know the specific circumstances surrounding Davis' termination. Covington does not recall anything about former Police Chief Davis' termination. Joseph Roudez, the current Village Mayor who was a Village Trustee from 2005 to 2017, also has no recollection regarding the circumstances of Davis' severance.

Plaintiff, a former Will County Sherriff's deputy, was hired as the Village's Police Chief at the request of several Village Trustees in 2013. Plaintiff's employment with the Village was initially governed by a written contract ("the 2013 Contract"). At the time, Covington was serving her first four-year term of office as Village Mayor. Covington voted against Plaintiff's 2013 Contract.

On October 7, 2014, after Plaintiff had been Police Chief for approximately one year, Plaintiff and the Village entered into a new written employment contract ("the 2014 Contract"). Covington was not in favor of the new contract, either. The 2014 Contract was set to expire on December 31, 2016, beyond May 16, 2015, when Covington's first, four-year term of office as Mayor was scheduled to expire. Defendants argue that for this reason, the 2014 Contract was not a valid or enforceable contract under Illinois law and was void ab initio.

Under the new 2014 Contract, Plaintiff was to receive an annual salary of $100,000, medical insurance coverage, and paid vacations and sick leave, among other benefits. Plaintiff could be removed for cause upon service of written notice of for-cause charges at least seven days before a hearing with the Village Board to consider the termination of the employment contract.

3

The 2014 Contract further provided that Plaintiff would be afforded the opportunity to explain his position at the said Village Board hearing. In addition, the new contract provided that Plaintiff could be terminated without cause as long as the Village Board notified him in writing of its decision and paid Plaintiff a termination fee or severance equal to four months of his salary.

Plaintiff asserts that while he was Police Chief, he investigated possible violations of federal and state law by the Village and Village Trustees. The alleged investigations related to an account at Seaway Bank, the handling of stolen vehicles placed into storage by the Village, and a Village Trustee who was accused of pistol-whipping his son. It is undisputed that at some point before his termination, then-Trustees Joseph Roudez and Keith Griffin went with Plaintiff to the Will County State's Attorney's Office to report the alleged corruption and mismanagement of the Village's government. Plaintiff asserts that he was fired shortly after this meeting at the State's Attorney's Office.

Covington was re-elected as Mayor in April 2015, as were incumbent Village Trustees Milton Payton and Oscar Brown. One nonincumbent, Paula Wilson, was also elected to be a Village Trustee. As a result of the 2015 election, Covington's faction of Board Trustees came to comprise a majority of the Board. Plaintiff admits that he realized at that time that his termination was imminent based upon the new Village Board composition.

On May 16, 2015, upon assuming the position of Village Mayor for a second, four-year term and with a new Village Board, Covington advised Plaintiff via a letter that Plaintiff had been placed on administrative leave with pay pending further review by the Village Board. Covington thereafter called a Village Board meeting during which a formal vote was taken to terminate Plaintiff as the Village Police Chief. Joseph Roudez and Keith Griffin, then Village Trustees, were

4

not present for that Village Board meeting, and at that time, the Village did not have a Village Manager.

Approximately two weeks later, via a letter dated May 29, 2015 (the "Termination Letter"), Covington informed Plaintiff that his appointment as the Village's Police Chief had been terminated effective May 15, 2015, and that he had been replaced by an Acting Chief of Police as of May 22, 2015. The Termination Letter referenced Sections 3.1-30-5(c) and 8-1-7(b) of the Illinois Municipal Code—65 ILCS § 5/3.1-30-5(c) and 65 ILCS § 5/8-1-7(b)—and further represented that the 2014 Contract was void ab initio, conferred no rights to Plaintiff, imposed no duties upon the Village, and afforded Plaintiff no protection. Plaintiff was never given a hearing in conjunction with his termination as Village Police Chief, nor was Plaintiff allowed to address the Village Board. The Village never paid Plaintiff any severance, vacation, or sick pay.

On July 14, 2015, Plaintiff, through his retained legal counsel, wrote to Covington demanding that the Village comply with Sections 2.1-4 and 2.1-17 of the Illinois Municipal Code in conjunction with its efforts to terminate his employment. 65 ILCS § 5/10-2.1-4; 65 ILCS § 5/10-2.1-17. Plaintiff's letter stated that pursuant to Section 2.1-4, Covington was required to (1) file with the Village Board a statement of the reasons for Plaintiff's discharge and (2) cause the Village Board to vote upon the same. Plaintiff further characterized Section 2.1-17 as requiring, in an instance of without-cause termination, a filing of the reasons for Plaintiff's discharge and an opportunity for Plaintiff to be heard and present a defense. Finally, Plaintiff's letter said that Section 2.1-17 obligated the Village's Board of Fire and Police Commissioners to hold a separate hearing regarding the articulated reasons for Plaintiff's removal and indicated that since the foregoing sections of the Illinois Municipal Code were not complied with, Plaintiff remained the Village's Police Chief and was entitled to receive salary and benefits.

5

Plaintiff asserts that sometime after sending him the Termination Letter, Defendants announced at Village Board meetings that Plaintiff had been terminated and a new Police Chief, John Pate, had been hired. In addition, Plaintiff asserts that Defendants printed and distributed a mailbox newsletter to Village residents announcing Plaintiff's termination and the hiring of a new Police Chief. Plaintiff also says that the Kankakee City News published articles concerning alleged corruption in and mismanagement of the Village's government and mentioned his name.

On September 25, 2015, Plaintiff filed the present complaint. In his complaint, Plaintiff first asserts a federal procedural due process claim pursuant to the Fourteenth Amendment (Count I) and a breach of contract claim under Illinois state law (Count II). Specifically, Plaintiff alleges that he had a protected property interest in his continued employment with the Village by virtue of Sections 2.1-4 and 2.1-17 of Illinois Municipal Code, 65 ILCS § 5/10-2.1-4 and 65 ILCS § 5/10-2.1-17, and the 2014 Contract. Accordingly, Plaintiff alleges that Defendants violated his constitutional and contract rights by failing to notify him of the reasons for his termination and failing to hold pre-termination and post-termination Village Board and Board of Fire and Police Commissioners hearings in conjunction with his discharge. Next, Plaintiff brings claims of defamation per se and false light (Counts III and IV), alleging that Defendants publicized his termination with reckless disregard for the truth and damaged his reputation by implying to the public at large that he was unable to perform his profession for want of integrity or for criminality. Finally, Plaintiff claims that Defendants violated (1) the Illinois Whistleblower Act (Count V) by firing Plaintiff in retaliation for conducting investigations into possible violations of federal and state law by the Village and Village Trustees and reporting the results of the investigations, and (2) the Illinois Wage Payment and Collection Act (Count VI) by failing to pay him a termination fee, severance pay, or continued wages pursuant to his 2014 Contract.

6

Plaintiff admits that he has no publicized false statements from Covington or any Village official to support his defamation claim. Plaintiff has never produced the printed newsletter allegedly sent to Village residents or the Kankakee News Articles regarding government corruption. In addition, Plaintiff does not know whether the Termination Letter was sent to anyone besides himself or whether the printed newsletter even included his name. Plaintiff asserts that his name appeared in the purported Kankakee City News articles, but forgets exactly how he was referenced therein, and he has no recollection of which Village officials, if any, were quoted in the news articles. Plaintiff maintains that because he had no opportunity for a name-clearing hearing, the public has been left to speculate regarding the reason for his termination.

Similarly, regarding Plaintiff's whistleblower allegations, Plaintiff admits that Roudez does not remember when the meeting at the Will County State's Attorney's office took place in relation to Plaintiff's termination. Neither can Roudez recall (1) telling Covington about the meeting at the State's Attorney's office, (2) the specifics of any alleged investigation undertaken by Plaintiff, or (3) the specifics of any legal violations that Plaintiff relayed to Roudez. Further, Roudez has no knowledge of Covington or any Village official telling Plaintiff to cease any investigations.

## B. Procedural History

Defendants answered Plaintiff's complaint on December 23, 2015 and raised various affirmative defenses, including "Failure to State a Valid Claim." Dkt. 11 at 19 (stating cursorily that "[t]he allegations and counts contained in Plaintiff's Complaint fail to state a cause of action, upon which relief can be granted."). Plaintiff then filed a motion to strike Defendants' affirmative defenses. In their response to the motion to strike, Defendants requested that the Court allow them to amend their "Failure to State a Valid Claim" defense to additionally state that Defendants were

not required to provide Plaintiff due process, that Illinois statutes allowed for the proper termination of the contract, and that "Plaintiff's employment contract was in violation of Illinois law and [sic] under the aforementioned code sections [65 ILCS 5/3.1-30-5-C and/or 65 ILCS 5/8-1-7b]." Dkt. 18 at 5.

On July 12, 2016, by its own initiative and before ruling on Plaintiff's motion to strike, the Court ordered the parties to brief the issue of qualified immunity and the applicability of Michalowicz v. Village of Bedford Park, 528 F.3d 530 (7th Cir. 2008) (characterizing the plaintiff's "species of due-process claim" as "a challenge to the 'random and unauthorized' actions of the state officials in question" and holding that Michalowicz failed to state a due-process claim "because state law provides adequate remedies for the procedural violations")[3] (citing cases including Parratt v. Taylor, 451 U.S. 527 (1981)). Dkt. 28. In the course of briefing those issues, Defendants did not dispute that Plaintiff's termination deprived him of a protected property interest. Without addressing the issue of qualified immunity, this Court subsequently dismissed Plaintiff's complaint with prejudice pursuant to Michalowicz, and denied the motion to strike as moot without considering Defendants' request to amend. Dkt. 35 at 1 (holding that Plaintiff failed to state a due process claim and relinquishing jurisdiction over the state law claims). Plaintiff appealed that decision. On appeal, Defendants conceded that Plaintiff had a protected property interest in his job but argued that this Court's dismissal pursuant to Michalowicz was proper.

The Seventh Circuit reversed and remanded, reinstating Plaintiff's procedural due process claim. The majority opinion, after engaging in a lengthy analysis of the Parratt doctrine, held that

---

[3] "To state a procedural due-process claim, a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." Michalowicz v. Vill. of Bedford Park, 528 F.3d 530, 534 (7th Cir. 2008). The Michalowicz opinion pertained only to the second element because it was "undisputed that Michalowicz had a protected property interest in his continued employment as a tenured Village fire inspector." Id.

the Defendants' <u>Parratt</u> "argument is foreclosed for several reasons" including that: (1) "the Supreme Court has never suggested that the pragmatic but narrow rule of <u>Parratt</u> applies to employee due process claims where predeprivation notice and an opportunity to be heard could be provided in a practical way"; (2) "the decision to fire Bradley was made by the top municipal officials [and t]his court has held squarely that a complaint asserting municipal liability under <u>Monell</u> by definition states a claim to which <u>Parratt</u> is inapposite"; and (3) "defendants' expansive interpretation of <u>Parratt</u> [and other cases] is at odds with the Supreme Court's explication of <u>Parratt</u> [in later cases]." <u>Bradley v. Vill. of Univ. Park, Illinois</u>, 929 F.3d 875, 879 (7th Cir. 2019); <u>id.</u> at 899 (the "village's <u>Parratt</u> defense fails because it reads <u>Parratt</u> far too broadly, in a way that would conflict with <u>Monroe</u>, <u>Zinermon</u>, <u>Monell</u>, <u>Patsy</u>, and substantial precedent of this court."). Most relevant to Plaintiff's arguments on summary judgment, the Seventh Circuit's opinion also stated: (1) the "parties agree that Bradley had a protected property interest in his continued employment," (2) Defendants "did not comply with the termination provisions of Bradley's employment contract, the requirements of state law, or . . . the Fourteenth Amendment," and (3) "[t]hose points of agreement suffice to prove a due process claim under § 1983 against the individual officials and the village itself[.]" <u>Bradley v. Vill. of Univ. Park, Illinois</u>, 929 F.3d 875, 878, 880 (7th Cir. 2019).

After remand, Defendants filed a motion for judgment on the pleadings. In response, Plaintiff argued that the above language in "the Seventh Circuit's decision has left the Defendants' case in tatters." Dkt. 75 at 2 ("The Defendants' positions on the due process and breach of contract counts are thus finished."). The Court denied Defendants' motion for judgment on the pleadings but rejected Plaintiff's argument that the Seventh Circuit's opinion had resolved any claims. Dkt. 95. The Court stated:

>Plaintiff misapprehends the extent of the mandate rule and the law of the case doctrine . . . The Court did not decide the issue of whether Plaintiff has adequately pleaded a property right in his job, whether Plaintiff's 2014 contract was enforceable, or whether Plaintiff had an enforceable employment agreement for wages or final compensation . . . and neither did the Seventh Circuit, in large part because Defendants conceded the matter.

Id. at 10-11 (holding that the mandate rule and law of the case doctrine do not foreclose the Court from considering Defendants' motion for judgment on the pleadings). The Court later upheld that finding when it denied Plaintiff's motion to strike Defendants' amended affirmative defenses. Dkt. 131 ("The Seventh Circuit's holding pertained only to [the Parratt defense] issue."). The parties have now filed cross motions for summary judgment.

## II. LEGAL STANDARD

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642, 648 (7th Cir. 2011) ("A party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible in order to trigger the opponent's burden to answer with its own supporting evidence."). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"[D]espite our innate draw to truth-seeking, we must resist the allure of fact finding and focus on our one and only task: 'to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.'" Gupta v. Melloh, 19 F.4th 990, 996–97 (7th Cir. 2021) (quoting Payne v. Pauley, 337 F.3d 767, 771 (7th Cir. 2003)). "On summary judgment we must take the facts in the light most favorable to the non-moving party and grant summary judgment only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010). If the nonmovant "is unable to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment must be granted." Benuzzi v. Bd. of Educ. of City of Chicago, 647 F.3d 652, 662 (7th Cir. 2011) (cleaned up).

## III. ANALYSIS

The Court will first address Plaintiff's due process and breach of contract claims, rejecting Plaintiff's argument that the Seventh Circuit's opinion demands that summary judgment be granted in Plaintiff's favor. The Court instead finds that because Plaintiff's 2014 Contract was

void and unenforceable when executed, Plaintiff had no protected property interest and his due process and breach of contract claims fail as a matter of law. The Court further holds that Plaintiff's remaining state law claims fail because no reasonable jury could find in his favor based on the undisputed evidence.

## A. Procedural Due Process and Breach of Contract Claims

Plaintiff's procedural due process claim requires a two-fold analysis. First, the Court must decide (1) "whether [Bradley] was deprived of a protected interest [and, if so]; second, we must determine what process is due." Bryn Mawr Care, Inc. v. Sebelius, 749 F.3d 592, 598 (7th Cir. 2014). "All parties agree: [Plaintiff] received no process at all[,]" so the primary question here is whether he had a protected property interest in his continued employment. Bradley v. Vill. of Univ. Park, Illinois, 929 F.3d 875, 883 (7th Cir. 2019).

The Fourteenth Amendment's procedural due process protections apply only to an individual deprived of a recognized property or liberty interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). The Supreme Court has observed that property interests are not created or defined by the Constitution but "by existing rules or understandings that stem from an independent source such as state law." Roth, 408 U.S. at 577. Plaintiff must be able to "point to a substantive state-law predicate creating that interest." Omosegbon v. Wells, 335 F.3d 668, 674 (7th Cir. 2003) ("we have generally required that a plaintiff be able to show that the terms of her employment provide for termination only 'for cause' . . . or otherwise evince 'mutually explicit understandings' of continued employment." (cleaned up)). For a benefit like continued employment to qualify as a constitutionally protected property interest, there must be "such rules or mutually explicit understandings" that support a claim of entitlement to it. Perry v. Sinderman,

408 U.S. 593, 601 (1972). An abstract need or unilateral expectation of a benefit does not create a protectable property interest. Roth, 408 U.S. at 577.

While a public employee may have a property interest in continued employment, not every public employment situation creates an expectation of continued employment that rises to the level of a property interest protected by the Due Process Clause. With regard to a property interest in employment, "the sufficiency of the claim of entitlement must be decided by reference to state law." Bishop v. Wood, 426 U.S. 341, 344 (1976). Under Illinois law, public employees generally do not have property rights in employment that implicate Due Process protections. Levin v. Civil Serv. Comm'n of Cook County, 288 N.E.2d 97, 100 (Ill. 1972). However, a constitutionally protected property interest in continued public employment can arise from statutes, regulations, municipal ordinances, employee handbooks, collective bargaining agreements and express or implied contracts. See Perry, 408 U.S. at 600-03; Domiano v. Village of River Grove, 904 F.2d 1142, 1147 (7th Cir. 1990); Tatom v. Ameritech Corp., 305 F.3d 737 (7th Cir. 2002). Statutory procedural guarantees, though, are not themselves a property right. See Suckle v. Madison General Hosp., 499 F.2d 1364, 1366 (7th Cir. 1974) ("Procedural protections or the lack thereof do not determine whether a property right exists."); see also Myiler v. Village of East Galesburg, 512 F.3d 896, 897-99 (7th Cir. 2008); Cain v. Larson, 879 F.2d 1424, 1426 (7th Cir. 1989) (to create a protected property interest, a statute "must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion—as can be found, for example, in a requirement that employees be fired only 'for cause.'"); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11 (1977) (property interest in continued service because public utility may not terminate service "at will," but "may terminate service only 'for cause'").

Plaintiff argues that the property-interest issue and claim have already been resolved by the Seventh Circuit. Dkt. 110 ¶9 ("[T]he Seventh Circuit in this matter has decided the issues of due process and breach of contract in Bradley's favor."). Specifically, Plaintiff points to the Seventh Circuit's statement that:

> The parties agree that Bradley had a protected property interest in his continued employment. They agree that the mayor and the village board are the policymakers for their municipality on the subject. And everyone agrees that although there was ample opportunity for a hearing, Bradley received no pretermination notice or hearing. Those points of agreement suffice to prove a due process claim under § 1983 against the individual officials and the village itself, where the village acted through high-ranking officials with policymaking authority.

Bradley, 929 F.3d at 879-880 ("[t]hese actions did not comply with the termination provisions of Bradley's employment contract, the requirements of state law, or—critical to this case—the Fourteenth Amendment."). Therefore, pursuant to the mandate rule and law of the case doctrine, argues Plaintiff, this Court is compelled to enter summary judgment in his favor. Carmody v. Bd. of Trustees of Univ. of Illinois, 893 F.3d 397, 407 (7th Cir. 2018) ("The mandate rule requires a lower court to adhere to the commands of a higher court on remand [while] the law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." (cleaned up)).

But as this Court has repeatedly stated, the above language from the Seventh Circuit does not settle the issue of liability or justify summary judgment for Plaintiff. The mandate rule and law of the case doctrine bind this Court only to the issues decided by the Seventh Circuit. "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 168 (1939) cited with approval in Creek

v. Vill of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998). "Therefore, it is essential to determine what issues were actually decided in order to define what is the 'law of the case.'" Creek, 144 F.3d at 445. "This requires a careful reading of the reviewing court's opinion: observations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations." Ibid.

The formal issue on appeal was this Court's holding in dismissing Plaintiff's complaint. This Court ordered dismissal pursuant to the Parratt doctrine and Michalowicz—a decision based solely on the question of the sufficiency of procedural protection, and not the question whether a protected property interest existed. 528 F.3d at 534. As Defendants state, "this case was steered in a particular direction that necessarily rendered the first inquiry in a procedural due process claim analysis – whether the plaintiff was deprived of a protected interest – undisputed." Dkt. 124 at 8; Bradley v. Vill. of Univ. Park, Illinois, 929 F.3d 875, 884 (7th Cir. 2019) ("The legal issues are undisputed until this point: Bradley had a protected property interest, which he lost without any due process."). The "compass" of the appeal and the Seventh Circuit's opinion, therefore, did not include the property-interest issue, because Defendants conceded it. Id. at 881 ("The village has conceded that Bradley held a protected property interest in his job."). Indeed, the Seventh Circuit did not engage in a substantive analysis, instead stating that it "need not dwell on this element." Id. at 882. The Seventh Circuit's holding foreclosed any defense based on Parratt and Michalowicz, and now precludes Defendants from arguing that they escape liability because their official action was "random and unauthorized[.]" Id. at 885 ("We reject this defense."); id. at 894

("So too here. The actions of the defendants as municipal policymakers simply cannot be deemed 'random and unauthorized' within the meaning of Parratt."). But that was the extent of its holding.[4]

Neither have Defendants waived their property-interest defense here, despite that they conceded and waived it earlier on appeal. See Bradley, 929 F.3d at 881 n.2 ("The village has expressly waived on appeal any arguments it might have made to the contrary. See Appellees' Br. at 14, 23–24."). For one, Defendants raised the argument before this Court even dismissed the complaint. Defendants responded to Plaintiff's motion to strike Defendants' affirmative defenses, and sought to argue that Plaintiff had no property interest by way of the unenforceable and void 2014 Contract. Dkt. 18 at 5 (requesting "that this court allow the Defendants leave to file an amended affirmative defense [for failure to state a claim] stating that under Count I the Defendants were not required to provide Plaintiff" due process pursuant to Sections 8-1-7(b) and 3.1-30-5(c)). Thus, Defendants memorialized their alternative position. Defendants thereby informed Plaintiff and this Court of their property-interest argument early in this litigation and did not first raise the issue after remand. Second, Plaintiff cites only one case in support of his waiver argument, but that case is inapposite because it pertains to arguments raised first in an appellate reply brief. Mendez v. Perla Dental, 646 F.3d 420, 424 (7th Cir. 2011) (plain error challenge to a jury instruction cannot be raised in an appellate reply brief when defendants failed to raise the error at

---

[4] The Court notes that it is now undisputed fact that Covington's first mayoral term ended in 2015. It follows that the term of the 2014 Contract extended beyond the Mayor's term of office. At the pleading stage and on appeal, this fact was not in the record. Dkt. 95 at 14 (denying motion for judgment on the pleadings after the Seventh Circuit remand and stating, "Defendants assert that Covington's first term as mayor ended in May 2015. Perhaps that assertion is true, but Defendants do not locate that fact in any pleading. Nor can Defendants, because no such fact is alleged or admitted in any pleading in this case[.]"); see Bradley, 929 F.3d at 882 (Seventh Circuit was bound to construe "the factual allegations in the complaint in the light most favorable to Bradley."). Accordingly, as discussed further below, this Court can now conclude that the 2014 Contract on which Plaintiff primarily bases his property interest was void when executed. In contrast, the Seventh Circuit had no basis to conclude that Plaintiff's contract was invalid, both because of Defendants' concession and the lack of record before it. See Dkt. 95 at 13 (Defendants' answer to the complaint did not deny, and thereby conceded at that time, that Plaintiff had a protected property interest in his job).

trial and in their opening brief). And perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016).

Plaintiff further urges that the Court should apply judicial estoppel and preclude Defendants from asserting their property-interest defense. Dkt. 117 at 5 (characterizing Defendants' position as a "property interest switch"). The Court disagrees. Judicial estoppel is an equitable doctrine, within the Court's sound discretion, intended to protect "the integrity of the judicial process." Jarrard v. CDI Telecommunications, Inc., 408 F.3d 905, 914 (7th Cir. 2005); see Matter of Cassidy, 892 F.2d 637, 641 (7th Cir. 1990) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."). "A litigant is not permitted to advance a ground in one lawsuit, prevail on that ground, and in a later lawsuit[5] against the same party seek a judgment based on a repudiation of its earlier position." Walton v. Bayer Corp., 643 F.3d 994, 1002 (7th Cir. 2011) (while the doctrine's appropriate use is not reducible to any general formulation of principle, factors informing the decision to apply judicial estoppel include: (1) a party taking a position clearly inconsistent with its prior position; (2) whether the party succeeded in persuading a court to accept the prior position, such that "acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) whether the party to be estopped would derive an unfair advantage or impose an unfair detriment on the opposing party).

---

[5] Defendants argue that the application of judicial estoppel is reserved for successive lawsuits and should not apply to positions taken in different stages within the same lawsuit—like district court and appellate court proceedings. They attempt to distinguish Walton v. Bayer Corp., 643 F.3d 994, 1002-03 (7th Cir. 2011), where the court stated that "[judicial estoppel's] purpose is to deter fraud in litigation, which is a good description of advancing a ground for relief in one stage of a lawsuit with the undisclosed intention of arguing against it in a later stage." (cleaned up). The Court need not decide the issue to rule in Defendants' favor.

17

Here, Defendants gained nothing by conceding on appeal that Plaintiff had a protected property interest in his continued employment. Defendants' alleged "switch" to their current position evinces no gamesmanship, unfair advantage, or fraud on the Court. Walton, 643 F.3d at 1002 ("Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity."); Patz v. St. Paul Fire & Marine Ins. Co., 15 F.3d 699, 702 (7th Cir. 1994) (judicial estoppel "presupposes a judgment . . . for all it does is forbid a person who has won a judgment on one ground to repudiate that ground in a subsequent litigation in an effort to obtain a second judgment. It is thus about abandoning winning, not losing, grounds."). In addition, there is no evidence that Defendants acted in bad faith. Jarrard v. CDI Telecommunications, Inc., 408 F.3d 905, 915 (7th Cir. 2005) ("Judicial estoppel 'will not apply where inconsistent positions are asserted in good faith or through inadvertence.'") (quoting In re Chambers Dev. Co., 148 F.3d 214, 229 (3d Cir. 1998)). The Parratt doctrine presumes the existence of a protected property interest, and this Court stated in its dismissal order that Defendants "do not dispute" the point. Dkt. 35. The Court, it its discretion, will not penalize Defendants for proceeding accordingly on appeal.

In support of their summary judgment motion, Defendants argue that Plaintiff's 2014 Contract was null, void, and unenforceable under Illinois Law. Accordingly, Plaintiff had no protected property interest, so his due process and breach of contract claims must fail. The Court agrees, so summary judgment on those claims is granted for Defendants.

In his complaint, Plaintiff claims that he has a property interest in his continued employment stemming from his "written employment contract" and "Illinois law . . . 65 ILCS 5/10-2.1-4 and 5/10-2.1-17." Dkt. 1 ¶¶ 16, 18. First, the 2014 Contract conferred no property interest in Plaintiff's continued employment because it was void when executed. It is now

undisputed that when Plaintiff's 2014 Contract was executed, its duration extended beyond the completion of Mayor Covington's then first term of office. Pursuant to Sections 8-1-7(b) and 3.1-30-5(c) of the Illinois Municipal Code, such a contract is invalid.[6] 65 ILCS § 5/8-1-7(b) ("[T]he corporate authorities of any municipality may make contracts for a term . . . not exceeding the term of the mayor or president holding office at the time the contract is executed, relating to: (1) the employment of a . . . police chief[.]"); 65 ILCS § 5/3.1-30-5(c) ("The city council or board of trustees of a municipality . . . may . . . fix the term of office of all appointed officers of the municipality; but the term of office. . . shall not exceed that of the mayor or president of the municipality."); Cannizzo v. Berwyn Twp. 708 Cmty. Mental Health Bd., 741 N.E.2d 1067, 1074 (Ill. App. Ct. 2000) (holding that "such contracts are *ultra vires* and void *ab initio*" pursuant to section 8-1-7(b)). The contract was therefore void when executed because the Board did not have legal authority to contract for Plaintiff to have a tenure beyond Mayor Covington's then term of office. And void contracts cannot create protected property interests for procedural due process purposes. Shlay v. Montgomery, 802 F.2d 918, 922 (7th Cir. 1986) ("There is no question that contracts which are in violation of law are null and void. . . . [and] contracts which are null and void are incapable of creating property interests since such a contract cannot conceivably give rise to a legitimate expectation of continued employment."); Bailey v. City of Lawrence, Ind., 972 F.2d 1447, 1449 (7th Cir. 1992); Walters v. Vill. of Colfax, 466 F. Supp. 2d 1046, 1056-57 (C.D. Ill. 2006); Walsh v. Bollas, 612 N.E.2d 1252, 1256 (Ohio Ct. App. 1992) ("As a void contract . . . appellant was not entitled to procedural guarantees under [state statute] because no rights may arise from an illegal contract.").

---

[6] Quite reasonably, the Illinois legislature is clearly concerned with preventing successive corporate authorities from being bound by the hiring decisions of previous municipal leadership.

Of course, the void and unenforceable 2014 Contract cannot support Plaintiff's breach of contract claim either. A breach of contract claim must include "the existence of a valid and enforceable contract[.]" Pepper Const. Co. v. Palmolive Tower Condominiums, LLC, 59 N.E.3d 41, 66 (Ill. App. Ct. 2016); Kedzie & 103rd Currency Exch., Inc. v. Hodge, 619 N.E.2d 732, 736 (Ill. 1993) ("A contract or transaction which is void must certainly negate the obligation to pay arising from it as between the contracting parties."). For this reason, Plaintiff's breach of contract claim also fails.

In addition, Plaintiff fails to establish a property interest stemming from state law. Section 10-2.1-17 of the Illinois Municipal Code states, "Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged *except for cause*, upon written charges, and after an opportunity to be heard in his own defense." 65 ILCS 5/10-2.1-17 (emphasis added). Rather than arguing that this language limits Defendants' discretion in a manner that created a property interest in Plaintiff's continued employment, Plaintiff merely cites the section in passing in his briefing, emphasizing the procedural requirements that Defendants failed to meet. See Dkt. 111 at 3; Miyler v. Vill. of E. Galesburg, 512 F.3d 896, 898 (7th Cir. 2008) ("In order to create a property interest, a statute or ordinance must provide 'some substantive criteria limiting the state's discretion,' as for instance in a requirement that employees can only be fired 'for cause.' A statute which merely provides procedures to be followed does not include a substantive right."). Indeed, Plaintiff makes no argument about the substance of Plaintiff's property interest except to point to Plaintiff's employment contract and the Seventh Circuit's opinion remanding this case. See Dkt. 126 at 10 (Plaintiff argues that the contract is valid because "Defendants acknowledged Bradley's protected property interest through his contract in the district court and on appeal."). Plaintiff only

regurgitates at length his argument that the Seventh Circuit's opinion (1) held—because Plaintiff conceded it—that Plaintiff had a property interest and (2) now controls the outcome of this suit pursuant to the mandate rule and law of the case doctrine. Plaintiff has therefore waived the argument. Crespo, 824 F.3d at 674 (even arguments raising constitutional issues are waived when perfunctory, undeveloped, and unsupported by authority).

Even had Plaintiff made the argument, the statute and relevant Village ordinances appear to include sections that carve-out the "for cause" requirement from applying to police chiefs in the Village of University Park. Defendants state that the Village opted not to be controlled by the relevant provisions, which the statute allows. See Mandarino v. Vill. of Lombard, 414 N.E.2d 508, 510 (1980) ("we hold that section 10-2.1-4 is not a limitation on the home-rule village's power to adopt different procedures for discharging its police chief."). The above language from Section 10-2.1-17 pertains to each "officer" and "member" of the police department, but the statute goes on to state that, "If the *chief* of the . . . the police department . . . [is] appointed in the manner provided by ordinance, they may be removed or discharged by the appointing authority. In such cases the appointing authority shall file with the corporate authorities the reasons for such removal or discharge[.]" 65 ILCS 10-2.1-17 (emphasis added); Niebur v. Town of Cicero, 212 F. Supp. 2d 790, 810 (N.D. Ill. 2002) (noting that the legislature amended Section 10-2.1-17 to expressly authorize municipalities to delegate the power to remove and discharge police chiefs from the Police Board to the appointing authority). The Village Code then provides that the "Chief of the Police Department . . . shall be . . . removed by the Village Manager in accordance with the provisions of Section 220-05 of this Code." See Village Code Section 271-02(d) ("Modifications of State Statute"). In turn, Section 220-05 states, "The Manager may remove or discharge such officials, but only after having reported the reasons for that action to the Village Board and having

21

the Village Board confirm the Manager's decision." Village Code Section 220-05 ("Duties of officers and departments"). While the above language from the statute and Village Code requires that the "reasons" for a Police Chief's removal be reported, it does not include any "for cause" requirement that might establish a property interest in Plaintiff's continued employment. Miyler v. Vill. of E. Galesburg, 512 F.3d 896, 897–98 (7th Cir. 2008) (affirming summary judgment and finding no property interest in the plaintiff's job as Police Chief of East Galesburg, Illinois because "[n]othing in the Village ordinances or the state statutes gives him a protectible property interest in his position, nor does he have an employment contract with the Village. In short, he was an at-will employee.").[7]

Ultimately, the Seventh Circuit's reversal and remand does not bind this Court to rule in Plaintiff's favor. Indeed, as a matter of law, Plaintiff had no valid employment contract nor protected property interest in continued employment. His due process and breach of contract claims fail.

## B. Defamation and False Light Claims

Summary judgment for Defendants is also warranted on Plaintiff's remaining state law claims. First, Plaintiff's claims of defamation per se and false light fail. To prevail on a defamation claim, a plaintiff must present evidence showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. Green v. Rogers, 917 N.E.2d 450, 458 (Ill. 2009). Statements can be either defamatory per quod (requiring extrinsic facts to explain the defamatory

---

[7] Defendants also argue that Plaintiff received all process due to him because they followed the procedures outlined in the Village Code. By Village law, the Village Manager was the appointing authority. Covington, acting as the Village Manager because that post was vacant at the time, discharged Plaintiff and convened a Village Board meeting where Plaintiff's termination was discussed and voted upon. Defendants say that is all that was required under the due process clause, but the Court need not address the argument.

character of the statements) or defamatory per se (when the defamatory character of the statement is apparent on its face). Kolegas v. Heftel Broadcasting Corp., 607 N.E.2d 201, 206 (Ill. 1992). Plaintiff has sued Defendants under the latter theory. Dkt. 1 ¶¶ 49, 50.

Four categories of statements are considered defamatory per se: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office of employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession, or business. Bryson v. News America Publications, Inc., 672 N.E.2d 1207, 1214-15 (Ill. 1996) ("statements that fall within these actionable *per se* categories are thought to be so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed."). One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true. Parker v. Bank of Marion, 695 N.E.2d 1370, 1372 (Ill. App. Ct. 1998). Only "substantial truth" is required for this defense. Cianci v. Pettibone Corp., 698 N.E.2d 674, 678 (Ill. App. Ct. 1998). While substantial truth is normally a question for a jury, where no reasonable jury could find that substantial truth had not been established, the question is one of law. Hollymatic Corp. v. Daniels Food Equipment, Inc., 39 F. Supp. 2d 1115, 1118 (N.D. Ill. 1999).

A claim of false light is related to and overlaps with a defamation claim, and "protects one's interest in being let alone from offensive publicity." Schaffer v. Zekman, 554 N.E.2d 988, 993 (Ill. App. Ct. 1990). "[A]ll defamation cases can be analyzed as false-light cases, but not all false-light cases are defamation cases." Lovgren v. Citizens First Nat. Bank of Princeton, 534 N.E.2d 987, 991 (Ill. App. Ct. 1989). When a claim of defamation per se fails, "[i]t follows that . . . alleging invasion of privacy (false light) must fail as well." Harte v. Chicago Council of Laws.,

581 N.E.2d 275, 280 (Ill. App. Ct. 1991). A false light claim requires, in part, a showing that the defendant acted with knowledge of or reckless disregard for the falsity of the statements. Dubinsky v. United Airlines Master Exec. Council, 708 N.E.2d 441, 451 (Ill App. Ct. 1999). Accordingly, substantial truth is also a defense to a false light claim. Wynne v. Loyola Univ. of Chicago, 741 N.E.2d 669, 677 (Ill. App. Ct. 2000).

Here, even with the benefit of discovery, Plaintiff has put forth no evidence that any publicized material concerning his termination was false. He has provided no evidence that his termination letter was publicized, or that anyone besides him even had access to it. Plaintiff has produced neither the Village newsletter that (Plaintiff thinks might have) had his name in it, nor the Kankakee City News articles that allegedly announced corruption and mismanagement in the Village government. While Defendants may have announced his termination and the appointment of a new Police Chief at Village Board meetings, there is no evidence that those announcements included anything besides the truth—that Plaintiff had been terminated and replaced by John Pate. Plaintiff argues that the announcements lacked truthful context and thereby wrongfully imputed a want of integrity and inability to perform his job, but he cites no law for the proposition that an announcement of a plaintiff's termination alone, when true, is defamatory. Simply put, there is no evidence that any published statement was defamatory or presented Plaintiff in a false light. Despite Plaintiff's insistence, Defendants' failure to provide "a description of the circumstances surrounding Bradley's removal from office" does not constitute defamation. Dkt. 117 at 7.

### C. Whistleblower Act Claim

Plaintiff's claim pursuant to the Illinois Whistleblower Act similarly fails. Under that statute, "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that

the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). To succeed on his claim, Plaintiff must show "(1) an adverse employment action by his [] employer, (2) which was in retaliation (3) for [his] disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation." Sweeney v. City of Decatur, 79 N.E.3d 184, 188 (Ill. App. Ct. 2017).

Plaintiff fails to meet his burden because he has provided insufficient evidence to show that he was fired in retaliation. Relevant witnesses like Covington and Roudez express ignorance concerning Plaintiff's alleged investigations, and Plaintiff presents no evidence that Covington— who was responsible for his termination—even knew of any cooperation between Plaintiff and the Will County State's Attorney's office. Even assuming that Plaintiff did in fact (1) investigate potential violations of law within the Village government and (2) share his findings with the Will County State's Attorney's office, Plaintiff offers insufficient evidence linking these communications to his termination. Plaintiff presents only Roudez's deposition testimony that (1) meetings regarding the investigations occurred in the State's Attorney's office and (2) Plaintiff's termination occurred "shortly thereafter, sometime down the line." Dkt. 106-5 at 44 (also testifying, "I'm not going to guess [when the meeting took place at the State's Attorney's office] . . . I don't remember the dates or the time[.]"). In contrast, Plaintiff himself testified that he talked to the State's Attorney's office about the whistleblower actions "long before" his termination. Dkt. 106-2 at 27. Further, it is undisputed that Covington did not support Plaintiff's appointment to police chief in 2013, long before any alleged investigation by Plaintiff. See Dkt. 106-2 at 30 (Plaintiff testified that Covington and two trustees did not show up when Plaintiff was sworn in as police chief). Consistent with that disposition, Covington later effected Plaintiff's termination when she was re-elected and gained increased support on the Village Board. Accordingly, a

25

reasonable jury could not conclude that Plaintiff was fired in retaliation for his alleged investigations into the Village government. See Hubert v. Bd. of Educ. of City of Chicago, 169 N.E.3d 831, 840 (Ill. App. Ct. 2020) (summary judgment not warranted when both sides present evidence in support of their positions on the Board's motive).

### D. Wage Payment Act Claim

Finally, Plaintiff's claim for damages under the Wage Payment and Collection Act (the "Act") also fails. The purpose of the Act is "to insure the prompt and full payment of wages due workers at the time of separation from employment, either by discharge, layoff or quitting." Armstrong v. Hedlund Corp., 738 N.E.2d 163, 171 (Ill. App. Ct. 2000). It "does not provide an independent right to payment of wages and benefits; instead, it only enforces the terms of an existing contract or agreement." Wharton v. Comcast Corp., 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012). Hence, to state a claim under the Act, a plaintiff must establish that (1) the defendant was an "employer" as defined in the Act; (2) the parties entered into an employment contract or agreement; and (3), the plaintiff was due "final compensation" as defined in the Act. Catania v. Local 4250/5050, 834 N.E.2d 966, 972 (Ill. App. Ct. 2005).

Plaintiff need not prove the existence of a valid and enforceable contract to recover under the Act. See 820 ILCS 115/2 (payments to separated employees, or "final compensation," includes "any other compensation owed . . . pursuant to an employment contract *or agreement* between the parties.") (emphasis added); Chagoya v. City of Chicago, 992 F.3d 607, 625 (7th Cir. 2021) ("An agreement 'can be entirely implicit'" like "an employer's acquiescence or the existence of a custom or practice[.]"). But Plaintiff is required to at least demonstrate "facts showing mutual assent to terms that support the recovery." Landers-Scelfo v. Corp. Off. Sys., Inc., 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2005) (noting that one can manifest assent to an agreement "by conduct alone"

including "simply by paying her according to [a commission arrangement]"). However, Plaintiff must provide evidence of an "unequivocal promise." Wilkinson v. Acxiom Corp., No. 17 CV 2871, 2020 WL 1330402, at *8 (N.D. Ill. Mar. 23, 2020) (finding that no reasonable jury could find that earlier comments constituted mutual assent).

For reasons already stated, there is no valid contract supporting Plaintiff's claim, but neither is there any evidence of conduct or past practice indicating a mutual assent to continued payment. Chagoya v. City of Chicago, 992 F.3d 607, 625 (7th Cir. 2021) (without evidence "beyond personal convictions that they should have been paid," the operators fail to survive summary judgment). Plaintiff argues that his predecessor Mel Davis was terminated and paid severance. But the circumstances surrounding Davis' termination are unknown, and a single instance of severance paid to a predecessor is insufficient to constitute a practice or custom manifesting mutual assent. See Schultze v. ABN AMRO, Inc., 83 N.E.3d 1053, 1055 (Ill. App. Ct. 2017) (finding mutual assent and unequivocal promise to an annual bonus when, apart from the first 2 years when he was not an executive, the plaintiff "always received a salary and bonus" during his 25 year career); Carroll v. Lynch, No. 07 C 1575, 2011 WL 1838563, at *17-18 (N.D. Ill. May 13, 2011) (no mutual assent because the plaintiff's allegation that she received a bonus in 8 out of 10 years "suggests the bonus was discretionary," and "despite ample opportunity for discovery, she also has offered no evidence concerning Defendant's bonus practices, nor any proof that any similarly-situated employees received a bonus."). And Plaintiff makes no argument that he should be paid any final compensation stemming from his 2013 Contract. Crespo, 824 F.3d at 674 ("undeveloped arguments . . . are waived[.]").[8]

---

[8] Because the Court grants summary judgment in Defendants' favor for the foregoing reasons, the Court need not address Defendants' qualified immunity defense.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that no reasonable jury could return a verdict for Plaintiff. The Court rejects Plaintiff's argument that the Seventh Circuit's opinion resolved any of Plaintiff's claims in his favor or now precludes summary judgment for Defendants. Plaintiff's 2014 Contract was void and unenforceable at the time it was executed, so Plaintiff had no protected property interest in his employment. Accordingly, his procedural due process claim and breach of contract claims must fail. Despite the benefit of discovery, Plaintiff provides insufficient evidence to support his other state law claims. Because Defendants are entitled to judgment as a matter of law, their motion is granted, judgment is entered in their favor on all claims, and the case is terminated.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: April 25, 2022